**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| J.Y.C.C., *et al.*, | ) | |
| | ) | Case No. 4:15-CV-01704-RWS |
| Plaintiffs, | ) | (CONSOLIDATED) |
| | ) | |
| vs. | ) | |
| | ) | |
| THE DOE RUN RESOURCES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO AFFIDAVIT OF
FRANCISCO R. RODRIGUEZ, ESQ. IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO COMPEL HANDWRITTEN PLAINTIFF PROFILE SHEETS**

Pursuant to this Court's Order dated November 13, 2020 [Doc. 430], Defendants file this Response to the Affidavit of Francisco R. Rodriguez, Esq. filed on November 25, 2020 [Doc. 434] in further support of Defendants' Motion to Compel Plaintiffs to produce all final handwritten Plaintiff Profile Sheets ("PPS") not previously produced [Doc. 407], respectfully showing the Court as follows:

## I.    INTRODUCTION

On November 13, 2020, this Court heard argument on Defendants' Motion to Compel Plaintiffs to produce all final handwritten PPSs not previously produced. [Doc. 407.] In opposing Defendants' Motion, Plaintiffs' counsel Francisco R. Rodriguez asserted that the subject handwritten PPSs were protected from disclosure by the attorney-client privilege and work-product doctrine because they were not final fact sheets intended to be produced to Defendants. Mr. Rodriguez further stated that Plaintiffs' counsel did not simply detach signature pages from Plaintiffs' original handwritten PPSs and attach them to the lawyer-modified typewritten versions. [*See* Transcript of Nov. 13, 2020 Status Conference ("Transcript"), at 18:11("That did not

1

happen").] Rather, according to Mr. Rodriguez, where Plaintiffs' counsel added new information to the modified profile forms, a new signature page was signed and included in lieu of the original signature page, and to the extent the original signature page was attached, it was "one-off," "human error." [Transcript, at 18:12; Affidavit of F. Rodriguez ("Affidavit") [Doc. 434], ¶ 13-16.] The Court then required Mr. Rodriguez to file an affidavit "restating the facts put forth [at the November 13 hearing] in opposition to Defendants' motion to compel Plaintiffs' original handwritten fact sheets." [Nov. 13, 2020 Order [Doc. 430].]

Mr. Rodriguez filed the requisite affidavit on November 25, 2020. [Doc. 434.] Therein, Mr. Rodriguez – who "supervised a team of La Oroya residents to assist in [Plaintiffs' counsel's] interaction with clients in La Oroya and surrounding towns" [Affidavit, ¶ 4] – detailed the process by which Plaintiffs' counsel have obtained and produced PPSs during the life of this matter. Mr. Rodriguez's affidavit, however, raises more questions than provides answers.

For starters, while Mr. Rodriguez attests that any failure to obtain a new signature page from a Plaintiff for whom Plaintiffs' counsel subsequently added new information into the typed PPS, was simply "human error" [Affidavit, ¶ 16.] However, in the short time since the hearing, ***Defendants have already uncovered nearly 50 examples where Plaintiffs' counsel appears to have attached an original signature page from the handwritten PPSs to a lawyer-augmented typewritten PPS.*** This evidence, discussed more fully below, belies the statements in Mr. Rodriguez's affidavit that it was Plaintiffs' counsel's practice to review any information counsel added to the PPS with Plaintiffs or their guardians and then obtain a new signature page. [*Id.*, ¶¶ 13-14.]

But putting aside this significant issue, Mr. Rodriguez's affidavit fails at its core to provide the evidentiary basis necessary to support Plaintiffs' privilege and work-product claims with

2

respect to the at-issue handwritten PPSs. A touchstone of the attorney-client privilege and work-product doctrine is an expectation of confidentiality; finalized court-ordered materials expected to be shared outside the attorney-client relationship are not and cannot be privileged or work-product. The subject of Defendants' motion are not "draft," non-final discovery responses, but *final* handwritten profile sheets that, according to Mr. Rodriguez's sworn affidavit, each individual Plaintiff or their parents or guardians completed and signed, verifying that they *"under[stood] that the information [they] have provided in this Personal Profile Sheet will be used in relation"* with these lawsuits. [*See, e.g.*, Profile Sheet (English and Spanish), G.A.A.V., p. 13, attached as Exhibit A; Profile Sheet (English and Spanish), H.G.A.C., p. 13, attached as Exhibit B.] No expectation of confidentiality could reasonably have attached to what Plaintiffs themselves understood to be final, Court-ordered profile sheets to which Plaintiffs swore, under penalty of perjury, were not only true and accurate, but would be shared with Defendants in this litigation.

      Mr. Rodriguez's affidavit does not even attempt to assert otherwise. Indeed, his affidavit is completely devoid of any evidence that there was an *expectation* by Plaintiffs or their guardians that these original handwritten, signed profile sheets would remain confidential. Consequently, Plaintiffs still have not presented the Court with any evidence supporting their naked assertion that the withheld PPSs are "draft" discovery responses. Rather, the only evidence before the Court suggests the opposite: Plaintiffs signed their original handwritten PPSs, affirming that they expected them to be shared in this litigation. In addition, Plaintiffs' counsel have produced nearly 600 such handwritten profile sheets, confirming what Plaintiffs attested to: that the subject PPSs were not confidential and would be shared. The remainder should also be produced.

      Because there was no expectation that the final handwritten profile sheets would remain confidential when created, no further inquiry is needed, and the Court should order their

production. But given the substantial discrepancies between Plaintiffs' counsel's representations and the number of instances Defendants could detect where counsel appears to have attached an original signature page to a lawyer-modified PPS, if the Court is not inclined at this time to order the production of these documents, it should at minimum order an *in camera* review of Plaintiffs' signed, final handwritten PPSs alongside the produced typed versions. Such a review would enable the Court to investigate for itself the number of instances in which Plaintiffs' counsel attached original handwritten signature pages to lawyer-modified fact sheets and what the differences are between the handwritten and typed versions of the PPSs. While Defendants' position remains that Plaintiffs have waived all privilege and work-product claims by already producing nearly 600 similar original, handwritten PPSs, at a minimum, Plaintiffs have waived the privilege in each instance where they attached the signature page from Plaintiffs' original, handwritten PPS to the lawyer-augmented version produced in this litigation.

## II.    ARGUMENT AND CITATION OF AUTHORITIES

### A.    MR. RODRIGUEZ'S AFFIDAVIT FAILS TO SET FORTH AN EVIDENTIARY BASIS FOR PLAINTIFFS' PRIVILEGE AND WORK-PRODUCT CLAIMS.

#### 1.    Mr. Rodriguez's Affidavit Is Devoid of Evidence that Plaintiffs Had an Expectation that the Original Handwritten PPSs Would Remain Confidential.

As discussed in detail in Defendants' moving papers, and as Plaintiffs concede, Plaintiffs bear the evidentiary burden of establishing their claims that the attorney-client privilege and work-product doctrine preclude the subject profile sheets from discovery. [Defs' Memorandum in Support [Doc. 408], at p. 10; Defs' Reply [Doc. 421], at p. 3; Plfs' Opposition [Doc. 418], at p. 2.] Mr. Rodriguez's sworn affidavit offers nothing in support of that burden because it fails to present any evidence supporting an assertion that Plaintiffs expected their final, signed original handwritten fact sheets would remain confidential.

4

The attorney-client privilege protects *only "communications not intended to be disclosed to third persons."* United States v. Spector, 793 F.2d 932, 938 (8th Cir. 1986) (emphasis added); *see also JoAnn Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252 ERW, 2014 WL 6845854, at *2 (E.D Mo. Dec. 3, 2014) (finding document was "[n]ot privileged because . . . the communication was not intended to be confidential"); *Taber v. Ford Motor Co.*, No. 16-00162-CV-W-SWH, 2017 WL 4391779, at *4 (W.D. Mo. Sept. 29, 2017) ("[T]he attorney-client privilege will only attach to communication between the attorney and the client when the client reasonably expects their communication to remain confidential."); *MasterMine Software, Inc. v. Microsoft Corp.*, No. 13–cv–971 (PJS/TNL), 2015 WL 12778417, at *8 (D. Minn. Aug. 5, 2015) ("To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the communication was (1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential.") (emphasis in original) (citation omitted). Similarly, documents expected to be disclosed outside the attorney-client relationship cannot be covered by the work-product doctrine. *See SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASx), 2020 WL 3050777, at *5 (C.D. Cal. Feb. 18, 2020) (finding that because the documents at issue "do not contain any information that [counsel] and her client intended to be kept confidential[,] . . . neither the attorney-client privilege nor the work-product doctrine attached to any information contained therein"); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015-16 (1st Cir. 1988) (finding work-product protection does not attach even to opinion work-product where "the lawyer has had no justifiable expectation the mental impressions revealed by the materials will remain private").

Plaintiffs still have offered no evidence in support of any expectation of confidentiality in the subject PPSs. In fact, *Mr. Rodriguez's affidavit supports the opposite conclusion*. As Mr.

5

Rodriguez's affidavit reaffirms, in every instance, Plaintiffs (or their guardian) signed their original, handwritten PPS *before* it was turned over to Plaintiffs' counsel. [Affidavit, ¶ 8.] In so doing, Plaintiffs or their guardians confirmed, under oath, not only that the PPS was truthful and accurate, but also that they specifically understood that "the information [they] provided in this Personal Profile Sheet will be used in relation with the lawsuit that has been filed" on their behalf. [*See* Profile Sheet (English and Spanish), G.A.A.V, p. 13, Ex. A; Profile Sheet (English and Spanish), H.G.A.C., p. 13 Ex. B.][1] Having acknowledged expressly that the PPS would be produced at the time they signed the original sheet, Plaintiffs cannot now claim they never expected these PPSs to be discovered. And, in fact, no Plaintiff has made such a statement in the record via an affidavit or declaration. Indeed, it makes little sense for Plaintiffs' counsel to have required *every* Plaintiff to sign their original handwritten fact sheets affirming its finality and veracity, if counsel always expected to type, edit, and have a new profile sheet signed again.

In this way, the subject PPSs are materially distinct from the "draft" discovery to which Plaintiffs have sought to analogize them. Defendants do not seek draft discovery to which a reasonable expectation of confidentiality might attach. *Cf. In re Engle Cases*, 3:09-cv-10000-J-

---

[1] Plaintiffs' counsel have taken inconsistent and contradictory positions with respect to *who* prepared the final handwritten profile sheets that are the subject of this dispute. In discussions with Defendants' counsel and during the November 13, 2020 conference with this Court, Mr. Rodriguez represented that *Plaintiffs*, or their parents or guardians, complete and sign the final handwritten PPSs. [Drake Decl. ISO Mot. to Compel [Doc. 409], ¶ 3; Transcript, at 17:14-23.] In his affidavit, however, Mr. Rodriguez now asserts that *representatives of Plaintiff's counsel in La Oroya* – whom Mr. Rodriguez supervises – collect the information necessary to complete a PPS and hand write it in the PPS form for Plaintiffs. [Affidavit, ¶ 8.] Plaintiffs' opposition to Defendants' motion to compel contradicts even itself, stating it both ways. [Plfs' Opp. [Doc. 418], at p. 13 ("The handwritten Profile Sheet drafts were prepared by Plaintiffs' counsel"); *id.*, p. 17 ("Plaintiffs completed the handwritten draft, along with a signature page, which was collected by their counsel.").] For purposes of Defendants' motion, however, this distinction is irrelevant, since Plaintiffs all signed their original fact sheets, verifying that they understood the documents would be used in this litigation.

6

32JBT, 2013 WL 12156248, at *3 (M.D. Fla Apr. 26, 2013) (finding handwritten plaintiff worksheets were privileged draft discovery because there was "no indication . . . that these handwritten materials . . . **were ever intended to be disclosed to third persons**") (emphasis added). For example, Defendants have not sought production of draft profile sheets Plaintiffs' counsel edited and shared with Plaintiffs for their approval. And Mr. Rodriguez's affidavit does not assert that the subject PPSs contain anything other than discoverable facts, like edits or other modifications that could be considered legal advice or work-product, unlike draft discovery responses that might be exchanged between client and counsel. Rather, the subject of Defendants' motion are the final court-ordered disclosures verified as such that were expected to be shared with Defendants, and indeed, in one-third of these cases, were so produced. In this way, if a written discovery analogy is appropriate at all, Plaintiffs' original PPSs, as Mr. Rodriguez has described them, should be viewed as Plaintiffs' initial, final response, and counsel's modified versions merely supplemental or amended discovery responses, since both were purportedly signed by Plaintiffs and affirmed as their final, complete, and accurate responses. And as with written discovery, there could be no contention that any amendment or supplemental discovery response would render the initial response privileged or attorney work-product.

In short, Plaintiffs' failure to present any evidence showing that Plaintiffs expected the final handwritten PPSs to remain confidential is dispositive of Defendants' motion. Indeed, the only evidence before the Court is that Plaintiffs *expected* that these documents would be produced, and indeed attested to that fact under oath. Plaintiffs' assertions of privilege and work-product therefore fail, and the Court should order all withheld original, signed, handwritten PPSs produced.

### 2. Mr. Rodriguez's Affidavit Fails in Other Material Respects to Set Forth a Basis for Plaintiffs' Privilege and Work-Product Claims.

Plaintiffs' failure to set forth an evidentiary basis supporting a reasonable expectation of privacy in the final, handwritten PPSs that Plaintiffs' counsel are currently withholding is not the only necessary information absent from Mr. Rodriguez's affidavit. Several other important questions also remain unanswered.

First, Plaintiffs have still not explained *when* each of the withheld final handwritten PPSs were created. There remains no privilege log or list of at-issue PPSs. As explained in Defendants' moving papers, to the extent the withheld PPSs were part of the "1900 or 2000" PPSs that Plaintiffs' counsel represented to the Court at the 2016 Rule 16 Conference were already complete and ready to be produced, this would further support that the withheld PPSs were final, non-privileged documents counsel expected to produce, not confidential material immune from discovery. [Defs' Reply [Doc. 421], at p. 6.] Similarly, Mr. Rodriguez's affidavit states that Plaintiffs did not modify their protocol for creating PPSs until "late 2016."[2] Counsel, by their own admission thus, would have expected to produce final, signed, handwritten PPSs created before "late 2016," and no privilege or work-product protection would attach. *See Spector*, 793 F.2d at 938; *see also Taber*, 2017 WL 4391779 at *4; *MasterMine Software*, 2015 WL 12778417 at *8.

Second, Mr. Rodriguez's affidavit also suggests that there are instances in which Plaintiffs' counsel took Plaintiffs' final handwritten PPSs and typed them, but made no further edits or modifications, and produced the typed version along with the signature page from Plaintiffs'

---

[2] Mr. Rodriguez's claim that Plaintiffs modified their protocol for creating PPSs in late-2016 because "Plaintiffs' Litigation Team realized that it was producing privileged material" makes little sense and has no record support. [Affidavit, ¶ 10.] Plaintiffs *never* raised with Defendants that they had produced privileged materials, and likely never would have had Defendants not, through their own investigation, discovered the existence of the withheld PPSs. And never, not even today, have Plaintiffs sought to claw back the nearly 600 handwritten PPSs produced in this litigation or otherwise identify them for Defendants.

8

original handwritten PPS, rather than generate a new signature page. [Affidavit, ¶ 12 ("[t]he Typed PPSs are produced to Defendants along with a copy of the signature page signed by Plaintiffs' Guardians.").] Handwritten PPSs that were merely typed verbatim by the attorneys do ***not*** contain privilege information, and Plaintiffs have offered no legal support to the contrary. *See Jo Ann Howard & Assocs*, 2014 WL 6845854 at *2 (finding a document was "[n]ot privileged because . . . any attorney involvement was merely acting as a passive recipient of the communication"); *Skrovig v. BNSF Ry. Co.*, CIV. No. 10–4022, 2011 WL 2263789, at *6 (D.S.D. June 7, 2011) ("Documents placed in possession of lawyers. . . are not automatically privileged."). Yet, Mr. Rodriguez's affidavit entirely fails to identify ***which*** withheld PPSs were merely typed and produced with the original signature sheet, or how many withheld PPSs this process applies to. There should be no privilege or work-product concerns at all that apply to original PPSs that were simply re-typed and produced, and those PPSs should be produced to Defendants forthwith.

Third, the attorney-client privilege protects only those "communications between attorney and client made for the purpose of obtaining legal advice[.]" *Monsanto Co. V. E.I. Dupont De Nemours and Co.*, No. 4:09CV00686 ERW, 2011 WL 1773988, at *1 (E.D. Mo. May 10, 2011). Similarly, the attorney work-product doctrine protects only those documents "prepared by, or at the behest of, an attorney and in anticipation of litigation." *In re Advanced Pain Ctrs. Poplar Bluff v. Ware*, 11 F. Supp. 3d 967, 975 (E.D. Mo. 2014). Yet Mr. Rodriguez's affidavit fails to state that Plaintiffs provided these handwritten PPSs to Plaintiffs' counsel for the purposes of seeking legal advice, or that they were prepared at the behest of counsel for use in anticipation of this litigation. Rather, as discussed above at length, it is clear that these fact compilations were created, finalized, and signed for production to Defendants as ordered by the Court. Plaintiffs' privilege and work-product claims therefore fail for the additional reason that Plaintiffs have not carried

9

their evidentiary burden in demonstrating that the handwritten PPSs were made for the purpose of obtaining legal advice or for use by counsel in preparing these cases for trial.

Finally, Mr. Rodriguez's affidavit fails entirely to address whether in modifying Plaintiffs' original PPSs counsel *omitted* material information included in Plaintiffs' original handwritten PPSs, potentially precluding such facts from discovery permanently. Whether this occurred is critical to informing the privilege and work-product analyses, including in assessing whether Defendants have a "substantial need" for discovery of the original PPSs that overrides Plaintiffs' purported work-product claims.

In sum, Mr. Rodriguez's affidavit fails entirely to provide the support necessary to sustain Plaintiffs' privilege and work-product claims and, in actuality, raises a host of additional questions about Plaintiffs' counsel's process for collecting discovery material. Plaintiffs' objections should therefore be overruled, and the Court should order production of the withheld final handwritten PPSs.

**B.   THE AFFIDAVIT HIGHLIGHTS MATERIAL DISCREPANCIES IN PLAINTIFFS' REPRESENTATIONS, CASTING DOUBT ON THEIR ASSERTIONS OF PRIVILEGE AND WORK-PRODUCT, OR AT A MINIMUM NECESSITATING AN *IN CAMERA* REVIEW.**

At the November 13 hearing, the thrust of Mr. Rodriguez's argument in support of Plaintiffs' privilege and work-product claims was that counsel did not detach the signature pages from Plaintiffs' original handwritten PPSs and attach them to the lawyer-modified versions produced to Defendants. According to counsel, "that did not happen." [Transcript, at 18:11; *id.* at 19:3-4 ("And it didn't happen"); *id.* at 19:9-10 ("That did not happen here. I can't stress that enough."); *id.* at 19:20-21 ("in this case that did not happen."); *id.* at 20:7 ("That did not happen in this case.").] Mr. Rodriguez also suggested that Defendants had brought forth *only a single example* where Plaintiffs had re-used the signature page from Plaintiffs' final handwritten PPS

10

and attributed that instance to "the one-off of human error." [Transcript, at 17:24-18:4; *id.* at 18:11-12; *id.* at 20:8-11.]

Mr. Rodriguez's affidavit does not go so far as to say that attaching original PPS signature pages to lawyer-modified PPSs "did not happen," but does reaffirm that if Plaintiffs' counsel modified a final handwritten PPS, Plaintiffs' La Oroya representatives were asked to review the revised PPS with Plaintiffs, Plaintiffs were asked to sign a new signature page, and the new signature page was provided to Defendants in lieu of the original signature. [Affidavit, ¶¶ 13-15.] Any exception to this, according to Mr. Rodriguez, "is the result of human error." [*Id.* at ¶ 16.]

But Defendants have located ***dozens of instances*** where Plaintiffs appear to have attached original signature pages to typed PPSs. In reviewing typed PPSs produced in this litigation, Defendants noticed the anomaly that brought the issue of withheld fact sheets to light. Although Plaintiffs had produced PPSs with type-written responses to all questions, there are numerous instances where *a handwritten response to the final question on the PPS form was included on the signature page accompanying the type-written answers*. This suggested that Plaintiffs or their parents or guardians had completed and verified handwritten PPS, but then the verification page from the handwritten PPS was detached from that PPS and attached to the typewritten PPS that was produced, while the original handwritten PPS was withheld. Defendants highlighted one such example in its motion to compel. [*See* Defs' Mot. [Doc. 408], at p. 4.]

In the short time since the November 13 hearing, Defendants have identified over 70 such examples where a handwritten answer to the final questions appears on the signature page attached to a type-written PPS. [*See* composite Ex. C-1, C-2 and C-3.] And, of these 70 examples, **at least 49** appear on their face to have been "augmented" by Plaintiffs' counsel. These 49 examples stand out as obviously lawyer-modified because they contain identical injury allegations, word-for-

11

word, in response to Question 13 of the PPS form. [*See, e.g.*, Profile Sheet (English and Spanish), G.A.A.V., pp. 10, 13, Ex. A; Profile Sheet (English and Spanish), H.G.A.C., pp. 10, 13, Ex. B; *see also* Defs' Mot. [Doc. 408], at p. 7.] It is simply impossible to believe the alternative: that each of these 49 Plaintiffs provided the same verbatim information in their handwritten profile sheets. Particularly troublesome then is that the signature pages of these 49 PPSs include Plaintiff's handwritten answer to the final question on the PPS form, demonstrating that the original signature sheet from Plaintiffs' handwritten PPS was simply attached to the produced, lawyer-augment version.[3] And this number likely underestimates the instances where the original signature was attached to the lawyer-augmented version, since Defendants' only means of identifying these instances is where the original signature sheet contained a handwritten answer to the final question of the PPS form.

      Contrary to Mr. Rodriguez's representations, this appears to be a systemic issue, not a rare one of mere "human error." And consistent with the concerns Defendants expressed in their moving papers, the practice of using signature pages from different PPSs raises significant concerns regarding the veracity of the type-written answers produced to Defendants, including whether counsel have omitted or included purported injuries not allegedly experienced by Plaintiffs or authorized for inclusion in their PPSs, something that cannot be gleaned without reviewing the version of the PPSs actually verified by Plaintiffs or their guardians. *See, e.g.*, *In re*

---

[3] Many of these PPSs were also signed years before their production, further suggesting that a new signature page was not created. For example, the PPS for G.A.A.V. is dated April 10, 2017, but was not produced to Defendants until December of 2019. Likewise, the Profile Sheet for H.G.A.C. is dated August 23, 2017, but was also not produced to Defendants until December 3, 2019. And of further note, none of the detectable instances where it appears that a signature page from an original handwritten fact sheet was attached to a lawyer-modified version are notarized, raising further questions regarding when these documents were signed, and what specifically was verified, highlighting the importance of the notary, as Defendants have noted throughout this litigation.

*Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL 1407, 2005 WL 6727709, at *2 (W.D. Wash. Aug. 16, 2005) (granting motion to dismiss, in part, based on "[p]laintiffs' counsel's most egregious abuse of discovery process," "if not outright ethical violation," in providing defendants with a "final attorney-produced version [of a fact sheet]" that differed "in marked material ways from" the plaintiff's "handwritten draft of the plaintiff's fact sheet").

Defendants are entitled to production of the withheld final handwritten PPSs for the reasons set forth in Defendants' moving papers and herein without further information. However, at minimum, given the substantial discrepancies between Mr. Rodriguez's representations and the number of PPSs where it can be detected that counsel attached signature pages from Plaintiffs' final handwritten PPS to the lawyer-augmented PPS, the Court should order an *in camera* review of all withheld final handwritten PPSs so that it can assess for itself whether and how often counsel attached original signature pages to lawyer augmented PPSs. *See, e.g.*, *Am Modern Home Ins. Co. v. Thomas*, No. 4:16 CV 215 CDP, 2019 WL 3976355, at *9 (E.D. Mo. Aug. 22, 2019) (stating *in camera* review was ordered where there were "concerns regarding" the privilege-asserting party's "representations as to what was in the" purportedly privileged documents "and whether the asserted privileges were properly invoked"); *Mounger v. Goodyear Tire & Rubber Co.*, No. 99–2230–JWL, 2000 WL 33712198, at *2 (D. Kan. Sept. 22, 2000) (stating that in camera "review may be useful if there is a genuine dispute between the parties as to the accuracy of the withholding party's description of certain documents").

### C.     THE AFFIDAVIT REAFFIRMS THAT PLAINTIFFS HAVE WAIVED ANY CLAIM OF PRIVILEGE OVER THE UNPRODUCED HANDWRITTEN PPSs.

Even if the original PPSs are privileged (which they are not), by intentionally producing nearly 600 handwritten PPSs at an earlier point in the case, Plaintiffs have waived any claim of privilege with respect to the remaining Plaintiffs' final, handwritten PPSs withheld from

production. Thus, all of the final handwritten PPSs created and signed by Plaintiffs in this case should be produced.

The Federal Rules of Evidence provide that a party's waiver of privilege over one set of documents also waives their assertion of privilege over another set of documents where:

1) the waiver is intentional;

2) the disclosed and undisclosed communications or information concern the same subject matter; and

3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a); *U.S. v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) ("Voluntary disclosure of attorney client communications expressly waives the privilege."); *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) ("If documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product.").

First, there is no question that Plaintiffs intentionally produced nearly 600 handwritten PPSs. Nothing in Mr. Rodriguez's affidavit or in any of Plaintiffs' representations suggests that the production of these PPS was inadvertent, and Plaintiffs made no attempt to notify Defendants of their inadvertent production or seek to claw back the produced handwritten PPSs.[4]

Second, the nearly 600 produced PPSs and unproduced PPSs clearly involve the exact same subject matter. "[T]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Shukh v.*

---

[4] For these reasons too, Plaintiffs have conceded to a subject matter waiver in each case in which they previously produced a handwritten profile sheet.

14

*Seagate Tech., LLC*, 848 F. Supp. 2d 987, 991-92 (D. Minn. 2011) (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)). In *LaBarre v. Bristol-Myers-Squibb Co.*, for example, in an MDL setting the court found that the plaintiffs had waived their privilege and work-product claims over withheld handwritten fact sheets by counsel having produced other plaintiffs' handwritten fact sheets. No. CV 06-6050 (FLW), 2012 WL 13034009, at *3 (D.N.J. Jan. 3, 2012) ("[c]ounsel provide[d] no explanation as to why production of [some of the plaintiffs'] Fact Sheets was appropriate, but the remainder of the Fact Sheets remain[ed] protected.") The same result is required here. The produced and unproduced PPSs have been made from the exact same form, asking each Plaintiff to answer the same questions, and with the exact same goal of providing Defendants with complete and accurate biographical, medical, education, and injury information. Mr. Rodriguez's affidavit does not contend that these withheld PPSs differ in character in any material respect from the handwritten PPSs already produced in this case. Thus, just as in *LaBarre*, the produced and unproduced handwritten PPS involve the same subject matter.

Third, fairness dictates that Defendants be allowed to review the remaining handwritten PPSs. The Explanatory Notes to Federal Rule of Evidence 502(a) state that waiver is appropriate where "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Certainly, producing only the lawyer-modified version of a Plaintiff's PPS while withholding the original final and signed handwritten PPS will result in a "selective and misleading presentation of evidence" [Fed. R. Evid. 502(a)], allowing Plaintiffs "to use privilege as both a sword and a shield, which is fundamentally unfair." *Fagen Inc. v. Exergy Dev. Grp. Of Idaho, LLC*, No. 12-2703 (MJD/SER), 2015 WL 12977507, at *4 (D. Minn. June 1, 2015). And, as Defendants

15

explained in their motion to compel, Defendants have no means of obtaining the information contained in Plaintiffs' final handwritten PPSs, and without the original PPSs, Defendants will be left at a distinct disadvantage with no means of obtaining the accurate accounting of Plaintiffs' injuries as they themselves perceived it. [Defs' Mot. [Doc. 408], at pp. 13-14; Defs' Reply [Doc. 421], at pp. 8-10.] In contrast, Plaintiffs will not be prejudiced in having to produce mere court-ordered disclosures consisting only of admittedly relevant and discoverable facts. *See PaineWebber Grp. Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 994 (8th Cir. 1999) ("'The privilege only protects disclosure of communications; it *does not protect disclosure of the underlying facts* by those who communicated with the attorney.'") (emphasis added) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

But even if Plaintiffs have not waived their claim of privilege with respect to all original handwritten PPSs, as noted above, in a substantial number of cases, Plaintiffs appear to have simply detached the signature page from Plaintiffs' final handwritten PPS and attached it to the produced version. By so doing, Plaintiffs have waived their claims of privilege and work-product protection with respect to each original PPS in which they have done so. *Se LaBarre*, 2012 WL 13034009 at *3 (even if the plaintiffs "had an expectation of privacy with respect to the [original] handwritten" fact sheets, the "privilege was waived when counsel for Plaintiffs chose to separate the signature pages from the handwritten versions and attach them to the typed versions.") Fairness demands that Defendants be permitted to see what Plaintiffs actually verified as truthful and accurate, not merely what Plaintiffs' counsel has attached that verification to.

### III.  CONCLUSION

The Court should order Plaintiffs to produce the withheld final handwritten PPSs. Alternatively, the Court should perform an *in camera* review of the withheld final handwritten PPS to further assess Plaintiffs' assertions of privilege.

16

Respectfully submitted,

**KING & SPALDING LLP**

By: /s/ *Geoffrey M. Drake*
Andrew T. Bayman, #043342(GA)
Carmen R. Toledo, #714095(GA)
Geoffrey M. Drake, #229229(GA)
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
(404) 572-3438
abayman@kslaw.com
ctoledo@kslaw.com
gdrake@kslaw.com

Tracie J. Renfroe, #16777000 (TX)
Carol M. Wood, #2594581(TX)
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
(713) 751-3209
trenfroe@kslaw.com
cwood@kslaw.com

James P. Cusick (NY Bar No. 4041653)
1185 Avenue of the Americas, 34th Floor New York, New York 10036
(212) 556-2170
jcusick@kslaw.com

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Ira L. Rennert, The Doe Run Resources Corporation, Renco Holdings, Inc., Theodore P. Fox, III, Marvin K. Kaiser, Jeffery L. Zelms, and Jerry Pyatt*

| | |
|---|---|
| **LEWIS RICE LLC** | **DOWD BENNETT LLP** |
| Andrew Rothschild, #23145(MO)<br>arothschild@lewisrice.com<br>Thomas P. Berra, Jr., #43399(MO)<br>tberra@lewisrice.com<br>Michael J. Hickey, #47136(MO)<br>mhickey@lewisrice.com<br>600 Washington Ave., Suite 2500<br>St. Louis, MO  63102-2147<br>Telephone: (314) 444-7600<br>Facsimile:  (314) 241-6056<br><br>*Attorneys for Defendants The Doe Run Resources Corporation, Marvin K. Kaiser, Albert Bruce Neil, Jeffery L. Zelms, and Theodore P. Fox, III* | Edward L. Dowd, Jr.  #28785(MO)<br>edowd@dowdbennett.com<br>7733 Forsyth Blvd., Suite 1900<br>St. Louis, Missouri 63105<br>(314) 889-7300 (telephone)<br>(314) 863-2111 (facsimile)<br><br>*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Ira L. Rennert, and Doe Run Cayman Holdings, LLC* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of December, 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will effect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Geoffrey M. Drake*
Geoffrey M. Drake