**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **J.Y.C.C., et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) **No. 4:15-CV-1704 RWS** |
| **DOE RUN RESOURCES CORPORATION, et al.,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

**STATUS HEARING**
**BEFORE THE HONORABLE RODNEY W. SIPPEL**
**UNITED STATES DISTRICT JUDGE**
**APRIL 20, 2021**

APPEARANCES:

For Plaintiffs: Francisco R. Rodriguez, Esq.
RODRIGUEZ TRAMONT & NUÑEZ
225 Alhambra Circle, Suite 1150
Coral Gables, FL 33134

For Defendants: Geoffrey M. Drake, Esq.
KING & SPALDING, LLP
1180 Peachtree Street, N.E., Suite 1600
Atlanta, GA 30309

Jeffrey R. Hoops, Esq.
DOWD BENNETT
7733 Forsyth Boulevard, Suite 1900
Clayton, MO 63105

REPORTED BY: SHANNON L. WHITE, RMR, CRR, CSR, CCR
Official Court Reporter
United States District Court
111 South Tenth Street, Third Floor
St. Louis, MO 63102
(314) 244-7966

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

**(THE FOLLOWING PROCEEDINGS WERE HELD BY VIDEO CONFERENCE, BEGINNING AT 10:08 AM:)**

THE COURT: Good morning, everybody. So we're here today in the case styled J.Y.C.C., et al., against Doe Run Resources Corporation, et al., Cause No. 4:15-CV-1704. Would counsel make their appearances, please.

MR. RODRIGUEZ: Frank R. Rodriguez for the plaintiffs, and, from my office, Stephanie Nunez listening in. And she's not admitted, but she's listening in because she's intimately involved with the record production aspect of the case, which is a topic of today's status conference.

By the way, good morning, Your Honor.

MR. DRAKE: Geoffrey Drake from King & Spalding for the defendants.

THE COURT: Very good. So when we last left, we were going to talk about the chart and see if we couldn't agree on what was missing. Let's kind of pick up where our conversation left off. How successful have we been in that regard?

MR. RODRIGUEZ: Well, Judge, what we've done is -- and it was a very painstaking, time-consuming process -- when we got the chart, which we got it prior to the last status conference --

THE COURT: You got it the day before. And then in the meantime, you were going to work through it.

MR. RODRIGUEZ: Right. So what we've done is we've worked through it, and we responded in a letter just yesterday. I spoke to counsel, Mr. Drake, yesterday and let him know the letter would be forthcoming. And the intent -- you know, we use -- as Your Honor has pointed out, you know, it's good to have status conferences. They're benchmarks. It gives everybody a deadline.

THE COURT: Deadlines have value. We have learned that over and over and over again. It's not just this case.

MR. RODRIGUEZ: Right. So I emphasized to Mr. Drake that, you know, we're using the status conference as a deadline. You know, we wanted to get something to him to get the ball rolling. Obviously, we didn't expect that he'd be in a position to respond for a few days.

Just so Your Honor has a little bit of a flavor of what we did, it was not only acknowledging -- you know, tracking the grievances -- because there are missing documents, and then there are other grievances that relate to documents, but they're not really missing documents.

So we went back and confirmed which documents we had already produced, and we responded in a letter, outlining the documents that we had already produced. We acknowledged that there were missing documents that Mr. Drake and the defendants were entitled to, and we are in the process of -- we produced some of those, and we're in the process of producing more of

those.

We've identified some grievances that he has articulated that we need more qualification on. We don't understand the grievance without us having a meet and confer, which we, Mr. Drake and I, before Your Honor came in, we were talking about setting up a time in the near term to get together on that. And then we have identified -- you know, so we've identified documents that are still missing.

Now, just to give you an idea, Judge, it's an organic thing. We want to -- we wait till the last minute not because we like waiting till the last minute, but we like to be as complete as possible in our reports and in our response.

THE COURT: It's like getting a TRO on Friday. You know, you work, you work, you work; you want to make sure it's good; and you forget about the judge. "But we'll be at the courthouse at 4:30 on Friday for our TRO because we don't have any choice. We have to go now." That's just an example. It's not an admonition.

MR. RODRIGUEZ: Well, I'll give you an example. And just to give you, Your Honor, a sense, now there's thousands and thousands of documents. And with the medical records, in the letter that we sent -- this is -- we sent already two letters. Because it's an organic document, we're going to keep revising the letter. We now have a template so we can see what the issues are and work through the issues. And as

we discuss the issues, you know, we're going to be revising the letter. And as we get more information, we're going to be revising the letter.

But just to give Your Honor an example, in the letter to Mr. Drake, the latest letter, we identified 38 medical -- and I'm not suggesting that Mr. Drake is going to agree to that. I'm just explaining to you, Your Honor, the process --

THE COURT: From your view of the prism, here's some of the challenges.

MR. RODRIGUEZ: Right. So we had 38 missing documents. Since then, we've looked through them, and we've identified other documents that are not missing, and now we're down to 15. So that -- I mean, it's an organic thing.

We think we're fairly close. The bottom line, to get to the end, then I'm going to fill in, you know, the middle -- I think we're going to need another month before I can tell Your Honor -- initially, I was going to say two weeks, but let's get a month until I can tell Your Honor we've substantially complied. I think we're close to that.

There are some key issues that we -- and one which I can identify for Your Honor, which I will in a second. But so, yeah, let me talk about the -- school records is another big part of this. And one huge issue -- and I'm not suggesting it should be resolved today, but I'm just going to identify it -- is counsel and defendants have asked for the

2020 school records. And that's a big part, that's a big number of the grievances, you know, the documents that defendants contend are lacking.

Okay. Well, the 2020 school year goes -- in Peru -- goes from March 2020 to December of 2020. Because of the pandemic, school records aren't available to be picked up by our team until March of 2021.

So our position on this 2020 -- and, again, this is something that Your Honor ultimately is going to have to decide. But our position is we shouldn't have to provide 2020 school records for any of the kids, because it's a moving target. We'll never finish. But our position is we shouldn't have to provide the 2020 school records for any of the children other than the 28 initial discovery cohort plaintiffs.

We have 14 we've already identified. When defendants identify 14, we think they should get, you know, up to 2020 but not for everybody else because, you know, I mean, it's -- you're moving the goal post kind of thing, and we'll never get to the end. And I think it's time that Your Honor --

THE COURT: Well, I mean, I've worked on the assumption that, for you to make your case, the best case, you're more incentivized than anybody to get all the records together to prove the issues that you want to prove.

MR. RODRIGUEZ: Right.

THE COURT: So, you know, I mean your point is taken on the 2020 school records; but, you know, for you to go to trial on those 28, you're definitely going to want to have those records.

MR. RODRIGUEZ: I agree.

THE COURT: Because at some point, you know, what's good for everybody is the universe is defined. Right? That's what discovery does. Here we are in the four corners. And then we're going to go to trial with what we have. And you can't come to trial with things you didn't produce.

MR. RODRIGUEZ: Right. So, look, we agree that of the 28 for the discovery cohort, we absolutely will and should produce the 2020 records. We just don't think for the 114 initial trial pool that we should have to produce the 2020 in light of the time --

THE COURT: Well, in terms of prioritizing it, yeah, the first 28, but you can't stop on the rest either. Right?

MR. RODRIGUEZ: That's a big part of what's left, the 2020. Again, they weren't available until March. Keep that in mind, Judge.

THE COURT: Understood.

MR. RODRIGUEZ: So, you know, we'd have to go back and -- I mean, if that's --

THE COURT: That's the other piece. You can't produce what's not available yet.

MR. RODRIGUEZ: Right.

THE COURT: But you have that continuing obligation to get the records and produce them. I don't mean to make the defendants' argument.

Do you think, you know, that there's more here than what Mr. Rodriguez is saying?

MR. DRAKE: Well, Your Honor, this very specific issue of the 2020 educational records -- he only raised with me yesterday for the first time; so I haven't even had a chance to talk about it yet.

THE COURT: Right. And we'll take that up sometime in the next four weeks.

MR. DRAKE: Okay. Yeah, that sounds good. In fact, that was our plan, Judge -- is that Mr. Rodriguez and I were going to include that item on the list. And maybe at the end of the day we'll agree, or maybe it's one that we include on the list for Your Honor; but we agree.

I guess the only thing I might elaborate on is that, from our perspective, the education records are some of the key documents in the case. I think you'll find, Your Honor, as we've seen in the *Reid* cases, that, when these cases get boiled down to the nub, they are about loss of IQ and educational challenges and intellectual challenges and deficiencies. And the reality, in my view, Your Honor, has been, from the *Reid* cases, those education records belie those

allegations in many respects; and so for us they're very important to get.

But I agree, if the year has not completed and there are no records yet, then there are no records to produce. So we'll work that out with Mr. Rodriguez and --

THE COURT: That will be interesting. I've had great teachers and bad teachers, and sometimes it's not about me, you know.

MR. DRAKE: That's true. And there will also be -- I'm sure both sides will have our own neuropsychological experts and assessments will be conducted and all the rest of it -- without a doubt.

MR. RODRIGUEZ: Just to give you a little bit --

THE COURT: And that was all the way through law school, by the way.

MR. RODRIGUEZ: Your Honor, just to give you a little bit more of a flavor as to where we are with the school records, not counting the 2020 records, if you exclude those, our -- in the letter that we sent Mr. Drake, we identified -- or we indicated there were 33 missing school records.

And since then, we have determined that there are actually nine -- again, from our -- given our view of the world -- nine that are actually missing. And we've identified 212 that we have produced by Bates numbers that Mr. Drake has indicated were missing.

By the way, some of those were produced after Mr. Drake indicated they were missing; so I don't want to give you the impression that the defendants were wrong. It's the two thousand -- it's the 212. But I'm just giving you a sense of the work that's been done, the progress.

I think we've made great progress, and I think we're very close to this getting before Your Honor, which is what I've been striving for and grinding, trying to get done, to, hey, Judge, we're substantially -- from our point of view, we've substantially complied and that it's up to Your Honor to make -- I think one of the most critical of those issues is the 2020 records.

By the way, just so Your Honor knows, we have to go back -- I don't know how many. Of the 114, we have some families. We have some, you know, with a couple of siblings, you know, two or three siblings. Just throwing a round number, I would imagine it's probably 80 or 90 -- we have to go to 80 or 90 different -- not different schools, but make requests for those records. So it's no small task, but, you know, Your Honor will determine whether, you know, what we do in that regard.

But we have made progress in all fronts, and I think we now have a template where -- again, an organic document that we've shared with Mr. Drake. We hope to get together in the next few days, when he has opportunity to absorb the

information, and see what it is we can agree on. I'm sure we'll agree on some things. I suspect that there will be some that we may not agree on and Your Honor will have to decide.

But we have a template, and I think that, you know, by next -- we certainly are in a position to meet and confer multiple times, if necessary, before the next status conference, and hopefully we get that issue teed up for Your Honor to make some decisions next time.

THE COURT: Anything further on that?

MR. DRAKE: I don't really have much to add, Your Honor. I agree that we're continuing to work together and the process is quite iterative.

We've also agreed, Your Honor, to submit for your consideration a joint proposed amendment to the scheduling order to continue the deadlines by another 30 days. The deadline that's coming up, as Your Honor may recall, is for the defendants to select our 14 cases for the initial discovery cohort.

And I think Mr. Rodriguez and I are in complete agreement that we need to finish the records or substantially finish the record production before we can make those picks. And then we'll need, as he and I discussed yesterday, a little time with the records, as they continue to be rolled out, to make those selections. And so we're in agreement with that, and we'll submit that for Your Honor's consideration.

And, otherwise, we'll continue to work together, and I believe we're at a point now, hopefully, where we can do so at a more accelerated pace. With a little bit more lead time before the conference, I think both Mr. Rodriguez and I are in agreement on that point as well.

MR. RODRIGUEZ: It's a big step, I think, that we got this -- we got the first -- you know, the chart and the grievances and the position of the defendants. And now that we've responded, I think that's a big step. And now we have something that we can work from to whittle this down and get this done.

THE COURT: Okay. Does that take us through Number 1? I mean, I started on my own. I wasn't quoting the agenda.

MR. DRAKE: I believe it does, Your Honor.

MR. RODRIGUEZ: Yes, Your Honor.

THE COURT: Okay. Then we have "Status of Plaintiffs' Production of Outstanding Notarized Profile Sheets for Trial Groups A to K and Corresponding Request for Dismissals."

MR. RODRIGUEZ: Okay, Judge. We had some conversation about that topic as well. And we have identified -- of the 154 that Mr. Drake had identified at the last status conference, we worked from that number, and we determined that 43 of that number have been produced or will be produced shortly to date.

Fifty-five of that number are in the category of folks that have failed to cooperate, and we are in agreement that those plaintiffs should be dismissed forthwith.

And then out of the 154, there are 56 that are still in the "pending" category of people that have not indicated an unwillingness to cooperate, and it's just a function of needing more time because we are really sucked into this 120 issue, and a lot of our resources are going there to try to get that done. So we'd ask the Court for leniency.

We can pare down the group. There's about 1,700 that are in Groups A through K, and we're talking about 110, roughly. And 55 are not cooperating and should be jettisoned --

MR. DRAKE: So, Your Honor, I'll take you through those groups separately. We're obviously in agreement on the 55 who are no longer interested in participating in the case and that will be dismissed. We presume that will be with prejudice. And we'll work with Mr. Rodriguez and his office to ensure those filings get made. And we view that as great progress coming out of this.

As to the other two categories, I'll take them each at a time. There's 56, as I understand it, that Mr. Rodriguez at this point has simply identified as "pending." I don't know -- and I don't know if he knows -- where each of them stands.

The reality, though, is that the deadline for their production's passed almost two months ago. No extension was sought, and no extension was provided. I think at this point those 56, we believe, should at least be subject to a show cause order, which was originally contemplated in the scheduling order and agreed to by the parties as the remedy in this situation, to demonstrate whether they are actually --

**(PROCEEDINGS INTERRUPTED BY BACKGROUND NOISE.)**

THE COURT: Go ahead.

MR. DRAKE: I don't remember what exactly I said at the end, but the gist --

THE COURT: You were talking about the 56 pending and they should be subject to a show cause order consistent with the CMO.

MR. DRAKE: That is correct. Thank you, Judge.

And our view on the --

THE COURT: See, I pay attention.

MR. DRAKE: Thank you.

And our view on the 43 would be the same. These are the 43 who they said had been produced. I think what that really means from our conversation yesterday is that they've collected -- the plaintiffs' counsel have collected -- some sort of fact sheet from the clients. I don't know what that is. I don't know if that's a handwritten sheet that's being typed or a typed sheet that's being translated or all the

above. We don't have those yet. They haven't been produced. And I don't know what the time line is for them.

And I would submit that they should also be subject to a show cause order, and perhaps at that point the show cause response from Mr. Rodriguez on behalf of the plaintiffs is that these documents are in hand and they'll be produced within the next week or whatever it may be.

But I don't -- our position, Judge, is that this has kind of been lingering along now and it's been more iterative than it should be; there's a deadline; it should be complied with; and thereafter there should be repercussions for noncompliance or a request for an extension, which has -- it never occurred in this situation.

You're on mute still, Frank.

MR. RODRIGUEZ: By the way, I apologize to the Court. I don't know how to not have people try to call me on Skype. But in any event --

THE COURT: At least you didn't turn into a cat. That's a good thing.

MR. RODRIGUEZ: Right.

Look, we -- by the way, I'm not -- I don't -- I'm not as well versed with the granular detail as others, but I believe some of the 43 have been produced.

But in any event, I'm okay. I mean, they either are or will, and what Mr. Drake is suggesting is not going to

change that.

The 56 that are pending -- again, through no fault of some of these defendants because of -- and, again, there's a time frame involved here, and the time frame is, you know, last year, year and a half, we've had -- we've had challenges that are obvious. Obviously, the pandemic. We've had to focus through those challenges with people that don't have cell phones. To try to get these records, it's like herding cats.

As Your Honor very astutely pointed out, we are properly motivated to get these things done as quickly as possible, and that's what we've been trying to do; but the 120 is holding up our case to go from the -- to go to the next step. I want to move the case. I know Your Honor wants to move the case.

The 56 that are pending are not going to hold up the case. A dismissal with prejudice is a very severe sanction, and we'd just like an opportunity -- the only thing I've ever wanted was an opportunity. When we've had the resources available to focus and to get these things done, we think we can deal with a lot of them, maybe not all of them; and if the people don't cooperate, we'll be the first ones to jettison them or recommend or agree to jettison and remove them from the case immediately.

But I don't think that's the appropriate remedy right

now for these other ones that are pending that, through no fault of theirs, we don't have a profile yet.

MR. DRAKE: The only thing I would say in response, Judge, especially with respect to this group of 56, is that, while I have no reason to doubt Mr. Rodriguez in the aggregate, in the general that it's difficult that some people have been difficult to contact, but I don't know if that's really -- what the situation really is for each of the 56.

Has Person 12 been contacted in the last three years? We have no idea. And for the defendants, at least a dismissal without prejudice would seem to be appropriate at some point in the near future because the case count, number of plaintiffs that are involved, as Your Honor is aware from other proceedings like this, is important. And if these people are not participating, then they're not participating. And if they want to participate later under that scenario, then perhaps that they can.

But right now they're just kind of lingering out there in the wind. We don't know where they are or what the situation is because no specific information has really been provided other than that they are, quote/unquote --

THE COURT: I assume this will be part of your meet and confer. And if you're not satisfied, then I would file a motion for the Court to do a show cause order. I would give them time to respond.

It's better if you talk through it together than to go through that. That's a little bit of make-work and distracts from the mission. But if -- when we get to that point, that's an appropriate remedy.

MR. DRAKE: That's fair, Your Honor.

THE COURT: Obviously, I don't know who the 56 are. You'll have to tee that up.

MR. DRAKE: We'll work through that in the coming weeks as well and see where it takes us.

THE COURT: All right. And if you can't agree, then file your motion; and they'll get a chance to respond, and we'll see where we are.

Because your point is well taken. At some point we have to look at each of them individually. That's the piece that none of us want to lose sight of. It's still about certain individuals, not just an aggregate group. So each get their opportunity to make their choices and participate as they elect.

So status of the *Reid* proceedings. I suspect you're taking plaintiffs' experts at this time?

MR. DRAKE: We are presenting our experts. In fact, one of our experts is being deposed at the moment, and when we conclude here today, I'll go back to that. It's where Mr. Berra is today.

The depositions of our experts will be complete in

two weeks' time. The plaintiffs, then, will have a chance to designate their rebuttal experts to mid-May. And we continue onward to proposing a schedule for *Daubert* and dispositive motions and the briefing thereon in late June or early July is when that schedule will be presented to Judge Perry.

THE COURT: And when is *Daubert* going to be at issue?

MR. DRAKE: Well, we have to submit the briefing schedule in early July. I don't know what the plaintiffs' position will be on that as we haven't conferred yet, but I imagine that the briefing, which is going to be substantial -- the plaintiffs have told us they plan to file *Dauberts* as to all 14 of our experts.

THE COURT: Well --

MR. DRAKE: We'll be filing as to theirs. And so I imagine it will probably be toward the end of the year for --

THE COURT: Does Judge Perry know yet that 14 --

MR. DRAKE: I believe she does, Your Honor, but we'll have to provide all that detail to her in that report.

But I think it will be toward the end of the year, probably, when all that briefing is wrapped up. Maybe a little bit sooner.

THE COURT: Okay. Are you going to go back to mediation after all the -- after she issues her opinions on *Daubert* and dispositive motions?

MR. DRAKE: I don't know, Your Honor.

THE COURT: That seems a critical juncture in that case at that point. Once you know who's going to testify and the scope of their testimony and what claims survive or don't survive, that's the most opportune time to have that last serious conversation before you proceed to try these cases.

I don't know what you estimate the length of trial in any of these would be.

MR. DRAKE: Well, a couple points, Your Honor. On the mediation front, I don't know yet. We had a deadline. The only real difference between our scheduling order in this case and the scheduling order in the *Reid* case is that here the mediation deadline is as you just described.

The deadline for mandatory mediation is after Your Honor will rule on the dispositive and *Daubert* motions.

In the *Reid* case, we already had the mandatory mediation last year, shortly -- right before the pandemic. Whether we meet again, I think, remains to be seen and the appetites of all the parties involved and Judge Perry's views on the matter.

On the issue of the trial, we have before the Court, on Judge Perry's request, two submitting trial proposals. The plaintiffs have taken the position that, I think, eight plaintiffs should be tried at a time. Our position, Your Honor, is that they should be tried one at a time. In either event, certainly for the eight-plaintiff trial, I think the

estimate is in the magnitude of months, not weeks.

THE COURT: Months.

MR. DRAKE: But I don't know where -- how Judge Perry's going to rule on that issue. And since the plaintiffs' liability --

THE COURT: If you were to try one or two plaintiffs at a time, how long would it take?

MR. DRAKE: I'd have to go look at the estimates that we provided, but I think we were looking at somewhere in the magnitude of, at least for that first trial, probably eight weeks.

THE COURT: Just for one plaintiff?

MR. DRAKE: It might have been shorter for one. I was -- but with each one it adds, I think we estimated -- and we have all the -- a couple of weeks with each person to get added. And I think we started with a one plaintiff at about six weeks or so, but please don't hold me to that.

THE COURT: No. I mean, trials have a life of their own. Anything after three or four days, you'll get tired of my "laser-like focus" speech, but, you know ....

The jurors will reward those who are efficient and focused and punish those who are not.

MR. DRAKE: Indeed.

THE COURT: Okay. Anything else, Mr. Rodriguez, while we're together, before we pick our next date to get

together?

MR. RODRIGUEZ: Nothing else from the plaintiffs, Your Honor.

THE COURT: Anything else on behalf of the defendants?

MR. DRAKE: No, Your Honor.

THE COURT: All right.

So how does April 11 at 10:00 work?

MR. DRAKE: May 11?

THE COURT: May 11, yeah. I lost a month in there somewhere. May 11. It's four weeks to the day.

MR. RODRIGUEZ: That shows three weeks for me, Judge.

MR. DRAKE: The date is fine, Your Honor, but --

THE COURT: You're right. It's three. But it wouldn't hurt to -- unless you tell me that's bad, I think three weeks might be helpful.

MR. RODRIGUEZ: I think it is helpful.

MR. DRAKE: Sure. That sounds good. I'm available, Your Honor.

THE COURT: May 11, 10:00, with agenda by May 7.

Anything else?

MR. RODRIGUEZ: Nothing else on our end, Your Honor.

MR. DRAKE: Nothing else, Your Honor. Thank you.

THE COURT: Thank you, all, very much. Be safe.

**(PROCEEDINGS CONCLUDED AT 10:38 AM.)**

CERTIFICATE

I, Shannon L. White, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 23 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 11th day of May, 2021.

/s/Shannon L White
/s/Shannon L. White
Shannon L. White, CRR, RMR, CCR, CSR
Official Court Reporter