```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MISSOURI
                     EASTERN DIVISION

J.Y.C.C., et al.,                    )
                                     )
     Plaintiffs,                     )
                                     )
     v.                              )
                                     )
                                     ) No. 4:15-CV-1704 RWS
DOE RUN RESOURCES CORPORATION, et    )
al.,                                 )
                                     )
     Defendants.                     )
```

                         STATUS HEARING
            BEFORE THE HONORABLE RODNEY W. SIPPEL
                 UNITED STATES DISTRICT JUDGE
                      SEPTEMBER 8, 2021

```
APPEARANCES:
For Plaintiffs:      Francisco R. Rodriguez, Esq.
                     RODRIGUEZ TRAMONT & NUÑEZ
                     225 Alhambra Circle, Suite 1150
                     Coral Gables, FL  33134

                     Patrick Lanciotti, Esq.
                     NAPOLI SHKOLNIK PLLC
                     360 Lexington Avenue, 11th Floor
                     New York, NY  10017




(Appearances Continued on Page 2.)


REPORTED BY:         SHANNON L. WHITE, RMR, CRR, CSR, CCR
                     Official Court Reporter
                     United States District Court
                     111 South Tenth Street, Third Floor
                     St. Louis, MO  63102
                     (314) 244-7966

PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION
```

```
APPEARANCES CONTINUED:


For Defendants:      Geoffrey M. Drake, Esq.
                     Rania Kajan, Esq.
                     KING & SPALDING, LLP
                     1180 Peachtree Street, N.E., Suite 1600
                     Atlanta, GA  30309

                     Thomas P. Berra, Esq.
                     LEWIS RICE LLC
                     600 Washington Avenue, Suite 2500
                     St. Louis, MO  63102

                     Jeffrey R. Hoops, Esq.
                     DOWD BENNETT
                     7733 Forsyth Boulevard, Suite 1900
                     Clayton, MO  63105
```

1    **(THE FOLLOWING PROCEEDINGS WERE HELD BY VIDEO CONFERENCE,**

2    **BEGINNING AT 10:06 AM:)**

3           THE COURT: Good morning, everyone. So we're here

4    this morning in the case styled Collins against Doe Run, Cause

5    No. 4:15-CV-1704. Would counsel make their appearances,

6    please.

7           MR. RODRIGUEZ: Yes, Your Honor. And good morning.

8    Frank R. Rodriguez from the law firm of Rodriguez, Tramont &

9    Nuñez. And my colleague Stephanie Nuñez from my law firm is

10   here. And Patrick Lanciotti is also in on the status

11   conference. Patrick is from Napoli Shkolnik.

12          And also present in my office, Judge, is my son

13   Andrew, who is sitting by the couch, who just told me he's

14   going to law school. So I thought it might be a good idea for

15   him to sit in and observe if nobody objects.

16          THE COURT: Sometimes you learn things by learning

17   what not to do, and sometimes you learn things by learning

18   what to do. So we'll see how that goes.

19          MR. RODRIGUEZ: That's it.

20          THE COURT: Very good.

21          MR. DRAKE: Good morning, Your Honor. Geoffrey Drake

22   from King & Spalding for the defendants, joined today by my

23   colleague Rania Kajan.

24          THE COURT: Very good. So we're here today on a

25   status conference. First on your agenda is status of the

1  initial trial pool plaintiffs' record production.  Who wants
2  to tee that up?
3              MR. RODRIGUEZ:  I'll give it a try, Judge.  I'm
4  pleased to advise the Court that we've made significant
5  progress.  I think both sides have worked diligently, and we
6  really honed everything down to two sets of records where we
7  have some issues with.  Otherwise, they have been produced
8  and/or, you know, the reasons they have not been produced have
9  been reconciled with defendants and we're in agreement.  So
10 there's two.
11             There's also one that the assumption that was made by
12 the defendants based on our representation that we would be
13 producing one before the status conference.  That wasn't done,
14 but I just got notification and we notified defense counsel
15 that our team in La Oroya actually physically has the records
16 and they will be sending the records to us shortly, and within
17 the hour we'll be sending those records to defense counsel.
18             So it comes down to, you know, two sets of records.
19 And I'll let -- you know, if Your Honor -- we have submitted
20 our respective submissions in writing regarding those two sets
21 of records.
22             The position of the plaintiff is that pursuant to
23 Rule 26 that -- requiring production of those records under
24 the circumstances, as delineated in the affidavits of our team
25 members and in the -- you know, we actually set down our

1 position in an attachment to the agenda -- would be not
2 proportional -- disproportional to the needs of the case.
3 　　　　　So pursuant to Rule 26, our position is that we have
4 fully complied, production is complete, and we should move on
5 to the next aspect of the case, which would be the defendants
6 being required to name their 14 trial pool plaintiffs or
7 discovery pool plaintiffs and for us in a later time after
8 that, shortly thereafter or at the same date, I believe it is,
9 for us to submit reports, medical reports, from our 14 named
10 discovery pool plaintiffs.
11 　　　　　THE COURT:  Mr. Drake?
12 　　　　　MR. DRAKE:  Thank you, Your Honor.  Mr. Rodriguez is
13 correct that that is what --
14 　　　　　*[Reporter advises of audio issues.]*
15 　　　　　MR. DRAKE:  I'm glad it's working now.  Let me try
16 that again.  Apologies.
17 　　　　　Mr. Rodriguez is correct that the parties at this
18 point have a dispute as to whether or not the plaintiffs need
19 to undertake additional efforts to collect what's really two
20 sets of records.  They both pertain to defense picks.  We laid
21 this out in the attachment to the agenda.  And an issue there,
22 Your Honor, is whether or not the plaintiffs need to try to
23 take additional efforts to collect the records, the preschool
24 records, for those two plaintiffs.
25 　　　　　As we've talked about in these proceedings before and

1  as our experience tells us both from the *Reid* case and from
2  other cases involving childs of lead exposure, the plaintiffs'
3  experts are going to say in this case -- we know this to be
4  true.  The plaintiffs' experts are going to say that early
5  exposure to lead is the most important for -- in terms of
6  their cognitive development, and early exposure to lead most
7  inhibits that cognitive development.
8         And it's helpful to have and very helpful to have the
9  education records from primary school and secondary school and
10 any from university, but we're also entitled to the preschool
11 records.  And I understand from the representations made in
12 the filing of yesterday afternoon that the plaintiffs' counsel
13 have attempted to collect those records for these two
14 individuals but have not yet been successful.
15        Our contention then, Your Honor, is that the
16 plaintiff should continue to try to collect those records.
17 Perhaps, my suggestion would be, give plaintiffs and their
18 team a few more weeks, make another effort to try to get those
19 two sets of records that are outstanding.  And if they can't
20 get them, they can't get them.  There's nothing we can do
21 about that.  But we don't believe the efforts have been
22 sufficient at this point.
23        We'd like to see them try a bit harder to collect
24 those records.  We've laid that out in our statements.  And
25 then from there, you know, perhaps extend the deadlines a few

1  weeks out from where they currently are, which is September 27
2  for us to make our picks, and then we'll go from there.
3          MR. RODRIGUEZ:  If I may respond, Your Honor?
4          THE COURT:  Certainly.
5          MR. RODRIGUEZ:  Judge, this is laid out in our
6  papers, the affidavits and the papers we've submitted to Your
7  Honor, but I just think it bears repeating.  We're talking
8  about, in the case of one child, ages -- records from ages
9  three and four, and both of these -- both of these children
10 initially are now adults, and so we have records.  We have all
11 the records through their what we would consider grade school
12 and high school.
13         And, you know, quite frankly, yes, yes, it is our
14 position that there's a great deal of impact from lead on ages
15 one through six, but it is not our position that that impact
16 goes away; right?
17         And, you know, when you're talking about evaluating
18 the adverse impact that lead can have on you, query is how
19 important are records from when you're three and you're four
20 years old as opposed to when you are, you know, now all the
21 way through 18, 19 years old.
22         And also the other end, the other side of the
23 equation, has to be looked at, which is the burden and how
24 difficult it is to get these records.  In the one case, we
25 have affidavits on file, Judge.  One of our team members took

1   a cab.  It was, like, three hours.  When she got there, it was
2   told -- by the way, you can't contact -- these schools are so
3   remote.  It's hard for us to imagine because of how we --
4           THE COURT:  That actually is the Luddite question.
5   We're all captured by our own experiences in a way.  You know,
6   have you exhausted all ability -- I mean, you just stepped on
7   it in the sense of the ability to communicate.  You know, our
8   life experiences -- the ability to communicate is almost
9   unlimited.
10          MR. RODRIGUEZ:  Right.
11          THE COURT:  You know, whether by the internet or cell
12  phone or scanning a document, taking a picture of it.
13          You know, have we exhausted all possible ways, or is
14  something as rudimentary as a mail service?  You know, what's
15  missing in all of that?
16          MR. RODRIGUEZ:  Your Honor, again, it's hard.  And
17  I've been there.  And I've been there several times.  There's
18  actually some schools -- I haven't been to this school.  Okay?
19  I don't want to mislead the Court.  But I've been to schools
20  where you have dirt floors, you know.  These are very remote
21  places.
22          If we could communicate, as Your Honor is
23  suggesting -- which, obviously, would be the first thing we
24  tried -- it would be a hell of a lot -- excuse me -- a heck of
25  a lot easier to get this thing done.  You can't even

1 communicate with these -- let's take one at a time.

2 In the first one, our person could not communicate
3 with the school, doesn't know what the requirements -- once
4 she would get to the school, doesn't know what the
5 requirements would be. Some schools will take an
6 authorization and will allow our team member to go and get it.
7 Some schools require the actual parents or one of the parents
8 or guardians to be there.

9 Our team member traveled three hours, was told, when
10 she got there, "You have to travel another hour and twenty
11 minutes, and then you got to walk thirty -- you got to walk
12 thirty minutes because there are no roads to get to the
13 school."

14 Again, it's hard for us to imagine the way we live
15 life here in the United States, but this is a really rural --
16 forget Third World -- about Tenth World country. I'm sorry.
17 Tenth world area. It's not the entire country, just this
18 particular area.

19 So, you know, again, it's a matter of
20 proportionality. How important are records when somebody is
21 three years old or four years old or four and five years old
22 in relation to what, you know, what we would have to do to try
23 to go and get it?

24 I mean, yes, the option would be to then try to go
25 again down there, bring the parents. I mean, it's in a middle

1 of a pandemic when a lot of people are scared and they're
2 scared to travel. I mean, this is -- again, it's a matter of
3 proportionality. We've given them just about everything,
4 records of three- and four-year-olds.
5     Again, our position -- and I think it's pretty clear,
6 and Your Honor's handled plenty of lead cases, I imagine, to
7 know this -- you know, the effects of lead do not reverse
8 themselves; right? And by the way, if that was the case, if,
9 in fact -- if, in fact, the impact of the lead had reversed
10 itself, then we would be the ones that would want these
11 records, not them, because the records that we have provided
12 them would be more beneficial to them.
13     So, I mean, I'm not -- it's not a situation where
14 we're going to -- an "I gotcha" where we're going to go back
15 and get the records and surprise them later on. Right?
16     So if the records -- you know, we're not going to get
17 the records. If the records -- if they set forth some
18 information that would suggest or indicate that these
19 particular plaintiffs have been adversely affected at four --
20 three, four, and five years old but then the subsequent
21 records didn't reflect that, you know, same, they reflected
22 they were in a better position, then we're the ones that are
23 prejudiced. So I really don't see -- again, it's a matter of
24 proportionality.
25     And by the way, Judge, you know, I don't have to tell

1  Your Honor we've been at this a long time.  We've been working
2  this long and hard, and, you know, it's time now.  For
3  defendants to suggest, well, we should hold back another three
4  or four weeks or two or three weeks, I mean, enough already,
5  you know?
6          Right now we have the deadline for defendants to
7  respond and name their 14 plaintiffs to be September 27.  They
8  have plenty of time to do that.  Now we have to go back and
9  change the CMO again to accommodate the circumstance.  Well, I
10 think Your Honor understands our position.  I think it's a
11 matter of proportionality, and I -- you know, I don't think
12 that they're at all prejudiced by not having these records,
13 and I think we should proceed and move on, get the case
14 moving.
15         THE COURT:  Mr. Drake?
16         MR. DRAKE:  I'm really struggling today on my
17 technology.  You'd think I'd have it down.  Sorry about that.
18         I don't have much to add to that, Your Honor.  I
19 would only direct the Court's attention to the second
20 plaintiff, the one Mr. Rodriguez didn't mention, where it
21 doesn't appear that the team has gone to the school itself to
22 see if they have any records.  It seems like a reasonable step
23 that would be required under the federal rules that govern the
24 case.
25         And at this point, I don't think a couple of

1    additional weeks would make a huge impact on the ability of
2    the case to proceed, but I won't belabor the point, Your
3    Honor.  I think the Court understands the respective
4    positions.
5             THE COURT:  As you know, I'm loath to put my hands on
6    the scale.  In listening today and having read the materials,
7    Mr. Rodriguez, I'm going to let you continue, but you run the
8    risk of me excluding a plaintiff down the road.
9             You know, essentially what the defendant is asking me
10   to conclude is the absence of these records makes it
11   impossible to proceed.  That may be true, or it may tell an
12   incomplete story.
13            So I'm going to permit your two plaintiffs to
14   proceed, but they run the risk of this issue coming up again
15   later if the lack of these records, an expert opines, has a
16   substantial impact on the opinion.
17            And in order to keep the case going, should I grant
18   one or the other of you the ability to pick two more
19   plaintiffs for the trial pool in case these folks fall out at
20   a later date?
21            MR. RODRIGUEZ:  Your Honor, if I can suggest,
22   respectfully?
23            THE COURT:  Sure.
24            MR. RODRIGUEZ:  If Mr. Drake and the defendants
25   choose, they pick one or the other of these two plaintiffs as

1  one of their 14, if they pick one or the other, we'll take an
2  additional step. We'll try again. Okay?
3           THE COURT: Well, that's the point. I guess if you
4  missed it, in my mind, by saying what I just said and ruling
5  that way, it keeps you attentive and keeps the pressure on you
6  to find those records.
7           MR. RODRIGUEZ: Yeah.
8           THE COURT: To eliminate the risk that one of these
9  plaintiffs, you know, can't proceed because of the lack of the
10 records.
11          MR. RODRIGUEZ: If the defendants pick one or the
12 other, Judge, you know, we will give it another shot. I mean,
13 it's going to be tough but --
14          THE COURT: I think you should give it another shot
15 in the meantime, regardless.
16          MR. RODRIGUEZ: Okay.
17          THE COURT: But I understand your point.
18          MR. RODRIGUEZ: Got it. We'll do that.
19          THE COURT: But I'm not going to exclude them based
20 on the state of the record today, but that may change, and
21 we'll deal with it when it comes. I mean, that goes against
22 my "don't borrow trouble."
23          But, you know, let's see how the case develops with
24 these two individuals. They're adults. They may have access
25 and ability that you don't have, since they're on the ground,

1 to get these records. But I want to keep you motivated to
2 find them because I'm not saying as a matter of law they're
3 going to get to be in the -- go to trial without these
4 records.
5         MR. RODRIGUEZ: I understand, Judge.
6         THE COURT: Okay? All right.
7         Anything else on the record production, or are we all
8 fairly satisfied where we need to be?
9         MR. RODRIGUEZ: Nothing else from the plaintiffs,
10 Your Honor.
11         MR. DRAKE: Nothing else today, Your Honor. Thank
12 you.
13         THE COURT: All right. Oh, the pregnant negative.
14 I'll have more but not today.
15         MR. DRAKE: No. We are satisfied. No, Your Honor.
16 The defendants don't have any other issues with respect to the
17 completeness of the plaintiffs' production. We've been
18 through this data and these charts, and the providers that the
19 plaintiffs have identified match up with records or CNRs that
20 have been produced --
21         THE COURT: Okay.
22         MR. RODRIGUEZ: Judge, just to weigh in on that, I
23 got to commend -- I think both sides have worked hard and have
24 been reasonable and have been accommodating. And, you know,
25 the process has taken a while, but I think it's worked.

1           THE COURT: Good.

2           So, Mr. Drake, tell me about the status of the *Reid*

3   proceedings.

4           MR. DRAKE: Yes, Your Honor. We have our deadlines

5   for the dispositive summary judgment and *Daubert* motions.

6   They're due on November 15, the oppositions are due March 25,

7   and the replies are due May 23. So that's where we are.

8   We're working on that in that case.

9           THE COURT: All right. So when should we get

10  together again?

11          MR. RODRIGUEZ: I think we can go back to whatever

12  the normal schedule we had before, Judge.

13          THE COURT: To describe this case as "normal," you

14  know . . .

15          MR. RODRIGUEZ: Everything is relative. Normal for

16  this case.

17          MR. DRAKE: I think the original --

18          THE COURT: What are -- go ahead.

19          MR. DRAKE: Sorry, Your Honor.

20          I think the original schedule maybe called for

21  quarterly status conferences. That might be suitable.

22          THE COURT: So you're saying December?

23          MR. RODRIGUEZ: Judge, you know, I think it might --

24  it's been a while; so I can't remember what "normal" was. I

25  guess that was -- Mr. Drake is probably correct. But how

1    about a couple months?

2    THE COURT: How about October -- no. Couple months
3    puts us into November. How about November 15, at 10:00 AM,
4    with agenda by November 10?

5    MR. RODRIGUEZ: That works for me, Judge.

6    MR. DRAKE: That works well. Thank you, Your Honor.

7    THE COURT: Very good. We'll see you on the 15th.
8    Thank you, all, and be safe.

9    **(PROCEEDINGS CONCLUDED AT 10:28 AM.)**

CERTIFICATE

    I, Shannon L. White, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

    I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

    I further certify that this transcript contains pages 1 through 17 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

    Dated at St. Louis, Missouri, this 21st day of September, 2021.


        /s/Shannon L White
        /s/Shannon L. White
        Shannon L. White, CRR, RMR, CCR, CSR
        Official Court Reporter