# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| J.Y.C.C., et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) )  No. 4:15-CV-1704-RWS |
| Doe Run Resources Corporation, et al., | )  (consolidated) ) |
| Defendants. | ) ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE COMPLIANCE WITH THE COURT'S MAY 23, 2017 ORDER

Plaintiffs, by and through the undersigned counsel, submit this memorandum of law in opposition to Defendants' Motion to Enforce Compliance with the Court's May 23, 2017 Order (Dkt. No. 635) (hereinafter the "Motion"). Plaintiffs respectfully request that the Court deny the Motion.

Dated: May 5, 2022

Respectfully submitted,

**NAPOLI SHKOLNIK PLLC**

By: /s/ Patrick J. Lanciotti
Patrick J. Lanciotti, #5407523NY
360 Lexington Avenue, Eleventh Floor
New York, NY, 10017
(212) 397-1000
planciott@napolilaw.com

**RODRIGUEZ TRAMONT + NUÑEZ, P.A.**

By: /s/ Frank R. Rodriguez
Frank R. Rodriguez, #348988FL
Paulino A. Nuñez, #814806FL
255 Alhambra Cir., Suite 1150
Coral Gables, FL 33134
(305) 350-2300
frr@rtgn-law.com
pan@rtgn-law.com

*Attorneys for Plaintiffs*

## **PRELIMINARY STATEMENT**

Defendants, The Renco Group, Inc., D.R. Acquisition Corp., Ira L. Rennert, The Doe Run Resources Corporation, Renco Holdings, Inc., Theodore P. Fox, III, Marvin K. Kaiser, Jeffrey L. Zelms, and Jerry Pyatt (hereinafter "Defendants"), have moved this Court to compel the production of handwritten fact sheets again, despite the Court's prior denial of their previous *two* motions seeking the same relief. This Court first denied Defendants' first motion to compel the production of handwritten Profile Sheets, holding that these documents are protected by the attorney client privilege. *See* Dec. 17, 2020 Tr. At 5:10-14.

Recently, after the March 24, 2022 Status Conference, this Court denied Defendants' Renewed Motion to Compel the production of handwritten fact sheets (ECF No. 561). *See* Order, ECF No. 613. During the Status Conference, the Court expressed unease concerning yet another motion by Defendants to compel the production of handwritten fact sheets from Plaintiffs.

> **MR. RODRIGUEZ**: . . . They want you to trample the attorney-client privilege of all the individuals that are before you, you know, by -- this is, by my count, this is at least the third time or certainly twice that they have asked for these handwritten profiles. And Your Honor could not have been any clearer. And I -- let me.
>
> **THE COURT**: Obviously I could have been.
>
> **MR. RODRIGUEZ**: No, you could not.

Mar. 24 Tr. 37:8-16.

After hearing arguments from the parties, the Court stated that at this time, the focus should be on the 108 Trial Pool Plaintiffs:

> So some new observations today. But I have not been persuaded that we are at the point where a special master is necessary. We are going to pursue the verification process proposed by the plaintiff and we are going to stay focused on the 108 trial pool plaintiffs and see where it takes us.
>
> ***
>
> And I think we are going to find out a lot. You are going to get to test the plaintiff

2

>fact sheets when you do discovery of the trial pool plaintiffs. There could be explanations or there may not be. But you are going to get to find out if the changes are a result of something nefarious or a simple mistake. But that's how we are going to have to stay on track to pursue this case.

Mar. 24 Tr. at 53-54.

Defendants' most recent and third renewed request to invade the privileged handwritten profiles is purportedly based on Defendant's review of the transcript from a hearing that took place on May 23, 2017 (the "May 2017 Hearing"). Following, and notwithstanding the May 2017 Hearing, however, the Court has made two definitive rulings after extensive and full briefing, as well as oral argument, finding that Defendants are not entitled to review the handwritten profile sheets. Defendants now argue that "the Court did not hold argument on the substance of Defendants' motion at the March 24, 2022 hearing," and, incredibly, contend "Defendants did not have the opportunity to remind the Court of its earlier Order before the Court issued a ruling denying Defendants' motion." Def's Motion at 1-2. As this Court may recall, Defendants prepared a more than 60-slide PowerPoint presentation in support of their arguments at the March 24 Status Conference. Nowhere in its extensive presentation, nor at any time during the over two-hour long hearing, did Defendants reference the May 2017 hearing. In fact, Defendants were given an opportunity to bring the matter to the Court's attention but chose not to:

>**THE COURT**: Anything further?
>
>**MR. DRAKE**: No, Your Honor.
>
>**THE COURT**: All right. See you in 60 days.

Mar. 24. Tr. at 66:4-6.

According to Defendants' own Motion, counsel reviewed the transcript of the May 2017 Hearing prior to the March 24, 2022 status conference and failed to raise this issue before the Court during the status conference. Instead, Defendants chose to wait a month before filing the instant

3

Motion seeking the production of confidential handwritten fact sheets for the *third time*.

Defendants also rely once again on their misguided notion that Plaintiffs are improperly attaching signature pages from earlier generated handwritten profiles to later generated and typed profiles. Defendants proclaim that they have found 500 examples of this practice. Defendants then very helpfully provide eight (of the alleged 500) examples of this purported misconduct. As detailed below, these eight examples completely and unequivocally disprove Defendants' "gotcha" argument and are 100% consistent with the explanation of the process that Plaintiffs' have consistently provided to the court. The eight examples further illustrate Defendants' fundamental misunderstanding (giving Defendants' the benefit of every doubt) of the plaintiff profile retrieval and preparation process, Defendants' wishful thinking, and Defendants' last ditch and obviously desperate attempt to concoct a new basis for a tired argument that has been rejected multiple times by this Court.

The Motion should be denied because Defendants have once again failed to show they are entitled to the extraordinary relief sought. For the reasons set forth on the record at the March 24 status conference and below, the Court should deny Defendants' motion.

## **LEGAL STANDARD**

While the Court has "wide discretion in dealing with discovery matters" *White v. Ameristep, Inc.*, No. 4:16-CV-1216-SNLJ, 2017 U.S. Dist. LEXIS 210841, at *4 (E.D. Mo. Dec. 22, 2017) (citing *Cook v. Kartridg Pak Co.*, 840 F.2d 602, 604 (8th Cir. 1988)), under Rule 26, discovery is limited to "any nonprivileged matter that is relevant to any party's claims or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "On motion or on its own, the court must limit the frequency or extent of discovery" where "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendants cannot obtain materials protected by attorney-client privilege regardless of any

4

claimed need or hardship. *See Vodak v. City of Chi.*, No. 03 CV 2463, 2004 WL 783051, at *4 (N.D. Ill. Jan. 16, 2004) (rejecting defendants' argument that "substantial need" or "undue hardship" vitiates the attorney-client privilege since Rule 26 exceptions based upon need or hardship apply only to the work-product immunity).

The attorney-client privilege encourages full and frank communication between attorneys and their clients so that clients may obtain complete and accurate legal advice. *See In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641–42 (8th Cir. 2001). Here, the Court has already found that the handwritten Profile Sheets are protected by the attorney client privilege. Moreover, Defendants have not suggested, nor could they in good faith suggest, that any conduct by Plaintiffs could justify the loss of this privilege. To the contrary:

> [A] party seeking discovery of privileged communications based upon the crime-fraud exception must make a threshold showing "that the ***legal advice was obtained in furtherance of the fraudulent activity and was closely related to it***." A moving party does not satisfy this threshold burden merely by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud. ***There must be a specific showing that a particular document or communication was made in furtherance of the client's alleged crime or fraud***. Because the attorney-client privilege benefits the client, ***it is the client's intent to further a crime or fraud that must be shown***.

*In re BankAmerica Corp. Sec. Litig*., 270 F.3d at 642 (emphasis added, citations omitted).

## ARGUMENT

**I.    DEFENDANTS HAVE NOT PRESENTED PARTICULARIZED FACTS TO JUSTIFY OVERIDING ATTORNEY CLIENT PRIVILEGE OR OPENING A PREMATURE AND DUPLICATIVE INQUIRY**

   **A.    Defendants' Eight Hand-Picked Examples Support Plaintiffs' and Eviscerates Defendants' Concocted Argument**

Plaintiffs explained their procedure for preparing and producing profiles in Mr. Rodriguez's 2020 affidavit. *See* ECF No. 434-1. Defendants now contend that Mr. Rodriguez lied

5

to the Court and that they have proof in the form of eight profiles attached to Defendants' latest Motion as Exhibit "A". Defendants are wrong as illustrated by their own hand-picked examples.

As Plaintiffs have explained multiple times, profiles are initially filled out by hand, based on information provided by the client. If, upon counsel's review of the plaintiffs' communications, additional information was deemed appropriate beyond what plaintiffs or their fiduciaries themselves provided, plaintiffs (or their guardians) were asked to review the changes or additions and then sign off (by signing a new signature page) which would be attached to the final typed version. Barring clerical error, these "new" signature pages would then be produced to Defendants along with the typed profile.

After review of Defendants' eight examples, which show that procedure at work, it is evident that Defendants, at best, simply do not understand the process. As demonstrated by the signature pages attached hereto as Exhibit "A," each of the plaintiffs referenced by Defendants in its eight examples had signed an earlier version of the profile (which would have been handwritten). While Defendants point to later generated typed profiles that all have attached handwritten signature pages (all signature pages for typed or handwritten profiles are handwritten), Exhibit A reflects that for each one of Defendant's eight examples, an earlier signature page was executed which corresponded to an earlier generated handwritten profile. In each of these instances, Counsel's review resulted in changes which required plaintiffs' guardians to review the changes and execute a new signature page. That new, and necessarily later-dated signature page that corresponded with the new revised typed profile was then produced to Defendants.

In each of these eight instances (as with all plaintiffs' profile sheets), the plaintiffs or their guardians provided information which was used to fill out their profile by hand and they then signed the last page of that profile. Those profiles were maintained by counsel and assisted in

6

counsels' review of the claims for each plaintiff. Then, when that plaintiffs' case was consolidated by this Court's procedure and profiles were required to be produced, counsel reviewed the profiles once again. If at any point when the profile was reviewed counsel made any alterations, plaintiff (or their guardian) was asked for a final review and to sign a new signature page.[1] As demonstrated by the attached exhibit, this sometimes resulted in multiple signature pages for plaintiffs. In some instances, as in the case of plaintiffs selected to be part of the Discovery Cohort and recently asked to fill out an updated profile, there may be a total of three handwritten signature pages. One signature page pertaining to the original hand written profile, a second signature page pertaining to a later generated typed profile, and possibly a third signature page if the Plaintiff was made part of Plaintiffs 14 selections to the Discovery Cohort and asked to update their profile. In each instance Plaintiffs (or their guardians) were asked to review and confirm information. Defendants have done nothing more than prove the accuracy of what the Plaintiffs have consistently represented to the Court. Nothing in Defendants' Motion or attached exhibits are illustrative of wrongdoing. Defendants have once again failed to provide any basis for their extraordinary request to invade privileged communications.

### B.     The Court's Prior Order Denying Defendants' First Motion to Compel

After full briefing and hearing on Defendants' first motion to compel, this Court held that Plaintiffs' handwritten Profile Sheets were protected by attorney-client privilege. The Court also rejected Defendants' request to perform an analysis of all the plaintiffs in this consolidated litigation:

---

[1] The last page or the "signature page" of these profiles, in addition to the signature, also includes one final question, number 17 at the top of the page. Question 17 asks the plaintiffs to provide the names of their attorneys. That final answer is always handwritten even if the signature page corresponds to a typed profile. It may be this final handwritten answer, which just happens to run onto the signature pages, that has confused Defendants about the process.

7

> And so it's my intention -- I still generally, just so you understand, see the communication between counsel and their clients -- and even the disclaimer was as to information and not documents -- as protected by the attorney-client privilege.

Dec. 17, 2020, Tr. at 5:10-14.

> But I'm not going to reach this issue for the reasons I just stated, on any global basis or conduct a global in camera.
>
> But, obviously, as you do more particularized discovery with each claimant, these issues may resurface, but I'm not going to make a finding based on this motion. So I'm going to deny the global motion. We'll reach this question on a case-by-case basis as these cases are prepared for trial.

Dec. 17, 2020, Tr. at 5-6:19-1.

In its first ruling, the Court allowed for the possibility of future inquiries into specific plaintiffs should specific facts arise and contemplated a case-by-case inquiry as the cases were prepared for trial. Defendants have failed, however, to establish a single particularized fact that could warrant a departure from the Court's ruling or inquiry into potential waiver in the absence of particularized discovery.

    **C.    The handwritten Profile Sheet drafts are not discoverable because they are confidential communications protected by the attorney-client privilege.**

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law," and is a crucial part of the attorney-client relationship, encouraging "full and frank" communications between attorneys and clients. *Williams v. Herron*, No. 8:09CV201, 2011 U.S. Dist. LEXIS 17791 at *9-10 (D. Neb. Feb. 8, 2011), quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The privilege applies to communications by clients to their attorneys, in the context of legal representation, and legal advice from the attorneys to their clients based on those communications. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). It is axiomatic that sound legal advice is dependent upon free communication between lawyer and client. *See Id*. at 395. The

8

attorney client privilege is further intended to protect the adversarial process by insulating an attorney's litigation preparation from scrutiny by the adverse party. *Jordan v. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978) (*en banc*).

This Court has already heard extensive argument and concluded that the application of the attorney client privilege to the handwritten Profile Sheet drafts is appropriate. Nothing in Defendants' Motion changes the privileged nature of these drafts. Instead, the totality of evidence presented by Defendant which purports to be specific to the PPS at issue in this case is the purchased testimony of an admitted felon and disgruntled former employee of Plaintiffs' counsel. Defendant cannot compel the production of protected drafts based on these generalized suspicions and baseless accusations.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter an Order denying Defendants' Motion, and for such other and further relief the Court deems just and proper.

Dated: May 5, 2022

Respectfully submitted,

| **NAPOLI SHKOLNIK PLLC** | **RODRIGUEZ TRAMONT + NUÑEZ, P.A.** |
|---|---|
| By: /s/ Patrick J. Lanciotti<br>Patrick J. Lanciotti, #5407523NY<br>360 Lexington Avenue, Eleventh Floor<br>New York, NY, 10017<br>(212) 397-1000<br>planciott@napolilaw.com | By: /s/ Frank R. Rodriguez<br>Frank R. Rodriguez, #348988FL<br>Paulino A. Nuñez, #814806FL<br>255 Alhambra Cir., Suite 1150<br>Coral Gables, FL 33134<br>(305) 350-2300<br>frr@rtgn-law.com<br>pan@rtgn-law.com<br><br>*Attorneys for Plaintiffs* |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 5, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: May 5, 2022

                                                /s/ Patrick J. Lanciotti