**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| J.Y.C.C., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-1704-RWS |
| | ) | (consolidated) |
| Doe Run Resources Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS FOR FAILURE TO**
**PROSECUTE BY PRODUCING SIGNED AND NOTARIZED PROFILE SHEETS**

COME NOW COUNSEL for Plaintiffs, and hereby submit this Opposition to Defendants'
Motion To Dismiss Plaintiffs For Failure to Prosecute by Producing Signed and Notarized Profile
Sheets, dated April 29, 2022 (Dkt. No. 641) (hereinafter the "Motion").

## INTRODUCTION

As Plaintiffs have repeatedly represented to this Court and Defendants, Plaintiffs have
never disputed, and have always been in full agreement that Defendants are entitled to signed and
notarized copies of the Plaintiff Profile Sheet ("PPS") pursuant to this Court's CMOs. Defendants,
however, in their Motion seeking to dismiss 1,256[1] minor children from this lawsuit are once again
over- reaching, distorting the record, ignoring relevant facts, and relying on inapplicable caselaw
as part of their continuing efforts to deprive, or at least delay, Plaintiffs from having their day in
court.

---

[1] Defendants' Motion references 1,256 unnotarized profiles and, separately, 256 profiles that were not signed. It bears
noting that these two groups overlap. Further, the vast majority of the 256 profiles (over 90%) referenced as unsigned,
were signed and, due to clerical error, mistakenly produced without signature pages. Plaintiffs will be producing those
signature pages concurrently with this response.

Among other things, Defendants' Motion fails to take into account relevant practical and impactful considerations, including: the impact of the pandemic on record retrieval; differences between a notary in the US and one in Peru; that during the relevant time period, the one notary in La Oroya was ill and died; and for a time there was no notary in La Oroya. Defendants also ignore that for approximately two years (including during the height of the pandemic), the primary focus of this litigation was on retrieving school, medical, and employment records for the 120 Initial Trial Pool Plaintiffs ("ITP"). Also, starting in early 2020 and through most of 2021, there were monthly status conferences where the Court was routinely advised of the status of the PPS production (Plaintiffs were not ignoring or disregarding court orders). Most recently, the Defendants' filing of the Jones Day Report led to the verification process that required a significant commitment of time and resources by Plaintiffs' La Oroya ground team. (Interestingly, through the bought and paid for affidavit, the Defendants argue that there was fraud in the notarizations of the PPSs, including the use of a fake notary stamp. Yet, Defendants also argue that the fact that there are over 1,200 PPSs that have yet to be notarized is also evidence of widespread fraud. If the La Oroya ground team was engaged in fraud, as alleged by Defendants, there would not be over 1,200 unnotarized PPSs and it would not have taken over two years to retrieve the records for the ITP.) The CMOs allow for Defendants to file a motion for order to show cause NOT a motion to dismiss under these circumstances. *See* Dkt. No. 426, CMO No. 8, PageID #: 16388. **Most importantly the Defendants have not and cannot legitimately claim that they have been meaningfully prejudiced by the delay in receiving the notarized PPSs**

In the alternative to the draconian sanctions sought by Defendants, dismissing these plaintiffs with prejudice, Plaintiffs respectfully submit that a reasonable schedule to produce notarized PPS on a rolling basis is a more appropriate and equitable solution that will not delay

preparing the Initial Trial Pool for trial nor prejudice Defendants.[2] As stated more fully below, Plaintiffs respectfully request that this Court enter an Order denying Defendants' Motion in its entirety, and for such other and further relief the Court deems just and proper.

## FACTUAL BACKGROUND

CMO No. 1 states that Plaintiffs in the lead case, Index No. 15-cv-1704, "shall each complete a Plaintiff Profile Sheet. . ." (Dkt. No. 45). CMO No. 2 creates the same discovery obligation for those Plaintiffs in consolidated cases, stating that Plaintiffs "will produce Plaintiff Profile Sheets for each Plaintiff no later than 45 days from the date of the consolidation order." (Dkt. No. 56). Plaintiffs' counsel works with and supervises a team of La Oroya residents to assist in our interaction with clients in La Oroya and surrounding towns (the "La Oroya Team"). Under counsel's supervision, the La Oroya Team obtains the information necessary to complete a form PPS for each child. Since 2014, the La Oroya Team has obtained approximately two thousand PPS in connection with anticipated and ongoing litigation. The PPS are just one of several kinds of records and forms the La Oroya Team obtains to fulfil Plaintiffs' discovery obligations and obtain pertinent information in connection with this litigation. Due to the remote and impoverished nature of the La Oroya region, moreover, as well the number of Plaintiffs' records and documentation involved in the litigation, this process is difficult under the best of circumstances.

Additionally, and most importantly in terms of Defendants' Motion, the availability of a notary public in the La Oroya region over the last five years has been incredibly scarce for various reasons, contributing to the unavoidable delays and on many occasions preventing the La Oroya Team from effectively having access to local notarization (the closest notary outside La Oroya is an hour and fifteen minutes away by car) for months, even years, on end. Defendants' Motion fails

---

[2] Plaintiffs will immediately begin obtaining any missing profile notarizations for the ITP and anticipate completing that production set prior to the Court's next status conference.

to acknowledge the major differences in obtaining a notary signature in the La Oroya Region compared to the United States. For starters, there is only one notary serving the entire La Oroya Region. Unlike in the United States, where a notary can be found in practically any public location such as a bank or library, Plaintiffs and the La Oroya Team were limited to just one individual to notarize thousands of documents. Beginning in or around May of 2016, the La Oroya Team learned that the notary in La Oroya was in ill health and was only seeing individuals for notarization one day a week. The notary's limited availability of one day per week continued until November 2018 when the notary passed away. From the time the notary in La Oroya died in November 2018 and through 2019, there was no notary in the La Oroya Region that the team could use, and they were therefore forced to travel to the town of Tarma, Peru, located approximately one hour and a half away. Thus, for a period of nearly 15 months, Plaintiffs and the La Oroya Team were forced to charter the team and clients one hour and a half from their homes to Tarma, *just to obtain a notary signature*. In 2020, because of the global pandemic, no notarization services were undertaken in Tarma or La Oroya. In 2021, the notary's office reopened in La Oroya and the prior notary's son became the new La Oroya notary.

Over the last few years, the limitation of one notary for the La Oroya region, the death of the notary, and the worldwide global pandemic, has made the already challenging process of obtaining a notarization in Peru significantly more challenging and at times, virtually impossible, through no fault of the La Oroya Team or the 1,256 minor children subject to Defendants' Motion.

## LEGAL STANDARD

While Fed. R. Civ. P. 41(b) provides that a cause of action may be dismissed "for failure of a plaintiff to prosecute or comply with [the Federal Rules] or any court order," the Court's power under Rule 41(b) is not unlimited. *See Bergstrom v. Frascone*, 744 F.3d 571, 574-75 (8th Cir. 2014) (citing *M. S. v. Wermers*, 557 F.2d 170, 175 (8th Cir. 1977) ("[T]he sanction imposed

4

by the district court must be proportionate to the litigant's transgression." *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998) (citations omitted). "Dismissals with prejudice are drastic and extremely harsh sanction[s]." *Sterling v. United States*, 985 F.2d 411, 412 (8th Cir. 1993) (alteration in original) (internal quotation marks and citation omitted)).

Courts in the Eighth Circuit have found that dismissals with prejudice for failing to comply with a court order are only proper "when there has been a clear record of delay or contumacious conduct by the plaintiff," and only when "lesser sanction prove futile." *Bergstrom*, 744 F.3d at 575 (citing *DiMercurio v. Malcom*, 716 F.3d 1138, 1140 (8th Cir. 2013). In general, evaluating whether less sanctions can achieve the Court's goal in a more just manner is important to this balancing.

## ARGUMENT

### I. DEFENDANTS HAVE FAILED TO SHOW THAT THE SANCTION OF DISMISSAL IS APPROPRIATE

#### A. The facts do not support a finding of, nor do Defendants even claim, contumacious conduct by Plaintiffs.

The Eighth Circuit has repeatedly stated that even where plaintiffs have failed to comply with pretrial orders, dismissal with prejudice is an "extreme sanction" which should be used only in cases of willful disobedience of a court order or persistent failure to prosecute a complaint. *See*, e.g., *Mann v. Lewis*, 108 F.3d 145, 147 (8th Cir. 1997), quoting *Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 263 (8th Cir. 1984); *Norman v. Arkansas Dept. Educ.*, 79 F.3d 748 (8th Cir. 1996); *Clayton v. White Hall School District*, 778 F.2d 457 (8th Cir. 1985). Neither of those circumstances are present here. *See Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 996 (8th Cir. 1975) ("There is a strong policy favoring trial on the merits and against depriving a party of his day in court.")

First, Plaintiffs' conduct in this case does not meet the "contumacious" standard as set forth in *Bergstrom*. As outlined above, the notary availability in La Oroya has been unreliable and many

times completely unavailable. Plaintiffs' counsel has committed a substantial amount of time and resources into complying with this Court's prior orders concerning discovery, the bellwether process, and the recently completed verification process of the Initial Trial Pool. Clearly, the level of participation by Plaintiffs and their counsel in this lawsuit does not rise to a willful disobedience of this Court.

Further, Plaintiffs' alleged failure to comply is substantially justified given the notary situation in the La Oroya Region. Federal Rule of Civil Procedure 37(b)(2)(C) "authorizes the court to impose sanctions upon parties who fail to comply with discovery orders, but dismissal may be considered ***only if*** there is (1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party." *Schoffstall v. Henderson*, 223 F. 3d 818, 823 (8th Cir. 2000) (emphasis added). Plaintiffs have not willfully violated any order compelling discovery, nor has there been prejudice to the Defendants because Defendants have the completed PPS, with the only missing piece being a notarization. Defendants have all the information necessary to evaluate these claims for trial or resolution, and missing notarizations have not stalled the progress of this litigation.

Furthermore, there is no evidence of any deliberate or intentional delay on the part of Plaintiffs. The missing notarizations did not delay the advancement of this litigation. Pursuant to CMO No. 3, the parties selected a group of 120 bellwether cohorts from Trial Pools A-F, on or about September 2019. Plaintiffs selected their 14 trial cases on December 4, 2019. Since that time, Plaintiffs have endeavored to overcome significant challenges, including a deadly pandemic, in order to produce full and complete medical, school, and employment records of all 120 plaintiffs so that Defendants can make their 14 trial selections. *See* CMO No. 8.

The cases cited by Defendants where courts have dismissed claims for failure to produce

discovery documents are easily distinguishable. First, in *In re Prempro. Liab, Litig.*, the Eighth Circuit affirmed the district court's dismissal of the plaintiff's case after the defendant had ***twice*** moved to dismiss for failing to provide a medical authorization form and after the district court established a firm deadline. *In re Prempro Prods. Liab. Litig.*, 423 F. App'x 659, 660 (8th Cir. 2011) (emphasis added). The Court found dismissal appropriate because of the "derelict oversight" of the case by plaintiff's counsel. *Id.* at 661. Unlike the plaintiff in *In re Prempro Liab. Litig.*, Plaintiffs' counsel has devoted a substantial amount of time and resources into prosecuting this complex litigation in an efficient manner and orderly manner.

Defendants' reliance on the remaining cases concerning the issue of prior warning is similarly misplaced. *See Arnold v. ADT Sec. Servs.*, 627 F.3d 716, 720 (8th Cir. 2010) (single plaintiff action acting pro se who failed to respond to discovery and attend a status conference); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 687 F. App'x 210, 214 (3d Cir. 2017) (dismissal of a pro se plaintiff after failing to respond to a motion to dismiss that had been pending for over a year and plaintiff suggesting they can proceed without an expert report); *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 832 (9th Cir. 2011) (dismissal after denial of motion to dismiss for failing to respond to discovery and after the Court's explicit warning that failure to respond by a date certain would result in dismissal).

Consequently, Plaintiffs submit that, before a court can dismiss a plaintiff's complaint for failure to comply with a pretrial order, the law requires a showing of contumacious conduct and delay, and that is certainly not evident here. *See Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000) ("Every violation of a court order does not warrant dismissal with prejudice. Rather, the court must balance "its need to advance its burdened docket against the consequence of irrevocably extinguishing the litigant's claim.")

Furthermore, it has been recognized that, under Federal Rule of Civil Procedure 41(b), "dismissal with prejudice is an extreme sanction that should be used *only* in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." *Hunt v. City of Minneapolis*, 203 F. 3d 524, 527 (8th Cir. 2000) (emphasis added). Plaintiffs' counsel has diligently committed a significant amount of time and resources to comply with this Court's orders and the thousands of plaintiff fact sheets, blood tests, medical records, and school records acquired can hardly be considered "willful disobedience" or "intentionally [delayed]" by any reasonable person. *Id*. Finally, "a party claiming [discovery] requests are unduly burdensome cannot make conclusory allegations [but] must provide some evidence regarding the time or expense required." *Cf. Farmer's Coop. Co. v. Bartlett Grain Co., LP*, No. 4:09-CV-3252, 2011 LEXIS 13437, at \*19 (D. Neb. Feb. 10, 2011). Here, unlike in *Farmers Corp.* where defendant failed to provide specific information regarding the burden placed on them, Plaintiffs have several legitimate reasons for failure to obtain notarizations on these PPS, including, but not limited to, lack of notary availability in the La Oroya Region and the global pandemic. *See Id.* Because Defendants' requests are not conducive to an effective discovery process and since Defendants' fail to meet the Eighth Circuit's strict standards for the sanction of dismissal with prejudice, their motion to dismiss should be denied.[3]

---

[3] Defendant's Motion imposes dismissal as a sanction of first resort. Dismissal should be a sanction of last resort. *See Keefer v. Provident Life and Accident Insurance Co*., 238 F.3d 937, 940 (8th Cir. 2000) (dismissal appropriate only if court considered lesser sanctions)(citing *Baker v. General Motors Corp*., 86 F.3d 811, 817 (8th Cir. 1996), *rev'd on other grounds*, 522 U.S. 222 (1998)); *First General Resources Co. v. Elton Leather Corp*., 958 F.2d 204, 206 (8th Cir. 1992) (futility of lesser sanctions part of balancing) (cited in *Good Stewardship Christian Center*, 341 F.3d at 797); *Givens*, 751 F.2d at 263-64 (dismissal inappropriate as sanction of first resort); accord *Edgar*, 548 F.2d at 773.

### B. Defendants have suffered no hardship or prejudice.

Defendants have suffered little to no prejudice here, and certainly not to the extent where dismissal with prejudice should be considered. Untimely discovery answers warrant dismissal with prejudice only in the most extreme circumstances -- at a minimum, when the facts of a particular case reveal willful misconduct that prejudices the defendants. The Eighth Circuit has repeatedly held that a discovery violation warrants dismissal only in extraordinary circumstances because "the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *See, e.g., Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir. 1999) (*quoting Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977). Dismissal is appropriate only if Defendants prove actual prejudice caused by the alleged willful misconduct. *Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d 717, 719 (8th Cir. 2002) (*citing Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236, 241 (8th Cir. 1977).

Dismissal may therefore be considered only when the evidence establishes (a) a Plaintiff has willfully violated a court order or engaged in a pattern of discovery abuse and (b) that abuse has caused **actual** prejudice to Defendants. *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) (emphasis added); *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992).

Defendants' request that the Court issue an order that these minor Plaintiffs involving a missing notarization on a timely submitted fact sheet be dismissed not only fundamentally unfair given the notary circumstances in La Oroya but does not come close to satisfying the Eighth Circuit's requirements for dismissal based on alleged discovery abuse. Indeed, Defendants make no objection that comes remotely close to this level of prejudice, because no such argument can be made in good faith.

Defendants make no real attempt to claim that Defendants have suffered from any undue hardships or prejudice. Defendants do not attempt to argue that its trial preparation efforts were

9

somehow stymied with respect to the trial pool plaintiffs already selected. As demonstrated above, the plaintiffs subject to the Motion have provided complete profile sheets, as well as blood tests, medical records, educational records, and employment records, such that **Defendants were comfortable enough with the information provided as of that date to make bellwether trial pool selections for the group of 120**. This moots any argument concerning prejudice.

Indeed, the Eighth Circuit generally approves dismissal with prejudice only when discovery abuse has been egregious, such as in the following circumstances:

- Plaintiff flaunted a court order that he provide a medical authorization form by instructing his health care provider to ignore the authorization and refusing to obey a court order that he rescind that instruction; *Schoffstall*, 223 F.3d at 824.

- Plaintiff filed countless frivolous motions, engaged in *ex parte* communication with employees of one defendant despite multiple court orders that he not, sent letter to that defendant's shareholders accusing co-defendant executive of racism, staged rallies against defendants, accused defendants of defamation, refused to answer requests for production, refused to answer deposition questions and refused to pay monetary sanctions; *Good Stewardship Christian Center*, 341 F.3d 794, 796-97 (8th Cir. 2003).

- Plaintiff's counsel not only refused to provide interrogatory answers and later supplied inadequate supplemental answers in response to a court order, but disparaged court at hearing, calling court's order a waste of his time; *Boogaerts*, 961 F.2d at 766-68.

- Plaintiff refused to provide interrogatory answers or deposition dates, prompting seven motions for sanctions. Court repeatedly granted motions to compel and monetary sanctions, to no avail; *Hutchins v. A.G. Edwards & Sons, Inc*., 116 F.3d 1256, 1258-60 (8th Cir. 1997).

- Attorney engaged in continuous "contumacious" discovery abuse that the district court described as "flabbergasting;" *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817 (8th Cir. 2001) and

- Plaintiff wiretapped offices of defendant and defendant's counsel during discovery; *Fox v. Studebaker-Worthington, Inc*., 516 F.2d 989, 991 (8th Cir. 1975).

The bottom line is that Defendants have not come close to satisfying the Eighth Circuit's rigorous requirements for the sanction of dismissal with prejudice. That sanction must be one of last resort for willful conduct that has prejudiced Defendants. Yet, Defendants seek imposition of

dismissal before the Court has issued any lesser sanction against any Plaintiff that is tardy in Profile Sheet service.

## II.    THIS COURT HAS DISCRETION TO MANAGE ITS OWN DOCKET

The Court has the discretion to offer relief from orders that are unduly burdensome or costly to comply with. Discovery that is "unreasonably burdensome … should be limited by the Court" and "a party opposing discovery must [show] that the discovery request creates an undue burden." *Id.* Rule 26's "purpose is not to equalize the burdens on the parties, but Rule 26(b)(2)(iii) expressly requires the court to take the parties' resources into account in balancing the burden or expense of [discovery] against its benefit." Manual for Complex Litigation (Fourth) (2004) at 70.

Additionally, this Court has authority to manage its docket as it sees fit, and Defendants fail to consider the Court's wide discretion to impose reasonable discovery schedules for complex litigations such as this one in order to ensure the fair and equal treatment of litigants abroad. In supervising pretrial proceedings, "American courts … should exercise special vigilance to protect foreign litigants from the danger that … unduly burdensome discovery may place them in a disadvantageous position." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for S. Dist.,* 482 U.S. 522, 546 (1987). Additionally, a Court may "make any order which justice requires to limit discovery." *Id.* at 566. Because the lack of notary availability in La Oroya puts the Plaintiffs in a disadvantageous position and in light of Plaintiffs' counsel's continued substantial efforts to obtain the required documentation as quickly as possible, Defendants' motion to dismiss should be denied.

## III.    NOTARIZED PPS SHOULD BE PRODUCED ON A ROLLING BASIS

As stated above, Plaintiffs do not dispute that Defendants are entitled to notarizations on the PPS. While Plaintiffs strongly oppose Defendants' baseless attempt to dismiss these claims with prejudice, Plaintiffs believe that the Court should enter an Order allowing for the production

11

of notarized PPS on a reasonable rolling basis schedule. While there is now a working notary in the La Oroya Region, he remains the only notary available, which will prevent the La Oroya Team from obtaining the outstanding notarizations all at once. Therefore, Plaintiffs believe a reasonable alternative is to allow Plaintiffs to produce a certain number of notarizations on a monthly rolling basis until all notarizations have been completed. This will afford Defendants the opportunity to receive the notarized PPS and prevent the extreme hardship of dismissal with prejudice where any delay in obtaining notarizations was through no fault of the minor children in La Oroya.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court enter an order denying Defendants' Motion to Dismiss and for such other and further relief the Court deems just and proper.

Dated: June 21, 2022

Respectfully submitted,

**NAPOLI SHKOLNIK PLLC**

By: /s/ Patrick J. Lanciotti
Patrick J. Lanciotti, #507523NY
360 Lexington Avenue
11th Floor
New York, NY, 10017
(212) 397-1000
planciotti@napolilaw.com

**RODRIGUEZ TRAMONT + NUÑEZ, P.A.**

By: /s/ Frank R. Rodriguez
Frank R. Rodriguez, #348988FL
Paulino A. Nuñez, #814806FL
255 Alhambra Cir., Suite 1150
Coral Gables, FL 33134
(305) 350-2300
frr@rtgn-law.com
pan@rtgn-law.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 21, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.


Dated: June 21, 2022


_____/s/ Patrick J. Lanciotti_____