**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| J.Y.C.C., *et al.*, | ) | |
| | ) | Case No. 4:15-cv-01704-RWS |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE DOE RUN RESOURCES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION TO PREVENT FRUSTRATION OF COURT'S PROTECTIVE ORDER OF MARCH 24, 2022

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND.................................................................................................3

I.   This Court's March 24, 2022 Protective Order .........................................................3

II.  The Peruvian Criminal Investigation ........................................................................3

III. The § 1782 Proceeding in the Southern District of Florida ......................................4

IV. The State Court Action in the Eleventh Judicial Circuit of Florida..........................5

ARGUMENT ........................................................................................................................5

I.   Enjoining the State Court Action Would Violate the Anti-Injunction Act...............5

II.  The All Writs Act Also Does Not Authorize Enjoining the § 1782 Action. ...........12

III. Plaintiffs Also Fail to Show They Satisfy the Four-Factor Test for an Injunction.................15

CONCLUSION....................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkins v. Nestlé Purina Petcare Co.*,
  779 F.3d 481 (7th Cir. 2015) ................................................................6, 7

*Alabama v. United States Army Corps of Eng'rs*,
  424 F.3d 1117 (11th Cir. 2005) ...............................................................14

*Anderson v. Genuine Parts Co.*,
  128 F.3d 1267 (8th Cir. 1997) .................................................................11

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*,
  398 U.S. 281 (1970)......................................................................................6

*In re Bank of Am. Wage & Hour Empl. Litig.*,
  740 F. Supp. 2d 1207 (D. Kan. 2010) .....................................................12

*In re BankAmerica Corp. Sec. Litig.*,
  263 F.3d 795 (8th Cir. 2001) .....................................................................8

*Canady v. Allstate Ins. Co.*,
  282 F.3d 1005 (8th Cir. 2002) .................................................................15

*Chick Kam Choo v. Exxon Corp.*,
  486 U.S. 140 (1988)................................................................................6, 10

*Clinton v. Goldsmith*,
  526 U.S. 529 (1999)....................................................................................14

*Dataphase Sys. v. C L Sys.*,
  640 F.2d 109 (8th Cir. 1981) ...................................................................15

*Farm-To-Consumer Legal Def. Fund v. Sebelius*,
  2012 WL 219376 (N.D. Iowa Jan. 23, 2012)...........................................15

*In re Fed. Skywalk Cases*,
  680 F.2d 1175 (8th Cir. 1982) ...................................................................8

*Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*,
  491 F.3d 355 (8th Cir. 2007) ...................................................................15

*Grider v. Keystone Health Plan Cent., Inc.*,
  500 F.3d 322 (3d Cir. 2007)................................................................12, 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..................................................................13

*In re Jimmy John's Overtime Litig.*,
  877 F.3d 756 (7th Cir. 2017) ...............................................7, 12

*Liles v. Del Campo*,
  350 F.3d 742 (8th Cir. 2003) ..............................................12, 13

*In re Managed Care Litig.*,
  236 F. Supp. 2d 1336 (S.D. Fla. 2002) ....................................12

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  523 F.3d 1091 (9th Cir. 2008) .................................................12

*In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*,
  397 F. Supp. 2d 957 (N.D. Ill. 2005) .......................................12

*Phillips Beverage Co. v. Belvedere, S.A.*,
  204 F.3d 805 (8th Cir. 2000) ..............................................14, 15

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ........................................................ *passim*

*Twin City Pipe Trades Serv. Ass'n v. Wenner Quality Servs.*,
  869 F.3d 672 (8th Cir. 2017) ...................................................11

*United States v. Yielding*,
  657 F.3d 722 (8th Cir. 2011) ...................................................15

*Vendo Co. v. Lektro-Vend Corp.*,
  433 U.S. 623 (1977)..................................................................8

*Winkler v. Eli Lilly & Co.*,
  101 F.3d 1196 (7th Cir. 1996) ......................................6, 7, 8, 12

*Wis. Right to Life, Inc. v. FEC*,
  542 U.S. 1305 (2004).................................................................1

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
  142 S. Ct. 2078 (2022) ........................................................13, 14

**Statutes**

28 U.S.C. § 1407.......................................................................12

28 U.S.C. § 1651(a)....................................................................5

28 U.S.C. § 1782.......................................................4, 12, 13, 14

28 U.S.C. § 2283 ............................................................................................ 1, 5, 6, 7, 9, 12

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 10

## INTRODUCTION

Plaintiffs' Motion asks this Court to issue an injunction pursuant to the All Writs Act—an "extraordinary remedy" that "is to be used sparingly and only in the most critical and exigent circumstances." *Wis. Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004). Specifically, Plaintiffs seek to enjoin two actions pending in Florida that Defendants have a legal right to pursue. While Plaintiffs argue those actions threaten to "make a nullity" of a protective order this Court entered on March 24, 2022, Mot. at 11, their Motion is devoid of any meaningful legal or factual support for this argument or the relief they seek. They fail to explain how either of the Florida actions—which concern entirely different claims and discovery targets than those at issue here—would subvert this Court's order or otherwise satisfy the high bar for this Court to enjoin not one, but two, legal actions in other competent courts. The first case, a malicious prosecution action pending in Florida state court, was brought against a disbarred lawyer (who is neither counsel of record nor a party here) and his supervisor stemming from their alleged roles in recruiting and forging documents of 71 plaintiffs *who had already been dismissed with prejudice from this litigation* as well as other plaintiffs whose cases were dismissed long before Plaintiffs even moved for a protective order. While Plaintiffs claim that action seeks "the same discovery denied by this Court," Mot. at 1, 3, no discovery has even been served in that case. Even if it had been, the discovery would be in connection with completely different claims and, by definition, not the same discovery denied by this Court. The other case, a Section 1782 action pending in the Southern District of Florida, seeks discovery from the same disbarred lawyer in support of a Peruvian criminal investigation commenced almost two years ago. As with the malicious prosecution action, it does not seek discovery from any of the Plaintiffs with claims pending before this Court, and thus does not in any way violate the Court's protective order.

Though binding precedent holds that one of three narrow exceptions under the Anti-Injunction Act must be satisfied for this Court to enjoin a state court action, Plaintiffs fail to even mention those

exceptions, much less explain how they are satisfied. And the case law further confirms that examples of a federal court enjoining a collateral proceeding pending in a federal court of equal dignity are even rarer still. Moreover, even if this Court *had* barred the discovery sought in the Florida actions— and it clearly has not—"[d]eciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court." *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011). In fact, many of the same objections that Plaintiffs assert here have already been lodged in the Florida cases, and Plaintiffs offer no reason why those courts would not be competent to adjudicate them. Indeed, while accusing Defendants of forum shopping, the reality is that Plaintiffs seek to do just that: have controversies that can and should be adjudicated in other competent courts decided here instead.

In filing these actions, Defendants are not seeking to evade this Court's orders. Instead, they seek merely to vindicate their rights in the only appropriate fora, given the residences of the defendants in the state court action and the party from whom discovery is sought in the Section 1782 action. Plaintiffs' counsel brought actions against Defendants in this Court that they acknowledge were, in at least some cases, bolstered by bad acts committed by their agents. *See* Dkt. No. 553, 11/15/21 Hr'g Tr. at 17:20–21; *id.* at 18:4-10 ("And there were some issues with some documents, some of which [Romero] addressed in his affidavit … And the documents that there was an issue with was some medical records, and … we were comfortable at the time that it wasn't something that was … rampant."). Defendants are the prevailing parties under Florida law in some of those cases by virtue of their dismissals and, as such, Defendants have the right to pursue claims in state court for malicious prosecution arising from those suits. Those bad acts also constitute crimes under Peruvian law. The Section 1782 action seeks only to vindicate Defendants' rights as crime victims by obtaining discovery in the United States that can be used in Peru to prosecute alleged perpetrators of these crimes. Those rights would be severely compromised if Defendants were precluded from raising claims against—and pursuing discovery from—such persons (none of whom are before this Court).

2

**FACTUAL BACKGROUND**

**I.      This Court's March 24, 2022 Protective Order**

On March 3, 2022, Plaintiffs sought a protective order concerning discovery requests propounded on W.M.B.F., a Plaintiff not in the Initial Trial Pool ("ITP") with active claims before this Court.  Dkt. No. 593.  The requests sought information concerning a scheme perpetrated by Plaintiffs' representatives in Peru to recruit plaintiffs and manufacture claims against Defendants. Plaintiffs' motion did *not* argue that discovery about the Peruvian fraud was wholly impermissible. Rather, it merely argued that because W.M.B.F. was not included in the ITP, the discovery was "irrelevant." *Id*. at 3.  On March 24, the Court entered an order stating that "Plaintiffs' motion for a protective order regarding Defendants' discovery requests directed at Plaintiff W.M.B.F. [592] is GRANTED."  Dkt. No. 613 at 2.  At the Status Conference held earlier that day, the Court clarified that discovery as to *other* non-ITP Plaintiffs with active claims would also be barred for the time being, though it reserved the right to reexamine the issue at a later stage of the litigation.  *See* Dkt. No. 618, Mar. 24, 2022 Hr'g Tr. at 54:25–55:1 ("I am not precluding that this gets bigger, but we are not going to do two tracks yet.").  At no point did the Court preclude Defendants from obtaining discovery from individuals who were not even parties in *Collins* (nor did Plaintiffs even request such relief).  In fact, the Court expressed "great relief" after defense counsel explained that the Peruvian prosecutor was only interviewing plaintiffs who had been dismissed with prejudice from *Collins*, as this was "none of [the Court's] business." *Id*. at 57:17–20.

**II.     The Peruvian Criminal Investigation**

On December 21, 2020, the Renco Group, Inc. ("Renco") and Doe Run Resources Corporation ("Doe Run") filed a criminal complaint concerning the fraudulent scheme with the Provincial Prosecutor's Office for Organized Crimes in Lima, Peru.  *See In Re: The Renco Group Inc.*, No. 1:22-mc-21115-JAL (S.D. Fla.) (hereinafter "Section 1782 Action"), Dkt. No. 1 at 8.

3

Specifically, the complaint alleged violations of Peruvian law, including "(i) aggravated fraud; (ii) document tampering; (iii) procedural fraud; (iv) falsification of official seals and stamps; (v) misrepresentation; and (vi) organized crime." *Id.* at 9.  Just eight days later, the case was referred to the Provincial Prosecutor's Office for Organized Crimes in Junín, Peru, which began investigating the criminal organization engaged in this enterprise. *Id.* at 10.  The prosecutor has since been interviewing witnesses and collecting evidence to determine whether to bring formal charges. *Id.*  If the judge agrees, a trial will ensue. *Id.*  Throughout, Renco and Doe Run—as both victims and complainants—may submit evidence to support the investigation and trial. *Id.*

### III.    The § 1782 Proceeding in the Southern District of Florida

On April 12, 2022, Renco and Doe Run filed an *ex parte* application for discovery under 28 U.S.C. § 1782 in the U.S. District Court for the Southern District of Florida. *Id*. at 1.  The sole discovery target was Mr. Victor Careaga, a disbarred lawyer who was "intimately involved" in recruiting plaintiffs in thousands of lawsuits against Defendants. Dkt. No. 1-2, ¶ 8.  The application alleged that Mr. Careaga oversaw the fabrication of documents, payment of bribes to notaries, and a pressure campaign on Peruvian recruiters to gather new plaintiffs. Dkt. No. 1 at 2.  Critically, the application made clear that Renco and Doe Run sought "discovery for use in a pending, confidential criminal investigation in Peru." *Id*. at 1.  Additionally, Renco and Doe Run apprised the court of the pending actions in *Collins* and *Reid.  Id.* at 2 n.1.  On June 8, the Honorable Joan A. Lenard granted the application and authorized Renco and Doe Run to seek discovery from Mr. Careaga through the proposed subpoena and by conducting his deposition. Dkt. No. 8.  On July 5, Renco and Doe Run served a subpoena duces tecum, whereupon Mr. Careaga raised the same objections that Plaintiffs have asserted in this Court: namely, that the attorney-client privilege or work product doctrine protects the information sought by Renco and Doe Run and that the subpoena's "subject matter" falls within

the ambit of this Court's March 24 protective order.[1]  Dkt. No. 10, ¶¶ 6–7.

## IV.    The State Court Action in the Eleventh Judicial Circuit of Florida

On April 29, 2022, Renco and Doe Run brought claims in Florida state court for malicious prosecution against Mr. Careaga and Louis Thaler (Careaga's supervising attorney).  *Doe Run Resources Corp. v. Thaler*, No. 2022-007907 CA 15 (Fla. 11th Judicial Cir.), Dkt. No. 2, Compl. ¶¶ 56–77.  Significantly, the gist of the state court action—and thus, the focus of any forthcoming discovery—hinges upon Mr. Careaga's and Mr. Thaler's alleged roles in recruiting and forging documents concerning 71 plaintiffs who were dismissed *with prejudice* from the *Collins* and *Reid* actions in 2020 and 2021, as well as other plaintiffs whose cases were previously dismissed.  *Id.* ¶¶ 11–12, 55, 59.  In their complaint, Renco and Doe Run described in detail the ongoing Missouri litigation and its procedural history.  *Id.* ¶¶ 2–26, 35–41, 51–55.  Mr. Thaler moved to dismiss and argued, among other things, that "the attorney client and work product privileges prevent the Thaler Defendants from divulging any … information."  Dkt. No. 17, ¶ 17.  He also moved for sanctions, claiming the lawsuit was "unfounded and frivolous."  Dkt. No. 27 at 3.  The state court has not yet ruled on these motions, and no discovery has been served.

## <u>ARGUMENT</u>

## I.    Enjoining the State Court Action Would Violate the Anti-Injunction Act.

The All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Significantly, however, a federal court's power to enjoin a state court action under the All Writs Act is strictly constrained by the Anti-Injunction Act, 28 U.S.C. § 2283, which provides "an absolute

---

[1] During the pendency of Plaintiffs' Motion, Renco and Doe Run have "agreed to hold the subpoena duces tecum served on Mr. Careaga indefinitely and to postpone his deposition … and any associated document production."  Dkt. No. 680 at 2.  They also advised the Court that they will not proceed with any discovery in either of the Florida actions until the Motion is resolved.

prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).  Specifically, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as [1] expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments."  28 U.S.C. § 2283. The Supreme Court has underscored that these exceptions "are narrow and are not to be enlarged by loose statutory construction." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *Atlantic Coast Line*, 398 U.S. at 297 ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed ….").

Though the Anti-Injunction Act controls, Plaintiffs offer nothing more than a passing reference to the Act in a parenthetical on the final page of their brief.  *See* Mot. at 11.  They do not even mention the three exceptions, let alone show that they can satisfy any of them.  Instead, Plaintiffs rely principally upon *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996).  *See* Mot. at 10–11.  But that case only undermines their arguments.  Plaintiffs wrongly represent that "[t]he Seventh Circuit upheld the injunction under the All Writs Act." *Id*. at 11.  It did not.  The Seventh Circuit *vacated* the injunction, concluding that its "broad language swe[pt] too many people within its interdict," and that the district court abused its discretion by failing to "make a thorough factual inquiry" concerning the connection between the parallel litigations. *Winkler*, 101 F.3d at 1203–04.

Plaintiffs rely on *Winkler* because the court suggested that a "*narrowly crafted*" injunction may be necessary, in some instances, to protect the integrity of discovery orders to prevent extreme abuses that would seriously impair a court's jurisdictional power. *Id*. at 1203 (emphasis added).  Not only did Plaintiffs misrepresent the holding of *Winkler*, they also fail to mention the subsequent Seventh Circuit cases that abrogated even the limited proposition upon which they rely.  For instance, in *Adkins v. Nestlé Purina Petcare Co.*, 779 F.3d 481 (7th Cir. 2015), the Seventh Circuit

6

distinguished *Winkler* and noted that the "necessary in aid of its jurisdiction" exception under § 2283 has a very specific meaning that is not applicable here.  Namely, "jurisdiction," means "adjudicatory competence"; *i.e.*, "the [district court's] ability and authority to adjudicate" the claims before it.  *Id*. at 484.  If the case sought to be enjoined "cannot diminish federal jurisdiction, § 2283 precludes an injunction …."  *Id*.  It is immaterial if a party (or the court) believes that "closing down the [state] case would be prudent, beneficial, helpful, and so on" or would constitute "good litigation management."  *Id*. at 485.  Rather, the extraordinary remedy of an injunction under the All Writs Act must be reserved for truly extreme conflicts that would, quite literally, "stop the federal court from adjudicating the suit pending before it."  *Id*.  The Florida state court action cannot possibly have any bearing on the Court's adjudicatory competence with respect to the cases remaining on its docket because the state court action is limited to cases that have been dismissed and are, therefore, not even before this Court.  No matter what evidence is procured by Defendants in the state court action, this Court will remain competent to adjudicate the claims still before it.

Additionally, in *In re Jimmy John's Overtime Litig.*, 877 F.3d 756 (7th Cir. 2017), the Seventh Circuit held that *Winkler*'s discussion of anti-suit injunctions "necessary to protect the district court's pretrial orders regarding discovery" was expressly "limited to the MDL context."  *Id*. at 766–67 ("Because this is not an MDL, *Winkler* does not apply.").  The Seventh Circuit further noted that a district court lacks the authority to issue an injunction to prevent duplicative litigation unless the court seeks to "enjoin identical litigation *between the same parties*."  *Id*. at 765 (emphasis in original).  In other words, *Winkler*—and the subsequent Seventh Circuit cases construing it—only reinforce the untenable nature of Plaintiffs' requested relief.

But even if Plaintiffs had attempted to grapple with the three limited exceptions to the Anti-Injunction Act, such efforts would have proven unavailing for numerous reasons:

***First***, Plaintiffs did not—and cannot—identify a statute where Congress has "expressly

authorized" their requested injunction.  Thus, the first exception does not apply.

      ***Second***, while some circuits apply the "necessary in aid of its jurisdiction" exception to slighter broader (though still highly limited) contexts, the Eighth Circuit has recognized that this exception applies ***only*** to parallel state *in rem* actions, not *in personam* actions like those at issue here. *See In re BankAmerica Corp. Sec. Litig.*, 263 F.3d 795, 801 (8th Cir. 2001) ("Because both the state-court and federal-court actions are *in personam* proceedings, the [requested] injunction does not fit within the Anti-Injunction Act's exception for injunctions in aid of the district court's jurisdiction."); *In re Fed. Skywalk Cases*, 680 F.2d 1175, 1183 (8th Cir. 1982) (vacating injunction because even a "legitimate concern for the efficient management of mass tort litigation" could not supplant precedent holding that "a simultaneous *in personam* state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter"); *see also Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) ("The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court …. We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court.").

      ***Third***, enjoining the state court action will not "protect or effectuate" this Court's judgments. This final exception is frequently referred to as the "relitigation" exception, and it is "designed to implement 'well-recognized concepts' of claim and issue preclusion."  *Bayer*, 564 U.S. at 300. Plaintiffs' Motion repeatedly suggests that Renco and Doe Run are "seeking the same discovery denied by this Court."  Mot. at 1, 3.  As an initial matter, Renco and Doe Run have not even served discovery requests in the Florida state court malicious prosecution action.  Thus, Plaintiffs ask this Court to speculate that discovery requests that Renco and Doe Run may serve in the future are *necessarily* precluded by this Court's March 24 Order.  As Plaintiffs' own authority confirms, however, "an injunction based on nothing but speculation and conjecture is as much an abuse of discretion as an injunction based on clearly erroneous facts." *Winkler*, 101 F.3d at 1204.

8

Moreover, Plaintiffs have come nowhere close to satisfying their steep burden to show that the issue decided by this Court was "identical" to the one presented in the Florida state court action. *See Bayer*, 564 U.S. at 302 (holding "relitigation" exception was inapplicable where "the issue presented in the state court was not identical to the one decided in the federal tribunal"). In *Collins*, Plaintiffs sought a protective order concerning discovery propounded on W.M.B.F., a non-ITP Plaintiff with active claims pending before this Court. While Plaintiffs suggest that the Court's order granting that motion conclusively precluded the (not-yet-served) discovery in the Florida state court action, the Court's March 24 Order merely stated that "Plaintiffs' motion for a protective order regarding Defendants' discovery requests directed at Plaintiff W.M.B.F. [592] is GRANTED." Dkt. No. 613 at 2. Plaintiffs do not contend—nor could they—that the state court action seeks the same discovery from Plaintiff W.M.B.F (or any other non-ITP Plaintiff). Instead, the Florida state court action concerns 71 plaintiffs whose claims were *dismissed with prejudice* long before the March 24 Order. Indeed, the Court even remarked at the Status Conference that it no longer had jurisdiction over such plaintiffs. *See, e.g.*, Dkt. No. 618, Mar. 24, 2022 Hr'g Tr. at 57:17–20; *see also id*. at 58:9–10 ("To the extent they have been dismissed, you know, that's of no concern."). Simply put, even the broadest reading of the March 24 Order cannot support the argument that the Florida state court has been—or ever will be—asked to decide the "same issue" presented to this Court.

At best, Plaintiffs appear to argue that all discovery concerning *similar subject matter—i.e.*, the fraudulent recruitment scheme—is barred by this Court's March 24 Order, regardless of (i) to whom the discovery is directed (and whether they are parties in *Collins*), (ii) the nature of the action, (iii) the purpose for which discovery is sought, or (iv) the specific details of the request. Yet, this argument cannot be squared with Supreme Court case law that Plaintiffs fail to address.

To wit, the Supreme Court most recently addressed the Anti-Injunction Act in *Smith v. Bayer*, providing its clearest articulation of the relitigation exception. *Bayer* reiterated that courts must take

9

"special care" to keep the relitigation exception "'**strict and narrow**,'" that "the issue the federal court decided must be **the same** as the one presented in the state tribunal," and that "an injunction can issue **only if preclusion is clear beyond peradventure**." 564 U.S. at 306–07 (emphasis added). In *Bayer*, after a federal court declined to certify a proposed class consisting of purchasers of an allegedly hazardous drug, the defendant successfully moved to enjoin a parallel state court action brought by an unnamed class member from the federal action. The Eighth Circuit affirmed, concluding that the state court action sought "certification 'of the same class' in a suit alleging 'the same legal theories,'" and that the issue was thus "'sufficiently identical' to the one the federal court had decided to warrant preclusion." *Id.* at 305. The Supreme Court reversed, holding that even though the text of West Virginia's class action rule was nearly identical to its federal counterpart under Rule 23, the relevant legal standards differed. *Id.* at 309–12. Thus, the federal court's certification decision could not have preclusive effect in the state court. *See also Chick Kam Choo*, 486 U.S. at 149 (rejecting application of relitigation exception where federal court's dismissal under federal *forum non conveniens* principles did not resolve whether Texas *state* courts could hear identical claims).

Similarly here, Plaintiffs have made no showing that it is "crystal clear," 564 U.S. at 310, that a Florida state court would be bound to reach the same conclusions concerning the permissible scope of discovery under Rule 1.280 of Florida's Rules of Civil Procedure as a federal court would under Rule 26. For instance, the scope of discovery under Rule 26(b) is contingent upon what "is relevant to any party's **claim or defense** and proportional to **the needs of the case**, considering the importance of the issues at stake **in the action**." Fed. R. Civ. P. 26(b)(1) (emphasis added). Plaintiffs offer no explanation as to how the "needs of the case" and "importance of the issues at stake" in the *Collins* action are identical to those at issue in the Florida malicious prosecution action. And, of course, the "claim[s] or defense[s]" in the *Collins* action are completely different from those at issue in Florida. Thus, Plaintiffs can offer no reason why this Court's "resolution of one issue [would] preclude the

state court's determination of another."  *Bayer*, 564 U.S. at 312.

Even if the preclusion issue were close here—and it is not—the Supreme Court has emphasized that "issuing an injunction under the relitigation exception is resorting to heavy artillery" and "every benefit of the doubt goes toward the state court."  *Id*. at 307; *see also id.* at 318 ("[C]lose cases have easy answers:  The federal court should not issue an injunction, and the state court should decide the preclusion question.").  Indeed, while Plaintiffs repeatedly accuse Defendants of forum shopping, *see* Mot. at 5–6, 10, their Motion improperly seeks relief from this Court that, as the Supreme Court has made clear, traditionally falls within the exclusive province of the court presiding over the *second* action.  *See Bayer*, 564 U.S. at 307.[2]  Compounding matters, while the Florida malicious prosecution action does not in any way divest this Court of its jurisdiction, Plaintiffs' requested injunction would deprive the Florida state court of *its* adjudicatory competence—and, in so doing, seriously prejudice Renco and Doe Run's rights to pursue their malicious prosecution claims, over which this Court lacks jurisdiction.  Once plaintiffs began dismissing their claims (beginning in May 2020), Renco and Doe Run's claims accrued and the statutory clock began to tick.  Notably, Mr.

---

[2] Even if this Court were to decide the issue, however, it is clear that the March 24 Order would not have preclusive effect. The Eighth Circuit has articulated a five-element test to determine whether issue preclusion applies. *Anderson v. Genuine Parts Co.*, 128 F.3d 1267, 1273 (8th Cir. 1997). Among other things, the moving party must establish that the issue sought to be precluded is "the same as the issue involved in the prior action," that it was "actually litigated," and that it was "determined by a valid and final judgment." *Id*. The discovery requests in the *Collins* action were not propounded upon the already-dismissed plaintiffs in the Florida malicious prosecution action (nor could they have been); thus, the "same issue" was not "actually litigated" in this Court. Additionally, the protective order hardly constitutes a "valid and final judgment."  Finality for purposes of issue preclusion concerns whether "the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Twin City Pipe Trades Serv. Ass'n v. Wenner Quality Servs.*, 869 F.3d 672, 677 (8th Cir. 2017).  Here, the Court expressly reserved the right to revisit the discovery issue even as to non-ITP Plaintiffs with claims currently pending in *Collins*.  *See* Dkt. No. 618, Mar. 24, 2022 Hr'g Tr. at 54:25–55:1; *id*. at 53:20–24.  Even Plaintiffs' counsel has conceded this.  *See, e.g.*, *id*. at 44:25–45:2; *id*. at 46:8–10; Mot. at 3 ("The Court further concluded that Defendants, ***at this juncture***, would be permitted to develop evidence in support of their fraud allegations only with reference to the 108 trial pool plaintiffs.") (emphasis added).

Thaler's motion to dismiss even raised a statute-of-limitations defense. While that argument lacks merit, it highlights the inescapable fact that Renco and Doe Run could not simply wait until the Missouri litigation concluded before seeking redress in Florida. *See In re Jimmy John's*, 877 F.3d at 768 (rejecting argument that party filed suit to evade district court's pretrial orders where statute of limitations was running). Thus, this Court should decline to enjoin the Florida state court action.

## II.    The All Writs Act Also Does Not Authorize Enjoining the § 1782 Action.

While federal-state injunctions are highly atypical, it is even rarer still for a federal court to enjoin litigation pending in a separate federal court of "equal dignity." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099 (9th Cir. 2008). In fact, it is so infrequent that there is "precious little authority" even dealing with this subject. *Id.*; *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007) ("[T]he lack of cases in which the All Writs Act has been used to enjoin settlement efforts in another federal court is telling."). Thus, while the Anti-Injunction Act does not apply to federal-to-federal court injunctions, courts frequently "still look to cases involving federal-state injunctions for guidance." *In re Jimmy John's*, 877 F.3d at 763. Federal courts generally find an injunction against a sister federal court "necessary or appropriate" in only three scenarios: "[1] MDL proceedings; [2] pending or final class settlements and judgments; [3] duplicative litigation between the same parties; or some combination thereof." *Id.* at 768. While Plaintiffs' cited cases fall neatly into these buckets,[3] this action does not fit any of them:

*First*, it is not a multi-district litigation proceeding under 28 U.S.C. § 1407, "where it is intolerable to have conflicting orders from different courts." *Id.* at 764.

*Second*, it does not relate to a pending or final class settlement, where an injunction is

---

[3] *See Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003) (class settlement); *Winkler*, 101 F.3d at 1203 (MDL proceeding); *In re Bank of Am. Wage & Hour Empl. Litig.*, 740 F. Supp. 2d 1207 (D. Kan. 2010) (same); *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 397 F. Supp. 2d 957 (N.D. Ill. 2005) (same); *In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002) (same).

necessary to "preserve the settlement fund, to eliminate the risk of inconsistent or varying adjudications that would deplete the fund, to avoid confusion among the class members, and to save scarce judicial resources." *See Liles*, 350 F.3d at 746.

*Third*, it does not involve duplicative litigation between the same parties. As Judge Lenard has already concluded, "[t]he evidence sought through the Application is for use in a criminal investigation pending in Peru." Section 1782 Action, Dkt. No. 8 at 1. Additionally, Mr. Careaga—the sole discovery target in the Section 1782 action—is neither a counsel of record nor a party to the *Collins* action. Nor does the Section 1782 action seek to relitigate or disturb the Court's protective order, as it does not seek discovery from W.M.B.F. (or another non-ITP Plaintiff).

Furthermore, the criminal investigation was not initiated to "evade" this Court's jurisdiction, as the criminal complaint was filed fifteen months before this Court's protective order. Conversely, an injunction would severely prejudice Renco and Doe Run's rights. As the Supreme Court has noted, "nonparticipants in foreign proceedings [like Mr. Careaga] may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004). And Section 1782 actions may *only* be brought in "the district in which [the discovery target] resides or is found," 28 U.S.C. § 1782(a), which is the Southern District of Florida—not the Eastern District of Missouri.

An injunction under the All Writs Act is both unnecessary and inappropriate here for additional reasons. For example, while Plaintiffs contend that "there is no comity concern" implicated by their requested injunction, Mot. at 9, the Section 1782 context actually *heightens* the need for comity. "[T]he animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2088 (2022). Plaintiffs' requested relief would not only intrude upon the jurisdiction of a sister federal court—it would also

13

undermine the procedural mechanism Congress enacted to "respect[] foreign nations and the governmental and intergovernmental bodies they create." *Id.*

Moreover, "[t]he All Writs Act invests a court with a power essentially equitable" and thus is "not generally available to provide alternatives to other, adequate remedies at law." *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999). "[I]f a party will have opportunity to raise its claims in the concurrent federal proceeding sought to be enjoined, that concurrent proceeding is deemed to provide an adequate remedy at law" and, thus, "a court may not issue an injunction under the All Writs Act." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005). Here, while Plaintiffs contend that "the Careaga subpoena seeks confidential documents protected by the attorney-work product doctrine," Mot. at 6, they provide no reason why Judge Lenard would be incapable of providing relief necessary to uphold valid assertions of privilege. *See* 28 U.S.C. § 1782(a) ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."). Indeed, prior to the subpoena withdrawal, Mr. Careaga already raised objections in that forum that the subpoena sought privileged information and that its "subject matter" fell "squarely within the purview of the protective order entered in Missouri dated March 24, 2022." *See* Section 1782 Action, Dkt. No. 10, ¶¶ 6–7. Since the relief sought here may be pursued in the other jurisdiction, an injunction under the All Writs Act would be both unnecessary and inappropriate. *See Grider*, 500 F.3d at 332 (district court abused its discretion by issuing injunction under All Writs Act where adequate remedy at law existed, since objections to settlement could be heard by coordinate federal court).[4]

---

[4] Plaintiffs' authority in support of a federal-to-federal court injunction is sparse and readily distinguishable. They rely most heavily on *Phillips Beverage Co. v. Belvedere, S.A.*, 204 F.3d 805 (8th Cir. 2000), in which a vodka manufacturer sought a temporary restraining order to prevent the importation of counterfeit bottles. After the district court denied the request, the manufacturer flouted that ruling by applying to the U.S. Customs Service for an order to detain the bottles. *Id.* at 806.

### III.     Plaintiffs Also Fail to Show They Satisfy the Four-Factor Test for an Injunction.

Plaintiffs contend that, in issuing an injunction under the All Writs Act, "a federal court is not constrained by the traditional four-part test for a preliminary injunction under Fed. R. Civ. P. 65."[5] Mot. at 7–8.  While a minority of circuits support this view, the Eighth Circuit has expressly rejected it.  For instance, in *Canady v. Allstate Ins. Co.*, 282 F.3d 1005 (8th Cir. 2002), the court noted that even if an injunction is *permissible* under the All Writs Act, it "must also be equitable in order for a federal court to issue it."  *Id.* at 1021.  Accordingly, the Eighth Circuit held that courts are *required* to assess the four *Dataphase* factors—namely, (1) threat of irreparable harm, (2) balance of harms, (3) probability of success on the merits, and (4) the public interest—before authorizing an injunction under the All Writs Act.  *Id.* (citing *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 113 (8th Cir. 1981)). Plaintiffs' failure to show entitlement to an injunction under the four-factor *Dataphase* test provides a separate—and equally fatal—grounds to deny their request.

### <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiffs' Motion.

Respectfully submitted this 10th day of August, 2022.

---

Here, by contrast, Renco and Doe Run did not seek the same relief from the Florida federal court that this Court previously denied.  Rather, the Section 1782 action seeks to obtain evidence from a non-party in *Collins* to support a separate Peruvian criminal investigation.  And *Phillips* does not even involve an injunction from one federal court to another.  Plaintiffs' reliance on *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355 (8th Cir. 2007), similarly misses the mark.  *Goss* concerned whether a federal court may issue an injunction if it has no independent jurisdiction.  *Id.* at 364–66.  The Eighth Circuit held it could not and vacated the injunction.  *Id.* at 365, 369.  Furthermore, *Goss* involved an injunction against a *foreign* court, not a sister federal court.

[5] Plaintiffs rely on *United States v. Yielding*, 657 F.3d 722, 727 (8th Cir. 2011), but that case merely concerned Rule 65's *procedural* requirements—such as notice—and did not purport to relax the traditional four-factor test for entitlement to a preliminary injunction.  *See Farm-To-Consumer Legal Def. Fund v. Sebelius*, 2012 WL 219376, at *2 (N.D. Iowa Jan. 23, 2012).

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Andrew T. Bayman, #043342GA
abayman@kslaw.com
Carmen R. Toledo, #714096GA
ctoledo@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Rania Kajan, #924227GA
rkajan@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Tracie J. Renfroe, #16777000TX
trenfroe@kslaw.com
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendants The Renco Group, Inc.,
D.R. Acquisition Corp., Doe Run Cayman
Holdings, LLC, Ira L. Rennert, The Doe Run
Resources Corporation, Theodore P. Fox, III,
Marvin K. Kaiser, Jeffrey L. Zelms, and Jerry
Pyatt*

**DOWD BENNETT LLP**

Edward L. Dowd, Jr. #28785MO
edowd@dowdbennett.com
Jeffrey R. Hoops, #69813MO
jhoops@dowdbennett.com
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

*Attorneys for Defendants The Renco Group, Inc.,
DR Acquisition Corp., Ira L. Rennert, and Renco
Holdings, Inc.*

**LEWIS RICE LLC**

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com
Michael J. Hickey, #47136MO
mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, MO 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants The Doe Run Resources
Corporation, Marvin K. Kaiser, Jeffery L. Zelms,
Theodore P. Fox, III, and Jerry Pyatt*

**POLSINELLI PC**

Jon A. Bierman (#49214)
jbierman@polsinelli.com
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
Telephone: (314) 889-8000
Facsimile: (314) 231-1776

*Attorney for Defendants The Doe Run Resources
Corporation and The Renco Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of August, 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.


/s/ *Geoffrey M. Drake*