# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| J.Y.C.C., et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) No. 4:15-CV-1704-RWS |
| Doe Run Resources Corporation, et al., | ) (consolidated) ) |
| Defendants. | ) ) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR ANTI-SUIT INJUNCTION TO PREVENT
FRUSTRATION OF COURT'S PROTECTIVE ORDER OF MARCH 24, 2022**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    The Florida Actions Explicitly Seek to Frustrate This Court's Protective Order ................ 2

        A.    The Discovery Denied Defendants After Five Months of Effort in This Court ............. 3

        B.    The Florida Actions Seeking to Uncover Evidence of Fraud on This Court .................. 5

    II.    This Court Has Ample Discretion to Issue the Requested Anti-Suit Injunction ................. 6

        A.    This Court Has Authority to Enjoin Prosecution of the Federal Court Lawsuit ............. 7

        B.    This Court Has Authority to Enjoin Prosecution of the State Court Lawsuit .................. 8

        C.    The Four-Factor *Dataphase* Test is Inapposite Here ....................................................... 10

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Nestle Purina Petcare Co.*, 779 F.3d 481 (7th Cir. 2015) .............................................. 9

*Canady v. Allstate Ins. Co.*, 282 F.3d 1005 (8th Cir. 2002) ........................................................ 10

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) ................................................................ 7

*Dataphase Sys. v. C L Sys.*, 640 F.2d 109 (8th Cir. 1981) ........................................................... 10

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) ............................................. 10

*Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002) ................................................................... 8

*Phillips Beverage Co. v. Belvedere*, 204 F.3d 805 (8th Cir. 2000) ............................................... 7

*Smith v. Bayer Corp.*, 564 U.S. 299 (2011) ................................................................................... 7

*United States v. New York Telephone Co.*, 434 U.S. 159 (1977) ........................................... 1, 2, 6

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977) ................................................................. 7

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) ............................................................ 9

*Wis. Right to Life, Inc. v. FEC*, 542 U.S. 1305 (2004) .................................................................. 6

**Statutes**

Anti-Injunction Act, 28 U.S.C. § 2283 ........................................................................................... 8

All Writs Act, 28 U.S.C. § 1651(a) ......................................................................................... *passim*

**Rules**

Fla. Bar Code Prof. Resp. 4-3.3 ...................................................................................................... 5

**PRELIMINARY STATEMENT**

Plaintiffs submit this reply memorandum of law in further support of their motion for an anti-suit injunction to prevent frustration of this Court's protective order of March 24, 2020. Plaintiffs urge that Defendants be barred from pursuing their vexatious satellite litigation in Florida, which is clearly calculated to make an end run around this Court's discovery orders in an attempt to uncover evidence to substantiate Defendants' assertions that some of the plaintiffs currently before this court are "sham claimants," and thus fraud is being perpetrated on this Court.

Defendants' opposition to the motion, R. Doc. 694 ("Def. Opp."), hinges on this Court accepting a revisionist account of what, exactly, Defendants are up to in Florida. According to Defendants, the Florida actions have little if any connection to the litigation before this Court – they "concern entirely different claims and discovery targets than those at issue here . . . ." Def. Opp. at 1. According to Defendants, shortly after this Court denied wide-ranging discovery into the unvetted claims contained in the Jones Day report, they just *happened* to decide it was the perfect time to exercise their "right to pursue claims in state court for malicious prosecution arising from" the dismissal of the claims of some of the plaintiffs, *id.*, at 2 -- a Florida state-court lawsuit which just *happens* to afford a parallel opportunity to obtain some of the same discovery. Around the same time, more than a year after filing a criminal complaint in Peru, Defendants insist, they also just *happened* to decide to file a Florida federal-court action "to vindicate Defendants' rights as crime victims by obtaining discovery in the United States that can be used in Peru to prosecute alleged perpetrators of these crimes," *id.* at 2 – a federal-court proceeding which, by lucky coincidence for Defendants, just *happens* to carry with it the prospect of discovery into the files of the plaintiffs' counsel litigation this case which this Court just a month earlier had denied.

The U.S. Supreme Court made clear in *United States v. New York Telephone Co.*, 434 U.S. 159 (1977), that federal courts need not tolerate such gamesmanship. There it observed that it "has

repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Id*. at 172. The *New York Telephone* decision, cited on page one of Plaintiffs' opening brief, is the crux of this motion: clearly, the Florida actions filed by Defendants within a month of this Court's discovery order have both the intent and effect of frustrating that order, thus disrupting the smooth progression of this case, something this Court has discretion under the All Writs Act, 28 U.S.C. § 1651(a), to prevent. That Defendants have no answer to this fundamental and straightforward point is revealed by their failure to even mention the *New York Telephone* decision (while citing 28 other decisions).

**Part I** of this brief rebuts the revisionist history offered by Defendants, of how the Florida actions supposedly have little if any connection to the lawsuit before this Court, so this Court supposedly need not be concerned that their pendency might have an adverse impact on this litigation. As noted in Plaintiffs' opening brief, and Defendants do not and cannot deny, in filing the Florida actions Defendants made explicit that their aim was to use discovery in those actions to obtain evidence of fraud on *this* Court, by rooting out what Defendants assert are "sham claimants" who are currently plaintiffs in this litigation.

**Part II** then rebuts Defendants' legal arguments, explaining that *New York Telephone* and other authorities invoked by Plaintiffs, but given short shrift by Defendants, confirm this Court's discretion to issue the requested anti-suit injunction, with regard to both the Florida federal-court action and the Florida state-court action.

## ARGUMENT

**I.     The Florida Actions Explicitly Seek to Frustrate This Court's Protective Order**

According to Defendants, the Florida actions have little if anything to do with the litigation before this Court – they "concern entirely different claims and discovery targets," Def. Opp. at 1,

2

and through them Defendants "seek merely to vindicate their rights in the only appropriate fora" for the claims." *Id*. at 2. Defendants set forth three pages of detail in support of this revisionist history. *Id*. at 3-5.

Defendants fail to confront two basic points: (a) Defendants filed the Florida actions only *after* spending five months seeking to convince this Court to permit wide-ranging discovery into the allegations in the Jones Day report, to substantiate their claim of fraud on this Court, and only *after* being denied the wide-ranging discovery they sought; and (b) Defendants were explicit in their Florida filings that their aim in filing both actions was to attempt to find evidence in support of their allegations of fraud on this Court, and the presence of "sham claimants" among the plaintiffs in this litigation.

A brief recap of the procedural history reveals the glaring omissions in Defendants' latest version of what, exactly, they have been busy doing down in Florida.

### A. The Discovery Denied Defendants After Five Months of Effort in This Court

By fall, 2021, despite delays caused by the Covid-19 pandemic, this litigation was on track, focused on discovery and trial preparation related to 120 trial pool plaintiffs. R. Doc. 540. Then, on October 21, 2021, Defendants without prior warning came forward with a voluminous submission (filed under seal), R. Doc. 542, alleging that they had uncovered evidence that an undetermined number of the more than 1,800 plaintiffs might not have properly authorized suit, and/or that documentation in some of plaintiffs' files might be inaccurate, due to fraud or other irregularities allegedly perpetrated by litigation staffers in Peru who worked between 2013 and 2016, charged with locating and processing potential plaintiffs.

This information was set forth in a report that had been prepared by Jones Day, R. Doc. 542-2, whose authors declined to vouch for the information by either entering an appearance (and thus be bound by the strictures of Fed. R. Civ. P. 11) or being sworn as witnesses and subjected to

3

cross-examination regarding their investigation. R. Doc. 553 at 5-6, 20; *see also* R. Doc. 554 at 30; R. Doc. 618 at 30-31. Plaintiffs, of course, pursued discovery into the creation of the report, R. Docs. 588, 589, which Defendants adamantly opposed. R. Docs. 598, 599. The silence of the report authors, and Defendants' opposition to discovery into the report, left unanswered concerns that much of the report was based on either hearsay or on a principal witness whose credibility was open to serious question in light of substantial funds this impecunious witness had been paid by Defendants contemporaneously with the signing of his affidavit. R. Doc. 618 at 31-34.

On January 5, 2022, Defendants filed requests for sweeping discovery into the files of undersigned counsel, which they claimed was necessary to either prove or disprove the allegations of fraud contained in the Jones Day report. R. Docs. 558, 559, 560. Plaintiffs opposed these requests as generally without merit, e.g., R. Docs. 574, 575, and proposed instead a means by which careful scrutiny of the trial pool plaintiffs (by then, narrowed to 108 in total) could be used to test whether the alleged fraud had any actual impact on this litigation. R. Doc. 563 (a proposal opposed by Defendants, see R. Doc. 571). Plaintiffs also moved for protective orders to prohibit Defendants from engaging in any discovery efforts other than the targeted discovery proposed by plaintiffs. R. Docs. 592, 593, 607.

At a hearing held March 24, this Court accepted Plaintiffs' proposal for targeted discovery, and granted the protective order they sought. This Court concluded that because there was no allegation by Defendants that any of the individual plaintiffs, themselves, had engaged in fraud (i.e., only litigation staffers were under suspicion), Defendants' allegations should not be permitted to disrupt Plaintiffs' progress toward trial. R. Doc. 618 at 6-7. Defendants would have a sufficient opportunity to test their fraud allegations through closer scrutiny of the 108 trial pool plaintiffs. *Id*. at 7-8. Thus, this Court adopted Plaintiffs' proposal for vetting each of these 108 plaintiffs in Peru,

4

to verify that each indeed wished to proceed with the litigation, and for ensuring that Defendants would be provided with authorization from each plaintiff to pull records from the original sources in Peru, to verify that the information in each case file was accurate, and not tainted by any fraud. R. Doc. 618 at 53-54, 57. These rulings were embodied in this Court's Order entered on March 24. R. Doc. 613.

### B. The Florida Actions Seeking to Uncover Evidence of Fraud on This Court

Defendants' description of the actions they shortly thereafter filed in the Florida federal court and Florida state court, Def. Opp. at 4-5, sidesteps the two most important points.

First, as pointed out in Plaintiffs' opening brief, R. Doc. 672 at 4-5, but Defendants ignore, in their Florida filings Defendants explicitly stated that their aim was to use the Florida litigation to aid them in *this* litigation. For example, the federal court complaint sought to remedy an alleged "fraud perpetrated on . . . the U.S. District Court for the Eastern District of Missouri*," id.*, Exhibit A at ¶ 26, in what Defendants projected would "be a massive undertaking . . . ." *Id.*, Exhibit B at 6. The state court complaint alleged that a "large group" of claims before this Court are "riddled with fraud," and the lawsuit had been brought to root out these "sham claimants." *Id.*, Exhibit C at 1-2.

Second, as also pointed out in Plaintiffs' opening brief, but Defendants ignore, in their federal court filing Defendants "fail[ed] to acknowledge this Court's prior orders concerning discovery related to the Jones Day Report and the March 24 protective order issued by this Court." R. Doc. 672 at 6. They merely "apprised the court of the pending actions in *Collins* and *Reid*," Def. Opp. at 4 – *evidently concealing from the Florida federal district court* the fact that the discovery they were seeking concerning the alleged fraud on this Court *had already been denied by this Court*. This omission was critically important, of course, given the *ex parte* nature of the proceeding. *See* Fla. Bar Code Prof. Resp. 4-3.3 (Candor Toward the Tribunal), *Comment, Ex*

5

*parte proceedings* (emphasizing duty of lawyer proceeding *ex parte* "to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision").

As a result, the Florida federal district court issued an order granting Defendants' application to serve the subpoena seeking discovery into the alleged fraud on this Court while apparently having no idea that discovery into this subject matter had already been denied by *this Court*.

## II. This Court Has Ample Discretion to Issue the Requested Anti-Suit Injunction

A curious feature of Defendants' opposition brief is its failure to grapple with the central case relied on by Plaintiffs, cited on the first page of the opening memorandum. R. Doc. 672. This is *United States v. New York Telephone Co.*, 434 U.S. 159 (1977), in which the Supreme Court observed that it "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Id*. at 172. Plaintiffs submit that *New York Telephone* is dispositive of this motion, given that Defendants' Florida filings were filed with the explicit intent and obvious effect of frustrating this Court's earlier orders limiting the discovery requested by Defendants.

While avoiding the central precedent cited by Plaintiffs, Defendants cite several U.S. Supreme Court opinions having little if any bearing on the issues at hand – two of them not even constituting majority opinions of the Court.[1]

---

[1] For example, in the first sentence of their brief, Defendants present *Wis. Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1306 (2004), as a majority opinion of the Supreme Court which supposedly holds that, in general, *any* injunction issued under the All Writs Act is an "extraordinary remedy," to be issued "only in the most critical and exigent circumstances." If this were actually a majority opinion, and Defendants' summary were accurate, the decision obviously would conflict with the expansive discretion afforded federal courts by the *New York Telephone* decision to prevent

6

### A.     This Court Has Authority to Enjoin Prosecution of the Federal Court Lawsuit

Defendants argue that a federal court may issue an injunction against another federal court only if the case fits into one of three discrete "buckets": an MDL proceeding, a class action, or duplicative litigation between the same parties. Def. Opp. at 12-13. This rule is the product of Defendants' imagination. In particular, the taxonomy suggested by Defendants ignores the expansive discretion afforded federal courts by the *New York Telephone* ruling, which grants them the flexibility needed to prevent litigants from frustrating the effect of orders in a wide range of situations in pending cases.

Here, an anti-suit injunction is warranted to prevent frustration of this Court's order limiting Defendants' efforts to disrupt this litigation through wide-ranging discovery seeking to uncover evidence in support of the unvetted Jones Day report. The decision most on point in this federal-to-federal context is the Eighth Circuit's decision in *Phillips Beverage Co. v. Belvedere*, 204 F.3d 805 (8th Cir. 2000), which applied the *New York Telephone* doctrine. In that case, as in this one, a litigant before the district court first asked the district court for relief (there, for a TRO against the importing of allegedly infringing bottles), and only after losing then went to another federal forum (the Customs Service) seeking similar relief. The district court appropriately

---

frustration of orders in pending cases. In fact, this was an opinion by a single justice (Rehnquist, C.J., in chambers) reviewing a three-judge district court's denial of an "injunction pending appeal barring the enforcement of an Act of Congress," and declining to disturb that ruling -- reciting the strict limitations on the authority of a single justice to issue such "an extraordinary remedy."

Similarly, Defendants cite *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) (Def. Opp. at 8) as if it were a majority decision of the Court, when in fact the language quoted is from a three-justice plurality opinion, with the other two justices comprising the majority having written separately to set forth "reasons that differ significantly from those expressed by the plurality." *Id.* at 643 (Bkackmun, J., joined by Burger, C.J., concurring in the result).

Defendants also rely heavily on *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), which has no connection to the *New York Telephone* rule permitting injunctive relief to prevent the frustration of orders in pending cases. It concerns relitigation of matters after a final federal court judgment. *Id.* at 306-08. The same is true of *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (cited in *Smith*), relied on in Def. Opp. at 6, 10.

7

enjoined this effort "asking Customs to do what the district court would not," which the Eighth Circuit affirmed as within its discretion under *New York Telephone*. *Id*. at 806.

Defendant seeks to distinguish *Phillips Beverage* on the ground that in that case, the plaintiff sought the same relief (a bar on distribution of the bottles), whereas here Defendants supposedly "did not seek the same relief from the Florida federal court that this Court previously denied." Def. Opp. at 15, note 4. This ignores the fact that Defendants' explicit intent in filing the Florida federal court action was to engage in discovery, denied by this Court, seeking to buttress the allegations in the Jones Day report and prove that some of the plaintiffs in this litigation are seeking to perpetrate fraud on this Court – exactly what Defendants were seeking to prove through the discovery previously denied them by this Court.

This Court should invoke *New York Telephone* and *Phillips Beverage* as its basis for enjoining Defendants from proceeding with the Florida federal court action.

**B.**    **This Court Has Authority to Enjoin Prosecution of the State Court Lawsuit**

That this Court has authority under the All Writs Act to enjoin Defendants from pursuing the Florida *federal* court lawsuit, to prevent frustration of its discovery orders, means that it also has the same authority to enjoin the Florida *state* court lawsuit, which likewise threatens frustration of its discovery orders. The reason is simple: although the Anti-Injunction Act, 28 U.S.C. § 2283, generally bars anti-suit injunctions directed at state-court litigation, one of the exceptions listed in § 2283 authorizes injunctions issued by a federal court as "necessary in aid of its jurisdiction" -- so that an anti-suit injunction that is valid under the All Writs Act in aid of a federal court's jurisdiction in a pending case is therefore also permitted by the Anti-Injunction Act.[2]

---

[2]  *E.g.*, *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) (Higginbotham, J.) ("The All Writs Act provides that federal courts may 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' The Act contains the same language as the second of the three exceptions in the Anti-Injunction Act, and the parallel

8

Here, again, the Eighth Circuit's decision in *Phillips Beverage* is sufficient for this Court to conclude that it has ample discretion, under the rule articulated in *New York Telephone*, to enjoin a party from forum-shopping efforts seeking to use other courts to engage in discovery that this Court has denied. One of the decisions cited approvingly in *Phillips Beverage*, concerning the authority of a district court to protect the integrity of its earlier orders and prevent litigants from frustrating them, is the Seventh Circuit's decision in *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996). As summarized in Plaintiffs' opening brief, R. Doc. 672 at 10-11, *Winkler* upheld the general principle that a federal district court may use the All Writs Act to enjoin parties from resorting to a state court in an effort to circumvent discovery orders. Although the Seventh Circuit ultimately vacated the injunction in that case on narrow factual grounds, as correctly noted in Def. Opp. at 6, the fundamental legal holding in *Winkler*, cited approvingly in *Phillips Beverage*, 204 F.3d at 806, is that the Anti-Injunction Act is no obstacle to an All Writs Act injunction designed to prevent federal court litigants from engaging in state-court litigation in an effort to circumvent discovery orders.[3]

---

'necessary in aid of jurisdiction' language is construed similarly in both the All Writs Act and the Anti-Injunction Act."). Unfamiliarity with this point on the part of Defendants' counsel is apparently what left them puzzled as to why "Plaintiffs offer nothing more than a passing reference to the [Anti-Injunction] Act in a parenthetical on the final page of their brief," Def. Opp. at 6, leading Defendants to offer seven pages of analysis of cases decided under the Act, *id*. at 6-12, none of which this Court need consider.

[3] Although Defendants correctly describe the ultimate disposition of *Winkler*, they are entirely mistaken in suggesting that in a later decision the Seventh Circuit somehow "abrogated" the principle set forth in *Winkler*, that a federal court may enjoin litigants from pursuing a state-court action which frustrates an earlier discovery order. To the contrary, in *Adkins v. Nestle Purina Petcare Co.*, 779 F.3d 481 (7th Cir. 2015) (Easterbrook, J.) (cited in Def. Opp. at 6-7), the Seventh Circuit *reaffirmed* the central holding in *Winkler*, "that the 'aid of jurisdiction' clause may be invoked when an inconsistent decision by a state court would 'render the exercise of the federal court's jurisdiction nugatory,'" and it noted that "*Winkler* itself entailed incompatible state and federal orders about discovery management." *Id*. at 485 (quoting *Winkler*, 101 F.3d at 1202).

9

### C. The Four-Factor *Dataphase* Test is Inapposite Here

Finally, Defendants take issue with Plaintiffs' observation, R. Doc. 672 at 7-8 & note 6, that because the purpose of Congress in enacting the All Writs Act was to give federal courts the authority to safeguard the integrity of their orders, the only requirements to be met are the three requirements contained in the text of the Act – so that judge-made doctrines, such as the four-part test for the issuance of a preliminary injunction to preserve the status quo, set out in decisions such as *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 113 (8th Cir. 1981), are inapposite. On this point Plaintiffs cited a leading appellate decision which dealt with a federal court's order involving asserted interference with a pending proceeding, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because the historical scope of a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns") – a decision ignored by Defendants.

As the Eleventh Circuit observed in *Klay*, in many cases involving All Writs Act injunctions, "it is unclear how those traditional standards [for evaluating injunctions] would even be applicable." *Id.* at 1102. Defendants argue that the Eighth Circuit has held that the *Dataphase* factors must be applied inflexibly to all requests for an All Writs Act injunction, but the only case they cite (Def. Opp. at 15) involved "the relitigation exception to the Anti-Injunction Act," as to which the court held the *Dataphase* factors could be meaningfully applied. *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1020 (8th Cir. 2002). *Canady* presents no reason to complicate the granting of an anti-suit injunction based on the principle set forth in *New York Telephone* and *Phillips Beverage*, that parties to pending litigation should be prevented from frustrating a federal court's orders by forum shopping for a court that will do what the federal court would not.

10

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court to issue an anti-suit injunction to prevent Defendants from proceeding in the Florida forums, or in any other forum, to circumvent the protective order issued by this Court on March 24, or to frustrate in any other way its exercise of jurisdiction over this litigation, and for such other and further relief as the Court deems just and proper.

Dated: August 22, 2022

Respectfully submitted,

| | |
|---|---|
| **NAPOLI SHKOLNIK** | **RODRIGUEZ TRAMONT + NUÑEZ, P.A.** |
| By: /s/ Hunter Shkolnik | By: /s/ Frank R. Rodriguez |
| Hunter Shkolnik, #2031458NY | Frank R. Rodriguez, #348988FL |
| 270 Munoz Rivera Avenue, Suite 201 | Paulino A. Nuñez, #814806FL |
| Hato Rey, Puerto Rico 00918 | 255 Alhambra Cir., Suite 1150 |
| (787) 493-5088 | Coral Gables, FL 33134 |
| hunter@napolilaw.com | (305) 350-2300 |
| | frr@rtgn-law.com |
| | pan@rtgn-law.com |

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 22, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: August 22, 2022

                                                /s/ Patrick J. Lanciotti