**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| J.Y.C.C., *et al.*, | ) | |
| | ) | Case No. 4:15-cv-01704-RWS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE DOE RUN RESOURCES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE OR**
**SUPPLEMENT THIS COURT'S MARCH 24, 2022 PROTECTIVE ORDER**

Defendants, by and through undersigned counsel, file this opposition to Plaintiffs' Motion to Enforce or Supplement this Court's Protective Order of March 24, 2022, To Enjoin Defendants From All Ex Parte Contact With Plaintiffs (the "Motion"), respectfully showing the Court as follows:

## <u>INTRODUCTION</u>

This Motion is yet another in a growing line of motions fixated on a former Doe Run Peru employee, Miguel Roberto Huanay Bonilla ("Mr. Huanay"). Plaintiffs level several accusations against Defendants, namely that Mr. Huanay is acting as Defendants' agent in Peru to approach represented Plaintiffs and settle their lawsuits. But this is a court of law in which evidence matters. When Defendants accused Plaintiffs' ground team in Peru of committing fraud in connection with prosecuting their lawsuits, Defendants offered extensive evidentiary support, including affidavits from members of Plaintiffs' ground team in Peru, an affidavit from two former Plaintiffs' mother, and documentary evidence of fraud. Now faced with that evidence and an apparent need to try to turn the table back on Defendants, Plaintiffs continue their pattern of leveling accusations without supporting evidence, which is entirely improper.[1] Even worse, the accusations are largely fueled by Plaintiffs' own ground team in Peru, whose honesty has already been called into question by evidence Defendants previously presented to the Court. Indeed, when read closely, Plaintiffs' allegations lack various crucial pieces of evidentiary support and, in the end, ring hollow. Plaintiffs' requested relief, as a result, lacks legal support and makes little sense.

---

[1] For example, in Plaintiffs' Corrected Emergency Motion for Protective Order (ECF No. 652 at 9), they asserted that "Defendants' former legal counsel in Peru has divulged confidential information sealed by this Court *at the request of Defendants*" and that the at-issue "interviews are only a small part of a pattern of intimidation, harassment, and dissemination of misinformation *by Defendants and those working on their behalf*." (emphasis added.) Plaintiffs offered no proof for these allegations, and the Court denied Plaintiffs' Motion.

Specifically, Plaintiffs claim that Mr. Huanay is a Peruvian attorney "with a close connection to Doe Run" who has been contacting represented Plaintiffs *as Defendants' agent* to ostensibly settle their claims.  (Motion at 3.)  And, according only to an unsupported assertion in their brief, Plaintiffs claim that Mr. Huanay is presently acting as "counsel for Defendants in Peru." (*Id.* at 1.)  These allegations are false.  To make this abundantly clear, accompanying this Opposition are the Declarations of Crystal Saling (General Counsel of The Doe Run Resources Corporation ("DRRC")) and Joshua R. Weiss (Chief Legal Officer of The Renco Group, Inc. ("Renco")).  These Declarations demonstrate that Mr. Huanay (1) has never been employed by Defendants in any capacity whatsoever, (2) is not Defendants' counsel in Peru, (3) is not an agent or representative of Defendants in any capacity whatsoever, (4) has no authority to act or speak on Defendants' behalf, and (5) is not controlled or directed by Defendants.  In contrast, Plaintiffs merely provide one affidavit from two Plaintiffs' mother and two affidavits from members of their ground team recounting hearsay accounts of discussions with Mr. Huanay dating as far back as "2018 or 2019."  These affidavits do not establish that Mr. Huanay is an agent of Defendants, much less that he operates at their direction.  Indeed, glaringly absent from these affidavits or in Plaintiffs' Motion is any evidentiary support for Plaintiffs' contention that the alleged communications between Mr. Huanay and represented Plaintiffs were *directed or influenced* by any Defendant in this litigation.

Plaintiffs further allege that Defendants have entered into settlements with certain Plaintiffs. Again, as the declarations explain, that is not true.  Defendants have not entered into any settlement agreements or made any settlement payments to any Plaintiff or their legal representatives in this litigation through Mr. Huanay or any other individual.  In fact, on close look, Plaintiffs do not even allege that any payments have actually been made to any Plaintiff, much less by any named Defendant.  Nor do Plaintiffs provide copies of any settlement agreements or proof of payment.

Indeed, if Defendants did settle with these Plaintiffs, why have these Plaintiffs not since dismissed their claims before this Court?  Do Plaintiffs contend that Defendants are paying Plaintiffs to settle their claims with no expectation the claims would be dismissed?  That defies logic.  The reality is that the allegations in Plaintiffs' Motion, particularly as they concern Defendants, are full of holes.

Accordingly, Plaintiffs' requested relief to halt Mr. Huanay's referenced communications or actions, pursuant to Missouri Rule of Professional Conduct 4-4.2 and the All Writs Act, is outside the scope of these proceedings.  Mr. Huanay is neither a party to this case nor counsel for any party. To the extent Plaintiffs seek an order enjoining Defendants from contacting Plaintiffs through Mr. Huanay, or anyone else for that matter, that relief has no basis, as there is no applicable conduct to enjoin.  Nor are there any depositions to take of U.S. attorneys for Defendants (as none are in contact with Mr. Huanay) or documents to produce regarding any past, present or future contact with Plaintiffs.

**BACKGROUND**

A.      **Plaintiffs' March 22, 2022 Emergency Motion for Protective Order**

On March 22, 2022, Plaintiffs filed an "emergency" motion for a protective order regarding Defendants' retained Peruvian counsel's attendance at witness interviews in furtherance of the ongoing criminal investigation in Peru, which stemmed from the fraudulent recruitment and document collection practices by Plaintiffs' ground team in the instant litigation.  (ECF No. 607.) While styled as seeking a protective order, substantively, Plaintiffs sought an order prohibiting (*i.e.*, enjoining) Defendants' Peruvian counsel from attending interviews that he had a right to attend under Peruvian law, claiming it would be an impermissible *ex parte* "communication" in violation of Missouri Rule of Professional Conduct 4-4.2.  The motion, although not ripe, was briefly addressed at the March 24, 2022 status conference two days later.  The subsequent written order granted Plaintiffs' motion for an emergency protective order "as stated on the record."  (ECF No.

613; *see* 3/24/22 Hr'g Tr. at 58:15-17; 59:4-6.)  Defendants timely appealed and have continued to comply with the Order during the pendency of the appeal.  (ECF No. 629.)

> ### B.  <u>Plaintiffs' May 23, 2022 Corrected Emergency Motion for Protective Order</u>

On the eve of the next status conference in May—in a similar manner to the March "emergency" motion for protective order—Plaintiffs filed yet another "emergency" motion for protective order, this time blaming Defendants for conducting a "smear campaign" in Peru using local media, releasing otherwise confidential information from this case and intimidating Plaintiffs in the process.  Pointing to these radio interviews done by Mr. Huanay and social media posts from other sources, Plaintiffs sought to delay the verification process, citing unsubstantiated safety concerns.  (*See* ECF No. 652 at 1; 5/23/22 Hr'g Tr. at 16:19-25.)

Defendants subsequently explained at the hearing, when the motion was still unripe, that the supposedly confidential information that Plaintiffs believed had been shared was actually all in the public record.  (5/23/22 Hr'g Tr. at 17:21-18:2.)  Although this Court largely agreed, it also agreed to alleviate Plaintiffs' concerns by suspending the verification process for three weeks to get a better handle on the situation.  (*Id.* at 18:3-15; 21:1-4.)  But moments later, after the Court agreed to pause the proceedings, Plaintiffs changed course and asked the Court to let the verification process continue because so far it had gone off "without a hitch."  (*Id.* at 22:7-23:13.)  Ultimately, the process was concluded without any safety issues reported by any Plaintiffs, demonstrating that these accusations were entirely premature and unjustified.

Nevertheless, Plaintiffs refused to withdraw their motion, so Defendants responded in writing, explaining, among other things, that Plaintiffs provided *no* evidence linking Mr. Huanay's communications in these radio interviews to Defendants.  (ECF No. 662 at 3, 9.)  Defendants also emphasized that the motion was moot given the conclusion of the verification process without incident.  (*Id.* at 6.)  At the July 19 status conference, this Court heard argument, and Defendants

again stressed that while Plaintiffs were accusing Mr. Huanay of being Defendants' "agent," they supplied *no evidence* to support that, as he never even worked for any named Defendant.  (7/19/22 Hr'g Tr. at 30:15-19; 32:25-33:5.)  Ultimately, the Court denied Plaintiffs' motion and stated that it would not "regulate the discussion in Peru on the radio, by social media, or otherwise."  (7/19/22 Hr'g Tr. at 33:9-10; ECF No. 678.)

## ARGUMENT

### A.    Mr. Huanay Is Not an Agent of Any Defendant.

Again now, as with their prior motion concerning Peruvian media coverage of these lawsuits, Plaintiffs have not offered a shred of evidence connecting Mr. Huanay or his referenced actions to any Defendant in this litigation (nor could they).  Instead, Plaintiffs continue to rely on rank speculation about Defendants' purported ties to Mr. Huanay in lodging accusations against Defendants.  Specifically, Plaintiffs' submitted affidavits are silent as to any Defendant's role in these alleged settlement discussions.  At most, one of Plaintiffs' affidavits states that Mr. Huanay identified himself as a "representative of DOE RUN" when he contacted two Plaintiffs' mother via MESSENGER "in 2018 or 2019."  (ECF No. 702-3 at 3.)  The fact that Mr. Huanay may have *claimed* to be a representative of "Doe Run" is not proof that he actually is.  Moreover, a person referencing "Doe Run" in Peru is more likely making reference to Doe Run Peru, and not any of the Defendants.  And given that Defendant DRRC never operated in Peru, it would be improper to assume, as Plaintiffs have done, that Mr. Huanay was taking direction from Defendant DRRC simply if he identified himself as operating on behalf of "Doe Run."  Most importantly, however, the fact of the matter is that Defendants have no means by which to regulate Mr. Huanay's—a former Doe Run Peru employee—speech or representations to anyone, even if false.

In reality, as the Saling and Weiss Declarations reflect, Mr. Huanay is not (and has never been) employed by any Defendant in this action.  (Ex. A, ¶ 5, Ex. B, ¶ 5.)  Rather, as Plaintiffs

acknowledge, he was a former employee of non-party Doe Run Peru approximately *15 years ago*.[2]
(*Id*.)  Further, Mr. Huanay is not Defendants' counsel in Peru or anywhere else.  (*Id*.)  Nor is Mr.
Huanay an agent or representative of Defendants in any capacity whatsoever.  (*Id*.)  Because Mr.
Huanay is not an employee, agent, or representative of DRRC or Renco in any capacity, Mr.
Huanay has no authority to act or speak on Defendants' behalf, and neither DRRC nor Renco
control or direct Mr. Huanay's actions or communications.  (Ex. A, ¶ 6, Ex. B, ¶ 6.)  Further,
Defendants have not entered into any settlement agreements or made any settlement payments to
any Plaintiff or their legal representatives in this litigation through Mr. Huanay or any other
individual.[3]  (*Id*.)

As such, there is no conduct to enjoin.  Further, Defendants have no "records related to any
past, present or future *ex parte* contact with Plaintiffs" in this litigation.  (Mot. at 11.)  And there are
no depositions to take of U.S. attorneys for Defendants (as none are in contact with Mr. Huanay).
These facts alone are dispositive of Plaintiffs' Motion, as neither Defendants nor their undersigned
counsel have any control or influence over Mr. Huanay, or his reported actions or communications.
Accordingly, Plaintiffs have no cognizable claim for relief against Defendants here.

**B.**     **Rule 4-4.2 Does Not Apply to Mr. Huanay Directly or Indirectly.**

As Plaintiffs now appear to concede, the Missouri Rules of Professional Conduct only apply
to (1) lawyers "admitted to practice in [Missouri]" and (2) lawyers "provid[ing]or offer[ing] to

---

[2] To be clear, Mr. Huanay is not currently employed by Doe Run Peru.  In any event, Doe Run Peru,
a Peruvian corporation, is not presently controlled by any Defendant.  Doe Run Peru is in
bankruptcy proceedings in Peru and is under the control of A-1 Consultores, which answers to a
committee of Doe Run Peru's creditors recognized by the Peruvian bankruptcy authority.

[3] Indeed, Plaintiffs' supplied affidavits are silent as to whether any settlement payments have
actually been made to date (or their source). Nor do Plaintiffs attach any of the described settlement
agreements or proof of payment to substantiate their claims.

provide any legal services in [Missouri]."[4]  Rule 4-8.5(a); (Mot. at 7.)  As courts interpreting this

and similar rules have held, Rule 4-4.2 is not so broad as "to prohibit any attorney" in the world

"from speaking to any party represented by counsel in a matter."  *United States v. Gonzalez-Lopez*,

399 F.3d 924, 931 (8th Cir. 2005); *aff'd*, 548 U.S. 140 (2006).  It is instead a "case specific" rule,

the prohibition is "specific to the matter in which the part[ies are] represented."  *People v. Santiago*,

925 N.E.2d 1122, 1129 (Ill. 2010) (construing similar Illinois rule); *see Gonzalez-Lopez*, 403 F.3d

at 565 (Rule 4-4.2 is "limited to attorneys who are involved in the matter and does not apply to an

attorney not so involved").

Presumably, Mr. Huanay is not admitted to practice in Missouri, and Plaintiffs do not allege

that he is offering legal services in Missouri.  More fundamentally, he does not represent

Defendants in any capacity in the U.S., Peru, or anywhere else for that matter.  (*See* Ex. A ¶ 5, Ex.

B ¶ 5.)  He certainly does not represent Defendants in the cases before this Court.  As such,

Plaintiffs' reliance on Rule 4-4.2 is wholly misguided.[5]  Further, to the extent Plaintiffs are arguing

that Mr. Huanay is somehow an agent of undersigned counsel in this matter—the only conceivable

way this rule could extend to him—that is entirely unfounded, as discussed above.  *See* Rule 4-4.2,

comment 4 ("A lawyer may not make a communication prohibited by this Rule 4-4.2 through the

acts of another").  Although Plaintiffs' Motion does not appear to make this stark claim directly, in

light of their stated intent to depose "any U.S.-based attorney who has had any contact with Mr.

---

[4] Plaintiffs essentially conceded on appeal from this Court's March 24, 2022 order that Rule 4-4.2 does "not literally apply" to Peruvian counsel.  Appeal No. 22-1848, Plaintiffs-Appellees Brief, filed Aug. 29, 2022, at 19.

[5] Nor does *U.S. ex re. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252 (8th Cir. 1998), which Plaintiffs have relied on *ad nauseum* since the first "emergency" motion, provide any additional support to the contrary.

Huanay during the past year[,]" Defendants represent to this Court that undersigned counsel have never been in contact with Mr. Huanay for any purpose whatsoever.

### C.      Plaintiffs' Reliance on the All-Writs Act Is Misplaced.

Likely recognizing the futility of relying on Rule 4-4.2 and their inability to meet the requirements for an injunction under Federal Rule of Civil Procedure 65,[6] Plaintiffs also attempt to invoke the All Writs Act as a basis for this Court to issue their requested relief.  However, it is unnecessary for the Court to determine whether it has authority under the All Writs Act to issue the requested order, because, as explained above, there is no applicable conduct to enjoin.  Namely, the All Writs Act does not shift the burden of proof to Defendants:  Plaintiffs still have the burden of showing that the "extraordinary" remedy of issuing a writ is warranted.  *See In re Sch. Asbestos Litig.*, 921 F.2d 1310, 1314 (3d Cir. 1990) (quoting *Kerr v. United States Dist. Court*, 426 U.S. 394, 403 (1976) ("To ensure the use of writs in only 'extraordinary situations,' the Supreme Court has established two prerequisites to the issuance of a writ: (1) that the petitioner have no other 'adequate means to attain the [desired] relief,' and (2) that the petitioner ***meet its burden*** of showing that its right to the writ is 'clear and indisputable.'" (emphasis added).)  Plaintiffs have not met that burden, as explained above, because Mr. Huanay was operating outside of Defendants' or undersigned counsel's control or influence.  Therefore, Plaintiffs' requested relief seeking to enjoin Mr. Huanay

---

[6] Plaintiffs woefully fail to meet the heavy burden associated with any request for injunctive relief. A preliminary injunction may be granted under Federal Rule of Civil Procedure 65(a) only upon a showing "*that [the movant] is likely to succeed on the merits*, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (emphasis added).  Plaintiffs have wholly failed to establish they can succeed on the merits here for the same reasons set forth herein.

from any *ex parte* contact with Plaintiffs and their representatives is moot, as Defendants have no such authority over him.[7]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.


Respectfully submitted this 21st day of October, 2022.

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Andrew T. Bayman, #043342GA
abayman@kslaw.com
Carmen R. Toledo, #714096GA
ctoledo@kslaw.com
Geoffrey M. Drake, #229229GA
gdrake@kslaw.com
Rania Kajan, #924227GA
rkajan@kslaw.com
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100


Tracie J. Renfroe, #16777000TX
trenfroe@kslaw.com
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

---

[7] Although Plaintiffs' Motion and accompanying affidavits are focused on Mr. Huanay's actions or communications, their request for relief is much broader, seeking to enjoin Defendants from engaging in any *ex parte* communications with Plaintiffs or their representatives "whether through Mr. Huanay or any other person(s) retained by Defendants, directly or indirectly" through their "agents, affiliates, or other persons or entities subject to their control or influence[.]"  (Mot. at 9, 11.)  Plaintiffs' far-sweeping request for injunctive relief is neither sufficiently targeted nor ripe for this Court's determination based on the existing record.

*Attorneys for Defendants The Renco Group, Inc., D.R. Acquisition Corp., Doe Run Cayman Holdings, LLC, Ira L. Rennert, The Doe Run Resources Corporation, Theodore P. Fox, III, Marvin K. Kaiser, Jeffrey L. Zelms, and Jerry Pyatt*

**DOWD BENNETT LLP**

Edward L. Dowd, Jr. #28785MO
edowd@dowdbennett.com
Jeffrey R. Hoops, #69813MO
jhoops@dowdbennett.com
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

*Attorneys for Defendants The Renco Group, Inc., DR Acquisition Corp., Ira L. Rennert, and Renco Holdings, Inc.*

**LEWIS RICE LLC**

Thomas P. Berra, Jr., #43399MO
tberra@lewisrice.com
Michael J. Hickey, #47136MO
mhickey@lewisrice.com
600 Washington Ave., Suite 2500
St. Louis, MO 63102-2147
Telephone: (314) 444-7600
Facsimile: (314) 241-6056

*Attorneys for Defendants The Doe Run Resources Corporation, Marvin K. Kaiser, Jeffery L. Zelms, Theodore P. Fox, III, and Jerry Pyatt*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 21st day of October, 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court through the Court's CM/ECF system, which will affect service on all counsel of record by sending a Notice of Electronic Filing.

/s/ *Geoffrey M. Drake*