**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| J.Y.C.C., et al., ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 4:15-CV-1704-RWS |
| Doe Run Resources Corporation, et al., ) ) | (consolidated) |
| Defendants. ) | |

**PLAINTIFFS' MOTION FOR SANCTIONS**

Plaintiffs, through the undersigned counsel, hereby submit this Motion for Sanctions pursuant to the Local Rules of the United States District Court for the Eastern District of Missouri, 12.02, statutory authority under 28 U.S.C. § 1927, and the Court's inherent authority.

As demonstrated below, Defendants deliberately, repeatedly, and surreptitiously violated this Court's Confidentiality Order and then falsely denied their misconduct.

**FACTUAL BACKGROUND**

At the April 23, 2024, Status Conference, the Court took up Defendants' Motion (ECF 819) to Unseal Next Friend Petitions. Plaintiffs' counsel stated that Defendants had previously intentionally violated the Court's Confidentiality Order ("Order") (ECF 60). Specifically, Defendants provided full names, dates of birth, and DNI numbers of the Discovery Cohort Plaintiffs ("DCPs") to the Peruvian prosecutor and convinced the prosecutor to issue a subpoena to Unilabs f/k/a Blufstein Lab (hereinafter "Unilabs") for medical records. Ultimately, Unilabs provided medical records for 26 DCPs to the prosecutor. *See* Tr. at 7-9. The Court, in effect, asked for proof. *See id*. at 9. Counsel explained that Defendants had not denied or even addressed

Plaintiffs' prior filings showing that Defendants had violated the Order.[1] Responding, Andres Rivero, who described his role as Defendants' counsel for "***reporting to the Court about what is going on in the Peruvian case***," flat out denied any wrongdoing: "With regard to these allegations, that's not my understanding at all, Judge . . . *So there **is not a shred of evidence that they've presented**—*I'd be curious to see—because ***that is not my understanding at all of the events related to the Blufstein or Unilabs situation***." *See* Tr. at 11 (emphasis added).

**1. The Court's Confidentiality Order (ECF 60)**

Entered June 21, 2016, the Order was broadly worded to prevent improper disclosure of confidential information ("Confidential Information"), including the names of minor Plaintiffs provided in these cases. As relevant here, without relief from the Order, disclosure of Confidential Information is limited to:

a. the *Receiving Party*;

b. *counsel for the parties* . . . staff employed or retained by such counsel;

c. *in house counsel for the defendants* . . . and other *staff working in the legal department*.

*See* Order, at 3-4, ¶ 10 a.-c. (emphasis added).

**2. Defendants Deliberately and Surreptitiously Violated the Order**

***A. Defendants Provided the DCPs' Confidential Information to Peruvian attorney Peña***

On or about June 3, 2023, Juan Mario Peña Flores ("Peña"), a Peruvian lawyer representing Defendants in Peru, wrote to the Peruvian prosecutor requesting that the prosecutor obtain medical

---

[1] *See* ECF 812 and ECF 827. Although Plaintiffs' counsel didn't delve into the details at the hearing, documents evidencing the violations and corroborating everything represented to the Court were attached as exhibits to ECF 812 and ECF 813, and were referred to again in ECF 827, yet Defendants were silent on these points in their response to those filings.

records from Unilabs for the DCPs (identified by name), eight of whom are minors.[2] *See* ECF 812-1.

It is clear from the record that Mr. Peña is *not* one of the individuals authorized to receive Confidential Information obtained by Defendants in discovery. Defendants have made sworn representations to the Court that Mr. Peña is not its attorney in this case, "does not report to" Defendants' counsel in this case and does not "act as an agent of those attorneys." *See* Affidavit of Crystal A. Saling, V.P. and General Counsel for Doe Run, ECF 625-1. By Defendants' admission therefore, Mr. Peña is not authorized to receive Plaintiffs' Confidential Information, including the names of the DCPs. *See* Order, ¶ 10.

Although Defendants knew that Peña was not authorized to receive Confidential Information, Defendants nonetheless provided the names of the DCPs to Mr. Peña, on or before July 5, 2023. *See* ECF 812-1. Defendants ***did not seek relief from the Order*** to do so. By disclosing the Confidential Information to Peña, therefore, Defendants deliberately and surreptitiously violated the Order.

### B. Defendants Provided the DCPs' Confidential Information to the Peruvian Prosecutor

The Peruvian prosecutor of course is also not a person authorized to receive Confidential Information under this Court's Order. Although Defendants knew that the prosecutor was not authorized to receive Confidential Information, as demonstrated by Peña's June 3, 2023, letter, Defendants authorized and directed Peña to provide the names of the DCPs to the prosecutor.

---

[2] The original Spanish letter has the date of June 3, 2023, typewritten on the last page. *See* ECF 812-1, pdf page 8. The same original letter has stamp indicating that it was "received" (RECIBIDO) by the prosecutor's office on July 5, 2023. *See id.*, pdf page 6. (Unfortunately, the English translation erroneously indicates that the received date was August 16, 2022.) *See id.*, pdf page 3.

3

Defendants also ***did not seek relief from the Order*** to do so. By disclosing the Confidential Information to the prosecutor Defendants thereby, again, deliberately and surreptitiously violated the Order.

### C. Defendants Caused the DCPs' Confidential Information to be filed in the Official "Prosecutor's Folder"

Giving this Confidential Information to <u>anyone</u> in Peru was itself a serious violation of the protective order. But what happened after Mr. Peña obtained the DCPs' Confidential Information is an order of magnitude worse, as it led to even deeper invasions of the privacy of these Plaintiffs and directly led to the DCPs' identities becoming, in effect, public record in Peru.

Defendants knew that any information that was sent to the Peruvian prosecutor would be deposited by the prosecutor into the "Prosecutor's Folder," the prosecutor's official criminal files. That is precisely what happened when Peña sent the June 3, 2023, letter with the names of the DCPs, to the prosecutor. The prosecutor deposited the letter into the Prosecutor's Folder. *See* ECF 812-1.

It is Plaintiffs' understanding that any named defendant in the Peruvian proceedings, as well as any attorney representing any named defendant in those proceedings and possibly others, have access to the entirety of the Prosecutor's Folder. As a result of Defendants' wrongdoing therefore, after June 3, 2023, all of those persons have access to the identities of the DCPs.

Moreover, none of the people who have already received the DCPs' Confidential Information from the Prosecutor's Folder are subject to the Court's Order. Similarly, none of the unknown numbers of people that may receive the DCPs' Confidential Information in the future are subject to the Court's Order. As a result of Defendants' egregious violations of the Court's Order therefore, Defendants have effectively turned the DCPs' Confidential Information into "public records," not subject to any limitation, something this Court obviously would not have

4

permitted even if Defendants had requested modifications of the Order to achieve this outcome. By improperly causing the Confidential Information to become part of the Prosecutor's Folder therefore, Defendants thereby further effected deliberate and surreptitious violations of the Order.

### D. Defendants Provided Additional Confidential Information to Mr. Peña

The prosecutor responded to Peña's initial letter on July 6, 2023, by requesting additional information. *See* ECF 812-2 [first letter]. That same day, Peña responded by providing the dates of birth and DNI numbers of the DCPs. *See* ECF 812-2 [second letter].

Again, although Defendants knew that Peña was not authorized to receive Confidential Information, on or before July 6, 2023, Defendants provided the dates of birth and DNI numbers of the DCPs to Peña. *See id*. Defendants also ***did not seek relief from the Order*** to do so. By disclosing this additional Confidential Information to Peña therefore, Defendants again deliberately and surreptitiously violated the Order.

### E. Defendants Provided Additional Confidential Information to the Peruvian Prosecutor

Once again, knowing that the prosecutor was not authorized to receive Confidential Information, Defendants nevertheless authorized and directed Peña to provide the dates of birth and DNI numbers of the DCPs to the prosecutor. *See* ECF 812-2 [second letter]. Defendants also ***did not seek relief from the Order*** to do so. By disclosing the additional Confidential Information to the prosecutor, Defendants once again deliberately and surreptitiously violated the Order.

### F. Defendants Caused Additional Confidential Information to be filed in the Official "Prosecutor's Folder"

Defendants also knew that information sent to the Peruvian prosecutor would be deposited into the "Prosecutor's Folder." Once again, that is what happened when Peña sent the July 6, 2023,

5

letter with the dates of birth and DNI numbers of the DCPs to the prosecutor, he deposited the letter into the Prosecutor's Folder. *See* ECF 812-2 [second letter].

As a result of these additional violations of the Court's Order therefore, Defendants effectively turned the DCPs' additional Confidential Information into "public records," not subject to any limitation. By improperly causing the DCPs' additional Confidential Information to become part of the Prosecutor's Folder therefore, Defendants again deliberately and surreptitiously violated the Order.

### G. Defendants Misled the Prosecutor and Caused the Prosecutor to Issue a Subpoena to Unilabs for More Confidential Information

The immediate actual consequences of Defendants' egregious violations of the Courts' Order were even worse. Defendants' improper disclosure of the DCPs' Confidential Information to the prosecutor was made in a manner calculated to lead the prosecutor to falsely suspect wrongdoing on the part of Plaintiffs. Although Defendants had received the DCPs' blood test results through the normal course of discovery from Plaintiffs, Defendants wanted to obtain DCP blood test results directly from Unilabs.[3] Defendants, however, knew that Unilabs required a specific authorization form (different than the authorization form the parties had agreed to and that Plaintiffs had provided Defendants as part of the court-ordered verification process) before it would provide records to a third party (here, Defendants). Defendants also knew that they had not provided Unilabs with the form it had requested. Defendants nevertheless instructed or allowed Peña to falsely suggest to the prosecutor that the fact that Unilabs had not provided the DCPs' medical records to Defendant upon request must mean that there was wrongdoing by Plaintiffs. Peña wrote:

---

[3]   Unilabs did blood testing for the 26 of the DCPs.

6

> [T]he lawyers of my defendants have tried to require the blood tests that would supposedly support the impairment of health resulting from a lead infection, however, the laboratory [Unilabs] has refused to share such information, ***so it generates a serious suspicion about the legitimacy of those documents <u>and</u> their results***.

*See* ECF 812-2 [second letter] (emphasis added). Defendants' use of Confidential Information to mislead the prosecutor makes clear that Defendants violated the protective order as part of a larger scheme to falsely impugn Plaintiffs and their counsel in the eyes of the prosecutor.

### H. *Defendants, by Deceiving the Prosecutor, Caused Even More Confidential Information to be Filed in the Official "Prosecutor's Folder"*

As a direct result of Defendants' conduct, even more Confidential Information was then disseminated even more broadly. On July 14, 2023, relying on Defendants' false suggestion of wrongdoing by Plaintiffs, the prosecutor issued a subpoena for the DCPs' medical records to Unilabs. *See* ECF 813-1. Unilabs then provided additional Confidential Information regarding the 26 DCPs—their personal medical records—to the prosecutor. *See* ECF 812-3. As a result of Defendants' deception and wrongdoing, the medical records, as well as the other Confidential Information of the 26 DCPs, have now improperly, and in violation of the Order, become part of the Prosecutor's Folder.

### I. *Defendants Provided Confidential Information to Peruvian attorney Kevin Chaparro Ortiz*

Not surprisingly, the DCPs' Confidential Information was subsequently disseminated even more broadly. On August 8, 2023, the day after Unilabs provided 26 DCP's medical records to the prosecutor, Defendants instructed Kevin Chaparro Ortiz, another Peruvian lawyer for Defendants, to retrieve the DCPs' Confidential Information from the Prosecutor's Folder. *See* ECF 812-4. Mr. Chaparro, like Mr. Peña, is not counsel for Defendants in this case. Nor is Mr. Chaparro otherwise in the category of persons authorized to receive Confidential Information by the Court's Order.

7

*See* discussion in ¶¶ 1 and 2(A), above. Mr. Chaparro therefore is not authorized to receive Plaintiffs' Confidential Information, including the names, dates of birth, and DNI numbers of the DCPs, and medical records. *See* Order, ¶ 10.

Although Defendants knew that Chaparro was not authorized to receive Confidential Information, Defendants (through the Prosecutor's Folder) provided the names, dates of birth, and DNI numbers of the DCPs, and the medical records of 26 DCP to Chaparro. Moreover, Defendants again ***did not seek relief from the Order*** to do so. By disclosing the Confidential Information to Chaparro, therefore, Defendants again deliberately and surreptitiously violated the Order.

### J. Defendants Provided Confidential Information to <u>Anyone Interested</u> in the Peruvian Proceedings, Effectively Turning the 26 DCPs' Medical Records into "Public Records"

Defendants' multiple surreptitious violations of the Court's Order were not limited to the violations that are set out here. Instead, as demonstrated in paragraph 2(C) and 2(H), above, Defendants' egregious violations of the Court's Order have effectively turned the names, dates of birth, and DNI numbers of the DCPs, and the 26 DCP's medical records, into "public records," not subject to any limitation. Defendants thereby further effected deliberate and surreptitious violations of the Order.

### 3. Defendants Falsely Deny That They Violated the Order

At the recent April 23, 2024, hearing Mr. Rivero informed the Court that his "role" is to act as Defendants' counsel for "***reporting to the Court about what is going on in the Peruvian case***." *See* Tr. at 11 (emphasis added). He then falsely denied that there was any wrongdoing by Defendants: "**So there is not a shred of evidence that they've presented** … ***that is not my understanding at all of the events related to the Blufstein or Unilabs situation***." *See id*. (emphasis added).

8

Defendants' false denial of wrongdoing, however, did not there. Mr. Rivero added that Defendants had: "***taken the utmost care, especially after your July order*** [July 7, 2023, Order, ECF 751], Judge, on these questions . . . the specific ***order you made about contact even with a family member of plaintiff***. *See* Tr. at 11 (emphasis added). As demonstrated above, Defendants' insistence that they took "utmost" (or any) care to avoid violating this Court's orders after July 7, 2023, is also false. To the contrary, on August 8, 2023, Defendants sent Mr. Chaparro, one of their Peruvian attorneys, to complete the scheme Defendants commenced on June 3, 2023—to use violations of the Confidentiality Order deceive and cause the prosecutor to become Defendants' agent in their attempt to gather (non-existent) evidence of fraud by the DCPs.

Nor did Defendants' wrongdoing stop there. Defendants' false denials were made on April 23, 2024. And the DCPs' Confidential Information has essentially become a permanent part of the public record.

## **ARGUMENT**

### I.   STANDARD FOR SANCTIONS

The Court has inherent authority to impose sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). The inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). The Court possesses the inherent authority to impose sanctions for bad-faith conduct during litigation. *Chambers*, 501 U.S. at 50 (finding that there is "nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct"). The Eighth Circuit has also recognized that "[w]hen a litigant's conduct abuses the judicial

9

process, . . . dismissal of a lawsuit [is] a remedy within the inherent power of the court." *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir.1992).

While the sanction of dismissal is severe, this Court's inherent authority allows for that outcome on a finding "that the sanctioned party acted willfully and in bad faith." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999). In the event of particularly egregious conduct, this Court has found that dismissal may be the only sanction that will effectively punish an aggrieving party and protect the integrity of a judicial proceeding. *See Knapp v. Convergys Corp.*, 209 F.R.D. 439, 442 (E.D. Mo. 2002) (Hamilton, J.). Defendants' conduct in Peru and deceit before this Court are particularly egregious and present clear and convincing evidence of misconduct befitting of a severe sanction—here, we submit, the dismissal of Defendants' defense to liability, accomplished by striking their pleadings as to the DCPs, and moving to a trial on damages.

## II. DEFENDANTS' CONDUCT IS WILLFUL, IN BAD FAITH, AND THREATENS THE INTEGRITY OF THE JUDICIAL PROCESS

As demonstrated above, Defendants willfully, repeatedly, and surreptitiously violated the Court's Confidentiality Order. Further, rather than make any attempt to correct their inappropriate disclosures of Confidential Information, Defendants caused their counsel to make representations to this Court that Defendants know to be false and misleading.

Defendants' misconduct is particularly egregious because Defendants understand, and to a significant degree fomented, the contentious and polarizing nature of this litigation in the La Oroya region of Peru. Specifically, Defendants have blamed the plaintiffs and their lawyers for the continued closure of the smelter and the corresponding loss of jobs and economic downturn. *See* ECF 651 at 2. Plaintiffs' numerous filings making the Court aware of the intimidation and fear Plaintiffs endure largely due to the disinformation campaign carried out by Defendants' acolytes include:

10

- **Motion for Protective Order, ECF 737** (Protective order to prevent Defendants from engaging in inappropriate communication, intimidation, and scare tactics against the Plaintiffs in La Oroya, including ex-parte communications by Defendants' agent with the parent of a plaintiff, and offers of payment for testimony alleging fraud in the signing of legal documents.);

- **Motion for Protective Order, ECF 651** (Protective order concerning smear campaign perpetrated through local media in La Oroya, Peru. The Motion details that Doe Run Peru's former legal counsel had been using media interviews to disclose confidential information and intimidate Plaintiffs.);

- **Second Notice of Filing Supplemental Exhibit to Motion for Protective Order, ECF 654** (Filing copy of post on the Facebook page of a purported local news company which published details of the time, date, and location of then-ongoing verification process, alerting the community that "questionable men of law" had summoned plaintiffs to meet there in order to "continue deceiving the population." The post was met with angry comments, including one suggesting that a "a little lynching" would help them do things right.);

- **Reply in Support of Motion for Protective, ECF 665** (Explaining that plaintiffs and ground team working in Peru face a pattern of intimidation and harassment because of their involvement in this litigation, for example, post published to the Facebook page of a purported local news company concerning then-ongoing verification process that included a photo of a ground team member in front of the site for verification and characterized these lawsuits as "causing grave economic harm and social crisis.").

Defendants' own counsel have emphasized the need to protect information as a safety precaution when they requested that the Court seal information relating to the criminal investigation in Peru: "*There are significant safety concerns*. I don't know who would be chasing Mr. Romero around the streets with a gun, but we are worried about him. And we want to make sure that doesn't happen. *That is why we asked to seal all of this*. That's why we have asked them not to reveal this." *See* Tr. Hg. 3-24-22, Page 62-63 (emphasis added). The Court readily agreed to Defendants' request, stating: "I'm not going to be a party to endangering someone's safety." *Id*. at 63. Defendants' gamesmanship and total disregard for this Court's order(s) have compromised the well-being, including the physical safety, of the DCPs whose identifying information was released, as well as the integrity of this proceeding. At a minimum, the DCPs have been made even more susceptible to intimidation and harassment. The consequences of this inexcusable

11

misconduct and its impact on this case make severe sanctions against Defendants not just warranted, but necessary.

WHEREFORE, Plaintiffs respectfully request that the Court strike Defendants' pleadings as to the Discovery Cohort Plaintiffs, set the cases for a trial on damages, and provide such other and further relief the Court deems just and proper.

Dated: April 28, 2024

Respectfully submitted,

| **NAPOLI SHKOLNIK** | **RODRIGUEZ TRAMONT + NUÑEZ, P.A.** |
|---|---|
| By: */s/ Patrick J. Lanciotti*<br>Patrick J. Lanciotti, #507523NY<br>360 Lexington Avenue<br>11th Floor<br>New York, NY, 10017<br>(212) 397-1000<br>planciotti@napolilaw.com | By: */s/ Frank R. Rodriguez*<br>Frank R. Rodriguez, #348988FL<br>Paulino A. Nuñez, #814806FL<br>255 Alhambra Cir., Suite 1150<br>Coral Gables, FL 33134<br>(305) 350-2300<br>frr@rtgn-law.com<br>pan@rtgn-law.com |

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on April 28, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: April 28, 2024

                                                                  */s/ Patrick J. Lanciotti*