UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

J.Y.C.C., et al.,                    )
                                     )
     Plaintiffs,                     )
                                     )
     v.                              )
                                     )
                                     ) No. 4:15-CV-1704 RWS
DOE RUN RESOURCES CORPORATION, et    )
al.,                                 )
                                     )
     Defendants.                     )


MOTION AND STATUS HEARING
BEFORE THE HONORABLE RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE
APRIL 23, 2024

APPEARANCES:
For Plaintiffs:        Francisco R. Rodriguez, Esq.
                       RODRIGUEZ TRAMONT & NUÑEZ
                       255 Alhambra Circle, Suite 1150
                       Coral Gables, FL  33134

                       Patrick Lanciotti, Esq.
                       NAPOLI J. SHKOLNIK PLLC
                       360 Lexington Avenue, 11th Floor
                       New York, NY  10017


(Appearances Continued on Page 2.)


REPORTED BY:           SHANNON L. WHITE, RMR, CRR, CSR, CCR
                       Official Court Reporter
                       United States District Court
                       111 South Tenth Street, Third Floor
                       St. Louis, MO  63102
                       (314) 244-7966


PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

APPEARANCES CONTINUED:


For Defendants:        Geoffrey M. Drake, Esq.
                       KING & SPALDING, LLP
                       1180 Peachtree Street, N.E., Suite 1600
                       Atlanta, GA  30309

                       Thomas P. Berra, Jr., Esq.
                       LEWIS RICE LLC
                       600 Washington Avenue, Suite 2500
                       St. Louis, MO  63101

                       Edward L. Dowd, Jr., Esq.
                       DOWD BENNETT LLP
                       7733 Forsyth Boulevard, Suite 1900
                       Clayton, MO  63105

                       Andrés Rivero, Esq.
                       RIVERO MESTRE LLP
                       2525 Ponce De Leon Boulevard, Suite 1000
                       Miami, FL  33134

1      **(THE FOLLOWING PROCEEDINGS STARTED AT 2:03 PM:)**

2           THE COURT:  Good afternoon.  So we are here in

3      J.Y.C.C., et al. against Doe Run Resources, et al.,

4      4:15-CV-1704.  Would counsel make their appearances.

5           MR. RODRIGUEZ:  Frank R. Rodriguez from Rodriguez

6      Tramont & Nuñez on behalf of plaintiffs.

7           MR. LANCIOTTI:  Good afternoon, Your Honor.  Patrick

8      Lanciotti from Napoli Shkolnik on behalf of plaintiffs.

9           MR. BERRA:  Thomas Berra from Lewis Rice on behalf of

10     Defendants Doe Run Resources Corporation and the individual

11     defendants.

12          MR. DRAKE:  Good afternoon.  Geoffrey Drake from King

13     & Spalding on behalf of all the defendants.

14          MR. DOWD:  Good afternoon, Your Honor.  Ed Dowd, Dowd

15     Bennett, on behalf of the defendants.

16          MR. RIVERO:  Good afternoon, Judge.  Andrés Rivero of

17     Rivero Mestre for the defense.

18          THE COURT:  Very good.

19          So we have a few items teed up, but before we get

20     started, are there any issues?  Or anyone wants to set the

21     table?  Go ahead.

22          MR. BERRA:  I think we have a motion pending.

23          THE COURT:  They're never bashful; so . . .

24          MR. RODRIGUEZ:  No.  I'm ready to address --

25          MR. BERRA:  We do have a motion pending, I believe.

1      MR. RODRIGUEZ:  My understanding of the agenda, Your

2 Honor, is the motion to vacate CMO 22.

3      THE COURT:  Correct.  And then we have the motion to

4 unseal Next Friend petitions.

5      MR. RODRIGUEZ:  Right.  Which would you want to --

6      THE COURT:  Let's do the Next Friend petitions first

7 and see where we are.

8      MR. RIVERO:  Yes, Your Honor.  Good afternoon, Judge.

9 Pleasure to appear before you.

10      Your Honor, we have a straightforward, almost

11 ministerial motion that, as the Court, I'm sure, has seen, we

12 addressed in just a few pages.  Very specifically, Your Honor,

13 there are two "dismissed with prejudice" plaintiffs.  One is

14 named Sharida Mishel Baldeon Lirio, the other Dayeli Nicole

15 Zavala Hinostroza.

16      THE COURT:  Of course, that begs the question about

17 the fact they're still under seal.

18      MR. RIVERO:  That's correct, Your Honor.

19      THE COURT:  You mentioned them on the record.

20      MR. RIVERO:  Oh, I apologize, Your Honor.

21      THE COURT:  It seemed oxymoronic to me when I read

22 the motion, but here we are.

23      MR. RIVERO:  My apologies, Your Honor.  An oversight.

24 I apologize.

25      Judge, they are identified as S.M.B.L. and D.N.Z.H.

1   And, Your Honor, I would request that, of course, my error be

2   sealed.

3        THE COURT:  Well, depends on how I rule.  It may be

4   harmless.

5        MR. RIVERO:  Well, Judge, I think, though, the

6   Court's observation's very important and it goes to how this

7   entire circumstance started.  It was the defendants who

8   initially requested that the Next Friend petitions be filed

9   under seal in the original case, conduct of the civil counsel

10  to make sure that the defendants were complying with the

11  Court's requirements.  These at the time -- S.M.B.L. and

12  D.N.Z.H. -- were minors at that time, Your Honor.

13       What's happened since, of course, Judge, is that both

14  S.M.B.L. and D.N.Z.H. aged out so that the basis for the

15  sealing in the first place changed.  That circumstance changed

16  over time.  And then subsequently, Judge, as we state in our

17  motion, each of them was dismissed with prejudice.

18       The case law that we've cited, Your Honor, is quite

19  straightforward.  There is, of course, a right of the public

20  access to the records of this court.  When the circumstances

21  changed so that the basis of sealing no longer exists, Your

22  Honor, then it would be the burden would shift to the

23  plaintiffs to demonstrate a reason why they should still be

24  sealed.  No reason is offered, Your Honor.

25       To the contrary, what the plaintiffs had pointed to

1   is events having to do with the confidentiality order, Your

2   Honor, and I want to distinguish.  We did make a motion as to

3   the confidentiality order.  And we asked the Court, as to

4   specified documents, to relieve the protection of the

5   confidentiality order, which the Court denied.  And that's

6   over, Judge.  That's been brought to you a couple times.

7         This is the unsealing of public -- the documents

8   dealt with there, Judge, have to do with the exchange of

9   documents in our discovery process between the parties --

10  something that's hard to explain to the Peruvian prosecutors

11  who have their interest.  This has to do with documents filed

12  in the court.

13        These two pieces of paper, Judge, or few pieces of

14  paper, are filed with the court.  They were sealed.  They

15  ought now be public record, and that's what we're requesting.

16        And, Judge, if you do not grant the motion -- which I

17  believe the Court should -- I would, of course, ask that my

18  comments, anything we've said in the motion, should be treated

19  as sealed.

20        Judge, it's straightforward.  I'm glad to address

21  anything that might be raised, but I don't think the

22  plaintiffs have met their burden at this point.

23        THE COURT:  Very good.  Thank you.

24        MR. RODRIGUEZ:  Good afternoon.  Judge, you may

25  recall that the defendants, as counsel just stated, asked for

1    some limited relief from your protective order, the

2    confidentiality order, and that was denied a couple of times.

3         They wanted to give the documents to the prosecutor

4    in Peru.  We have -- and I'm losing track of time, but at some

5    point in the not too distant past, we have access to the

6    prosecutor's file in Peru.  And what's happening down there is

7    that the Doe Run lawyers are going over there and saying, hey,

8    look over here.  You should look at these documents and then

9    you get a subpoena asking for the same documents that the Doe

10   Run lawyers are telling them they should be looking at.

11        So, you know, this is totally a product of them.

12   It's not about the public interest and access to records.

13   It's about they want to give the records to the prosecutor in

14   Peru.  And they've already argued twice to Your Honor.  The

15   motion for the relief, the motion for reconsideration -- Your

16   Honor's denied them both times.

17        And I think it's important, when you're taking this

18   latest ask into consideration, that Your Honor also know that

19   they have intentionally violated Your Honor's court order.

20   And they haven't discussed it.  We've brought it up a couple

21   times.  They ignore it.

22        And what they did is particularly, I think, heinous.

23   They went to the prosecutor -- they were trying to get records

24   of our discovery cohort -- plaintiffs -- and there were blood

25   test results in a lab called Blufstein.  I think the name was

8

changed to Unilab.

So they went and asked the lab for records, and the lab says, okay, I need a certain authorization.  I need this format of authorization.

They didn't get what they wanted right away.  So they went to the prosecutor, and they told the prosecutor, hey, we think there's something going on with these records because we've asked Blufstein for the records and they're not giving them to us.  So there must be fraud.  So you should investigate, and you should look into this and get the record for us.

So the prosecutor says, okay.  Well, I need some specifics.  Give me some information about, you know, the kids.

So they go back and give the kids' names, the DNI numbers and information, date of birth to the prosecutor.  So the prosecutor then goes to Unilab, to what used to be called Blufstein, now Unilab, and serves them with a subpoena and tells them, hey, this could be a criminal enterprise going on here, and you need to cooperate.  You need to give us these records.

Then they get the records from Unilab, and now we know that the Doe Run lawyer then goes to the prosecutor's office and reviews the records.  In the meantime, we're getting requests from counsel for cooperation and giving them

```
 1    authorizations so they can go and get the records when they

 2    already have at least the records of our discovery cohort.  I

 3    mean a discovery cohort, you know.

 4            Anyway, I think it should be taken into account, when

 5    they're essentially asking for relief from the order, for Your

 6    Honor to know that they've already violated the order and they

 7    haven't addressed it.  You know, we've brought it up a couple

 8    times, and they haven't addressed our concern in that regard.

 9    So that would be my response, Judge.

10            The Next Friend petitions have names, the names of

11    the guardians, and the addresses of our ex-clients.  And I

12    would not voluntarily give it to them.  If Your Honor orders

13    me, of course I will, but it's not for the public -- you know,

14    for the public to have access.  It's so they can give them to

15    the prosecutor.  That's what they want to do.  And they've

16    asked for that two different times, and Your Honor has denied

17    it.

18            THE COURT:  But -- okay.  You're an officer of the

19    court.  But how do I know?  What information do I have to

20    establish what you just represented to be true?

21            MR. RODRIGUEZ:  They haven't denied it.  We've -- by

22    the way, there may be other filings coming, Your Honor.  But

23    we have made these allegations in our motion, and they have

24    not denied it.  They haven't addressed them.  They have not

25    denied anything that I've told you.
```

10

1        But, by the way, they can't, and, like I said, we

2   have access to the file, and, you know -- there will be

3   another filing.

4        THE COURT:  But on its most simple level, we have two

5   plaintiffs who have aged out.  What is the interest in keeping

6   those records under seal now that they're of the age of

7   majority?

8        MR. RODRIGUEZ:  Other than the fact that they would

9   be giving, you know, those names and the addresses and, you

10  know, the guardians, the names of the guardians -- in some

11  cases parents, other cases guardians -- to the prosecutor,

12  I --

13       THE COURT:  Should we redact it and just release the

14  name?

15       MR. RODRIGUEZ:  I think that would be appropriate.

16       THE COURT:  So at least we know who the plaintiff is

17  or was.

18       MR. RODRIGUEZ:  That certainly, I think, would be --

19  at a minimum, that would be appropriate, Your Honor.

20       MR. RIVERO:  Your Honor, I don't think there's a

21  basis as a public record, but I understand if that's the way

22  the Court rules.  No counter has been provided to this

23  straightforward request.

24       And let me be clear, Judge.  I think the Court knows

25  the only appearance I've made in the case is in the role of

1   both reporting to the Court about what is going on in the

2   Peruvian case and about trying to seek from this Court

3   information for the Peruvian court.  We have never disguised

4   that, Judge, and I'm simply here on a ministerial request.

5           With regard to these allegations, that's not my

6   understanding at all, Judge.  And I want to say we've taken

7   the utmost care, especially after your July order, Judge, on

8   these questions about, in particular, the specific order you

9   made about contact even with a family member of plaintiff.

10          So there's not a shred of evidence that they've

11  presented -- I'd be curious to see -- because that is not my

12  understanding at all of the events related to the Blufstein or

13  Unilab situation.

14          But all of that is to one side, Judge.  We're talking

15  about two documents.  The law's plain.  They should be

16  unsealed.  I don't believe the additional protection's

17  required at this point because they're of age, but we will, of

18  course, obey any ruling you give, Your Honor.

19          THE COURT:  I mean, typically, we'd have a document

20  with multiple people in it; correct?  There's not one petition

21  for each plaintiff.  There may be scores of people on a

22  petition; right?  Or --

23          MR. RODRIGUEZ:  What I recall -- and I have the

24  petition right here, Judge.  But what I recall is it's a name

25  of the minor, the name of the guardian or parents, and the

1    address.  That's the information that I recall being on there.

2            By the way, I just want to say one thing, Judge.  We

3    will, you know -- relatively -- in the relatively near term,

4    I'm going to be filing those documents from the prosecutor's

5    file that confirm everything that I've told you.  And, you

6    know, that, I think, will have ample evidence at that time.

7            Again, I thought that the fact that it was very

8    telling that, when I filed the response and I laid out things

9    that I knew to be true -- because I've seen the prosecutor's

10   file -- that that would get a denial.  There was no denial.

11   Or I'm sorry.  I wouldn't expect a denial because those are

12   the facts, but I think it screams the fact that they didn't

13   deny that those things occurred.

14           MR. RIVERO:  Judge, it is one plaintiff.  It is the

15   two plaintiffs, one each per petition.  So it's not a matter

16   of a list.  My request would be that those be unsealed.  I

17   understand that there's information about the guardian, but

18   that's not the basis for sealing, Judge.

19           The basis initially for sealing at our request was

20   the minor age of the individuals.  And so that's our request,

21   Your Honor.

22           THE COURT:  Can we identify the document numbers as

23   to these two individuals?  Or I can leave that for another

24   day.  Since they've reached the age of majority, their

25   identities should be made known.  If you can't agree on the

1    document numbers, let me know, but then they'll be redacted

2    just to show the name of the person who was at that time a

3    minor, and they may be released on that basis.

4            We can revisit this later if, for some reason, more

5    information becomes relevant.  And we should probably consider

6    some sort of standing order as the folks involved become the

7    age of majority, at which time we substitute their name for

8    their initials in the case going forward.

9            MR. RIVERO:  If I may, Judge Perry has done something

10   on that order in the other case; so I do think that what the

11   Court just --

12           THE COURT:  I'm going to leave it to you all to come

13   up with an agreed-upon order, and so I think everyone

14   understands my ruling in that regard.

15           So the case management order.  Who's going to take

16   the lead on that?

17           MR. BERRA:  Good afternoon, Your Honor.  Tom Berra on

18   behalf of the defense.

19           Your Honor, we're here on a specific motion to vacate

20   the case management order; but, frankly, the real purpose of

21   that motion was to have an opportunity to confer with counsel

22   because we had been attempting to do that and frankly had not

23   obtained any information from them about the status of their

24   efforts to bring folks to the United States for the

25   depositions.  We would have preferred not to have been here,

1   but this is where we find ourselves.

2              The process for --

3              THE COURT:  What else would I do today?

4              MR. BERRA:  We have to fill the calendar; right?

5              Your Honor, about a year ago or so when this process

6    began, we volunteered to counsel information relating to how

7    this process went forward in Judge Perry's cases.  I was the

8    person who largely oversaw that process for the defense now

9    about seven years ago when we undertook that process.

10             So we had a great deal of experience with the timing

11   of how the depositions went, the challenges that the parties

12   faced in getting the folks here, and basically just how to get

13   these things completed.

14             There also were a series of orders that had to be

15   entered in that case that were utilized by the lawyers in Peru

16   to get the consulates and the embassies and whatnot to do the

17   things that they need to do to get these folks to the United

18   States.  We provided all of that to counsel.  We basically

19   hand held through that process over the course of several

20   months.

21             We also negotiated a comprehensive case management

22   order at that time that took into account the amount of time

23   that we estimated it would take to get 60 to 70 folks deposed

24   based on the schedule that we utilized in Judge Perry's cases.

25   That formed the foundation of the case management order, and

1   all of the dates then flowed from that.

2           As Your Honor knows, we had to come back up here on

3   several occasions to get extensions of that case management

4   order to the point where the currently operative case

5   management order is CMO No. 22.

6           Under that order, we were set to begin depositions of

7   the plaintiffs and family members yesterday.  There's a

8   three-and-a-half-month schedule built in to take those

9   depositions.

10          When we originally agreed to that timeline -- again

11  believing we'd have 60, 70, maybe more folks to depose -- we

12  looked back at the Judge Perry cases for guidance.  What we

13  did there is we took a series of depositions on a

14  week-on/week-off schedule.  Occasionally, there were two weeks

15  off, depending upon the travel requirements of the families

16  from Peru.

17          There would be a handler that would work with the

18  families, and parents and children would fly here as a group.

19  And we would depose them often on a double track, with

20  multiple lawyers in two different rooms on the same day.  It

21  was a very trying schedule for all concerned, but we got these

22  done, and most of the folks were completed in a window of time

23  that was fairly similar to what we have in this case.

24          Some of the challenges we faced there were that we

25  had to prepare for those folks and doing them in sort of

1    one-off or even small groups did not work very well.

2          The translator situation in St. Louis is very

3    challenging, and it was difficult in that case to get folks

4    that were qualified to be able to translate this dialect.  And

5    sometimes it didn't work.  Depositions that would take an hour

6    often took two to three hours; so we had to build in quite a

7    bit of extra time for the depositions.

8          We had to prepare for them by getting updated records

9    from the plaintiffs that they provided us on the eve of the

10   depositions and allowed us to go forward with up-to-date

11   information.  We discussed all of this with counsel over a

12   series of calls that took place in the fall of 2023.  It was

13   clear to us at the time that there was a lack of understanding

14   on their part about what it would take to actually get their

15   folks to the United States; so we did the best we could to

16   help them out.

17         As we went through the winter, it became apparent

18   that there were continued challenges in obtaining passports

19   and visas, and we continued to extend the schedule.  Several

20   months ago we still had very little information about these

21   folks' abilities to get the documents they needed to get to

22   the United States.  In several conversations with counsel,

23   counsel acknowledged that this was challenging and that, if we

24   all needed to work together to extend the schedule again for

25   CMO 23, we can do that.

1          Based upon those representations, we've laid

2    relatively low, waiting for that process to play out.  We have

3    not engaged the translators or court reporters yet, and we

4    don't have a schedule built to be able to do these depositions

5    yet.

6          As this date was approaching, we reached out to

7    counsel, and we suggested that we get together again to get a

8    status report and to perhaps extend the CMO by maybe a couple

9    of months until we could get a further update on where things

10   stood.  We essentially got no information back from counsel at

11   all.  We got no update.  We had no status call.  Nothing

12   whatsoever.

13          We advised them that, if we didn't get an updated

14   status on this that would allow us to get started, we'd have

15   to file our motion, and that's what we did.  And that's why

16   we're before you here today.

17          In consulting with counsel, Your Honor, just today to

18   try to see if we could work this out, what we essentially

19   proposed was let's just kick the schedule out about three or

20   four months.  Everything will flow off of that again.  We

21   should have enough time by then to understand where we are,

22   and hopefully we can get these folks all in here during a

23   block of time that would start around August 1, give or take.

24          Counsel advised that they have been able to expedite

25   the visa process, which was not initially available to these

1    plaintiffs until sometime in 2025.  They were able to get some

2    of these expedited to the point where they now have visas for

3    about a third of the people that have to come to the United

4    States.  That's very encouraging, and we applaud them for

5    their efforts in that regard.

6           What we suggested then is let's go ahead.  As I said,

7    let's start the schedule around the middle of July or end of

8    July, and we will follow the schedule that we all agreed on

9    six months ago.  From there, we would simply move the

10   deadlines out.  It seems like a very logical approach.  It

11   will give us the time and the opportunity to prepare and get

12   everything lined up that we need to be able to do here in

13   orderly fashion.

14          What both sides agree on is that we don't want to

15   piecemeal these.  It's very challenging to get small groups

16   up.  It's challenging to take a month off and kind of do these

17   over the road.  If we get everybody locked in, it allows the

18   folks down at the embassy to have windows of time that can be

19   told to these folks about when people will come to the United

20   States and when they can be expected to go back home.

21          So we proposed that, and what essentially we've

22   gotten back -- and it's somewhat represented in the papers

23   they filed -- is that they would like us to, to a certain

24   extent, just sort of wing it.  Let's just get started.  We'll

25   take some of these folks maybe in July, and we'll see how it

1  goes, and we'll see how much time we think we need, and then

2  we can go back and see the judge.

3         My humble suggestion was that that's not generally

4  how we do things in this district.  We have case management

5  orders, and we like one set that the parties can work against

6  and that all of the parties, us included, will generally be

7  held to.

8         So the compromised position that we articulated

9  before the hearing, Your Honor, is one I would propose again

10 here in open court, and that is, short of vacating the entire

11 order and revisiting it in toto, let's go ahead and push that

12 order back by about three months and have us start the first

13 week of depositions either the 15th or the 22nd of July and we

14 would then build a three-and-a-half-month window out from

15 there.

16        What we found in the last series of cases is that

17 there are always some stragglers; there are some folks that,

18 for whatever reason, are unable to get to the United States

19 for their depositions.  Sometimes it was illness.

20 Occasionally it was a work challenge.  Something happened.

21 There were a handful of folks that maybe couldn't get up.  And

22 we worked cooperatively with counsel in that case to get them

23 here, even if it was outside the window, and we've assured

24 counsel we would certainly do the same here, within reason, so

25 long as we could get them done in relatively short order.

20

```
1         We simply don't want to wing it, Your Honor.  We
2   don't want to come back here if we don't have to and have
3   piecemeal suggestions and one-offs.  As we've done in the
4   past, we would simply like to enter an order that makes sense
5   for this case that gives all the parties a fair opportunity to
6   prepare and allows us to get these done in a timely way.
7         So, again, as a compromise, we would propose that the
8   new CMO 23 move back the start date of the depositions from
9   what was to be yesterday by about three and a half months or
10  so, three to three and a half months, to start mid-July or the
11  beginning of August.
12        And, Your Honor, I'm happy to answer any questions
13  that you may have; otherwise, that's all I have at this time.
14        THE COURT:  All right.
15        MR. BERRA:  Thank you.
16        MR. RODRIGUEZ:  Your Honor, first, I -- my first
17  point would be that counsel -- and it was simply mistaken.  I
18  would never suggest we wing anything.  I'm not talking about
19  winging it.  Our proposal, our side's position of this has
20  been we're not there yet.  It's premature to ask because we're
21  not sure if we're going to need more time, and we're not sure
22  we may.  I mean, we very well may, but we don't know how much
23  time we're going to need.
24        And I also take exception with, you know, the message
25  in that motion, which is that the plaintiffs haven't done
```

1    anything and -- well, I mean, this is where we are.

2              THE COURT:  I didn't hear that you haven't done

3    anything.

4              MR. RODRIGUEZ:  Well, I --

5              THE COURT:  I just hear that it's typically difficult

6    and it's proven difficult and here we are.

7              MR. RODRIGUEZ:  Okay.  Well, let's talk about where

8    we are.  There's 72 persons that are coming over for these

9    depositions.  There are 64 that are presently scheduled to be

10   deposed.  Of the 72, we have 71 passports.  One gentleman had

11   a problem meeting his appointment, and it got pushed back to

12   late April, I think April 25.  It's coming up this week.  So

13   we're soon to have all 72 with passports.

14             Then we had to deal with the visas.  It's a very

15   lengthy and extensive visa application, as Your Honor may

16   expect.  We now have -- we were concerned because we weren't

17   sure what the reaction would be to our request for expediting

18   the appointments.  You make an application, and then you ask

19   for an appointment.  And if you're, you know, Joe Q. Public,

20   the general public has to wait a year until February, March of

21   2025.

22             What we found out in the very short term is that they

23   were abiding, we were getting cooperation from the embassy,

24   and we were getting appointments days after our application.

25   So now we have 28 applications in hand.  We have 10 more that

1    are -- I'm sorry -- 28 visas in hand, excuse me, out of the 72

2    that are needed.  We have 10 more that are going to be filed

3    applications within this week, and we see no reason that the

4    other applications won't be filed within the next two weeks at

5    the latest.

6            It wasn't my understanding that the CMO said that

7    depositions had to start at the beginning of the period.  My

8    understanding is that the CMO called for a period of time,

9    three and a half months, for those depositions to take place.

10           I have theoretically or hypothetically -- and I

11   discussed it with counsel -- put together a schedule.  I agree

12   wholeheartedly we don't want to piecemeal.  Nobody wants to

13   come all the way over here and start taking depositions of

14   five, six, or seven.  You know, we want a relatively large

15   group at the time when the depositions are started and

16   large -- relatively speaking, large groups every week, as many

17   as can be taken reasonably.

18           In thinking about it and taking a look at and making

19   some assumptions, like the fact that counsel had suggested --

20   and we agreed -- to double-track, makes perfect sense.  We

21   have, you know, roughly 40 hours of depositions in a week.

22   And if you double-track, it's 80 hours or at least close

23   thereto.  It's not -- it wouldn't be unreasonable to expect

24   that you can get three depos done a day by way of average.  So

25   14, by way of average, a week is not unreasonable.

1          And then I calculated if we begin June 10, for

2    example, seven weeks from now, which I think would give

3    anybody -- I mean, I know they want some lead time, but seven

4    weeks is plenty of lead time to get notice of the depositions

5    will start.

6          Now, since then, counsel has said he's not available.

7    And, of course, I respect that fact, and I'm not trying to --

8    one of the things that I've always told counsel, and our

9    side's always told counsel, is that we're not trying to jam

10   him up.  There are these challenges, as Your Honor pointed

11   out.

12         THE COURT:  It would be really hard to jam anybody up

13   at this point in this case.

14         MR. RODRIGUEZ:  No.  Right.  We're not trying to do

15   that.

16         So anyway, as I was saying, had we been able to

17   start, had counsel's schedule permitted for us to start on

18   June 10, for example, and we took every other week off, we

19   could finish.  And that's seven weeks from now.  That's

20   starting seven weeks from now.  At 14 -- I mean, we both agree

21   that we don't want to convene depositions for five people at a

22   time.

23         THE COURT:  Come on up, and let's talk through this.

24         When can we start?  What's reasonable in terms of

25   getting it done?

1          MR. BERRA:  Yeah.  What I suggested out there is what

2     I said here on the record.  I looked at the calendar.  July 15

3     or July 22 is a good starting week.  They have a small group

4     of visa recipients who, for whatever reason, got a smaller

5     window of time to be in the United States.  I think you said

6     it ended July 28?

7          MR. RODRIGUEZ:  Yes.

8          MR. BERRA:  So that would allow us to deal with that

9     group without them having to go back to the embassy to get an

10    extension.

11         The balance of the folks who have received them to

12    date, my understanding is, have visas through the end of the

13    year.  And the rest of them will also have that in their

14    application, which is important, and that's what we did in the

15    last case as well.

16         So I think if we started either the week of the 15th

17    or the 22nd and we built the three and a half months off of

18    that, that would be our proposal, and we simply move the

19    calendar back in that regard.

20         MR. LANCIOTTI:  Your Honor, Patrick Lanciotti for the

21    plaintiffs.

22         Just to clarify the record, I went back to look at

23    our notes.  It's July 20 is when that first group of

24    plaintiffs -- their visas will expire.  So if counsel is

25    suggesting the 15th of July, we would need to --

1          THE COURT:  Can we just get them done before the

2    20th?  I don't want to pick days but --

3          MR. BERRA:  Yeah.  And that's fine.  And that's

4    another thing that I suggested in the hall -- is if we have to

5    get that group done as our first group that week, we can do

6    that.

7          I simply want to continue then to have a calendar

8    that works off of that and goes out three and a half months.

9    So if we started roughly mid-July, you're at mid-August,

10   mid-September, mid-October.  So it's essentially October 31.

11   So our new window goes roughly, give or take, July 15 to

12   Halloween.  It would be the window that I would simply propose

13   we undertake.  And, again, I'm challenged as to why this is

14   controversial.  This is what we've been doing the whole time.

15         MR. RODRIGUEZ:  Well, I don't see any reason why we

16   can't start, you know -- I mean, depending on counsel's

17   schedule, we could start June 10, for example.  All right?

18   There's no reason not to.  He's not available; so maybe June

19   10 doesn't work.

20         But why do we wait -- why do we have to wait until

21   July 15?  Let's get it going as soon as we can.  Let's start

22   as soon as possible.  Let's try to finish these depos as soon

23   as we can, within reason, in a civil manner.  I mean,

24   nobody -- again, as Your Honor pointed out, nobody is trying

25   to jam anybody up.  We'll work together.

1    I just think it -- you know, our view was it's just

2    premature at this point.  I mean, let's see what happens.  We

3    don't know how much time, extra time -- we may need more time.

4    I've always said that.  Our initial --

5        THE COURT:  You're going to need more time.  None of

6    us know why yet, but you'll need more time.

7        MR. RODRIGUEZ:  Probably.

8        MR. BERRA:  I can -- and, Your Honor, again, we

9    started this process a year ago.  With all due respect to

10   counsel --

11       THE COURT:  Oh, no.

12       MR. BERRA:  No, no, no.  It's not even --

13       THE COURT:  Don't ever use "with all due respect."

14   Nothing good comes after that sentence.

15       MR. BERRA:  What I was going to say is that the

16   process itself is challenging, including things outside of his

17   control and ours.  But now, all of a sudden, it's hurry up; we

18   have to get this done.

19       THE COURT:  Well, at some point we need a sense of

20   urgency.

21       MR. BERRA:  And that's fair.  In any event, again, I

22   think --

23       THE COURT:  You don't want my Ameren treatment, you

24   know.

25       MR. BERRA:  Again, our proposal simply is let's do

```
1    this in orderly fashion.  We'll start this in July.  Let's do

2    the three and a half months from there, and let's work like

3    heck to get them done.  And we're committed to doing that.

4            MR. RODRIGUEZ:  I say we start in June.  I say we

5    start in June.  There's no reason --

6            THE COURT:  I'm not going to get into the day-by-day

7    piece.  You don't want me there.

8            I'm going to do -- we need to start as soon as

9    possible to accommodate the visa issue because there's no

10   reason to have to double-back and do those visas again.  We'll

11   be talking about this in six months, and we don't want to do

12   that.

13           MR. BERRA:  Right.  We can do them in early July.

14   That would be fine.  I don't have a problem with that.

15           THE COURT:  We're talking about two weeks now, you

16   understand.

17           MR. RODRIGUEZ:  July 1, Your Honor, is a Monday.

18   That's the 4th of July; right?

19           THE COURT:  That week is lost.

20           MR. RODRIGUEZ:  Right.  So, I mean, you know, you're

21   already pushing us into whatever, July 8, which, you know --

22           MR. BERRA:  Right.

23           THE COURT:  Well, you're on notice you got to take

24   this group by July 20.

25           MR. BERRA:  Yeah, that's fine.
```

1          THE COURT:  Or they're lost.

2          MR. BERRA:  We understand.

3          MR. RODRIGUEZ:  And we agree that we don't want to

4     take just seven people if we --

5          MR. BERRA:  Oh, I don't agree to that at all.

6          MR. RODRIGUEZ:  Oh, you don't?

7          MR. BERRA:  No.  Again, our position is these

8     depositions should start around the end of July, beginning of

9     August.  If we're going to take this group that has the

10    shortened visa time, we'll work with counsel to do that.  And

11    my proposal would be that the window end at the end of

12    October.

13         MR. RODRIGUEZ:  Is there something magical about

14    July?  Late July, August?  We're April -- we're in April 23.

15         THE COURT:  Well, August is usually miserable.  You

16    just can't get everybody in the same room at the same time --

17         MR. BERRA:  We will here.

18         THE COURT:  -- for a thousand different reasons.

19         MR. RODRIGUEZ:  Your Honor, we're in April 23.  I did

20    the math.  When I thought that June 10 was a viable starting

21    point, that's seven weeks from now, okay?  Why do we have to

22    push it back 11 weeks from now?  It's not -- it just makes

23    sense to me to let's get the process going, and however long

24    it takes, it takes from this point forward.

25         But I think 14 at a time is not unreasonable.

29

1    Essentially, it would be four weeks, four or five weeks.

2            MR. BERRA:  Your Honor, I'm the only person in this

3    room that took any of these depositions in the last case, and

4    I took a lot of them.  I took children, I took parents,

5    grandparents -- none of whom spoke a word of English.  An hour

6    took two or three.  It was very challenging.  The assumptions

7    that counsel is making, I can assure you, do not always hold,

8    and they did not always hold in these cases.

9            This is a very unique series of depositions.  Some of

10   the folks chose sometimes to barely speak.  Other times it was

11   a cathartic day where they would talk for hours.  It just

12   depended.  It was hard to know exactly how these things were

13   going to go.

14           So all I'm suggesting is let's do it the way we did

15   it before.  It worked.  We've provided a significant amount of

16   assistance to get this accomplished, and we're simply asking

17   that this deposition schedule be moved out by that period of

18   time and that the schedule follow accordingly.

19           Again, I don't find this particularly controversial.

20   In June I'm going to be gone a fair amount on a number of

21   different scheduled trips, and I'm going to be overseeing

22   these depositions.  So if we need to start in early July,

23   we'll start in early July.

24           MR. RODRIGUEZ:  Based on what counsel says, the last

25   thing I want to do is intrude on his vacation time or family

```
 1    time.  I mean, that wasn't my intent.  I understood that he

 2    wasn't available by the June 10 or maybe around June 17.  I

 3    thought later June might make sense.  I'm not trying to

 4    intrude on his time.  I didn't know that.

 5            THE COURT:  Well, here's what we're going to do.

 6    Provide the list of folks who have a July 20 deadline, and

 7    those obviously need to be taken by July 20.  I'm not going to

 8    tell you when, but if they're trying to take them all in one

 9    day, I'm sure I'll hear from you.

10            And then I will extend the deadline to get them all

11    completed to October 18.  And work out a schedule for now

12    through then.

13            MR. BERRA:  Okay.

14            THE COURT:  Then we'll see where we are and push the

15    other deadlines back accordingly.

16            MR. BERRA:  Thank you, Your Honor.

17            MR. RODRIGUEZ:  Your Honor, there was one related

18    item that we talked outside.  I talked with counsel about.

19            We actually had 30 applications, and we got 28 visas

20    because two got declined.  And the embassy doesn't tell you

21    why they got declined, but in the questionnaire there's a very

22    extensive questionnaire that asks a lot about criminal

23    background and all this.  And in this case, the guardian, the

24    mother, and the plaintiff, who's her son, have a criminal

25    background.  So I can -- you know, I can only surmise --
```

1   that's the only one.  Everything else has gone very smoothly.

2   That's an issue.

3           So it is one of the defendants' 14.  I don't want to

4   say the name in open court, but I'll share it with counsel.

5           MR. BERRA:  We'll deal with that.

6           THE COURT:  Well, we'll cross that bridge when we get

7   to it.

8           MR. BERRA:  Exactly.

9           MR. RODRIGUEZ:  I didn't want the day to pass without

10  mentioning.  I'm not suggesting we should --

11          THE COURT:  No surprises if we can help it.

12          Anything else on behalf of the plaintiffs?

13          MR. RODRIGUEZ:  I have nothing else.

14          THE COURT:  Defendants?

15          MR. BERRA:  No, Your Honor.  Thank you.

16          THE COURT:  Very good.  Thank you all very much.

17          MR. RODRIGUEZ:  Thank you, Judge.

18          THE COURT:  Just based on that, if you would file a

19  proposed CMO, and we will take it from there.

20          MR. BERRA:  We will.

21          MR. RODRIGUEZ:  Thank you, Judge.

22          THE COURT:  Thank you.

23          **(PROCEEDINGS CONCLUDED AT 2:42 PM.)**

24

25

<u>CERTIFICATE</u>

    I, Shannon L. White, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

    I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

    I further certify that this transcript contains pages 1 through 32 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

    Dated at St. Louis, Missouri, this 24th day of April, 2024.


                /s/Shannon L White
                /s/Shannon L. White
                Shannon L. White, CRR, RMR, CCR, CSR
                Official Court Reporter