**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| J.Y.C.C., et al., | Case No. 4:15-CV-01704 |
| Plaintiffs, | (CONSOLIDATED) |
| v. | |
| THE DOE RUN RESOURCES CORPORATION, et al., | |
| Defendants. | |
| _____/ | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS (ECF 834)**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. DISCUSSION ........................................................................................................................2

    A. The Companies Did Not Violate the Confidentiality Order ......................................2

        1. The Authorizations and Their Embedded Information Do Not Fall Under the Order ................................................................................................................3

        2. Peruvian Attorneys Peña and Chaparro are the Agents of the Companies and Permitted to Have the Authorizations Under Any Circumstances .......................6

        3. The Peruvian Prosecutor's File is Confidential Under Peruvian Law .................6

    B. The Companies Did Not Violate the Court's Sealing Orders ....................................9

        1. Any Information Subject to a Sealing Order Was Unsealed by The Authorizations ......................................................................................................9

        2. Disclosure of the Plaintiffs' Names to The Peruvian Prosecutor Does Not Violate the Spirit or Intent of Any Sealing Order .................................................9

        3. The Information Provided to the Peruvian Prosecutor Was Given in Good Faith ....................................................................................................................10

        4. DNI and Dates of Birth Were Public Records and Not Drawn from the Authorizations .....................................................................................................11

        5. The Dissemination of This Information is Mitigated by the Following Reasons ................................................................................................................................12

    C. The Relief Plaintiffs Seek is Unreasonable and Not Supported by Law ..................13

III. CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Accord United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollars & Sixty-Four Cents ($11,071,188.64) in United States Currency*,
   825 F.3d 365 (8th Cir. 2016) ...........................................................................................14

*Baker v. General Motors Corp.*,
   86 F.3d 811 (8th Cir. 1996) ............................................................................................13

*Baker v. General Motors Corp.*,
   138 F.3d 1225 (8th Cir. 1998) ........................................................................................13

*Chrysler Corp. v. Carey*,
   186 F.3d 1016 (8th Cir. 1999) ..................................................................................13, 14

*Comiskey v. JFTJ Corp.*,
   989 F.2d 1007 (8th Cir. 1993) ..................................................................................14, 15

*DiMercurio v. Malcom*,
   716 F.3d 1138 (8th Cir. 2013) ........................................................................................14

*Edgar v. Slaughter*,
   548 F.2d 770 (8th Cir. 1977) ..........................................................................................13

*First Gen. Res. Co. v. Elton Leather Corp.*,
   958 F.2d 204 (8th Cir. 1992) ..........................................................................................15

*Forsythe v. Hales*,
   255 F.3d 487 (8th Cir. 2001) ..........................................................................................15

*Rodgers v. Curators of Univ. of Mo.*
   135 F.3d 1216 (8th Cir. 1998) ........................................................................................14

**Foreign Materials**

Peru's Crim. Proc. Code, Art. 324 ...........................................................................................7

I.  INTRODUCTION

Plaintiffs make the serious allegation that the Companies,[1] represented by Rivero Mestre LLP ("RM"), have "deliberately, repeatedly and surreptitiously violated" a protective order of this Court "and falsely denied it." Pls.' Mot. Sanctions at 1, ECF 835 [hereinafter Mot.]. These allegations are not true, as we demonstrate. Then, we go one step further, addressing whether there were violations of the Court's sealing orders (which the plaintiffs' motion does not allege, but which we have investigated), to demonstrate there were not or that, if there were, they were slight, technical, and not consequential.

At heart, plaintiffs' motion rests on the misplaced assertion that "Defendants . . . intentionally violated the Court's Confidentiality Order . . . ." Mot. at 1.[2] But none of the information provided to Peruvian law enforcement was subject to the Order and contrary to the plaintiffs' characterization that the Order is "broadly worded," it is anything but broad. Instead, it narrowly and clearly delineates the particular documents and information that fall within its ambit. The fact of the matter is that the full names, dates of birth, and DNI[3] numbers of the Discovery Cohort Plaintiffs ("DCPs") that were produced through authorizations by the plaintiffs to the Companies were not subject to the Order. This is because the authorizations were not marked, designated, or—as plaintiffs' counsel conceded in open court—*meant* to be confidential. Further, the Peruvian prosecutor's file is confidential and not accessible to the public (indeed, plaintiffs' counsel accessing of the file was wrongful) so there was no wide disclosure. The motion for sanctions should be denied.

---

[1] We refer to the defendants, The Renco Group, Inc. and The Doe Run Resources Corporation, as the "Companies."
[2] We refer to the Court's Protective Order of June 21, 2016 (ECF 60) as the "Order."
[3] The *Documento Nacional de Identidad* ("DNI") is the national identity number assigned to each Peruvian citizen.

The information at issue here also is not subject to the Court's sealing orders—which plaintiffs' motion does not even address, but which we do examine out of full regard for the Court.  As discussed below, the information at issue was provided to the defendants for the express purpose of disclosing it to third parties and that was exactly what plaintiffs' counsel understood would be done with that information.  In addition, providing information to law enforcement on a confidential basis could hardly be more than a technical violation that does not offend the purpose and spirit of any such sealing order.[4]

## II.   DISCUSSION

### A. The Companies Did Not Violate the Confidentiality Order

To determine what proprietary and confidential information may be subject to protection under the Order, we examine its clear instructions. Order ¶ 18 ("It is expressly understood by and between the parties that . . . the parties shall be ***relying on the terms and conditions*** of the Order.") (emphasis added). Furthermore, only documents produced in the litigation are within the ambit of the Order. Order ¶ 2.

The Order is not "broadly worded" as plaintiffs claim. Mot. at 2. The term "confidential information" is defined as information "that the Producing Party believes in good faith

---

[4] Even aside from its misrepresentations, the outraged sanctimony of plaintiffs' motion rings hollow. The Companies submitted literal reams of evidence irrefutably establishing that agents of plaintiffs' counsel engaged in serial fraud on the Court including forging documents, bribing Peruvian government officials (notaries), and falsely inducing plaintiffs to bring claims. The Companies moved the Court for targeted, reasonable sanctions (prohibiting plaintiffs' counsel's agents named in the Peruvian investigation from participating in this case; ordering plaintiffs' counsel to terminate those agents' employment; and requiring plaintiffs' counsel to identify, identify the source of, and explain forged documents produced in the case). The Court declined. After having vehemently opposed moderate, targeted sanctions for their objectively egregious behavior, plaintiffs' counsel's current request—that the Companies suffer the most extreme sanction for what is, at most, a technical violation of an order without an impact—should be seen for what it is, pure gamesmanship.

constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c) . . . ." Order ¶ 6. The Order does not sweepingly protect all materials or documents and expressly disclaims that approach, stating that "[n]othing contained herein shall be construed to allow global designations of all materials or documents as 'Confidential Information.'" *Id*. ¶ 7. In fact, to avoid this exact misreading, the Order makes clear that:

> Specific documents and discovery responses produced by a Producing Party may be designated as containing Confidential Information by marking the documents with any of the phrases "Confidential," "Highly Confidential," "Confidential Information - Subject to Confidentiality Order," or "Confidential – Subject to Protective Order" without obscuring any part of the text. Such a designation shall subject the document and its contents to this Order.

*Id*. ¶ 8. The only other alternative to cause designation is a "cover letter generally referring to such information." *Id*. ¶ 9. Therefore, these terms and conditions must be met for information to fall under the Order.

### *1. The Authorizations and Their Embedded Information Do Not Fall Under the Order*

Plaintiffs claim that the Companies intentionally violated the Order by obtaining the full names, dates of birth, and DNI numbers of 28 DCPs through discovery and then releasing that information to multiple persons. Mot. at 1-8. However, detail and context omitted by the motion are necessary to understand why these allegations are incorrect.

On April 8, 2022, the Court ordered plaintiffs to provide the Companies with authorizations to collect medical records of the initial trial pool plaintiffs ("ITPs"). ECF 622.[5] Thereafter, plaintiffs and the Companies emailed for almost a whole year, from May of 2022 to March of 2023, about the status and procedure for production of the authorizations. On March 9,

---

[5] At this time, RM was not involved in this litigation or in any representation of the Companies in Peru.

3

2023, plaintiffs at last sent an email to the Companies that included a share link containing the first version of the authorizations.[6] Nowhere in that email, email subject line, or share link was there any designation that the authorizations or the information embedded were "Confidential," "Highly Confidential," "Confidential Information - Subject to Confidentiality Order," or "Confidential – Subject to Protective Order." The documents themselves were not stamped with any designations and did not have a cover letter.

On March 15, 2023, the Companies followed up to tell plaintiffs that there were missing authorizations for specific plaintiffs and, on March 23, 2023, plaintiffs re-sent a share link containing the missing authorizations. Again, none of these emails, email subject lines, or share links had any confidentiality designations or any reference to the Order. Therefore, based on the plain language of the Order itself, plaintiffs cannot now claim that the authorizations or the information embedded in them are "confidential information" under the Order. The unsupported assumption plaintiffs now make is exactly why the Court emphasized that the Order should not be "construed to allow global designations of all materials or documents." Order ¶ 7.

Further—while noting that by their very nature the authorization, meant to be shared with third parties, can hardly be confidential—plaintiffs cannot continue to argue that the authorizations and the information within them are confidential. Plaintiffs' counsel, Frank Rodriguez, stated in open court that "we agreed in our proposal that we would have our clients sign authorizations so that [defendants] can look at whatever documents they wanted to." Mar. 24, 2022 Hrg. Tr. at 35:2-4, ECF 618. He elaborated: "[o]ur suggestion is we will sign -- every one of the 108 [] will sign authorizations, and they can go get whatever documents they want . . .

---

[6] RM was not involved in authorization gathering, negotiation, or use and therefore did not know any non-public information about the process.

4

[and] ***they can do whatever they want if they feel that any of those documents are suspect*** from the 108." *Id.* at 44:6-11 (emphasis added). [7]

It is certain that plaintiffs never did anything to invoke the Order regarding these authorizations and cannot now claim they did. And even if Mr. Rodriguez did not mean what he said, inviting the Companies broad use of the documents, the Companies' probe into plaintiffs' counsel's alleged fraud has been no secret.

The producing party, here the plaintiffs, did not subject the authorizations to the Order and expressly exempted them from any confidential status. Therefore, plaintiffs cannot now claim the Order was violated. For this reason alone, the motion for sanctions should be denied.

Further, RM reasonably relied on the Order to determine what is considered confidential information and reasonably understood that confidential information would be designated, noted, or labeled as such. The authorizations were not designated or labeled, and plaintiffs' counsel plainly stated they weren't to be considered confidential. Thus plaintiffs are estopped from changing their tune and now demanding sanctions. If, despite all this, the Court were to *now* decide that the authorizations fell, or should have fallen, under the Order, RM could not reasonably be found to have violated it intentionally.

---

[7] Plaintiffs have recognized previously that the Order does not cover information such as names They previously filed a motion for protective order to protect plaintiffs' identities, requesting the Court to enter "an addendum to the previously-issued Protective Order (Doc. 60) specifically precluding the disclosure of Plaintiffs' names and Plaintiffs' parents' names outside of this litigation." ECF 256 at 8. The Court granted plaintiffs' oral motion to withdraw this motion and denied their motion. ECF 277.

5

### *2. Peruvian Attorneys Peña and Chaparro are the Agents of the Companies and Permitted to Have the Authorizations Under Any Circumstances*

Plaintiffs also argue that it was a violation of the Order for Peruvian counsel for the Companies to receive information from the authorizations. Mot. at 2-3, 5, 7-8. But, even if the authorizations were subject to the Order—and they were not—the Order clearly states:

> Information designated as Confidential Information pursuant to this Order may only be shown and delivered to the following people:
> ***
> b. counsel for the parties, including their clerical, secretarial and other staff employed or retained by such counsel.

Order ¶ 10.

In other words, even information ***designated*** as confidential information—the authorizations were not—can be shared with the Companies' counsel. Peruvian attorneys Juan Peña Flores and Kevin Chaparro Ortiz, although not counsel in the Missouri litigation, and not under the direction of Missouri trial counsel, are attorneys for the Companies representing their interests in Peru—including with respect the Peruvian prosecutor's investigation.[8] *See* Declaration of Juan Mario Peña Flores ("Peña Decl.") at ¶ 4 attached as Exhibit 1. Therefore, their possession of this information did not violate the Order, which does not limit distribution to attorneys appearing in the litigation, but includes the Companies' attorneys more generally.

### *3. The Peruvian Prosecutor's File is Confidential Under Peruvian Law*

Plaintiffs' motion hyperbolically misrepresents that the Companies ". . . effectively turned the DCPs' Confidential Information into 'public records,' not subject to any limitation . . . [b]y

---

[8] These Peruvian lawyers do not take direction from litigation counsel in this matter, but from the Companies and RM—which did not begin its representation of the Companies until August 2022, when it was engaged to represent the Companies as to the criminal investigation in Peru. Every word of Doe Run General Counsel Crystal Saling's April 15, 2022 declaration—filed under seal and prepared some *four* months before RM was engaged—is true, contrary to the spurious allegation of the Motion. Mot. at 3.

6

improperly causing the Confidential Information to become part of the Prosecutor's Folder" (Mot. at 4-5) and that "[a]s a result of these additional violations of the Court's Order therefore, Defendants effectively turned the DCPs' additional Confidential Information into public records,' not subject to any limitation." Mot. at 6. In fact, as plaintiffs must know, under Peruvian law, that information is strictly confidential and cannot be disseminated to the public.

Peru's Criminal Procedure Code, Article 324 provides that preliminary/preparatory criminal investigations (like the current investigation) are confidential. *Artículo 324 del Código Procesal Penal Peruano* [Peru's Criminal Procedure Code], *translated in* Peru - Código Procesal Penal, Legal Atlas ("The investigation is reserved. **Only the parties** may find out about its content directly or through their lawyers duly accredited in the records.") (emphasis added).[9] In fact, plaintiffs in the related action previously took the position that nothing from the prosecutor's file should be shared on the public docket, a position plaintiffs now abandon for their own convenience.[10]

Plaintiffs' misrepresentations about alleged public access to this information, a central contention in their motion, ignores this basic fact. Mot. at 8-9. It is settled that the public ***does not have access to the prosecutor's file***, and it is only accessible by the parties in the criminal matter in Peru. In fact, neither the plaintiffs themselves *nor* their counsel—who clearly reviewed the prosecutor's file to prepare the motion—should have access to that file as they are ***not*** yet

---

[9] *See also* ECF 777 n.1 ("Article 324 of Peru's Code of Criminal Procedure provides that preliminary/preparatory criminal investigations are confidential."); Mem. and Order at 2, *A.O.A. v. The Doe Run Resources Corporation* ("*Reid*"), Case No. 11-CV-00044-CDP, ECF 1366 (same); *CAA Sports LLC v. Dogra*, No. 4:18-CV-01887-SNLJ, 2018 WL 6696622, at *1 (E.D. Mo. Dec. 20, 2018) (explaining that "honor[ing] the rules of sovereign nations" is an "exception to th[e] general rule" of public access to litigation in the courts") (citing *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 419-20 (7th Cir. 2014)).
[10] *See* Sealed Reply in Support of Plaintiffs' Mot. to Stay Disc. Pending Appeal, *Reid*, ECF 1347 n.5.

parties to the criminal matter in Peru. Their attachment of items from the file as exhibits violated Peruvian law.

Presumably plaintiffs were given the prosecutor's confidential file by Victor Careaga, a disbarred Florida lawyer who is a paralegal in Mr. Rodriguez's office and one of the *imputados*—a party to the Peruvian criminal case. But that relationship does not authorize Mr. Rodriguez or any plaintiffs' counsel to access the prosecutor's file. Both Mr. Careaga and Mr. Rodriguez have been adamant and consistent in declaring that Mr. Rodriguez is not Mr. Careaga's lawyer and does not represent him in any of the various proceedings in the United States or Peru, where Mr. Careaga has counsel.[11]

Plaintiffs also argue that the Companies acted in a "manner calculated to lead the prosecutor to falsely suspect wrongdoing on the part of Plaintiffs," which purportedly caused the Peruvian prosecutor to issue a subpoena for the DCPs' medical records to Unilabs f/k/a Blufstein Lab ("Unilabs"), who then provided "additional Confidential Information regarding the 26 DCPs—their personal medical records—to the prosecutor." Mot. at 6-7. Again, this misses the point on two levels. The information supplied by Mr. Peña to the Peruvian prosecutor was not subject to the Order (*supra* Section II.A.1.) and, as has been well established, the Companies—as the victims of the crimes the Peruvian prosecutor is investigating—are permitted, indeed required, to cooperate with the Peruvian prosecutor.

---

[11] *See* Tr. of Status Conference at 50:7-11, *In Re: The Renco Group Inc. and the Doe Run Resources Corporation,* ("1782 Action"), Case No. 1:22-cv-21115-JAL (SDFL) (ECF 50) ("Mr. Kuntz: . . . Mr. Careaga and Frank Rodriguez have been adamant from the beginning that he is not represented by them. THE COURT: I know. I agree. I know."); Order, 1782 Action (ECF 70 at 8) ("[T]he Law Firm Intervenors have reiterated and have been adamant that they do *not* represent Careaga.") (emphasis in original).

8

### B. The Companies Did Not Violate the Court's Sealing Orders

Plaintiff's motion relies entirely on the contention that the companies' conduct violated the Order, and no claim is made that sanctions are warranted for violation of any other order, such as those sealing certain materials. But even if plaintiffs had made such a claim, it would be without merit.

#### 1. *Any Information Subject to a Sealing Order Was Unsealed by The Authorizations*

As an initial matter, at issue here is only whether the names of the 28 plaintiffs were subject to the Court's sealing orders, although we note that, as of today, only the names of the nine minor plaintiffs can be salient, since adult plaintiff names are no longer subject to sealing. All of those plaintiffs' DNI numbers and dates of birth are public record in Peru and are already publicly available.

But whatever that status of those plaintiffs' names may have been, insofar as they were intended to be shared with third parties outside the litigation they were, *de facto*, unsealed by the Court's order on the authorizations, by the plaintiffs' provision of them, and by Mr. Rodriguez's in-court statements making it clear that these records and the names they contained were amenable to any use to which the Companies chose to put them. All concerned, most particularly plaintiffs' counsel, understood that these names no longer were sealed.

#### 2. *Disclosure of the Plaintiffs' Names to The Peruvian Prosecutor Does Not Violate The Spirit or Intent of Any Sealing Order*

Just as the plaintiffs' motion makes clear, the underlying purpose in sealing plaintiffs names at any point in this litigation was ". . . to protect the well-being, including the physical safety, of the DCPs," the "integrity of this proceeding," and to avoid "intimidation and harassment" of the DCPs. Mot. at 11.

9

The provision of those names to a Peruvian law enforcement official, for use in a criminal investigation, and inclusion in a confidential file can hardly be understood to have violated that spirit or purpose. In fact, the only people with legitimate access to the file are the prosecutor, the Companies (as victims of the crimes under investigation), and the *imputados*—the accused (all of whom are or were agents of plaintiffs' counsel in the first place). Simply put, inclusion of those plaintiffs' names in the prosecutor's confidential file does not begin to implicate the concerns plaintiffs' motion describes and there has been no showing that any plaintiff suffered any negative consequence at all.

### 3. *The Information Provided to the Peruvian Prosecutor Was Given in Good Faith*

Since as far back as 2020, the Companies had compiled substantial evidence of wrongdoing by plaintiffs' team through the solicitation of named plaintiffs, including evidence that medical and other records had been manufactured. ECF 761-3; ECF 542-2. The evidence obtained by the Companies was submitted to this Court in the RM Report. ECF 761-3. Meanwhile, the Peruvian prosecutors were and still are conducting their own investigation, which led them to issue an *imputación*, a formal charge of wrongdoing of a provisional nature, naming 12 targets, including former plaintiffs' lawyer and current paralegal Mr. Careaga.

Thereafter, the Court ordered plaintiffs to provide the Companies with the authorizations to collect medical records of the DCPs. The Companies had gone through a frustrating, year-long effort to obtain these authorizations in useful form from plaintiffs. *See supra* Section II.A.1. After plaintiffs produced the authorizations, the Companies' investigators charged with collecting records had their first contact with Unilabs on June 13, 2023. *See* Declaration of Tania Benedit ¶ 5 ("Benedit Decl.") attached as Exhibit 2. During the visit, a Unilabs representative advised the Companies' investigators that Unilabs' record search revealed that only 1 of the 26

10

DCPs who was supposed to have a record in their system actually had one. *Id.* ¶ 6. No records existed for 25 DCPs who *should* have had Blufstein lab records, even though Unilabs retained records dating back to 2014. *Id.* ¶ 7.

The Unilabs representative told investigators that Unilabs would investigate this issue further. *Id.* ¶ 8. Believing that the absence of records at the lab, together with other indicia of forgery on the as-produced records, were evidence of wrongdoing by plaintiffs' team, the Companies, as victims of continuous fraud, supplied the names to Peruvian attorney Peña who then sent a letter asking the prosecutor to issue a subpoena to Unilabs. *See* Peña Decl. ¶ 5. The Companies' intent was to obtain copies of the records that were the subject of the authorizations, not to violate any sealing order. Further, 19 of the 28 DCPs were adults at this time and their names were not subject to continued sealing. *See* ECF 833, 844.

### 4. *DNI and Dates of Birth Were Public Records and Not Drawn From the Authorizations*

The Peruvian prosecutor has the sole discretion to conduct his investigation as he sees fit, whatever a crime victim may request. After Mr. Peña's July 5, 2023, letter, the prosecutor sent an order to Mr. Peña *requiring* him to supply additional information, such as the correct spelling of names and DNI numbers of the persons. Peña Decl. ¶ 6. Mr. Peña then used the public RENIEC computer system in Peru—and not the authorizations—to find this publicly available information. *Id.* ¶ 10.

This information was sent to the Peruvian prosecutor and ended up in the prosecutorial file, which is sealed to all but the parties and their counsel, ensuring no public distribution. Further, there has been no repetitive behavior by RM or the Companies and no subsequent contact between the Companies and the Peruvian prosecutor regarding the medical records. If

11

there was fault, RM's action under any sealing orders was in error and not an intentional act in bad faith that could be subject to the severe sanctions that plaintiffs seek. Section II.C, *infra*.

### 5. *The Dissemination of This Information is Mitigated by the Following Reasons*

Nineteen of the 28 DCPs were adults at the time of the disclosure. Insofar as a purpose of the sealing orders was to protect minors' identities (ECF 41), the Court has unsealed the names of all plaintiffs as they reach adulthood. ECF 844. The same unsealing protocol—unsealing adult plaintiffs names on a rolling basis—has been in place in the companion case, *Reid*, for more than a decade, since July 2013. *Reid*, ECF 125. Also, contrary to the plaintiffs' assertions, the DNI and date of birth information of DCPs was not drawn from the authorizations but, instead, from the RENIEC system in Peru, which is public information. *See* Peña Decl. ¶¶ 8-10.

No further disclosure is alleged or has occurred. In every instance, RM has done its best to comply with every restriction the Court has imposed regarding the use of information in this proceeding, while still seeking to (1) investigate the Companies' legitimate claims of plaintiffs' counsel's wrongdoing, and (2) cooperate with the Peruvian prosecution.

It also bears noting that the April 23, 2024 hearing was set for a very limited purpose with respect to RM's work—the Companies' motion to unseal two next friend petitions. ECF 819. When plaintiffs' counsel raised general allegations during that hearing that the Companies had violated the Order—not at issue in the hearing—Mr. Rivero responded: "That's not my understanding at all, Judge . . . So there's not a shred of evidence that they've presented—I'd be curious to see—because that is not my understanding at all of the events related to the Blufstein or Unilab situation." Apr. 23, 2024 Hrg. Tr. at 11:5-13, ECF 841. Mr. Rivero was reporting, in that moment, his view of arguments and understanding of facts that were not related to the motion to unseal next friend petitions, which was then at issue. As it turns out, his understanding

12

that no violation of the protective order occurred with respect to the authorizations or lab records was entirely correct, as demonstrated above. There was no "false denial of wrongdoing." Mot. at 8. The fact that RM's own subsequent close investigation of the events, reported here by way of full disclosure, revealed that nine of the names given to the Peruvian prosecutor may have been subject to a sealing order—not the protective order as plaintiffs alleged—doesn't change the facts or render Mr. Rivero's statements false.

### C. The Relief Plaintiffs Seek is Unreasonable and Not Supported By Law

Plaintiffs demand the imposition of the following draconian sanctions: "the dismissal of the Companies' defense to liability, accomplished by striking their pleadings as to the DCPs, [] moving to a trial on damages," and "other and further relief the Court deems just and proper." Mot. at 10, 12. Although courts plainly have the inherent power to impose sanctions, the severity of striking the Companies' defenses, which is analogous to dismissing a plaintiffs' lawsuit, may occur only on a finding that "that sanctioned party acted willfully and in bad faith." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019-20 (8th Cir. 1999). Courts "review such severe sanctions more closely because '[i]n our system of justice the opportunity to be heard is a litigant's most precious right and [that right] should be sparingly denied.'" *Id.* at 1020; *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977) (Entry of default judgment should be "a rare judicial act."). The Eighth Circuit Court of Appeals notes there "is a ***strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court.***" *Id.* (citing *Baker v. General Motors Corp.*, 86 F.3d 811 (8th Cir. 1996), *remanded on other grounds*, 138 F.3d 1225, 1226 (8th Cir. 1998)) (emphasis added).

In *Chrysler Corp*, the Eighth Circuit Court of Appeals, affirming sanctions against Chrysler's former counsel, made clear that sanctions were justified by "***a systematic pattern of abuse*** and '***blatant disregard of the Court's orders and the discovery rules***.'" *Id.* (quoting the

13

district court's findings) (emphasis added). Specifically, the district court "concluded that, not only was the letter plainly responsive to multiple requests," but "so too were many, if not all, of the other documents obtained . . . ." *Chrysler,* 186 F.3d at 1020. The court held that the discovery responses by former counsel "were ***clearly false*** in regard[] to at least those documents, and probably more," and held that the responses and deposition testimony were "***perjurious and not credible*** . . . ." *Id.* (emphasis added).

Although the Companies here did not commit the violations plaintiffs complain of, even if they *had*, those errors would not even remotely approach the level of wrongdoing, through perjury and a systematic pattern of abuse, that occurred in *Chrysler Corp. See, e.g., Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998) ("[T]he sanction imposed by the district court must be proportionate to the litigant's transgression."). *Accord United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollars & Sixty-Four Cents ($11,071,188.64) in United States Currency*, 825 F.3d 365, 369 (8th Cir. 2016) (affirming striking the claims of party that "obstructed discovery" by "willfully disobey[ing] ***three separate orders*** directing its corporate officers to attend properly noticed depositions" and ***continuing to do so after being given one more chance***) (emphasis added).

The cases are legion in supporting striking pleadings *only* after extremely serious, willful, and chronic discovery violations committed in bad faith. *E.g., DiMercurio v. Malcom*, 716 F.3d 1138, 1140 (8th Cir. 2013) (Such dismissals are proper "only when there has been a clear record of delay or contumacious conduct by the plaintiff" and "we have admonished [that] this ultimate sanction should only be used when lesser sanctions prove futile.") (cleaned up); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009-10 (8th Cir. 1993) (affirming default judgment against a party that showed a "***total failure*** to comply with ***numerous court orders***," and discovery requests,

14

and failed to appear for scheduled depositions) (emphasis added); *First Gen. Res. Co. v. Elton Leather Corp.*, 958 F.2d 204, 205 (8th Cir. 1992) (affirming dismissal after the court ordered plaintiffs twice to respond to discovery, gave them an extension on each occasion, and expressly warranted that failure to respond would result in dismissal) (per curiam); *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (affirming default judgment sanction when defendants "complete[ly] fail[ed] to engage in discovery," "failed to appear at depositions and hearings set by the court," and "failed to engage counsel" for 25 months).

Plaintiffs failed to show any systematic or continuous pattern of abuse or blatant disregard of Court orders because no such pattern exists. There was no designation of "confidential information" on the authorizations or the documents, and the information therein was not subject to the Court's Order. *See supra* Section II.A.1. But even if the Court were now to decide that the authorizations were subject to the Order, that single error was not part of any pattern of misconduct, let alone willful or contumacious misconduct. Nor does the Companies' acknowledgment that nine names provided to the prosecutor may have been subject to sealing.

Because of the strong policy against denying a defendant its day in court, and the complete lack of facts that could demonstrate a continuous disregard of Court orders, the sanctions plaintiffs demand should be denied.

### III. CONCLUSION

For all the foregoing good reasons, the Court should deny plaintiffs' motion for sanctions.


Dated: May 28, 2024                                          Respectfully submitted,

                                                             By: */s/ Andres Rivero*
                                                             ANDRES RIVERO
                                                             Florida Bar.: 613819

15

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: receptionist@riveromestre.com

*Attorneys for Doe Run Resources Corp. and The Renco Group, Inc.*

### CERTIFICATE OF SERVICE

I certify that on May 28, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Andres Rivero*
Andres Rivero