**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| J.Y.C.C., et al.,               ) | |
|                                 ) | |
|         Plaintiffs,             ) | |
|                                 ) | |
|  v.                             ) | No. 4:15-CV-1704-RWS |
|                                 ) | (consolidated) |
| Doe Run Resources Corporation, et al., ) | |
|                                 ) | |
|         Defendants.             ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' SECOND MOTION FOR SANCTIONS**

Plaintiffs, through the undersigned counsel, hereby submit this Memorandum of Law in Support of Plaintiffs' Second Motion for Sanctions, as a follow-up to Plaintiffs' Motion for Sanctions ("First Motion") (ECF 834-835), and state:

**Introduction**

As demonstrated in the First Motion and below,[1] since October 2021, when Defendants submitted their "Jones Day Report," Defendants have been on a campaign to disrupt these proceedings by alleging the existence of pervasive fraud in the *Collins* cases. The underpinnings of Defendants' pervasive *Collins*-fraud argument are threefold: 1) an affidavit by Richard Romero ("Romero Affidavit") which has been completely discredited; 2) an affidavit by Miguel Curi ("Curi Affidavit") which outlines conduct that is totally unrelated to the *Collins* cases and is itself suspect; and 3) a Peruvian Criminal Investigation which was initiated solely based on the Curi

---

[1] Plaintiffs previously made most of the arguments presented here (more briefly) in Plaintiffs' Opposition [DE 856] to Defendants' Motion to Compel [DE 852]. Defendants objected that they were not appropriate to be raised in an opposition brief. Plaintiffs disagree, as the matters raised were also directly responsive to arguments raised by Defendants' Motion to Compel, but are resubmitting the arguments in this format to eliminate any technical objection.

Affidavit (and not the Romero Affidavit, as Defendants have tried to mislead the Court into believing).

Defendants' efforts to tie the *Collins* cases to the Peruvian criminal investigation they initiated have centered on the Romero Affidavit. Defendants misleadingly suggested to the Court that Romero's statements were fueling that investigation. They deliberately failed to inform this Court that the Romero Affidavit was *not* presented to, nor filed with, the Peruvian prosecutor at that time. In fact, it was not presented to the Peruvian prosecutor until nearly 17 months later. *See* "Offer of Evidence" to Prosecutor. (Excerpt[2] to be filed under seal.)

Moreover, although *never disclosed by Defendants*, we now know that any probative value the Romero Affidavit—the lynchpin of Defendants' *Collins* fraud allegations—might otherwise have was eliminated when Romero declined to corroborate the Affidavit, or indeed even answer questions about its content, when he was finally questioned about it by a Peruvian prosecutor two years later, in October 2023.

As will be detailed below, this Second Motion for Sanctions focuses on Defendants' persistent lack of candor with the Court and the role this has played in fueling Defendants' successful efforts to disrupt these proceedings and cause Plaintiffs' counsel to needlessly expend significant resources.

---

[2] The "Excerpt" omits only a copy of the Romero Affidavit (first provided to this Court in October 2021 with the Jones Day Report). The Offer of Proof as submitted in Peru in March 2023 included the Romero Affidavit.

2

I.  **Defendants' Gamesmanship Regarding the Peruvian Criminal Investigation and the Romero Affidavit**

    A. **Defendants' False Suggestion That Romero's Testimony / Affidavit Was a Subject of the Peruvian Criminal Investigation**

In October of 2021, Defendants filed the Jones Day Report [filed as Ex-2 to DE 542 (sealed filing)], alleging pervasive fraud in the *Reid* and *Collins* cases. In retrospect, we now know, from the beginning Defendants operated through improper conduct and deceptive messaging.

In 2019, Defendants hired Miguel Curi, who worked on the *Reid* cases in Peru but *never worked on* the *Collins* cases. Curi later signed an affidavit admitting that he (and supposedly others) engaged in wrongdoing, exclusively related to non-*Collins* cases. Obviously not satisfied with allegations of purported wrongs limited to *Reid*, Defendants then hired Richard Romero, in 2020.[3] Romero attended 45 sessions with Defendants or their attorneys, for which he was handsomely compensated. Defendants admitted paying Romero for time spent and costs incurred, minimizing the amounts involved, but failed to disclose that they also agreed to pay for *living expenses for Romero and his family*.[4] After dozens of sessions with Defendants, and faced with a considerable financial inducement (particularly compared with average incomes in Peru), Romero finally agreed to sign an affidavit attesting to purported wrongdoing, but only after Defendants *also* agreed to pay for a Peruvian attorney who would represent him in any criminal proceedings.

---

[3] Romero had also worked for many years on the *Reid* cases before briefly (for two years) working for the *Collins* team until he was fired in 2016.

[4] Those payments did not come to light until Defendants were later required to produce documents to Plaintiffs. Specifically, Defendants gave Romero a one-year minimum contract— akin to a "consulting agreement," including payment to cover purported living expenses. *See* Romero Agreement (to be submitted under seal.)

The Jones Day Report focused primarily on the affidavits of Miguel Curi, who worked on the *Reid* cases but **not on the *Collins* cases**, and on the paid-for hearsay affidavit of Richard Romero. Defendants' Jones Day Report informed the Court[5] that: "Peruvian law enforcement authorities . . . are conducting an ongoing, confidential ***criminal investigation into the conduct described herein.***" Report at 2 (emphasis added). Defendants' clear message to this Court was that the fraud alleged in the Romero Affidavit had tainted the *Collins* cases, and that Romero's allegations had been compelling enough to warrant a Peruvian criminal investigation. Defendants failed to inform this Court that the *Romero Affidavit was not presented to, nor filed with, the Peruvian prosecutor at the time the Jones Day Report was submitted* (in fact, it was not presented to the Peruvian prosecutor until nearly *17 months later*). *See* Offer of Evidence. (Excerpt to be filed under seal.)

Instead of truthfully disclosing that the Romero Affidavit was *not* being considered by the prosecutor, Defendants continually attempted to elevate the significance of the Romero Affidavit as a means to advance their allegations of pervasive fraud in the *Collins* cases. At a status conference hearing a month after filing the Report, Defendants stated:

> [*T*]***here's now a criminal investigation*** unfolding ***by the criminal authorities in Peru, investigating***, as we understand it, ***the activities of <u>these witnesses</u>*** and others.

*See* Nov. 16, 2021, Hg Tr. at 9:21-25 (emphasis added). Worse yet, nearly six months after submitting the Jones Day Report, knowing full well that they still had not provided the affidavit to the prosecutor, Defendants continued their deception. In an affidavit filed solely in the *Collins*

---

[5] The Court may recall that the attorneys who prepared the Jones Day Report refused to testify about it or file an appearance to defend it.

4

case, Defendants referred to "a fraudulent scheme by Plaintiffs' [i.e., *Collins* case] representatives in Peru," adding:

> A criminal ***investigation is now taking place*** in Peru ***with respect to the*** aforementioned ***fraud***.

*See* Affidavit of Crystal A. Saling, Doe Run V.P., [DE 625-1] ¶¶ 3 & 5 (emphasis added).

### B.  Defendants Withhold the Peruvian Criminal Complaint from the Court

Defendants' statements were purposely misleading. When the Report was presented to this Court, the Romero Affidavit was not known to the Peruvian authorities, and thus it played no part in the referenced Peruvian criminal investigation. To the contrary, the Peruvian criminal complaint ("Complaint") filed in Peru relied exclusively on the Curi Affidavit. The Complaint was clear that:

> ***All*** *the facts set forth in this* <u>***complaint***</u> *are based on the* <u>***sworn statements made by***</u> *Miguel Angel* <u>***Curi***</u> *Osorio and* further corroborating ***evidence provided by*** Miguel Angel ***Curi*** Osorio.

Complaint at 3, ¶ II.2 (copy attached as Exhibit "A.") (emphasis added). That Complaint also expressly referred to:

> the ***criminal organization to which*** Miguel Angel <u>***Curi***</u> Osorio <u>***belonged***</u>.

*Id.* at 8, ¶ III.22 (emphasis added). Again, Curi *never worked on* the *Collins* cases, and Curi's brief references to Romero were exclusively in the context of Romero's purported conduct in the *Reid* cases.

Significantly, although they had submitted the criminal Complaint in Peru over ten months before the Jones Day Report, Defendants did not provide a copy of the Complaint to the Court. Instead, Defendants touted the purported *requirement* that they maintain confidentiality, stating:

> The ***prosecutor*** has been ***notified*** of the Companies' *limited disclosure of the **existence of** the Peru criminal **investigation*** and certain documents to this Court but ***nevertheless has requested*** that [Defendants] continue to ***abide by the confidential designation of***

5

> ***any investigative acts, materials*** and other information in connection with the investigation in Peru . . . .

Jones Day Report at 2 (emphasis added). The Report thus suggested that Defendants would somehow be prohibited from providing a copy of the Complaint to the Court. Defendants did not reveal that it was the Defendants *themselves* who requested confidentiality. Again, the Complaint *not provided to the Court* by Defendants was clear:

> ***we*** [Renco Group and Doe Run] ***request that this complaint be kept confidential*** until your office has been able to gather the relevant evidence for the dismantling of the criminal organization to which Miguel Angel Curi Osorio belonged.

Complaint at 8, ¶ III.22 (emphasis added).

On April 12, 2022, less than six months after providing the Jones Day Report to this Court, Defendants provided a complete copy of the Peruvian Complaint to the District Court in Miami where they filed an *ex parte* petition under 28 U.S.C § 1782. *See* "Petition" (unsealed) copy (without exhibits) attached as Exhibit "B." Defendants there were even more explicit in describing the source of the confidentiality request:

> ***<u>Renco and Doe Run have asked</u>*** the *Peruvian* ***prosecutors*** that the Denuncia [***Complaint***] ***"be kept confidential****," and that* the Peruvian Criminal ***Investigation*** likewise "***be conducted confidentially***."

Petition at 21, (citing Complaint, ¶¶ III.21-22) (emphasis added). Plainly, the confidentiality requirement imposed at Defendants' own request did not prevent them from providing the Complaint to this Court. Instead, Defendants withheld the Complaint from this Court (but not the Florida federal court) because its exclusive reliance on Curi (and not on Romero) would have revealed Defendants' misdirection before this Court.

6

### C. Defendants are Responsible for Misdirection About the Romero Affidavit

Significantly, Defendants later provided a sworn statement assuring this Court that their Peruvian criminal counsel did not report to their litigation counsel (King & Spalding) and that litigation counsel were not even authorized to speak to Peruvian counsel. *See* Affidavit of Crystal A. Saling, ¶ 9. Defendants' misdirection regarding the Romero Affidavit, therefore, is attributable solely to Defendants themselves.

### D. Defendants Fail to Correct the Record Regarding the Romero Affidavit's Absence of Impact on the Peruvian Criminal Investigation

In July 2023, Defendants filed a second so-called "report" regarding the Peruvian investigation. *See* Rivero Mestre's "RM Report," initially filed July 31, 2023 [DE 755-4 (under seal)]. In the interim, Defendants had made no effort to correct the record regarding the Romero Affidavit.

Unlike litigation counsel, who were kept in the dark by Defendants, the Rivero Mestre attorneys claimed that their role included "reporting to the Court about what is going on in the Peruvian case." *See* Hg. Tr. April 23, 2024, at 11. Rather than correcting Defendants' earlier misleading statements, however, the RM Report again suggested that the Peruvian prosecutor had relied on the Romero Affidavit, insisting that:

> **Based on the <u>evidence in the Jones Day Report</u>**, [Defendants] **filed a *complaint*** (a "denuncia") with the criminal authorities in Peru, and the . . . Public ***Prosecutor* . . . *opened an investigation***.

[DE 755-4 at 1-2] (emphasis added, footnote omitted). More importantly, Defendants failed to inform the Court that the Romero Affidavit had then only recently, on March 2, 2023, been provided for the first time to the prosecutor in Peru. *See* Defendants' Offer of Evidence.

7

### E. Defendants Fail to Disclose that Romero Refused to Corroborate his Affidavit or Answer Any Questions About It

It was not until October 16, 2023, almost two years after Defendants filed the Jones Day Report, that Romero appeared for a testimonial declaration before the prosecutor. Incredibly, to this date, Defendants have never informed the Court that when he finally did testify, *Romero refused to corroborate his affidavit*, or to answer any questions about it, except to acknowledge that he signed the affidavit.

### F. Defendants Failed to Disclose that Curi Falsely Denied Receipt of the Payments Defendants Made to Him

Unlike Romero, Curi testified before the prosecutor in Peru shortly after Defendants filed the Jones Day Report.

Significantly, although Defendants repeatedly try to conflate matters and try to make a connection between Curi, Romero, and Victor Careaga, Curi confirmed that: (1) he *never worked with* Romero; and (2) he *never met* Victor Careaga, and never had any direct dealings with him. In other words, Curi confirmed that not only is his testimony exclusively related to supposed conduct in the *Reid* cases, but also that he has no knowledge at all about any conduct by the only people mentioned (briefly in ¶ 9) in his affidavit that had any connection to the *Collins* cases.

Significantly as well, when he was asked directly by the prosecutor whether he had received any compensation from either the Renco Group or Doe Run, Curi *flatly denied that he had ever received any compensation*. Defendants know well that this testimony under oath by Curi was false. *See* Jones Day Report at 21.[6] Again, incredibly, to this date Defendants have never informed this Court that Curi provided false testimony under oath to the prosecutor in Peru.

---

[6] Defendants made payments Curi to compensate him for "time spent," costs "incurred," and supposedly for lost income. Defendants also agreed to pay for a criminal attorney to represent Curi.); *see also* DE 771 at 7 (same).

8

## II. Argument

As demonstrated above, Defendants' conduct beginning with the filing of the Jones Day, and later the Rivero Mestre reports, has been calculated to mislead and deceive the Court. Moreover, despite nearly three years to come clean about their deception, Defendants have failed to do so. At a minimum, Defendants intended to disrupt, and have severely disrupted, these proceedings.

The Eighth Circuit has been clear that courts retain the power to impose all appropriate sanctions, up to and including dismissal or striking of pleadings:

> We review the sanction of dismissal more closely because "'[i]n our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied.'" However, if dismissal "lies within the spectrum of appropriate sanctions, we will not substitute our own judgment for that of the district court even though we may have chosen a different sanction had we been standing in the shoes of the trial court."
>
> \* \* \* \* \* \*
>
> ***When a litigant's conduct abuses the judicial process***, dismissal of a lawsuit is a remedy within the inherent power of the court. *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir.1992). This court has held that ***striking a party's pleadings***, thereby resulting in a default judgment, ***is within the range of appropriate sanctions when a party engages in a pattern of deceit*** by presenting false and misleading testimony under oath.

*Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694-95 (8th Cir. 2001) (emphasis added, some citations omitted).

The *Martin* court affirmed dismissal of plaintiff Martin's pleadings based on the district court's finding that she "repeatedly claimed she had no knowledge of or involvement in the Oklahoma lawsuits" about which she was questioned in discovery. Further, Martin had "willfully withheld information directly responsive to" interrogatory and deposition questions. *Id*. at 694. In

9

the consolidated *Collins* cases before this Court, Defendants have engaged in a years-long pattern of deceit. The conduct has repeatedly "abuse[d] the judicial process." Moreover, by design, Defendants effectively succeeded in disrupting and adding years of delay to the judicial proceedings of many hundreds of Plaintiffs. The Court can and, we submit, should impose the most severe sanctions.

Dated: August 20, 2024

Respectfully submitted,

**NAPOLI SHKOLNIK**

By: */s/ Hunter Shkolnik*
Hunter Shkolnik, #2031458NY
1302 Avenida Ponce de Leon,
Santurce, Puerto
 Rico 00907
(787) 493-5088
Hunter@nsprlaw.com

**RODRIGUEZ TRAMONT + NUÑEZ, P.A.**

By: */s/ Paulino A. Nuñez*
Frank R. Rodriguez, #348988FL
Paulino A. Nuñez, #814806FL
255 Alhambra Cir., Suite 1150
Coral Gables, FL 33134
(305) 350-2300
frr@rtgn-law.com
pan@rtgn-law.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on August 20, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: August 20, 2024

                                                                                      _____*/s/ Paulino A. Nuñez*