IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| J.Y.C.C., *et al.*, | Case No. 4:15-CV-01704 |
| | (CONSOLIDATED) |
| Plaintiffs, | |
| v. | |
| THE DOE RUN RESOURCES CORPORATION, *et al.*, | |
| Defendants. | |
| _____/ | |

**THE COMPANIES' OPPOSITION TO
PLAINTIFFS' SECOND MOTION FOR SANCTIONS**

Defendants The Renco Group, Inc. and The Doe Run Resources Corporation (the "Companies") submit their Response in Opposition to Plaintiffs' Second Motion for Sanctions Memorandum of Law (the "Motion") [ECF No. 866]. Plaintiffs' Motion is essentially a disguised sur-reply, rehashing the same baseless arguments made in their Opposition [ECF No. 856] to Defendants' Motion to Compel [ECF No. 852]. For the reasons below, the Motion should be denied.

**INTRODUCTION**

Plaintiffs claim that the Companies have been "on a campaign to disrupt these proceedings," yet plaintiffs here tax judicial and party resources to rehash non-events from more than three years ago. Ultimately, plaintiffs accomplish the ill they complain of—disrupting their own case by filing this Motion. Furthermore, absent from the Motion is anything even addressing—let alone disproving—the Companies' extensive allegations of plaintiffs' "pervasive fraud" (Mot. at 1). Instead, plaintiffs continue to downplay them. As plaintiffs' counsel has

1

repeatedly, and recently, told the Court: "At this point, there's no indication that these records are false. In fact, these records are not false." Hrg. Tr. 14:4-5, August 27, 2024. But recent discovery has proven otherwise. During the depositions of the 28 Initial Discovery Cohort Plaintiffs, it was revealed—and admitted by plaintiffs—that at least **nine educational records produced in this matter were fabricated.**[1] And that's just so far, with more depositions to come. The Companies' continued concern about the veracity of the information produced by plaintiffs is entirely legitimate.[2]

Turning a blind eye to the evidence of manifold misconduct presented in the *Jones Day Report on Investigation* (the "*Jones Day Report*") [ECF No. 542], filed on October 21, 2021, and the *Rivero Mestre Report* (the "*RM Report*") [ECF No. 761-3], filed on August 4, 2023, plaintiffs instead seek to distract from the Companies' serious allegations of fraud and misconduct with false and unsupported statements. Contrary to plaintiffs' assertions: (1) Richard Romero's affidavit ("Romero Affidavit") has not been "discredited," (2) there is likewise nothing suspect about the affidavit by Miguel Curi ("Curi Affidavit"), (3) the Peruvian investigation is based on abundant collected evidence of plaintiffs' misconduct in Peru, and, finally, (4) this Court has not been misled in the least regard about the Peruvian criminal proceeding. Plaintiffs' suggestion that the Peruvian prosecutor's investigation—in which a dozen people are now named as *imputados*, that is targets of the investigation suspected of multiple Peruvian crimes—was based on just one document or another would be risible if it weren't so patently untrue.

---

[1] Pls.' Sur-Reply to Defs.' Mot. to Compel, at 2. ECF No. 864.

[2] In fact, one of the eight plaintiffs did not attend pre-school at all despite her certificate showing enrollment, attendance and grades. Defs.' Reply in Supp. of Mot. to Compel, at 13. ECF No. 860.

Plaintiffs baldly state the Companies have displayed a "lack of candor" to the Court about the events occurring in Peru. Mot. at 2. But that's also false. In the first place, there has been no lack of candor or any attempt by the Companies to conceal anything about the Peruvian investigation. But, in the second place, plaintiffs conveniently skip over the fact that the Court **clearly ordered** the parties to keep all issues related to the § 1782 petition pending in Florida (brought to obtain evidence in support of the Peruvian prosecution), and the Peruvian investigation itself (including related witness testimony) from "diverting" the Court with the criminal proceedings there:

> Rivero Mestre's motion for sanctions and remedial measures raise many issues through witness testimony and Plaintiffs would be entitled to test the claims in the motion through collateral discovery in Peru. But such a **collateral diversion of resources and time** is precisely why I have repeatedly stated that the focus of this suit must remain on preparing the initial trial pool plaintiffs' cases for trial.

Memorandum and Order at 5, ECF No. 777 (emphasis added) (the "Order").

Disregarding the Court's Order, plaintiffs filed this Motion in (yet another) frivolous attempt to discredit the Companies, expending judicial resources with matters that occurred years ago. Mindful of the Order, recognizing that the Court considers these matters a "collateral diversion of resources," the Companies briefly respond to set the record straight.

I.      **Richard Romero's Testimony is Part of the Peruvian Criminal Investigation**

Engaging in the "collateral diversion" of resources the Court abjured, plaintiffs belabor a lengthy and irrelevant narrative, going back to 2019, about the hiring of Miguel Curi and Richard Romero as informants, and about their respective affidavits. Mot. at 4.

Plaintiffs complain that the Companies, "not satisfied with allegations of purported wrongs limited to *Reid*, [] hired Richard Romero . . . [who] worked for the *Collins* team until he was fired in 2016." Mot. at 3, n.3. That is neither surprising nor grounds for complaint. If there

3

were indications of misconduct in *Reid*—and there were—the Companies had every reason to suspect the same misconduct had occurred in *Collins* and were entitled, even obligated, to investigate. Then, having decided to investigate, the Companies soon encountered a nearly universal truth: the richest source of criminal informants is within the criminal network about which information is sought. Having been central to the enterprise of wrongdoing, Romero became an informant, and he turned out to be who he said he was and to know what he said he knew. In due course, the Companies' suspicions were confirmed and memorialized in the Curi and Romero affidavits.

Plaintiffs' accusation—that the Companies spoke untruthfully to say that Romero's information was a subject of the Peruvian investigation—is baseless. Romero is undisputedly a criminal informant and an "*imputado*"[3] in Peru, and there can be no question that the Peruvian Prosecutor has based his actions, at least in part, on Romero since the investigation commenced on January 21, 2021.[4] In fact, just more than a week ago, on September 9, 2024, Romero appeared before the Peruvian Prosecutor to carry out a viewing and transcription of video images that are part of the Peruvian investigation and were a subject of the *RM Report* and the Companies' Memorandum of Law in Support of Motion for Sanctions and Remedial Measures ("the Companies' Sanction Motion"). ECF No. 761.

That Romero agreed to prepare an affidavit in exchange for legal representation is no more nefarious than it is unusual. Like many a criminal informant, who knew what he knew because of

---

[3] The term "*imputado*" means targets of the prosecutors' *Formalización*. As explained in ECF No. 761, the *imputados* have been provisionally charged with forgery of documents, among other crimes.

[4] Disposition No. 01-2020-FPECCOR-JUNIN.

his own participation in the crime, Romero knew he could be subject to criminal penalties once the truth of the improper recruitment of plaintiffs was exposed, and he wanted counsel. (And so it came to pass when the prosecutor's *Formalización*[5] named him an *imputado*.) Plaintiffs engage in a detailed description of Romero's involvement in this case—including the specific number of sessions he sat with the Companies and their attorneys. Mot. at 3. But what plaintiffs **never** do, because they cannot, is to contest the **truth** of Romero's sworn declaration. Nor can their dark characterization of entirely typical criminal investigative techniques make those techniques suspect.

With nothing new to say—and evidently pretending the more recent *RM Report,* with its further catalog of misconduct, doesn't exist—plaintiffs ask the Court to reach back in time and review the **2021** *Jones Day Report*.[6] Plaintiffs contort specific sections of that report out of context to try to prove their point. First, reading words into the *Jones Day Report*, plaintiffs argue that the "clear message to this Court" was that the Romero Affidavit had "tainted the *Collins* cases" and that the "allegations had been compelling enough to warrant a Peruvian criminal investigation." Mot. at 4. It remains a mystery where the plaintiffs discovered that so-called "clear message" in the *Jones Day Report* that the Peruvian investigation, at that stage, centered around the Romero Affidavit. Because the report said nothing of the sort, discussing the involvement of the Peruvian prosecutor in only the broadest terms:

> *Given the seriousness of the misconduct*, the Companies retained criminal counsel in Peru to advise on issues of Peruvian law and to *bring this matter to the attention of local law enforcement*. As a result, Peruvian law enforcement has opened and is

---

[5] A copy of the April 27, 2023, prosecutor's *Formalización* is Composite Exhibit 1 to the *RM Report*. ECF No. 761-3.

[6] Plaintiffs dedicate four (out of six) pages of factual background to *the Jones Day Report* and occurrences between 2019 and April 2022.

conducting an ongoing, confidential criminal investigation into the conduct described herein.

*Jones Day Report* at 2 (emphasis added).

Plaintiffs also claim that the Companies deceived the Court by failing to disclose that the Romero Affidavit was not being considered by the Peruvian prosecutor. But where is the deception? Romero was part of the Peruvian investigation whether his affidavit had been considered or not. The Companies never claimed that the Peruvian investigation **centered** around the Romero Affidavit. Plaintiffs' "examples" of the purported "deception" to the Court include:

- The status conference a month after the *Jones Day Report* was filed, during which the Companies stated: "[***T***]***here's now a criminal investigation*** unfolding ***by the criminal authorities in Peru, investigating***, as we understand it, ***the activities of these witnesses*** and others." Mot. at 4 (quoting Hg Tr., Nov. 16, 2021, at 9:21-25).

  There is nothing deceitful about this statement. Romero was a subject of the Peruvian investigation since commenced on January 21, 2021,[7] **ten months** before the statement was made at the status conference.

- The Affidavit of Crystal A. Saling, Doe Run V.P., where she stated: "A criminal ***investigation is now taking place*** in Peru ***with respect to the*** aforementioned ***fraud***." Mot. at 5 (quoting ECF No. 625-1 ¶¶ 3, 5).

  Again, where is the deceit? This affidavit was filed on April 18, 2022, **more than a year** after the Peruvian investigation (where Romero was a subject and is now an *imputado*) commenced.

Plaintiffs' accusations ring hollow. They fail to show any deceit or misstatement to the Court regarding the Peruvian authorities' use of the Romero Affidavit, and the suggestion that the entire Peruvian investigation had to have centered around the Romero Affidavit is as ludicrous as it is untrue.

---

[7] Disposition No. 01-2020-FPECCOR-JUNIN.

**II.     The Companies did not Withhold any Information from the Court**

Again, with nothing new to discuss, plaintiffs' next argument strains to reach back even further, to the criminal complaint filed in Peru in December 2020, ten months **before** the *Jones Day Report*. Plaintiffs argue that the complaint was kept from the Court on a "fake" confidentiality basis, to avoid revealing that it relied on Curi's, and not Romero's, statements. Mot. at 6.

First, as demonstrated above, there has been no misdirection by the Companies regarding the Romero Affidavit. Plaintiffs' imaginary notion that the Peruvian Complaint and the investigation had to center around, not merely include, Romero doesn't make it so.

Second, as the Companies have repeatedly stated, and as the Court has acknowledged, Article 324 of Peru's Code of Criminal Procedure provides that preliminary/preparatory criminal investigations are confidential. *See* Order, ECF No. 777 at 5, n.1. The confidentiality requirement was not, could not be, imposed at the Companies' request as plaintiffs contend. Mot at 6. It is enshrined in, and required by, Peruvian law.

Finally, although plaintiffs try to downplay the allegations regarding Romero in the 2020 Peruvian complaint, arguing that "the Romero Affidavit was not known to the Peruvian authorities, and thus it played no part in the referenced Peruvian criminal investigation" (Mot. at 5), the 2020 criminal complaint clearly states that Romero was hired by a U.S. law firm, and was the main coordinator and recruiter for plaintiffs in Peru at that time. Around the time when Romero became a subject of the Peruvian investigation on or around September 14, 2021, the Companies filed the *Jones Day Report*, on which the Court took no action. Then the Companies filed the *RM Report* in 2023, as an exhibit to the Companies' Sanctions Motion, which the Court

7

denied on grounds that the Court has made abundantly clear: That in the view of the Court, the Peruvian proceedings must remain, and be dealt with, in Peru. The Order at 5, ECF No. 777.

**III.     There Was Nothing to Correct in the Record Regarding the Romero Affidavit**

Plaintiffs then take issue with the *RM Report* and argue that it "made no effort to correct the record regarding the Romero Affidavit." Mot. at 7. But there was nothing to correct. Plaintiffs do not and cannot identify any part of the encyclopedic *RM Report* that is false. They do not and cannot deny that the misconduct it catalogs occurred. Grasping at straws, they claim that the following sentence is misleading because it "suggested that the Peruvian prosecutor had relied on the Romero Affidavit" (Mot. at 7):

> Based on the evidence in the Jones Day Report, the Companies filed a complaint (a "*denuncia*") with the criminal authorities in Peru, and the Junín (Peru) District Public Prosecutor's Office of Against Organized Crime (the "Public Prosecutor" opened an investigation.

Mot. at 7; RM Report at 1-2.

But, again, where do plaintiffs find such a "suggestion"? The cited statement makes no reference to the Romero Affidavit. Again, plaintiffs are importing words or meaning into the Companies' statements that were simply never there. The Companies did not tell the Court that the complaint relied on the Romero Affidavit. Every word of the *RM Report* is true—indeed much of it is sworn testimony. So, unable to contradict the damning facts in the report, plaintiffs conjure up "suggestions" of misstatements in the report's introduction. But plaintiffs cannot blink away the fact that the *RM Report* is corroborated by an overwhelming amount of independent evidence, none of which they do or can contest. The Companies had nothing to correct, much less—considering the Order—to disclose.

As plaintiffs concede, "the Rivero Mestre attorneys claimed that their role included 'reporting to the Court about what is going on in the Peruvian case.'" Mot. at 7 (quoting Hg. Tr.

8

April 23, 2024, at 11). And that is exactly what they have done. The Companies made the Court aware of the *denuncia* and the filing of the *Formalización* by the Peruvian prosecutors. ECF No. 761-3. The *Formalización* elevated the "preliminary investigation" into the next investigatory phase, a "preparatory investigation" in which 12 individuals were provisionally charged with crimes including criminal organization, forgery of documents, and forgery of public instruments. *Id*. So far, the Court has decided not to act on the basis of these facts. But, while the Companies welcome the plaintiffs' decision to remind the Court of the plaintiffs' well-documented misconduct with this Motion, the Motion does nothing to establish that the Companies misled the Court at *any* time—because they have not.

**IV.     Plaintiffs' Arguments That Romero and Curi Failed to Corroborate the Information in Ther Affidavits are Misleading**

Plaintiffs then take issue with Romero's testimonial declaration before the prosecutor. Mot. at 8. As plaintiffs concede, Romero **admitted to signing the affidavit**. *Id.* Also as plaintiffs point out, when questioned by the prosecutor, Romero refused to answer specific questions about the fraud that was committed. *Id.* Plaintiffs seem to forget that Romero is an informant, and a central player in the fraud that took place in Peru. As a Peruvian citizen and resident under criminal investigation in Peru, he has a right to claim Peruvian protections against self-incrimination, which he invoked when questioned.[8] There was no report to the Court about this, firstly, because the Order instructed the Companies a month before not to "divert" it with the

---

[8] Ironically, plaintiffs seem surprised that Romero, a Peruvian citizen facing prosecution in Peru, availed himself of a purported right to remain silent, when Victor Careaga—an American paralegal to one of the firms signing the Motion—attempted to invoke exactly the same purported Peruvian right to silence when questioned in the United States about his own involvement in the fraud. *See* Careaga Dep., Ex. A to Companies' Mot. to Compel Testimony of Victor Careaga, For Sanctions, For Appointment of Special Master, & For Add'l Relief, Case No. 22-MC-21115-JAL (S.D. Fla. 2023), ECF No. 68-1, *passim*.

9

goings-on in Peru, but more fundamentally, because there was nothing to report. Romero's affidavit remains true, and he acknowledged signing it, as plaintiffs admit.

But continuing to ignore the Order, with no other arguments left, plaintiffs dig out Curi's testimony before the Peruvian prosecutor **in 2021**. Curi, another informant because he was a participant in plaintiffs' fraud, when questioned then by the Peruvian prosecutor, allegedly denied having received compensation from the Companies.[9] But as plaintiffs' own Motion states, "Curi confirmed that not only is his testimony exclusively related to supposed conduct in the *Reid* cases, but also that he has no knowledge at all about any conduct by the only people mentioned (briefly in ¶ 9) in his affidavit that had any connection to the *Collins* cases." Mot. at 8. It is unclear why plaintiffs argue that the Companies had a duty to report about Curi's testimony to this Court while also claiming that his testimony is completely irrelevant to this case.[10]

## V.     The Companies Have Not Deceived or Disrupted these Proceedings

Having failed to articulate any sanctionable conduct by the Companies, plaintiffs still suggest that the Court "should impose the most severe sanctions." Mot. at 10. Plaintiffs' reliance on *Martin v. Daimler Chrysler Corp.*, 251 F.3d 691, 694-95 (8th Cir. 2001) suggests that what they mean by that is the Companies' pleadings ought to be stricken. Mot. at 9-10. This is nonsense.

Plaintiffs' reliance on *Martin*—where the court "found by clear and convincing evidence that Martin gave *perjurious answers during her deposition and in her interrogatory responses*"— is wildly misplaced. *Martin*, 251 F.3d at 695 (emphasis added). The *Martin* court found "a pattern

---

[9] Notably, this is the only fault in Curi's testimony that plaintiffs were able to find. There is absolutely no denial by plaintiffs of the plethora of allegations of fraudulent conduct in the plaintiff recruitment process, to which Curi testified in his affidavit.

[10] As for payments to Curi, whatever Curi may have said to anyone, **the Companies** have been entirely forthcoming about them, setting them out in the *RM Report* at 48, 49. ECF No. 761-3.

of deceit by presenting false and misleading testimony under oath." *Id.* at 694. But, in the present Motion, plaintiffs failed to demonstrate even a single instance of deception, let alone a pattern of it. In fact, both the *Jones Day* and the *RM Report* are corroborated by an overwhelming amount of evidence and sworn testimony and plaintiffs have not contested, cannot contest, any of it. The Court may choose to disregard the reports and the Peruvian prosecutor's investigation. The plaintiffs may not like the contents of the reports or the progress of the investigation. But specious attacks on the Companies, like the one this Motion constitutes, don't change the dismal facts established in the reports, nor halt the prosecutor's inquiry. And although plaintiffs may be committed to the philosophy that, where their fraud in Peru is concerned, "a good offense is the best defense," the simple fact is that, as demonstrated above, the Companies did not commit any of the violations of which plaintiffs complain.

## **CONCLUSION**

For all these good reasons, the Court should deny plaintiffs' second motion for sanctions.

Dated: September 18, 2024

Respectfully submitted,
By: */s/ Andres Rivero*
ANDRES RIVERO
Florida Bar.: 613819

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: receptionist@riveromestre.com

*Attorneys for Doe Run Resources Corp. and The Renco Group, Inc.*

11

## CERTIFICATE OF SERVICE

I certify that on September 18, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Andres Rivero*
Andres Rivero