1     **UNITED STATES DISTRICT COURT**
      **EASTERN DISTRICT OF MISSOURI**
2

3     J.Y.C.C., et al.,                )
                                       )
4                 Plaintiffs,          )
                                       )
5                 vs.                   )      Case No.4:15CV-1704RWS
                                       )
6     DOE RUN RESOURCES                )
      CORPORATION, et al.,             )
7                                      )
                  Defendants.          )
8     _____

                          MOTION HEARING
9
            **BEFORE THE HONORABLE RODNEY W. SIPPEL**
10                **UNITED STATES DISTRICT JUDGE**

11                      FEBRUARY 27, 2025
      _____
12
                          APPEARANCES
13
      For Plaintiffs:
14    Mr. Francisco Rodriquez
      RODRIGUEZ, TRAMONT & NUNEZ
15    255 Alhambra Circle, Suite 1150
      Coral Gables, FL 33134
16
      For Defendants:
17    Mr. Andrés Rivero              Mr. Jon Bierman
      RIVERO MESTRE LLP              POLSINELLI PC
18    2525 Ponce De Leon Blvd.       7676 Forsyth Blvd.
      Suite 1000                     Suite 800
19    Miami, FL 33134                Clayton, MO 63105

20

21

22          Stenographically Reported and Produced by:
              Lisa M. Paczkowski, CCR, CSR, RPR
23                 Official Court Reporter
                United States District Court
24                 111 South 10th Street
                  St. Louis, MO 63102
25                    (314)244-7985

<u>FEBRUARY 27, 2025</u>

1
2   (The proceedings commenced at 1:16 p.m.)
3           THE COURT:  We are here in the case styled
4   J.Y.C.C., et al against Doe Run, et al, 4:15CV-1704.  Would
5   counsel make their appearances?
6           MR. BIERMAN:  Jon Bierman with the Polsinelli Law
7   Firm, your Honor, for both Doe Run and Renco.
8           MR. RODRIGUEZ:  Good afternoon, your Honor,
9   Francisco Rodriguez, with the law firm of Rodriguez, Tramont
10  & Nunez, on behalf of Plaintiffs.
11          MR. RIVERO:  Good afternoon, your Honor, Andrés
12  Rivero for the Defendants as well.
13          THE COURT:  All right.  So, any announcements
14  before we proceed?
15          MR. RODRIGUEZ:  Nothing from the Plaintiffs, your
16  Honor.
17          MR. RIVERO:  No, your Honor.
18          THE COURT:  So we have, as I see it, three
19  outstanding motions.  We have the motion for sanctions
20  Documents 834 and 882.
21          MR. RODRIGUEZ:  Good afternoon again, your Honor.
22  You may recall earlier that we had a status conference last
23  hearing dealing with Document 834 of the Plaintiffs' motion
24  for sanctions, and at that hearing, the Plaintiffs' motion
25  for sanctions initially was directed primarily at the

```
 1    violation of the protective order.  I think Docket Entry 60,

 2    and also for we argued violation of the sealing orders at

 3    that time.  Since the hearing, you may recall at the hearing,

 4    I represented to your Honor that I wasn't sure at that point

 5    how many documents actually fit in that were violative of the

 6    protective order, because what occurred prior to that

 7    hearing, for awhile both sides were traveling under the

 8    assumption there had been some motion practice prior that a

 9    good deal of the documents, the next friend petitions and the

10    profiles, were under the protective order.

11            As your Honor may know, we have cocounsel in the

12    case, and we have had some division of responsibilities, I

13    had assumed that many of the documents were marked

14    "confidential."  In fact, many of the documents were not, but

15    the hearing turned into a hearing on a violation of the

16    Court's sealing orders, and Local Rule 13.05, Federal Rules

17    of Civil Procedure 5.2, and that was something that had been

18    joined, and at 834, the Defendants, in their response,

19    pointed out the issue of the sealing order, and we, in fact,

20    I believe in the reply got into those issues as well, and

21    then what occurred at the hearing on August 27th, which

22    hearing slash status conference, was there were -- and I'm

23    going to get into it in a little more detail in a second, but

24    there was I thought an acknowledgement, and the record speaks

25    for itself, and we will get into it by counsel for the
```

Case: 4:15-cv-01704-RWS    Doc. #: 946    Filed: 05/29/25    Page: 4 of 60 PageID #:

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025          28819                              3

1    Defendants, there have been violations of the sealing orders

2    and violation of the Local Rule.  I'm sorry -- Local Rule

3    13.05 and Federal Rule 5.2.

4          As it turns out, and the way that hearing ended

5    when you had asked that we file an amended motion, and then

6    you turned that into an order a few weeks later, an amended

7    motion outlining our position regarding the violations of the

8    sealing orders, and the Federal Rule, and the Local Rule, and

9    the magnitude of those violations.

10         So, we did that.  So, let me start off, if I could,

11   by answering one of the questions that your Honor had for me

12   at the last status conference, which is which Defendants

13   violated the Court's sealing orders, and by the way, before I

14   get into that, there has been some a point made by Defendants

15   that there is only one sealing order that docket entry is

16   Document 41 -- well, actually, there were motions to file the

17   next friend petitions, the information of the minor

18   Plaintiffs' under seal.  In every instance and in every

19   complaint, the motions were filed by the Defendants, and then

20   the Presiding Judge, before they were consolidated, before

21   your Honor would enter a text order granting the motion.  So

22   I think there are multiple sealing orders.  There is the

23   sealing orders and Local Rules that come into play that

24   address the issue of divulging the names and confidential

25   information of minor Plaintiffs.

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 5 of 60 PageID #: 28820

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

4

1           Starting out with going back to responding to your

2    question, there were several documents that are part of the

3    record, Document 812.1, 812.2, 812.3, 849.1, and 849.2, and

4    all of those documents indicate that the Peruvian attorneys

5    that produced these documents and this information that we

6    are here -- it is the subject of this hearing today -- to the

7    Peruvian prosecutor were attorneys representing Defendants

8    Doe Run Resources and the Renco Group.  So I just wanted to

9    get that out of the way.

10          Next, your Honor had asked and later ordered that

11   we identify the number of violations of the sealing orders,

12   and the Local Rules, and the Federal Rules.  So we did that.

13   We had -- there were exhibits that we filed under seal, and I

14   want to get into those numbers.  So I think that it is pretty

15   easy to follow.  There was one scrupulous error.  So I want

16   to get the correct numbers on the record.

17          There was a production that took place on March 9,

18   2023, and it was a list of 610 Plaintiffs.  These were

19   disclosed to the Peruvian prosecutor by the Peruvian

20   attorneys that were hired by the Defendants that I referenced

21   to earlier.  And that list of 610, your Honor's order was

22   specific, you wanted me -- or you wanted us the Plaintiffs to

23   identify the active minors that were disclosed, the active

24   adults, and the dismissed Plaintiffs.

25          So, the active minors that were disclosed on that

1   list of 610 that was produced on March 9th were 394.  In

2   addition, there were seven that were produced -- or seven,

3   the information of seven minors that was produced, and that

4   the minors were with -- they had been dismissed without

5   prejudice.  And your Honor previously had indicated that

6   that's a category that your Honor considers as more or less

7   still an active Plaintiff.  So, it is 394 active Plaintiffs,

8   seven that were dismissed without prejudice.  So the total is

9   401.

10          By the way, there is an issue -- the Defendants

11  made an issue of the fact that we have identified the active

12  minors, minor Plaintiffs, as of the date of the disclosure,

13  which was 18 months ago.  They make the point that I violated

14  the Court order, which I certainly had no intent on doing.

15  And quite frankly, I think if we are here to discuss

16  violations of your Honor's sealing order, and the rules, and

17  the applicable rules, I think we should focus on what the

18  status of these persons were at the time that their

19  information was disclosed.

20          All right, the next -- there was a list of 730

21  Collins Plaintiffs that was disclosed by the Peruvian lawyers

22  that were representing Doe Run Resources and The Renco Group

23  on March 30, 2023.  That was -- that's Exhibit 2A, which that

24  was filed under seal.  By the way, the previous list of 610

25  was Exhibit 1A, filed under seal, Exhibit 1A and Exhibit 2A

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 7 of 60 PageID #: 28822

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

6

```
 1   to the amended motion.  Anyway, and 440 to 2023, there were
 2   four active minors that were disclosed, and 82 minors whose
 3   cases have been dismissed without prejudice.  So that's a
 4   total of 86, and then one of those your Honor had asked if
 5   there was any duplication between the list -- between the
 6   list of the 3923 list and 34023 list, and there is, there was
 7   one duplication there.  So it is a total of 85 active minors
 8   that include the -- I'm sorry -- the 85 active minors and
 9   minors dismissed without prejudice, four active minors, 82
10   without prejudice, one dupe.  So that's --
11           THE COURT:  What's a dupe, an active minor or
12   dismissed?
13           MR. RODRIGUEZ:  I'm sorry, the dupe -- the dupe was
14   a dismissed without prejudice minor.  And then finally, on
15   this part of my presentation, your Honor, there were
16   disclosures that were made by the Peruvian counsel
17   representing the Defendants that I referenced to earlier, and
18   there were two disclosures.  One was made on 6-3-23, and one
19   was made on 7-6-23.  In both instances, there were active
20   minors, nine active minors, no minors dismissed without
21   prejudice.  There was a total of nine, and not only were
22   their names disclosed, but their full birth dates were
23   disclosed.
24           And then you had 13 additional active adults as on
25   the 6-3 disclosure, and 18 on the 7-6-23 disclosure, for a
```

1    total of either 20 -- and there was one that had been

2    dismissed with prejudice.  So, you have -- there were 6-3

3    disclosures, you have a total of 23, and a nine -- I'm going

4    to focus on the active minors, and the minors that have been

5    dismissed without prejudice.  In this case, there were nine

6    active minors, none that have been dismissed without

7    prejudice.  So you had a total of 401 in the six -- in the

8    3-9-23 list, 85 -- and Judge, this includes the ones we've

9    dismissed without prejudice.  I can break it down to the

10   active minors, if that's what you want, but 401 on the 3-9-23

11   list, 85 on 3-40-23 list, and nine on the 6-3-23 and 7-6-23

12   list, and of those nine, I think it is particularly

13   egregious, because those are discovery Cohort Plaintiffs, and

14   like I said, their birth dates were disclosed, and there was

15   an accusation made that they had been -- or their information

16   was fraudulent, implicating them with the prosecutor, you

17   know, fraudulent conduct, and putting them smack in the

18   middle of this investigation, and those allegations were

19   baseless.  They were absolutely false.

20           So, at the 8-27 status conference, Defense counsel,

21   and I refer to Defense counsel, because he -- your Honor, I

22   don't know if you recall, but he tried to take a bullet for

23   these disclosures and said it is totally on me.  On 12

24   different occasions, he acknowledged that there were either

25   some kind of a misstep or a violation of either a sealing

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 9 of 60 PageID #:
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025          28824

8

1    order or a Court order, and he was at that time asking the

2    Court for leniency.  Saying it was not intentional conduct,

3    but acknowledging that, you know, that there were some

4    missteps and violations of these sealing orders, and Court

5    orders, and Local Rules and Federal rules.

6            And in response to the amended motion, I would --

7    you know, at the time that all of these admissions were made,

8    there were nine names in play.  Now, there is 495.  So now,

9    the position that the Defense has taken is that they did

10   nothing wrong.  That they were free to share the names of the

11   minors with third parties outside the litigation, such as the

12   Peruvian lawyers and prosecutors, and this notwithstanding

13   multiple admissions.

14           And I just want to go over, if you will indulge me,

15   it was quite awhile ago this status conference took place on

16   August 27th.  So on 12 different occasions, and I'm looking

17   at the transcript of the hearing, page 26, lines 10 to 16:

18           "THE COURT:  We still have the disclosure of the

19   nine Plaintiffs that were minors that's under seal by this

20   Court.

21           MR. RIVERO:  Judge, and I will repeat that is

22   correct, and that we brought it to the attention of the

23   Court, because we take it very seriously.  Now, so there is

24   just no way around that, Judge."

25           Number two, page 26, lines 22 to 25:

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 10 of 60 PageID #:
28825
J.Y.C.C. et al vs. Doe Run Resroruces et al - February 27, 2025

9

1          "THE COURT:  I don't care the motive.  If you

2    breach the seal of this Court, you breach the sealing order

3    of this Court.

4               MR. RIVERO:  And, Judge, that's our misstep."

5               Number three, page 27, lines 2 to 12:

6               "MR. RIVERO:  This was going through the Peruvian

7    law, and this Court had identified as a confidential

8    proceeding, that is only available to the prosecutor, and to.

9               THE COURT:  But they're not in the zone of people

10   who have permission to see this information on a sealing

11   order by this Court.

12              MR. RIVERO:  They're beyond.  They're beyond.

13              THE COURT:  If you go to one person, we're outside

14   the bubble.

15              MR. RIVERO:  Acknowledged, your Honor.  And it's

16   beyond."

17              Number four, line 27, 16 to 18:

18              "So, Judge, there are mistakes, and there are

19   mistakes.  And I'm acknowledging that those nine names

20   shouldn't have gone."

21              Number five, line 27 -- I'm sorry, page 27, lines

22   23 to 24:

23              "So then addition, Judge, what the mitigation is,

24   Judge, we didn't mean to do this.  It was an error we made.

25   And it is not a repeated event, Judge."

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 11 of 60 PageID #:
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025            28826

10

1          Number six, line 28, 6 to 8:

2          "And Judge, in that regard, I just want to say that

3  there was no intention to violate the order, Judge.  It was

4  an error."

5          Number seven, page 29, 17 to 22:

6          "THE COURT:  So what is the appropriate remedy?  It

7  can't be nothing.

8          MR. RIVERO:  I understand that, Judge.  I do

9  understand it.  Your Honor, number one, I'm here, and I'm

10  acknowledging that this is an error."

11          Number eight, page 29, lines 25 to 30, line one:

12          "I assure you, Judge, that I'm very unhappy about

13  this having happened, and have to face whatever it is."

14          Number nine, page 31, 1 to 5:

15          "Judge, and let me just say that when we got the

16  motion, or my folks and I started to look at it, we realized

17  right away that there wasn't a confidentiality order issued,

18  but we did know there was a sealing issue, which is why,

19  again, we told you about it."

20          I'm almost done, Judge, number 10, page 32, line 23

21  to page 33 line one.

22          "I would just ask you to take into account I've

23  been doing this for a long time.  I have not been sanctioned,

24  and it's difficult to have to admit that we're in such a

25  position."

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 12 of 60 PageID #:
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025        28827

11

1          Number 11, page 34, lines 7 to 10:

2          "I have not denied what the Court is raising, but

3    we thought that this was showing further improper conduct.

4    And perhaps, I think, Judge, there was -- we were

5    overzealous, and that was what was the basis for making that

6    mistaken decision."

7          And then finally, Number 12, this is the last thing

8    that counsel said before he sat down, I believe, page 44 line

9    25 through page 45, line 2:

10         "And, Judge, I wish I had not misstepped."

11         Anyway, so you know, needless to say, I thought we

12   had -- I thought we were like a point where counsel -- again,

13   he was trying to deflect from the Defendants and try to take

14   a bullet for what occurred, and I thought we were past the

15   point of, you know, was there a violation of the sealing

16   order, and were there violations of these applicable rules.

17   But I was surprised that, you know, when I got to the

18   response, that apparently that wasn't the case.  I would just

19   point out that there was a plea by part of counsel, and an

20   argument that he should -- the Court should be lenient,

21   because there was remorse, and there was -- this is totally a

22   mistake, and I now, you know, I don't see a lot of remorse,

23   because he is saying, you know, I didn't do anything wrong.

24         Their position in which I find -- well, it is

25   interesting, to say the least, is that the sealing order and

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 13 of 60 PageID #:
28828

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

12

1    these rules apply only to what's filed with the Court.   In

2    other words, as long as they comply with the proper redaction

3    and the proper sealing of the sensitive information,

4    according to their argument, they could just go and go to the

5    internet, or go where ever, and publish this information, and

6    that would be okay.  Again, I don't think that is a

7    reasonable or credible reading of the applicable rules and

8    the sealing order.

9           As your Honor knows, the sealing order -- and the

10   sealing order is basically to say we are going to keep the

11   sensitive information pursuant to Rule 5.2, and Local Rule

12   13.05, and I think Local Rule 2.17, and we are going to keep

13   everything under seal and confidential.

14          Your Honor, I don't have to go into 13.05, I'm

15   sure, and 5.2, I'm sure your Honor is very familiar with

16   those rules.  Now, what's interesting regarding the

17   contention that -- the initial contention, which they kind of

18   backed away from now, which is, yeah there was a violation,

19   but, you know, Judge, we really didn't do anything wrong, and

20   we didn't do it intentionally.  If we did anything wrong, we

21   didn't do it intentionally.  There is nothing to see here,

22   and you know, it is just what he referred to as a misstep.

23          I also want to point out that the record reflects

24   that on November 16th of 2023, the Defendants filed a motion

25   for limited relief from the protective order, Document 1789,

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 14 of 60 PageID #:
28829

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

13

```
1    and the backdrop of this is that they claim that the
2    companies were served by a subpoena from the Peruvian
3    prosecutor, and they had to produce these documents.  What
4    the records reflects is that those -- that subpoena was
5    essentially orchestrated by the Defendants.  They fed the
6    prosecutor the documents that they felt they needed in order
7    to prosecute the criminal prosecution that they initiated in
8    Peru.
9            So essentially, the documents came from them, but
10   then the prosecutor turned it back and sent them a subpoena.
11   And so they went to the Court, and they filed a motion for a
12   limited relief from the protective order, including all of
13   these documents I referenced.  This is one of the reasons we
14   have a sort of a misunderstanding initially about whether all
15   of these documents were marked "confidential" and they were
16   subject to the protective order.
17           But anyway, they filed this motion for limited
18   relief, and in paragraph three of that motion, they say a
19   list of documents deemed responsive to the subpoena, as
20   attached as Exhibit B, including lab test results, medical
21   records, and Plaintiffs' profile sheets, as well as next
22   friend petitions that were filed under seal to protect the
23   minors' identities.
24           So, they are coming to the Court, and they are
25   saying, hey, Judge, let us produce these next friend
```

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 15 of 60 PageID #:
28830

J.Y.C.C. et al vs. Doe Run Resrouces et al - February 27, 2025

14

1    petitions.  They know that the information with the minors is

2    protected, and they know they need a court order in order to

3    produce it to the prosecutor, which is what they want to do.

4           And then they argue that the production in

5    compliance with the Peruvian subpoena in paragraph 11, by the

6    way, it is Document Number 17 -- 789, they argue in paragraph

7    11 that the production in compliance with the Peruvian

8    subpoena does not put anyone at risk of what exposure

9    regarding the 78 documents in question.  And their position

10   on that is that, well, this is an investigation.  This is a

11   semi-confidential file, only the targets, which are called

12   "imputados" in Spanish, and targets and their lawyers have

13   access to the file, and so it is okay.  No harm no foul.  We

14   should go ahead and be able to do it, and that's what they

15   are arguing to the Court.  They know they can't, but they are

16   arguing this to the Court.

17          Okay, on 12-8-23, Docket Number 797, the Court

18   entered a memorandum order denying the requested relief, and

19   placing under seal all of these documents that these folks,

20   that the Defendants wanted to produce to the prosecutor.  And

21   Docket Number 803 on 12-19, December 19, 2023, the Defendants

22   filed a motion for reconsideration, and on 2-13-2024, the

23   Court denied the motion for consideration.

24          So, I mean, it is the Defendants clearly knew -- I

25   mean, you know, this is after the fact, okay, this is after

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 16 of 60 PageID #: 28831

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

15

1   they produced all of these documents, but they understood

2   that, you know, I think they were trying to get, you know,

3   they were asking for forgiveness instead of asking for

4   permission.  They knew they had done it, and now they are

5   asking the Court for this relief, and the Court said no.  So,

6   they knew that the Court's sealing orders were in place

7   before providing this information regarding these minor

8   Plaintiffs to the lawyers in Peru, that were obviously not

9   counsel of record in this case, and to the prosecutor in

10  Peru.

11            THE COURT:  All right.  So, on your papers, I

12  didn't see any actual concrete harm to your clients.

13            MR. RODRIGUEZ:  Well, Judge.

14            THE COURT:  Do you understand what I'm with?  I'm

15  not setting aside the problem.

16            MR. RODRIGUEZ:  Right.

17            THE COURT:  But the actual harm.

18            MR. RODRIGUEZ:  Yeah, well, and your Honor, I know

19  you have a ton of different cases, and it would be foolish

20  for me to think that you would remember everything that

21  occurred in this one, but this has had a long history of 10

22  years almost.  But this is a pretty polarizing in the

23  community case.

24            THE COURT:  I understand.  But there are those who

25  feel that your clients are causing them harm.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 17 of 60 PageID #: 28832

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

16

1          MR. RODRIGUEZ:  Right.  And primarily due to a

2   misinformation campaign by the Defendants.  But there is also

3   there is the issue of the -- what kind of a controversial

4   case it is, what a polarizing case it is.  They are stopping

5   at nothing.  There is hundreds of millions of dollars at

6   stake.  There is 3000 between the Reid Plaintiffs and the

7   Collins Plaintiffs.  There is over 3000 Plaintiffs.  You have

8   a -- you have a set of Defendants, including Ira Rennert, who

9   are multi-multi billionaires.  You have a finding by Judge

10  Perry that there has been some commingling of funds by

11  Mr. Rennert and the other defendants, preliminary finding.

12          So you have -- they pushed the envelope and crossed

13  the line, and they have done it several times, and we need to

14  deter that conduct.  I mean, yes --

15          THE COURT:  I understand all of that.

16          MR. RODRIGUEZ:  Okay.

17          THE COURT:  Before I make a determination about

18  what to do, I was asking is there particularized harm

19  quantifiable to any one Plaintiff.

20          MR. RODRIGUEZ:  Regarding the discovery Cohort

21  Plaintiffs' discovery -- well, regarding all of them, you

22  have disclosed information to -- and that could get out in

23  public in Peru.  So no, the direct answer to your question as

24  of yet, nobody has gotten shot.

25          THE COURT:  No one lost a job.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 18 of 60 PageID #:
28833

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

17

1          MR. RODRIGUEZ:  Right, right, nobody has lost a

2     job.  Nobody has gotten shot.  Nobody has gotten, you know,

3     as far as I know, threatening letters yet, or things like

4     that.  That's true.  But it is also true that, you know,

5     there are reasons why there are protections for minors.  I

6     think in this particular case, it is even that much more

7     sensitive because of the nature of the case, and the venue,

8     you know, and where all of this is taking place, the fact

9     that they are stopping at nothing to try to pursue this

10    criminal action.  They are implicating my clients in this

11    criminal action, baselessly.

12          So yeah, I mean, the direct answer to your question

13    is no, in terms of something tangible, but yes, in terms of

14    putting them at risk.  I mean, you may recall, Judge, when

15    they filed -- the Defendants filed the Jones Day reports,

16    that's all hearsay, and the Jones Day lawyers wouldn't even

17    testify about it, or wouldn't file an appearance, and then

18    there is the Rivero Mestre report.  When they asked the Court

19    to keep those -- I don't remember the Rivero Mestre, but

20    definitely the Jones Day report, to be under seal, because we

21    don't want any of this information getting out there, because

22    it puts people at risk.  And they know it themselves.  I

23    mean, that's part of the record.

24          So, I guess it is okay for those things to be under

25    seal, so their people, who are adults, don't have any

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 19 of 60 PageID #:
J.Y.C.C. et al vs. Doe Run Resources et al - February 27, 2025                    28834

18

1    problems, but our folks that are minors, and there are many

2    other reasons why you protect minors to begin with, separate

3    and apart from this issue.  I would argue to the Court that

4    -- or submit to the Court, respectfully, that it is a pretty

5    serious violation, and it is not, you know, they --

6            THE COURT:  That I understand.  I was just trying

7    to quantify something.  Now, who do you think I should

8    sanction, if I do.

9            MR. RODRIGUEZ:  I think you should sanction the

10   Defendants.

11           THE COURT:  All of them?

12           MR. RODRIGUEZ:  No, the ones that I have mentioned,

13   The Renco Group, Doe Run Resources and The Renco Group.  But

14   I think it is admirable for counsel to try to take a bullet

15   for his client.  I understand that, but the bottom line is

16   that the -- I think these Defendants are the ones that are

17   responsible.  They are the ones who hired the lawyers that

18   were down in Peru, and the lawyers in Peru were acting -- and

19   it is in the record -- they were acting as defense counsel

20   for those two Defendants.  So that would be my --

21           THE COURT:  Okay.  Anything else?

22           MR. RODRIGUEZ:  Can I just have a second?

23           THE COURT:  Sure.

24           MR. RODRIGUEZ:  Your Honor, there was some

25   discussion in the memos about 1927, just to be clear, our

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 20 of 60 PageID #:
28835

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

19

1    motion is asking the Court to use its inherent powers to

2    address this misconduct, which we think is egregious and has

3    been ongoing.  And again, all of the cases say that sanctions

4    needs to be reasonable, but if you are dealing with a

5    multi-billionaire, and you know, Defendants have multiple

6    billions of dollars, one of the goals of sanctions is to

7    punish and deter conduct.

8             If you have -- I will just point this out to the

9    Court -- if you have, you know, this whale, and there has

10   been in the response, and the Defendants are saying these

11   guys are crazy -- I'm paraphrasing it -- words to that

12   effect, you know, they are asking for these outrageous

13   sanctions -- look, to deter this kind of conduct, they are

14   going to continue to do it.  If you have hundreds of millions

15   of dollars at stake, and they get sanctioned a pittance, it

16   is worth it to them.  It's the cost of doing business.

17            THE COURT:  A couple of things, I'm going to reach

18   this case on the merits, whatever it is.  I'm not going to

19   strike pleadings.

20            MR. RODRIGUEZ:  All right.

21            THE COURT:  But, if I'm not supposed to do a

22   pittance, what is it you think is appropriate?

23            MR. RODRIGUEZ:  I put it in my papers.  I thought

24   $10 thousand dollars per incident, which would be $4.95

25   million dollars, which is a significant amount of money, but

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 21 of 60 PageID #: 28836

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

20

1    I think it is the kind of number that it takes to deter

2    future conduct.  Otherwise, they are going to continue to do

3    it.

4            If you have hundreds of millions of dollars at

5    stake, and you sanction somebody, if it was an individual,

6    who was a lawyer, and you sanctioned them, you know, $50,000

7    -- I'm just throwing out a number -- that's a pretty

8    significant number, and I think you could deter conduct.  The

9    stakes for these folks are so high, and they are now -- and I

10   know your Honor probably knows this, with regard to Judge

11   Perry's cases, the Reid cases, they filed a petition for cert

12   to the United States Supreme Court, which probably should get

13   resolved pretty soon, and in this case -- and I shouldn't

14   even use that term, but they are out of legal bullets, you

15   know, they are going to have to face the piper.   Your Honor

16   may be aware of a State Court case where -- it is a Monsanto

17   defendants with a case out of Herculaneum, where it is a

18   similar type smelter, similar type plant, there were 16

19   plaintiffs in that case, and the jury in the State Court in

20   St. Louis, the jury came back -- numbers are rough -- with

21   like $385 million dollars.  It went up on appeal -- it was a

22   remittitur -- and for 16 plaintiffs, the final award was $125

23   million -- I think it was like $7 million dollars a

24   plaintiff.

25            So do the math.  The stakes are high.  These people

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 22 of 60 PageID #: 28837

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

21

1   have to comport themselves, and you know, they have been

2   trying to get out from under your Honor's rulings, and we

3   have two lawsuits of 1782 action in Miami.  We have a State

4   Court case in Miami against one of my litigation team members

5   and another lawyer that was a referring lawyer that referred

6   250 cases to me.  That's on the agenda, and I am probably

7   going to get to that later.  They are prosecuting this matter

8   in Peru, as if we -- the Plaintiffs and the Plaintiffs'

9   lawyers invented all of this pollution, you know, I don't

10  think I'm out of line when I tell your Honor if you Google --

11  if you look up LaOroya -- at least when I first got into the

12  case -- it was the second most contaminated place in the

13  world after Chernobyl.  It is horrible what has happened

14  there.

15          And now -- and we are concocting these cases like

16  that seems to be their theory that they are promoting them.

17  It is ridiculous.  So, anyway.

18          THE COURT:  All right.  Let me hear from the

19  Defendant.

20          MR. RIVERO:  Good afternoon, Judge.  Andrés Rivero

21  for the Defendants.  Judge, if I can just have a moment to

22  connect my computer.

23          Judge, let me -- the first thing that I want to say

24  is that there is actually -- I have significant agreement

25  with what Mr. Rodriguez just said about the details about

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 23 of 60 PageID #:
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025            28838

22

1    these disclosures, and as to the numbers, I'll go through

2    that with you.  But many of the comments that are outside of

3    that, Judge, you have already said that you are going to deal

4    with merits.  These shed a lot of heat and no light.  And so

5    I won't take the time right now, Judge, but there are factual

6    inaccuracies about what we have presented to the prosecutor.

7              THE COURT:  What we know is that there was a

8    sealing order in effect, and it was violated.

9              MR. RIVERO:  Judge, that's what I need to address,

10   and so I will need to address.

11             THE COURT:  So, if it wasn't, how did the

12   information get out?

13             MR. RIVERO:  Judge, the answer is -- and the

14   authority on this is not me at a hearing where process had

15   not gone through, and I'll address the standard in a moment,

16   but the most important statement, is your statements at the

17   hearing, where you told the Plaintiffs "It can be tedious to

18   establish what actually happened."  But it didn't happen on

19   August 27th, so I'm not the authority for that issue.  I want

20   to answer your questions on this, Judge.

21             First, the question before the Court is whether the

22   sealing order was violated, and if so, what the appropriate

23   remedy is.  That's plainly the question.  So dealing with the

24   first question, Judge, after careful study of the case law,

25   the rules, the facts of the disclosures, Judge, going back to

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 24 of 60 PageID #: 28839

J.Y.C.C. et al vs. Doe Run Resources et al - February 27, 2025

23

1    exactly what was actually disclosed, not something that was

2    brought up at a hearing, and I was responding to it on the

3    spot.  But instead, actually looking at the details of those

4    disclosed, in the 976 docket entries, all throughout the

5    entire docket of this case.

6              Today, after a tedious process, Judge, and due

7    process, I understand what happened, and I can answer.  I can

8    tell you that I have reached the full view that we didn't

9    violate the sealing order.  We didn't violate the protective

10   order as conceded in there by the Plaintiffs' statement.

11   They started -- this was a motion that was misbegotten,

12   Judge.  What I am saying it was not redeemed by this new

13   language, and I'll explain it to you why, Judge.

14             The source -- the source for the information

15   supplied, and I can demonstrate to the Court both by how it

16   is applied, and also by the Plaintiffs' statement, was never

17   the sealed next friend petitions.  The source of the

18   information, Judge, now the information that -- and there is

19   a Venn diagram of it, Judge.  And when those overlap, they

20   are the names of the minors.  But that does not settle the

21   question.  Obviously, that fact is just a fact.  I always

22   acknowledge that's a fact.  But Judge, the Venn diagram of

23   what covers and protects those names is entirely separate.

24             The source for the disclosures, your Honor, was not

25   the next friend petitions.  I'll explain it to you with

1   detail, and if it wasn't sourced from there, Judge, then we

2   haven't violated a rule of this Court.  It has to be a

3   violation of the rule of the Court.

4           THE COURT:  Okay.  So who else would have known who

5   the Plaintiffs are in this case except from the Court file?

6           MR. RIVERO:  Judge, I think you just put your

7   finger on it.  You said this, and I'm going to read --

8           THE COURT:  No.  Just answer my question.  We have

9   -- let's take the March 9th event, 394 active minors' names

10  were disclosed.  Names are disclosed all of the time, but you

11  have disclosed the Plaintiffs in the case in this courthouse

12  when it is sealed.

13          MR. RIVERO:  If I may, your Honor, to answer the

14  question, the next friend petitions plainly listed the names,

15  and I want to show the Court the order.  That that's the

16  valid order, but the date the information -- and this is in

17  the record un-rebutted, in the case of the June 3rd, which is

18  the last, and let me say is the most important, the nine

19  minors that are in the trial court.  It is clear that that

20  came from the authorizations, and that's in the discovery

21  process, Judge.

22          And so when I studied this after, well, Judge, if I

23  may, you know, and I'm going to be really --

24          THE COURT:  You are really you are going down a

25  rabbit hole that is going to ill-serve you.  There is a

1    sealing order in this case.  The discovery is confidential.

2    You get a medical release that doesn't say "confidential" on

3    it, does not give you the authority to disclose the name of

4    that Plaintiff.

5              MR. RIVERO:  I understand what you are saying,

6    Judge.

7              THE COURT:  That's not realistic, or practical, or

8    the effect of this Court's order.

9              MR. RIVERO:  But Judge, could I show you what the

10   order says, and what Rule 5.2 says, and what the commentary

11   say, if I may.

12             THE COURT:  I don't need to see it.  Just keep

13   talking.

14             MR. RIVERO:  All right, Judge, here is the key from

15   that, Docket Entry 2 was a motion in this case 1704, which is

16   commonly called Collins, was a motion to seal the next friend

17   petitions, because that had been requested by the Plaintiffs

18   in State Court.  It was 92 next friend petitions.

19             You, your Honor, entered a single line order saying

20   "granted."  That's -- and by the way, in the motion, the

21   basis for the sealing was the names.  So that was very clear,

22   Judge.  The sealing is the names.  Well, Judge, Rule 5.2 is

23   in our papers, but 5.2 is about what can be filed with the

24   Court.  It is very plain, as is the Local Rule that

25   implements it.  There are a couple of rules that implement

1   it.  That's all about filing.  In the commentary, your Honor,

2   to the Federal Rules of Civil Procedure 5.2, what the

3   Judicial Conference says is specifically, your Honor, the

4   rule -- "The rule is derived from and implements the policy

5   adopted by the Judicial Conference in September 2001 to

6   address the privacy concerns resulting from public access to

7   electronic case files."  Your Honor, that is the purpose of

8   that rule.

9           And Judge, it goes further to say, "The rule does

10   not affect the protection available under other rules, such

11   as Rule 16 or Rule 26."

12           What this set of Federal Rules, and I know the

13   Court is obviously aware of 16 and 23, the discovery rules.

14   What these rules set up, Judge -- and Judge, I understand

15   where you are coming from, and if you permit me, I'll tell

16   you about an experience I had 30 years ago, but I want to be

17   real clear, I'm just talking about the law.  The rule says

18   that "It was adopted to make sure there is privacy in the

19   electronic files in this court."  And that's when it talks

20   about filing.

21           THE COURT:  If so, why a privacy?

22           MR. RIVERO:  Because, Judge, the purpose of the

23   privacy is obviously it is provided for like in 5.2 is to

24   protect, and I can read it again to the Court.

25           THE COURT:  Protect the identify of the minors.

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 28 of 60 PageID #: 28843

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

27

1          MR. RIVERO:  From public's access to electronic

2    case files.  That's what the rule says.  I'll read it again,

3    Judge, it says --

4          THE COURT:  I understand.  I heard you.

5          MR. RIVERO:  Yeah.  Now, Judge, Rules 16 and 26,

6    and Judge, I did not fully understand this when I was before

7    your Honor on August 27th.  I'm telling you the way it is.

8    Rule 16 and 26 provide for how one is to seek protection for

9    the exchange of information between the parties, which is

10   different, sometimes, it is not always different, but it is

11   actually different, usually different from what's filed in

12   the court.

13         Now, Judge, these parties -- this was long before I

14   was in this case.  They had strenuous differences about their

15   protective order.  There are entries and entries back and

16   forth, and competing protective orders were presented to your

17   Honor, and you made a decision between the two versions.  And

18   this is why I say to you now, Judge, having studied it

19   carefully, and I hope, Judge, that I don't try your patience

20   with me, but having studied it carefully, there are two

21   regimes of protection for these different sources of

22   information.

23         I understand that this is a Venn diagram, and that

24   there is this information in the middle.  But Judge, the

25   Eighth Circuit -- and this is consistent of what you said at

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 29 of 60 PageID #:
J.Y.C.C. et al vs. Doe Run Resources et al - February 27, 2025          28844

28

1   the hearing now.  It seems like the hearing is very

2   consistent with the view of the Eighth Circuit, which is no

3   one should be held in contempt for violating an ambiguous

4   order, especially an order purporting to restrict the right

5   of the public to see public records and documents.  This is

6   *Imageware vs. U.S. west*, and it is a decision of the Eighth

7   Circuit at 218 F.3d 793, page 797, 2000, Judge.

8          "Civil contempt will rely only if the punitive

9   contender has violated an order that is clear and

10  unambiguous."  And it goes on to say, in that case, the issue

11  was the ambiguity -- and I think it is different here, Judge,

12  because you have two entirely different regimes of

13  protection.  And my point to the Court is on the source of

14  discovery information, the Plaintiffs did not apply their

15  relief available to the protective order.  They acknowledged

16  that, and they have withdrawn that, essentially.

17         Now Judge, what happened in *Imageware*.  *Imageware*

18  is different, because the order simultaneously said

19  everything stays sealed in one place, all of it stays sealed

20  until indefinitely.  But another order says you can use it as

21  trial exhibit.  And then the party -- it was *Imageware* --

22  used the certain documents at trial, and then they used the

23  actual documents.  And initially, the District Court said no,

24  they are sealed indefinitely.  They stay under seal.  But the

25  Eighth Circuit said that the fact that there was some place

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 30 of 60 PageID #:
28845

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

29

1    where you could use it in this public and unrestricted way

2    was ambiguous, and therefore, they ought not be punishable,

3    because they had not acted in bad faith.  At the end, the

4    issue was whether we were acting in bad faith.

5           THE COURT:  But in this case, you had decided

6    disclosure, and I denied it.

7           MR. RIVERO:  Judge, that's after the fact.  But

8    that's exactly right, Judge, but I'm not disagreeing --

9           THE COURT:  I'm at a loss.  How did this

10   information get to the Peruvian authority?

11          MR. RIVERO:  Well, Judge.

12          THE COURT:  Who can gave it to them?

13          MR. RIVERO:  I said that before, the June 3rd

14   information, we supplied it to the Peruvian counsel who

15   represents the Defendants.  Peruvian counsel supplied it to

16   the prosecutor.  But Judge, let me just -- there are two

17   different questions here, because one is about a motion.  Our

18   motion was to unseal the documents, the next friend

19   petitions.  And Judge, we do need that.  We have asked you

20   twice, and you said no, and we never have used those that

21   have been sealed.  We also didn't -- out of an abundance of

22   caution we sought to be permitted to use all of the

23   documents, and the Court has said no, and we have never

24   supplied any document.  And there is no allegation that we

25   did.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 31 of 60 PageID #:
28846
J.Y.C.C. et al vs. Doe Run Resrouces et al - February 27, 2025

30

1              Furthermore, Judge, as to the question of the June

2    3rd, what was given was the names, after the fact -- and you

3    may not remember this detail, but it is in the affidavit of

4    Juan Pena Flores, the lawyer.  The prosecutor came back and

5    said "I can't identify this from the names."  He went on

6    public records in Peru and supplied the DNI names, which are

7    plainly not in the sealing order, and dates of birth, which

8    were not referred to in the sealing order either as to the

9    name.  And those, Judge, are simply not covered in the

10   sealing.

11             When we asked later to use the documents, Judge,

12   some of those documents include next friend petitions which

13   are plainly under the order.  What I'm saying to you, Judge,

14   is I understand where you are coming from.  I didn't, when I

15   talked to you August 27th, but I ought not be the authority

16   on this, Judge.  When you said during that hearing that this

17   was a matter that required, your Honor, that the source of

18   the information, to the extent it violated an order of this

19   Court, is the most important to me.  And that's what I'm

20   trying to address, Judge, is the source of information was

21   not the next friend petitions, which were sealed by the

22   Court.  The source of the information was discovery materials

23   that were not protected by the protective order and were not

24   under seal.

25             And Judge, on the general question, you also said,

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 32 of 60 PageID #:
28847

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

31

1    a motion for sanctions can only be justified with specific

2    conduct.  So it may be tedious, but if you are serious, then

3    you have a right to respond to that.  The only thing I know

4    is the Court of Appeals reversed me for not giving them due

5    process.  It is too big of a question to have it that vague.

6              And that's why I'm trying to be as clear as I can,

7    Judge.  The March 3rd, I can show you on this graphic, it

8    came directly from a CD supplied by Plaintiffs' counsel,

9    Mr. Lanciotti, and it was not marked confidential.  And the

10   same applied to the March 3rd --

11             THE COURT:  Mr. Rodriguez, what do you think about

12   that.  He is saying this is all your fault.  You didn't mark

13   the discovery material "confidential."  So they can give it

14   to anyone they want.

15             MR. RODRIGUEZ:  Your Honor, the 9-30 and -- or

16   excuse me, the 3-30 and the 3-9 production to this to

17   opposing counsel that found its way to the prosecutor, and

18   then to the -- or to the Peruvian lawyers and the prosecutor.

19   They were subject to the sealing order.  I don't have to

20   designate the names.

21             THE COURT:  What did it say?  Did it say you can

22   get these records and give them to anyone?

23             MR. RIVERO:  May I show you, Judge?  I have the

24   pictures.

25             THE COURT:  I'm asking you.  I don't need to see

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 33 of 60 PageID #: 28848

J.Y.C.C. et al vs. Doe Run Resrouces et al - February 27, 2025

32

```
 1   it.  What did it say?  You are going to get someone's medical
 2   records of a minor whose identity is sealed.  You can share
 3   these medical records with anyone.
 4             MR. RIVERO:  Judge, we didn't share medical
 5   records.  I want to make that clear.
 6             THE COURT:  You just told me that it came from the
 7   discovery material.
 8             MR. RIVERO:  The names came from the discovery
 9   material, Judge.  What I'm saying is the only thing supplied,
10   and I want to be real, real clear -- the only thing supplied
11   was on March 3rd, it was a list of names.
12             THE COURT:  Where did the names come from then?
13             MR. RIVERO:  From a disk that Mr. Lanciotti sent of
14   Plaintiffs profile sheets never sealed by the Court.  The
15   only thing that's ever -- and Judge, I want to -- never has a
16   profile -- a personal profile sheet been sealed by the Court.
17   The only thing that is subject to a sealing order of the
18   Court is the next friend petitions.
19             THE COURT:  I don't collect discovery, so --
20             MR. RIVERO:  Right.
21             THE COURT:  -- I wouldn't have them.
22             MR. RIVERO:  Right.  Judge, there is no reason you
23   would.  But going back to what I'm trying to say to the Court
24   is Judge, there is no reason -- the Court is not supposed to
25   intervene unless it is requested by the adversaries, and
```

1   there was a very heated back and forth about what that

2   protective order should do.

3          And Judge, I went over this the last time, and they

4   have conceded it.  It said designators confidential.  I'm in

5   litigation today, Judge.  I'm in litigation where the other

6   side designated 97 percent of the documents confidential,

7   attorneys-eyes only.  But these were not designated, Judge.

8          Let me go back, Judge.  I know that in common

9   sense, because I'm the one who brought this up, your Honor.

10  I'm the one who brought this up.  I have been doing this for

11  a long time.  I brought it to your attention.  Your Honor,

12  you are a very very experienced District Court Judge.  I'm an

13  experienced litigator.  In a common way of thinking about

14  these things, we would think about this.  But Judge, when one

15  looks at the structure of the rules, the case law, and the

16  law, the commentary to the rule, it turns out that I was

17  incorrect on the way I described this to you on August 27th.

18         And Judge, I guess what I would say to you is this,

19  you may deem that this is a newfound view I have taken, and

20  I'm wrong about it, and it doesn't follow common sense.  I

21  get that.  But Judge, to follow with this case I'm telling

22  you about is, if we were incorrect, and I really firmly

23  believe now we weren't because the source of the information

24  is different, Judge.  It was an undesigned discovery document

25  each instance.  March 3rd was Plaintiffs' profile sheets.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 35 of 60 PageID #: 28850

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

34

1    March 30th was Plaintiffs' profile sheets, and June 3rd was

2    medical authorizations.  In no instance did we share a

3    document, Judge.  We did share the names with the prosecutors

4    and for confidential proceedings.

5         Judge, if you conclude that we were incorrect, and

6    I don't think you should, but if you did, Judge, the Eighth

7    Circuit says where there is an ambiguity, there is a good

8    faith ambiguity, that should not lead to sanctions at all.

9    So when we say our question one, for both reasons.  My actual

10   close reading of the case law, and the rules, and the

11   commentary to the rules that we didn't violate.  And I'm not

12   an authority, uneducated, without having gone through this

13   process, as of August 27th.  Today, I understand it much

14   better.

15        But secondly, Judge, if you disagree -- and I

16   understand that you could disagree, the question that still

17   remains is, is it a clear unambiguous requirement.

18        THE COURT:  There was no doubt in anyone's mind in

19   this case that the identity of the minor Plaintiffs was to be

20   confidential.  To find a piece of discovery with their name

21   on it, that isn't marked "confidential" across the top.

22        MR. RIVERO:  Judge, I say to you again, the -- and

23   I guess.

24        THE COURT:  You know that they were to be kept

25   confidential.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 36 of 60 PageID #:
28851
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

35

1           MR. RIVERO:  In that regard, I guess one thing I

2    want to say is on this question of the standard is whether

3    the conduct is contempt of the Court.

4           THE COURT:  But you weren't confused that the

5    identity of the minors was to be kept confidential.

6           MR. RIVERO:  Judge, we entered this case right

7    around that time.  This case was already eight years old at

8    the time, and we were familiar with the protective order,

9    analyzed that protective order.

10          THE COURT:  It is not the first case you have ever

11   handled with a minor.

12          MR. RIVERO:  No, Judge, and the rule requires the

13   sealing, and I go back to, Judge, the rule -- the express

14   stated purpose of the rule in the commentary is to protect

15   public access, try to --

16          THE COURT:  Public access, who does that include?

17   That's not just CM/ECF.

18          MR. RIVERO:  It is the entire world.  Judge, I see

19   where, after studying it, Judge, that's what my view is.

20          THE COURT:  My point is it is unambiguous that

21   their identities were to be kept sealed.

22          MR. RIVERO:  The next friend petition, and in fact,

23   the purpose stated was to seal the names.  That's stated.  I

24   agree.  That's in the order.

25          THE COURT:  You are telling me that because you got

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 37 of 60 PageID #: 28852

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

36

1    a piece of discovery that didn't have "confidential" across

2    the top, that gave you the ability to circumvent the very

3    purpose of the sealing order and to distribute those names.

4           MR. RIVERO:  No, Judge, what I'm saying to you is

5    that -- and if that's how you concluded it, Judge, then

6    obviously, that's the answer.  But what I'm saying to you is

7    it is one set of rules that are real clear, and they say what

8    they are for that govern sealing.  It is another set of

9    rules, and they are real clear, that governs discovery.  And

10   the two exist in parallel to each other, and just like in the

11   case *Imageware*, there were two different conditions that

12   existed in parallel, and the Eighth Circuit found that

13   created ambiguity.  Now, Judge --

14          THE COURT:  I don't see the ambiguity sense of it,

15   identifying minors in the case, whose identities have been

16   sealed, because you happened to have a discovery document

17   with their name on it that doesn't say "confidential" across

18   the top.  How is that ambiguous?  That's not an invitation

19   for you to disregard the purpose of the sealing order.

20          MR. RIVERO:  I'll repeat, Judge, and I think I'm

21   not going to --

22          THE COURT:  I understand you say that the discovery

23   rules and the protective order, but the identity and

24   disclosure was not a given, and it is not ambiguous.  It is

25   forbidden.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 38 of 60 PageID #:
28853
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

37

1       MR. RIVERO:  Your Honor, I turn to the second part

2   of this analysis, because I think your view is stated on the

3   record, your Honor.  And Judge, I go -- when I talked with

4   you last time.

5       THE COURT:  This wouldn't have happened in St.

6   Louis, when the lawyers all know each other.  It only happens

7   when you get someone from out of town who doesn't have to

8   deal with that lawyer again.  We all know the purpose of the

9   rule, and why the rule is in effect, and what's going to

10  happen.

11      MR. RIVERO:  Judge, it is interesting, because I

12  will use this -- and I'll stop on the merits, Judge.  I have

13  stated for the record what it is, and Judge, I don't expect

14  -- and so in this, I was reflecting the only time that I had

15  such an issue I was a Federal prosecutor in 1992, and I had

16  gotten in a very significant grand jury sanction about a

17  hundred thousand dollars a day against a major bank for not

18  producing information.  It was leaked to the Wall Street

19  Journal.  And that's the only time I dealt with the

20  situation, Judge.

21      But what I now understand is here the entire

22  proceeding and hearing evidenced it.  Here Judge, there was a

23  specific item sealed.  It was the next friend petition.  And

24  again, Judge, the source that we took this from was a

25  different place.  Your Honor --

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 39 of 60 PageID #:
28854

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

38

1          THE COURT:  Not a different place.  It is discovery

2     in this case.

3          MR. RIVERO:  That's right, Judge.  But what I'm

4     saying is there are different --

5          THE COURT:  They didn't write "confidential" on a

6     certain -- on the page, and so it was okay.

7          MR. RIVERO:  Can I show you, Judge, that it says in

8     your order, it says you cannot assume that anything is

9     protected.  That the protective order does not give

10    protection to anything, and Rule 15 says -- I'm sorry, Rule 5

11    says --

12         THE COURT:  But it is your position here, because

13    he didn't write "confidential" on it, you could do anything

14    you wanted with it.

15         MR. RIVERO:  Judge, I don't think that I'm saying

16    that we can do anything with it, but what I'm saying is that

17    we did --

18         THE COURT:  But you did.

19         MR. RIVERO:  Can I address that, Judge, because I

20    think that goes to the second part, which is what would be

21    the remedy should you find -- and I urge you not to, Judge --

22    and I think that this is --

23         THE COURT:  That is clear.

24         MR. RIVERO:  Judge, where did this information go,

25    all of it, and we are talking about that's where we did the

Case: 4:15-cv-01704-RWS    Doc. #: 946    Filed: 05/29/25    Page: 40 of 60 PageID #:
28855
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

39

1    count too, it is active Plaintiffs, which I think is the

2    right category, again, because of the rules, and what the

3    Court says about final disposition, and these were -- many of

4    them were dismissed, but I disagree with the numbers.  In

5    fact, I wrote it down, Judge.  I believe if you counted every

6    single one, including dismissed, it would be 495.

7            Judge, of course, most of those were inactive.

8    They were dismissed, and the actives, I believe, Judge add up

9    to about something on the order of --

10           THE COURT:  I came up with 407 active Plaintiffs.

11           MR. RIVERO:  Something like that.  It might be 401,

12   Judge, but it is somewhere like that.  I have 401, but it

13   could be 407, counting 384 plus -- I think it is 400, but it

14   could be 407, Judge.  I'm doing it off the top of my head.  I

15   don't have a piece of paper to calculate it.

16           THE COURT:  Three plus four equals seven, but

17   that's all right.

18           MR. RIVERO:  Judge, here is where I think that

19   there is a real -- I think I'm not going to agree with the

20   Court on the first part, but on the second part, Judge, where

21   the Plaintiffs are seriously seriously attempting to lead you

22   into error, is when they point to all of these statutory

23   penalties provided by statute after trial, and punitive

24   damages and all of the rest.

25           Judge, the cases in this Circuit that have applied

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

```
 1    a violation for sealing -- a sealing violation, we cite four
 2    of them, have very modest sanctions, Judge.  And we cite them
 3    in our papers.  Judge, the situations, for example, 160 pages
 4    of exhibits, they don't specify the numbers of minors, but
 5    160 pages containing the names of minors, birthdays,
 6    financial account numbers, and at least one social security
 7    number, apparently all of that was protected.  And again,
 8    here we are -- the only thing protected was the names, and
 9    the sanction imposed by the party, by the Court, was $300,
10    Judge.  That's a case in 2010.  Even with inflation, that was
11    $300 dollars for all of that.
12            Judge, in another case, and that's *Allstate vs.*
13    *Linea Latina*, and *Engeseth vs. Isanti* 665 F.Supp 2d 1047 --
14    it is a District of Minnesota, Judge.  There 179 -- so
15    roughly half, or a little less than half for the number here,
16    the Court -- that was social security numbers, dates of
17    birth, etc., that were -- those were sealed.  The Court --
18    this is where it was actual violation of the sealing.  They
19    filed stuff that shouldn't have been filed.  It is plainly
20    against the sealing order, $5,000, Judge.  *Flores vs. United*
21    *States*, there they don't specify.  They say several minors,
22    and the sanction was $500 dollars.
23            And Judge, the fourth one, *Carpenter* -- and *Flores*
24    is the District of Minnesota, March 22, 2011, and in
25    *Carpenters* --
```

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 42 of 60 PageID #:
J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025      28857

41

1          THE COURT:  The Courts in Minnesota are nice and

2     what you are reading me.  That's all right.

3          MR. RIVERO:  I heard Missouri is --

4          THE COURT:  Tell me you read that, and I'll tell

5     you what's going on.

6          MR. RIVERO:  Judge, I don't know the names.  In my

7     District, I would be able to, Judge.

8          THE COURT:  So tell me who did it, and we will

9     figure it out.

10          MR. RIVERO:  Judge, I also heard that Missouri's

11     Midwestern is nice.  I'm not from the Midwest.

12          Judge, in *Carpenters* -- and *Carpenters* is issued

13     here in St. Louis, Judge.  That's the Eastern District of

14     Missouri, and I can't tell who it is.

15          THE COURT:  It matters -- I'll going to tell you it

16     matters.  And what was mind-blowing to me, to have one thing

17     going on, or Harper, or Meredith.  But if everyone was gone,

18     I would be shocked.

19          MR. RIVERO:  Judge, I have been doing this for

20     years, and what I tell my young lawyers, is when you are in

21     the District, include the name of the Judge, because it makes

22     a difference in our District, it certainly does.  So, but I

23     do have an Eastern District of Missouri Judge, who --

24          THE COURT:  Who is the one who used to keep a gun

25     on the bench.  That's all you need to know.

Case: 4:15-cv-01704-RWS   Doc. #:  946   Filed: 05/29/25   Page: 43 of 60 PageID #: 28858

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

42

1          MR. DOWD:  That was Judge Bahn.

2          MR. RIVERO:  Judge, in *Carpenters vs. Near*

3  *Services*, the party violated by filing exhibits containing

4  social security numbers, tax ID numbers, complete account

5  numbers, home addresses of nonparties, all a violation.  And

6  there, the Court ordered counsel to provide a copy of Rule

7  5.2 and Local Rule 2.17 to each attorney, legal assistant, or

8  other person at the law firm, who engages in electronic

9  filing.

10          THE COURT:  That's also a fun extra CLE credit for

11  everyone, so.

12          MR. RIVERO:  Judge, can I tell you the amount?  You

13  asked, on this subject, you asked a very precise question

14  which is -- and it goes back to something you asked at the

15  hearing.  You asked me, you said, you ran the stop sign, now

16  someone is hurt.  The Plaintiffs have not provided one shred

17  of any evidence that any person was harmed.

18          THE COURT:  I asked that question, so.

19          MR. RIVERO:  Separately, Judge, there is a very,

20  very, very limited distribution.  Each one of the filing

21  mistakes I'm talking about, given on the ECF system, is

22  completely -- there are four cases -- it is completely

23  visible to the whole world, Judge.

24          In the circumstance that we are talking about,

25  there were 12 persons provisionally indicted in Peru, 12,

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 44 of 60 PageID #:
28859

J.Y.C.C. et al vs. Doe Run Resources et al - February 27, 2025

43

1    Judge.  And there are lawyers that we believe number less

2    than half a dozen lawyers.  Under Peruvian law -- and this,

3    of course, two prosecutors.  So Judge, I count 18 human

4    beings who are legally to have access to those files.  That

5    is a minuscule amount in relation to the public file.  But

6    separately, Judge, there is a case called "Nora" that we have

7    cited in our papers, and that is that the Court should take

8    into account the comparative conduct of the Plaintiffs in any

9    kind of a ruling, or on any kind of sanctions, and this is in

10   Missouri -- or this is a Wisconsin.  But there, the

11   Plaintiffs included 150 names where they failed to protect

12   under a sealing order the Plaintiffs, as to our clients,

13   failed to protect 150 names, dates of birth of their own

14   clients, etc., and the Court denied sanctions, among other

15   reasons, because the Plaintiffs had disclosed similar

16   information.

17         Judge, here, here, it is acknowledged by the

18   Plaintiffs in the papers -- and I'm saying to the Court that

19   if you don't agree with our reading, it is erroneous,

20   inadvertent, and in good faith.  I'm sure that the Plaintiffs

21   did it in good faith, but Judge, they filed public ECF, the

22   entire world.  They published names in the last eight months.

23   Before that, Judge, they corrected us.  We thought they had

24   filed about 150 names in the Circuit Court without sealing.

25   I think the number comes down to something like 70 names,

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 45 of 60 PageID #: 28860

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

44

```
1    without sealing.  And their explanation, Judge, as to the

2    issue of the papers to this court was, well, wait a minute,

3    that's only accessible to the members of the Missouri Bar and

4    to the public, if they go to public access terminals in

5    Missouri Courts today.  Right now.

6           Judge, there are 30 thousand plus lawyers in

7    Missouri, and all anyone who could get to a public access

8    terminal, could get those names over there.  That

9    distribution is far, far, far broader.

10          Now, I'll say another thing, I haven't seen the

11   documents that Plaintiffs are referring to, under Peruvian

12   law, I don't have access to.  I have not seen them, Judge.  I

13   have gotten affidavits from Mr. Pena Flores, that Peruvian

14   law prohibits us from having it.  I don't know how Mr.

15   Rodriguez has it, except that Mr. Careaga wanted a provision

16   indicted, is or was a paralegal that worked with him, and

17   they are co-parties in that 1782 Miami, but the Plaintiffs'

18   counsel are not supposed to have this.

19          What is it that I am saying to you, Judge.  When we

20   cite to you the *Gore vs. BMW case,* which it is an Alabama.

21   It is a punitive sanctions case, and there is a $10,000

22   dollars per name, and it ended up it was $2 million dollars.

23   Judge, that got reversed by Supreme Court of the United

24   States.  That's not -- that authority they cite to you is

25   completely backwards, and they are citing HIPAA violations,
```

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 46 of 60 PageID #: 28861

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

45

1    and all of these statutory specific large dollar amounts.  I

2    don't think you get to anything about Mr. Rennert, or the

3    income, or the assets of these parties, Judge.

4         I go back to our story -- and your Honor, I don't

5    mean by anything of this to say, I consider that I should

6    have thought the whole thing through from the beginning to

7    the end at the beginning.  And that's what I was trying to

8    communicate in August, and I still feel that way.

9         Judge, I have been at this for a long time, but I

10   think that one reason I say there was an issue, your Honor,

11   and I think there is some conflation there, because when you

12   are saying the scope -- on the sealing orders, there is no

13   scope, Judge.  Anybody outside of the people on the file is

14   out.  The scope question goes to there a whole list in

15   confidentiality.  I'm just talking about what I said that

16   day.

17        Your Honor, I don't believe we did actually

18   technically violate this protective order.  If we did, Judge,

19   it is in a context where there is two different things, and I

20   have never seen this situation that didn't protect anything

21   pursuant to 16 and 26.  That makes it a different situation.

22   If the Court concludes that that is a violation, your Honor,

23   I think the appropriate remedy would be a very modest

24   financial sanction, and I absolutely believe, your Honor,

25   none of these high numbers is appropriate, Judge.

1              THE COURT:  All right, thank you.

2              MR. RODRIGUEZ:  Very briefly, your Honor.

3              THE COURT:  I mean very briefly.

4              MR. RODRIGUEZ:  I just want to address one thing.

5    All of these cases -- the four cases cited by counsel, there

6    were modest sanctions.  They are not applicable here, because

7    in those cases, you had an inadvertent failure to redact, you

8    know, there were failures resulting -- or failures that led

9    to filing information that they shouldn't have filed pursuant

10   to the Federal Rule, Local Rule, and I don't remember if

11   there were sealing orders, but it was inadvertently done.

12             In this case, they filed it properly.  They asked

13   for the sealing order, and then after the fact, they go ahead

14   and disclose the information.  We have already talked about

15   it.

16             THE COURT:  But they said that's your fault.

17             MR. RODRIGUEZ:  No, Judge -- excuse me -- no, and

18   it was clear the parties all understood that there was a

19   sealing order in place, and that the minors' names, and date

20   of births are sacrosanct, and they don't get disclosed.  And

21   your Honor is absolutely correct, just because we produced

22   documents based on these authorizations, and we didn't put

23   "confidential" on it, it doesn't give them the right to

24   violate a Court order, and produce names to persons that are

25   outside the zone, that are outside the litigation, to their

1    lawyers in Peru, and to the prosecutor in Peru.

2          It is a very different -- and these individuals

3    that were involved in these four cases, I think they are

4    lawyers or individuals, and these sanctions are enough, you

5    know, to deter future conduct, and they address the problem.

6    That's not going to address the problem here, Judge.  I mean,

7    where the rubber meets the road here is you are talking about

8    multi-billionaires, and you are talking about very, very high

9    stakes, and that's why they don't always color within the

10   lines.  We go outside the lines, and if -- I'm going to use a

11   word whether it be cheating, or if it is a cost of doing

12   business that they can live with, to try to continue to

13   attack this case in other places, other than your Honor's

14   courtroom, which they are doing, and there are multiple

15   forums, and I'm not going to get into the merits, but you

16   know, it is totally -- again, the premise of all of these

17   attacks is that the Plaintiffs were making this up, and that

18   this is a contrived trumped up case that there is really

19   no --

20          THE COURT:  I already told everyone we will get to

21   fraud or issues in each case as they come up.

22          MR. RODRIGUEZ:  See, part of their conduct, the

23   Defendants' conduct, Renco, Doe Run Resources indicates that

24   they are not abiding by it.  And you have said it a million

25   times in different orders.  You have said it orally I don't

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 49 of 60 PageID #: 28864

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

48

1   know how many times, hey, look, if there is any fraud, we

2   will find it, and we will fair it out here.  That's not good

3   enough for them, and they are going to continue to push the

4   envelope, and go past the envelope, and do things that they

5   shouldn't be doing like this that are clearly contrary to the

6   rules and contrary to the sealing orders until -- they have

7   to be deterred.  A slap on the wrist is not going to work.

8           THE COURT:  Talk to me about the other pending

9   motion about producing discovery to the attorneys in the

10  Florida action.

11          MR. RODRIGUEZ:  I -- look.

12          THE COURT:  Do we have an agreement on the scope of

13  that, or is that an issue?  Why don't you come up together.

14  For once, we will do it together.

15          MR. BIERMAN:  We'll stand right next to each other.

16          MR. RODRIGUEZ:  Look, Judge, this has to do with

17  the State Court case that they filed against I guess Careaga

18  and a Luke Taylor, who is a referring lawyer that referred

19  anywhere between 200 and 300 cases to us, and in that case,

20  those lawyers -- the lawyer Taylor and Careaga filed a

21  request for production, and the plaintiffs in that case,

22  which are the Doe Run companies, have taken the position,

23  well, you know, we are not going to produce the documents

24  unless we get authorization from Judge Sippel from the Court

25  to produce those documents.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 50 of 60 PageID #:
28865

J.Y.C.C. et al vs. Doe Run Resrouces et al - February 27, 2025

49

1          Our position is that we -- with regards to Careaga,

2    he is part of the litigation team, and that shouldn't had

3    been an issue, but whether Taylor, he is referring counsel,

4    he is not counsel of record with you.  He is referring

5    counsel to a couple of a hundred -- at least 200 cases, and I

6    really don't have a problem with Taylor getting them, whether

7    the Court does or doesn't, that's another issue.  I don't

8    have a problem with Taylor, would --

9          THE COURT:  Well, if you all can work it out, I

10   don't have a problem.

11         MR. RODRIGUEZ:  Okay -- so, no, no, but here is the

12   issue.  My bottom line issue is that they -- and counsel may

13   clear is up right now, and maybe we can have some kind of an

14   agreement, but as I understand it, they want to get the

15   documents, and have it subject to the confidentiality order

16   in the Florida court.  And the confidentiality in the Florida

17   court, I'm afraid doesn't have enough latitude, and that they

18   are going to take those documents and that information, and

19   produce them to the prosecutor, which is what they always

20   want to do.  You know, get the information to the prosecutor

21   in Peru.

22         THE COURT:  I can craft it so it can't go beyond

23   that court.

24         MR. BIERMAN:  Your Honor, we have three categories

25   of documents that we are talking about, okay.  The first

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 51 of 60 PageID #: 28866

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

50

1  category of documents is the Jones Day and the Rivero Mestre

2  reports, and I think we have an agreement based upon your

3  response that those -- we can go ahead and produce those.

4       The second set of documents, which I don't think

5  there is any issue about, are documents that Doe Run has

6  obtained that have never been offered in this Court, are not

7  part of the sealing order; for instance, there are

8  declarations of individuals in Peru.  They are individuals

9  who have been dismissed from these cases before you,

10  attesting to the fact.

11       My point is that they have never been offered to

12  this Court, and some of those have already been produced,

13  some of those declarations in my case.  I am simply with

14  respect to those first two categories of documents, I would

15  prefer not to be here in six months having the same kind of

16  argument that these folks are having, so we are simply

17  informing the Court of what we are trying to do, which is why

18  we styled this as a motion to confer.

19       So then the third set of documents that we are

20  talking about are documents that have been produced in this

21  Court are subject to a protective order.  Even arguably, I

22  suppose, with respect to Plaintiffs' profile sheets relating

23  to, and next friend petitions, and educational health records

24  relating to dismiss Plaintiffs.  I'm not sure it is the case

25  that those are still subject to the protective order, but we

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 52 of 60 PageID #: 28867

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

51

1  don't believe that there is -- and we did not intend to take

2  those documents that have been offered in this case, and use

3  those in Peru, contrary to -- directly used as a statement

4  that that's all we are trying to do.  That's not our

5  intention.

6          But I will represent to the Court, so that it is

7  plain, that when it comes to our own documents that we have

8  gone out, and we have gotten to obtain declarations from

9  dismissed Plaintiffs in these cases, those are fair game with

10 respect to the case in Peru.

11         MR. RODRIGUEZ:  By the way, if you took that from

12 my comments, I didn't mean to say you wanted to do that.  My

13 statement is Doe Run Resources and Renco always trying to get

14 documents --

15         THE COURT:  I am trying not to borrow trouble.

16 Let's focus on this, so.

17         MR. RODRIGUEZ:  Okay.  As long as --

18         THE COURT:  Do you agree with what he said?

19         MR. RODRIGUEZ:  As long as the documents -- or, you

20 know, the production is made, and they continue to be subject

21 to this Court's sealing orders, beyond the production to

22 Careaga and Taylor.  In other words, I don't want those

23 documents finding their way, you know, based on the

24 assumption that they are under the confidentiality order of

25 the Florida court finding that information --

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 53 of 60 PageID #:
28868

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

52

1          THE COURT:  The second group, I mean, it is their

2   work product, right?

3          MR. RODRIGUEZ:  Right.  Yeah, I have no issue.

4          THE COURT:  Jones Day report.

5          MR. RODRIGUEZ:  No issue.

6          THE COURT:  The third category.

7          MR. RODRIGUEZ:  That's the one I'm concerned.  My

8   only concern is that, you know, it would go to Taylor and --

9   Luke Taylor and Careaga only, and then not take the position

10  that it is subject to the Florida Court's confidentiality

11  order.

12         THE COURT:  If the documents are used in a

13  deposition, or a trial, then what do we do?

14         MR. BIERMAN:  Your Honor, it is my contention that,

15  of course, they could be used in a deposition or at a trial,

16  because we have to be --

17         THE COURT:  Right.  That's the only reason you

18  want.

19         MR. BIERMAN:  Yeah, your Honor denied the Allrich

20  (phonetically) motion to enjoin this one proceeding, and said

21  we had a right to pursue these claims.  We can't pursue them

22  without these documents.

23         THE COURT:  Can we limit them so they don't go

24  beyond the Florida case?

25         MR. BIERMAN:  So again, with respect to the

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 54 of 60 PageID #:
28869

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

53

1    documents that have been produced in this case and are

2    subject to the protective order, those documents are going to

3    be used to pursue these cases in Florida, and perhaps, these

4    cases will expand, because I don't know what's going to

5    happen in discovery.  When I say "expand" what I'm saying is

6    there may be other individuals that become defendants in

7    these cases, as it becomes clear exactly what happened.

8              We -- and it is hard to discount the fact that we

9    have declarations by almost a dozen individuals, former

10   Plaintiffs, claiming that they were misled into signing these

11   documents.

12             THE COURT:  Out of 3,000 people, I'm shocked.  You

13   had 10 people that say it wasn't what they thought it was.

14             MR. BIERMAN:  Your Honor, those are simply

15   declarations we have been able to obtain.

16             THE COURT:  I understand.

17             MR. BIERMAN:  All I wanted to say, your Honor, I

18   understand completely.  I have sat in a few hearings now,

19   your Honor, and I heard you say again, again, and again that

20   you don't want to hear allegations of generalized fraud here.

21   You will deal with these things one at a time.

22             THE COURT:  Because it will be obvious.

23             MR. BIERMAN:  It will be obvious.  My point, your

24   Honor, is that with respect to the cases that your Honor no

25   longer has jurisdiction over, because they are dismissed

 1   Plaintiffs, the fraud that occurred in those cases, if any

 2   did, will never come to light, unless I can pursue them in a

 3   malicious prosecution case in Florida.  That's it.

 4           MR. RODRIGUEZ:  Dismissed with prejudice.

 5           MR. BIERMAN:  Some are dismissed with prejudice.

 6   Some are not.

 7           MR. RODRIGUEZ:  Okay.  Dismissed without prejudice

 8   I think falls under the heading of, you know, it would be

 9   closer to an active case than a dismissed case, because

10   dismissed with prejudice can be re-filed.

11           And your Honor has consistently made that

12   distinction between cases that are dismissed with prejudice

13   and cases that are dismissed without.

14           MR. BIERMAN:  Your Honor, I don't believe that a

15   single case that was dismissed without prejudice has been

16   re-filed.  I might be wrong about that.

17           MR. RODRIGUEZ:  I think you may be, but your

18   general proposition was accurate, but if there have been,

19   there aren't many.

20           MR. BIERMAN:  Yeah, and I believe that at some

21   point, we don't have a tolling issue.  I don't think that

22   they can wait forever to re-file.  We'd have to go look and

23   figure out how long it has.  But nevertheless, your Honor,

24   they have been dismissed.

25           THE COURT:  Well, what do we do about this third

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 56 of 60 PageID #: 28871

J.Y.C.C. et al vs. Doe Run Resoruces et al - February 27, 2025

55

1    category?

2         MR. BIERMAN:  Your Honor, I am going on the record

3    as saying that your Honor's sealing order, your Honor's

4    protective orders that have been entered in this case will be

5    honored with respect to that third category of documents that

6    we have been discussing, documents subject to those two

7    things, and this criminal prosecution in Peru.  That's what

8    we are doing.

9         We are going to use these documents in the present

10   malicious prosecution case.  And again, potentially that case

11   broadens, but that's our intent.  That's what we would use

12   them for.

13        MR. RODRIGUEZ:  I mean, I don't want to sound like

14   a broken record, Judge, but my position is as long as it is

15   limited to Careaga -- the production of Careaga and Taylor

16   and doesn't go any further.  That's my issue.  I just don't

17   want it to go beyond Careaga and Taylor, have them take the

18   position that it is subject to the protective order.

19        THE COURT:  How about we agree that if it needs to

20   be broadened, you come back and tell me about it.

21        MR. BIERMAN:  Sure.  The only caveat I would have

22   to that is, that yes, they can produced to Taylor.  They can

23   be produced and Careaga, and they can be used in official

24   proceedings before the Court.  So in a deposition, in a

25   hearing, obviously, we can't prevent that.

Case: 4:15-cv-01704-RWS   Doc. #: 946   Filed: 05/29/25   Page: 57 of 60 PageID #:
28872

J.Y.C.C. et al vs. Doe Run Resrouces et al - February 27, 2025

56

1        MR. RODRIGUEZ:  And I think there is a difference

2   between Plaintiffs that have been dismissed with prejudice,

3   and Plaintiffs that have dismissed without prejudice.

4        MR. BIERMAN:  And I don't believe there is any

5   authority for that, your Honor.

6        THE COURT:  Well, maybe not before me, that's my

7   problem.  So, we are going to limit it to this production

8   with these two Defendants.  If it needs, for whatever reason,

9   you believe to be broadened, you will bring that back to the

10  Court.

11       MR. BIERMAN:  Just one point of clarification,

12  because I want to make sure this is on the record.  Included

13  in producing to those two individuals, are we also talking

14  about the use of these documents in official court

15  proceedings?

16       THE COURT:  Correct.

17       MR. BIERMAN:  I have --

18       THE COURT:  Correct.  Depositions would have to be

19  appropriately sealed --

20       MR. BIERMAN:  Yes.

21       THE COURT:  -- when including that material.

22       MR. BIERMAN:  Understood, your Honor.

23       THE COURT:  Not distributable, that's all.

24       MR. BIERMAN:  Yes.

25       THE COURT:  Can you do an agreed order to that

1   effect for me to sign?

2             MR. BIERMAN:  We can try our hardest.

3             MR. RODRIGUEZ:  We will figure it out.

4             THE COURT:  All right, anything else?  How is the

5   discovery going?

6             MR. RODRIGUEZ:  We finished the depositions of the

7   discovery Cohort Plaintiffs, and I think the next step is --

8   and, you know, forgive me if I haven't been on top of things,

9   but I think the next step is to -- we have reduced or gotten

10  from 14 to 8, and now it is up to -- you know, for the

11  discovery Cohort Plaintiffs, and now it is up to the

12  Defendants to reduce their number from 14 -- actually 11,

13  because we actually worked together on this, and we had some

14  problems with Visas, and issues that I won't bore the Court

15  with, and we actually worked together on this, and we each

16  agreed to reduce our number from 14 to 11, each of us,

17  because well, we didn't want to deal with the obstructions

18  that we were having to face getting them down here.

19            So, we now we further reduced our number from 11 to

20  eight, pursuant to the CMO, and now I think the Defendants,

21  in the near term, have to select their eight.  So, it would

22  be the 16, and then we went onto the IMEs, and you know, off

23  to the races.

24            THE COURT:  All right, anything further?

25            MR. RODRIGUEZ:  Nothing further from the Plaintiff,

 1   your Honor.

 2           MR. RIVERO:  Nothing further.

 3           MR. BIERMAN:  No.

 4           THE COURT:  Thank you.  I'll take it as submitted.

 5   (The proceedings concluded at 2:42 p.m.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          REPORTER'S CERTIFICATE

2

3              I, Lisa M. Paczkowski, Registered Professional

4    Reporter, do hereby certify that I am a duly appointed

5    Official Court Reporter for the United States District Court,

6    Eastern District of Missouri, and that the foregoing is a

7    true and accurate reproduction of requested proceedings had

8    in the matter of:

9    J.Y.C.C., et al against Doe Run, et al

10             In the event copies are made of the transcript

11   herein, the court reporter takes no responsibility for

12   missing or damaged pages.

13             Dated this 10th day of March, 2025.

14

15

16             /s/  Lisa M. Paczkowski
               Lisa M. Paczkowski
17             Official Court Reporter
               United States District Court
18             Eastern District of Missouri

19

20

21

22

23

24

25