IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| J.Y.C.C., *et al.*, | Case No. 4:15-CV-01704 |
| | (CONSOLIDATED) |
| Plaintiffs, | |
| v. | |
| THE DOE RUN RESOURCES CORPORATION, *et al.*, | |
| Defendants. | |

**THE COMPANIES' OPPOSITION TO**
**<u>PLAINTIFFS' MOTION FOR SANCTIONS</u>**

Plaintiffs' sanctions motion is premature and unfounded (ECF No.960) ("Mot."). It concerns only a *future*, anticipated supplemental production from Victor A. Careaga in response to a subpoena served on him in 2022—documents that have not yet been produced. In their *prediction* of a future wrong, plaintiffs take a page from the 2002 movie, *Minority Report* (where, in 2054, "precrimes" are outlawed). Because no supplemental production has occurred, plaintiffs' motion rests entirely on speculation about what The Renco Group, Inc. and The Doe Run Resources Corporation (the "Companies") *might* do if documents are produced at some future time. Speculation cannot substitute for proof of an actual violation and provides no basis for sanctions.

Beyond sanctions, plaintiffs go even further and ask this Court to disqualify the Companies' counsel. That is an extraordinary request, and one that exposes the litigation tactic driving this motion. Disqualification is a drastic remedy, reserved for clear cases of actual harm.

1

Plaintiffs show none. They rely only on speculation about what might happen in another court, at some later time.

Nor do plaintiffs' repeated references to past, unrelated sanctions help them. The subject there was the use of sealed materials. The Court has already ruled against the Companies and gave clear instructions that the Companies are not to disseminate such materials. That sanctions order is entirely unrelated to Careaga's potential future production. And the Companies will not use any material obtained from Careaga in any way prohibited by this Court. If anything is revealed that the Companies believe ought to be used in Peru or elsewhere but is subject to this Court's prior orders, they will seek this Court's approval and will follow this Court's instructions.

At bottom, plaintiffs ask this Court to punish the Companies not for what has happened, but for what plaintiffs imagine might happen. That is not a basis for sanctions, much less disqualification. During the parties' meet-and-confer on Thursday, September 11, and in the communication attached as **Exhibit A**, the Companies made clear that there was no basis for such a motion. Plaintiffs filed it anyway, confirming that this is litigation gamesmanship, not a good-faith attempt to address an actual violation.

## LEGAL STANDARD

Courts may impose sanctions under their inherent authority both to vindicate judicial authority and to compensate a prevailing party for expenses caused by an opponent's misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Missouri courts are cautioned to exercise this power sparingly, with restraint, and only when necessary. *Rea v. Moore*, 74 S.W.3d 795, 800 (S.D. Mo. 2002). Invocation of inherent power should be rare because it risks expanding judicial authority beyond proper bounds. *McPherson v. U.S. Physicians Mut. Risk Retention Group*, 99

S.W.3d 462, 477 (W.D. Mo. 2003). A sanction under inherent authority is proper only when the sanctioned party has acted in bad faith. *Id.* at 481 (citing *Chambers* at 45–46).

Bad faith requires more than bad judgment or negligence. *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986). It entails a dishonest purpose, conscious wrongdoing, breach of a known duty driven by an improper motive, or ill will akin to fraud, and includes intent to mislead or deceive. *Id*.

The sanction of disqualifying counsel of choice is an extreme measure, justified only when absolutely necessary. *Macheca Trans. Co. v. Phila. Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006). Relevant considerations include the court's duty to preserve public confidence in the legal profession and to protect the integrity of judicial proceedings. *Gifford v. Target Corp.*, 723 F.Supp.2d 1110, 1116 (D. Minn. 2010). "The party moving to disqualify opposing counsel bears the burden of demonstrating that disqualification is required." *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998). Because disqualification often causes great prejudice, courts grant it only when the moving party demonstrates substantial and irreparable harm resulting from an ethical violation. *Le v. Wells Fargo Bank, N.A.*, 2014 WL 12600956 at * 1 (D. Minn. 2014) (citing *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725 at *6 (D. Ariz. 2009)).

## ARGUMENT

### I. Plaintiffs Misread This Court's Orders

On June 8, 2022, the United States District Court for the Southern District of Florida authorized the Companies to take discovery from Careaga pursuant to 28 U.S.C. § 1782. *In re Matter of the Ex Parte Application of The Renco Group Inc. and The Doe Run Resources Corporation for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 22-mc-21115-JAL, ECF No. 8. This Court likewise held that the Companies may pursue Section 1782

3

discovery in Florida, subject to the limitation that no discovery was taken from *current* plaintiffs. ECF No. 718 at 4. The Companies have complied with that directive,[1] including by modifying the subpoena to exclude active and minor-dismissed plaintiffs.

The Companies have not violated this Court's orders. Plaintiffs' sanctions motion rests on future speculation, not fact. Careaga has not made a supplemental production, and therefore, nothing has been disclosed, used, or misused by the Companies in violation of this Court's orders.

This Court's January 2023 order made clear that the Companies may pursue § 1782 discovery but "may not ignore [this Court's] rulings that limited any discovery from current plaintiffs regarding Defendants' allegations of the fraudulent recruitment of plaintiffs." ECF No. 718 at 4–5. The limitation bars discovery directed at current plaintiffs and allows discovery concerning plaintiffs dismissed with prejudice. Consistent with that directive, in March 2023, before any production had occurred, the Companies expressly limited the subpoena by instructing Careaga: "We do not seek from you discovery specific to any plaintiff whose claim is currently pending in the Missouri litigation." *See* ECF No. 960-9.

Plaintiffs argue that the March 2, 2023, email instructed Careaga to search for documents that would necessarily implicate current plaintiffs. Mot. at 7. That is a mischaracterization. The email simply recognizes that some recruitment-related documents may reference recruitment practices in general, without identifying any specific current plaintiff. Such generalized references do not fall within the prohibition of this Court's January 2023 order, which barred discovery "specific to any plaintiff whose claim is currently pending." ECF No. 718 at 4. To remove any doubt, the Companies clarified in that same communication that they seek no discovery from or

---

[1] After more than three years of litigation in the § 1782 case, Careaga finally produced a meager set of documents in August 2025. Notably, plaintiffs' motion is not directed at the use of those documents; it is aimed only at what the Companies might do with the yet-unproduced ones.

4

about current plaintiffs, and Careaga was expressly instructed not to produce such materials. Plaintiffs' reliance on a single excerpt from an email, divorced from the clarifying context in the same email, is misleading and cannot support sanctions.

Careaga's production to date has been scant and has not involved information regarding any current or former plaintiffs. Even if the Companies were ever to receive supplemental documents from Careaga—which remains uncertain—they would not use those materials in violation of this Court's rulings. To the contrary, the Companies would seek permission from this Court before using any documents where there was even a question of compliance.

Plaintiffs' effort to transform this Court's order into a blanket prohibition on recruitment-related discovery disregards the plain text of the ruling, ignores the Companies' good-faith compliance, and, most importantly, cannot overcome the fact that the Companies have not (and cannot have) violated any order of this Court in relation to documents not yet produced by Careaga.

## II.     Plaintiffs Misstate the Scope of Discovery

Plaintiffs argue that the Companies have used search terms that allegedly expand the subpoena's reach. Mot. at 2. That argument is misplaced. Search terms are not the subpoena or the subpoena requests; they are a standard ESI tool to identify potentially responsive documents. A "hit" on a search term does not mean the document will be produced. Careaga, not the Companies, must still review and determine responsiveness to the subpoena, as narrowed by the Companies' March 2023 limitation. Plaintiffs go further and suggest that the search terms themselves reflect an "intent" to violate this Court's orders. That claim is speculative and contrary to ordinary discovery practice.

Plaintiffs place particular emphasis on the inclusion of the term "profile" and certain attorney names among proposed search terms. Mot. at 9. But the presence of a term in a search protocol does not mean any privileged or protected material will be produced. Search terms are simply filters, and all resulting documents remain subject to responsiveness and privilege review. Plaintiffs' alarmist suggestion that the Companies will receive confidential "Profiles" or internal attorney communications is unfounded. Mot. at 8-10. This Court has already ruled that discovery directed at current plaintiffs is prohibited, and the Companies remain bound by that ruling. If Careaga's searches were ever to identify documents raising privilege concerns, those would be withheld or submitted for judicial resolution. Plaintiffs' argument equates raw search hits with production, which misstates standard ESI practice.

Equally misplaced is plaintiffs' repeated claim that the Companies "seek 132,000 documents." Mot. at 8. That number comes from reports generated by Careaga's vendor after running the search terms on the relevant repositories, not from any demand by the Companies. In fact, for more than two years Careaga represented in open court that the likely universe was about 10,000 emails. The sudden expansion to six figures that came to light in the past weeks is the product of Careaga's belated collection and his failure to identify and include all relevant information repositories, not the Companies' subpoena requests or proposed search terms.

There has been no violation of this Court's orders, no expansion of the subpoena, and no bad faith. Plaintiffs' attempt to convert ordinary ESI practice into sanctionable misconduct is meritless.

### III. Plaintiffs' Privilege Arguments Are Speculative and Unfounded

Plaintiffs argue that the Companies are attempting to block Intervenors[2] from reviewing or asserting privilege over Careaga's supplemental production. Mot. at 7, 8. That argument is speculative and unfounded, because no supplemental production has occurred. Plaintiffs seek sanctions based on documents they have never reviewed (or asserted objections to) and the Companies have never received.

The lengthy history of this issue underscores why Plaintiffs' motion fails. The District Court for the Southern District of Florida allowed intervenors to participate in the § 1782 proceeding for the limited purpose of asserting privilege as to Careaga's production. They exercised that right *extensively* with respect to the initial production, and their privilege claims were fully litigated and rejected by Magistrate Judge Louis, Judge Lenard, and the Eleventh Circuit Court of Appeals. Before Magistrate Judge Louis, Intervenors have submitted no fewer than 19 motions: 3 motions to intervene; 3 motions for protective order; 1 motion for reconsideration (which was amended); 1 renewed motion for protective order; 1 motion to seal transcripts of the deposition; 3 oppositions to the Companies' motion to compel; 2 motions to stay pending appeal; 2 oppositions to the Companies' motion for an order to show cause; and 1 motion to reconsider and vacate judgment (which was amended). *In re Matter of Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 22-mc-21115-JAL, ECF Nos. 15, 17, 20, 33, 34, 36, 45, 57, 58, 63, 72, 75, 89, 90, 91, 104, 105, 123, 137, 140, 145, 147, 152, 159. They also filed 3 appeals to Judge Lenard regarding Judge Louis' denial of Intervenors' assertion of privilege and work-product (which was denied due to, among other shortcomings, their own failure to substantiate the

---

[2] "Intervenors" means the firms Rodriguez Tramont Nuñez P.A., Napoli Shkolnik PLLC, and Halpern Santos & Pinkert, P.A., who represent plaintiffs in the Eastern District of Missouri and sought intervention in the Florida § 1782 proceeding.

privilege). *Id.* at ECF Nos. 81, 82, 84. Intervenors also appealed to the Eleventh Circuit Court of Appeals the district court's order denying their assertion of privilege and work product (3 appellate briefs) and filed 5 motions to stay pending appeal at the appellate level. Case No. 24-13266, ECF Nos. 1, 3, 31, 34, 62, 63, 66; Case No. 24-13582, ECF No. 1. Intervenors can hardly claim that they have not been permitted to participate in the § 1782 discovery process or that their due process rights have been inhibited.

It is understood that any supplemental production will be reviewed first by Careaga and then by the Intervenors, who will have the opportunity to assert any privilege objections they believe apply. The Companies have no power to prevent them from doing so. Even if the Companies disagree with those privilege assertions and believe that Intervenors have spent the past two years stonewalling the § 1782 discovery, Intervenors retain the ability to press privilege issues before the court.

Plaintiffs' portrayal of the Florida proceedings is also inaccurate. Judge Louis's August 8, 2025 order required Careaga to complete his production but did not strip Intervenors of their ability to assert privilege. *In re Matter of Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 22-mc-21115-JAL, ECF No. 182. Intervenors have repeatedly exercised that right and remain entitled to do so. And to the extent any ambiguity exists, the Companies have already committed that if Careaga produces any materials that even arguably implicate privilege, they will not review, use, or disseminate those documents until privilege issues have been resolved. Plaintiffs' attempt to recast the Florida court's order as an intentional effort to exclude privilege review is unfounded.

Plaintiffs' request to sanction the Companies for interfering with a hypothetical privilege review is therefore entirely speculative and baseless.

8

### IV. Plaintiffs' Motion Is Premature and Speculative

There has been no violation to date, and plaintiffs' motion is entirely premature. The only documents at issue are a potential supplemental production from Careaga that has not yet occurred. Until such production takes place, there is nothing for plaintiffs to review, nothing for the Companies to use, and nothing for this Court to adjudicate.

Sanctions require an actual violation of a court order, not speculation about what might happen. Plaintiffs' motion rests on conjecture about a set of documents that Careaga has not produced, that plaintiffs have not reviewed, and that the Companies have not received. Such predictions cannot support sanctions—certainly not until *Minority Report* rules apply.

Plaintiffs also invoke this Court's prior sanction for sealing-order violations to argue that the Companies are "repeat offenders." Mot. at 10, 11. That comparison is unfair and misplaced. The prior sanction concerned an unrelated issue of inadvertent disclosure of minor plaintiffs' names, which has already been remedied and sanctioned by this Court. It has no bearing on the present dispute, which involves only speculative concerns about a potential future production. Plaintiffs' effort to bootstrap an unrelated sanction into evidence of bad faith here is improper and underscores the gamesmanship driving their motion.

The Companies have consistently acted in good faith to comply with this Court's rulings. They narrowed the subpoena in March 2023, they have not used or disseminated—much less misused—any documents produced by Careaga to date, and they have committed that if Careaga ever produces additional materials raising questions of compliance, they will seek leave of this Court before using them. Plaintiffs' effort to punish the Companies for hypothetical misconduct is unsupported in fact or law.

9

Nor does the September 15, 2025 deadline imposed on Careaga by the Southern District of Florida change the analysis. Mot. at 13. That deadline governs Careaga's compliance with the subpoena; it does not compel or authorize the Companies to receive or use any documents without proper review. The mechanics of Careaga's production are supervised by the Florida court, and plaintiffs' disagreement with those rulings is already before the Eleventh Circuit. This Court should not conflate plaintiffs' appellate dispute with speculative allegations against the Companies. Until documents are actually produced and privilege disputes resolved, there is nothing for this Court to sanction.

Plaintiffs' motion is also an impermissible collateral attack on the § 1782 proceedings in the Southern District of Florida. If the Intervenors disagree with the Florida court's rulings, their remedy lies in those proceedings, not in a sanctions motion here. Plaintiffs cannot use this Court to second-guess or override ongoing § 1782 litigation in Florida.

### V.     Plaintiffs' Request for Disqualification Is Baseless

Plaintiffs go so far as to seek disqualification of the Companies' counsel. Mot. at 11. That extraordinary request fails for multiple reasons. Disqualification is a drastic remedy, disfavored absent clear evidence of substantial and irreparable harm. *See Garrett v. Rutter & Sleeth Law Offices*, 2020 WL 6173618, at *2 (W.D. Mo. Oct. 20, 2020). Plaintiffs cannot make that showing. No supplemental production has occurred, no privileged materials have been received by the Companies, and no prejudice has resulted.

The Eighth Circuit has made clear that "disqualification motions should be subjected to particularly strict judicial scrutiny" precisely because of their potential for misuse as tactical weapons. *Harker v. C.I.R.*, 82 F.3d 806, 808 (8th Cir. 1996) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985)). Plaintiffs' disqualification request rests

entirely on conjecture about what might happen in a separate proceeding in Florida. Such speculation falls far short of the "clear evidence" standard required for disqualification. The request is nothing more than a litigation tactic aimed at disrupting the Companies' chosen representation and should be denied outright.

## CONCLUSION

For all these good reasons, the Court should deny plaintiffs' motion for sanctions and to disqualify the Companies' attorneys.

Dated: September 14, 2025

Respectfully submitted,
By: /s/ *Andres Rivero*
ANDRES RIVERO
Florida Bar.: 613819

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: receptionist@riveromestre.com

*Attorneys for Doe Run Resources Corp. and The Renco Group, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 14, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *Andres Rivero*
Andres Rivero