IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| J.Y.C.C., et al., | ) |
|     Plaintiffs, | ) |
| v. | ) No. 4:15-CV-1704-RWS |
| Doe Run Resources Corporation, et al., | ) (consolidated) |
|     Defendants. | ) |

**REPLY MEMORAUNDUM IN SUPPORT OF
PLAINTIFFS' EMERGENCY MOTION
FOR SANCTIONS AND TO DISQUALIFY DEFENDANTS' ATTORNEYS**

Plaintiffs respectfully submit this Reply Memorandum in support of their motion for sanctions and to disqualify Defendants' attorneys ("Motion," D.E. 960) and state:

**Introduction**

Plaintiffs moved for sanctions because Defendants Doe Run Resources Corporation and The Renco Group Inc. ("Defendants") have again intentionally disregarded this Court's orders. this time in their prosecution of the proceeding under 28 U.S.C. § 1782 (the 1782 Proceeding) they filed in the U.S. District Court for the Southern District of Florida. The Motion demonstrates that Defendants violated the Court's orders by (1) seeking information about the recruitment of active Plaintiffs, despite Orders prohibiting that discovery; and (2) Attempting to expand the scope of the 1782 Proceeding subpoena ("subpoena") served on a member of Plaintiffs' legal team by seeking obviously privileged information under threat of a contempt order while at the same time attempting to deprive Plaintiffs of the opportunity of timely filing objections and having those objections heard by the court prior to production of the privileged materials to the Defendants..

In their "Opposition" (D.E. 961), Defendants argue that Plaintiffs have misread this Court's Orders, misunderstand the scope of discovery, and that the Motion is premature because Defendants have not yet received privileged information and have acted in good faith.

As demonstrated below, Defendants' have already violated the Court's orders. Nor, of course, is there any validity to Defendants' suggestion that there would be no harm from the wholesale disclosure of Plaintiffs' work product and privileged materials. To the contrary, there is nothing premature about Plaintiffs' effort to prevent Defendants deliberate effort to breach privilege and disregard this Court's orders. Far from showing good faith conduct and fealty to this Court's orders, Defendants' Opposition illustrates the urgent need for this Court to act.

## Argument

### Defendants' Violated the Court's Orders their Opposition Arguments Misstate the Court's Rulings

#### A. Defendants ignored the Court's rulings and expanded the scope of the 1782 subpoena

Plaintiffs argued that Defendants ignored and violated the Court's "rulings that limited *any* discovery from current plaintiffs" when they instructed the 1782 subpoena recipient, Victor Careaga, that: "you must search for and produce responsive documents *even if such documents are theoretically relevant to represented plaintiffs* — . . . because **a document references recruitment practices generally**." *See* Motion at 7. In opposition, Defendants argue that Plaintiffs have misread the Court's Orders which, they insist, they have not violated. Unable to find supporting language in the Orders or transcripts of related hearings before this Court however, Defendants instead, and incredibly, attempt to support their argument by misrepresenting the content of the Orders.

According to Defendants, the Court's January 2023 order barred only discovery "**specific** to any plaintiff whose claim is currently pending." Defendants' Opposition ("Opp,") at 4 (emphasis added). Defendants cite to ECF No. 718 at 4. The problem for Defendants is that the purportedly quoted language does not appear in the Order. Neither at page 4, nor anywhere else. To the contrary, the Court instead stated that:

2

> Defendants *may not ignore* my *rulings* that *limited any discovery from current plaintiffs*.

Jan 26, 2023, Order, D.E. 718 at 4 (emphasis added). If there had somehow been any doubt about the Court's ruling (there was not) the Court revisited and restated it eight months later, again stressing that it had relied on Defendants' representation that:

> [T]he discovery they seek will . . . would be *directed only at plaintiffs whose claims have been dismissed* from the cases in this Court.

Sept. 11, 2023, Order, D.E. 777 at 3 (emphasis added).

Rather than any Order of this Court, the statement that Defendants incorrectly attributed to the Court appears only in *Defendants' own email* to the subpoena recipient, Victor Careaga, where Defendants said:

> **We do *not* seek from you discovery specific to any plaintiff whose claim is currently pending** in the Missouri litigation (the only limitation that Judge Sippel placed on discovery in the Florida matters).

*See* R. Kuntz email, March 2, 2023 (emphasis in original) (Ex. 9 to Motion, copy at D.E.960-9). The parenthetical at the end, of course, again misstated the Court's ruling. Defendants violated the Court's Orders when they instructed Careaga to the contrary – an instruction they have never withdrawn. Defendants' argument to the contrary in opposition not only relies on language that does not exist in any Order, it also affirmatively contradicts the Court's ruling.

Nor was this the only time the Opposition misrepresented the content of this Court's Orders. Defendants separately argued that they should not be sanctioned because they supposedly "consistently acted in good faith to comply with this Court's rulings." Opp. at 9. Defendants state that, in assessing their conduct, the Court should not consider the earlier Order finding that they violated Court's sealing orders 495 times. According to Defendants, this is so because: "[t]he prior sanction concerned an unrelated issue of *inadvertent disclosure* of minor plaintiffs' names." Opp.

3

at 9 (emphasis added). Once again, this is an outright misrepresentation. The Court was instead clear that the sanction was due to: "*Defendants'* ***intentional and willful*** *disclosure of the minor plaintiffs' names in this case is in direct violation of the sealing and redaction orders and rules of procedure in this case.*" Sanctions Order, D.E. 951 at 8-9 (emphasis added).

### *B. Defendants Attempt to Prohibit Review and Objections by Plaintiffs' Counsel*

When it denied Plaintiffs' request to enjoin the 1782 Proceeding, the Court also relied on Defendants' assurance that, in the 1782 Proceeding, document "*requests would be subject to attorney-client and work product privilege objections*" submitted by Plaintiffs. Jan. 26, 2023, Order, D.E. 718 at 4 (emphasis added). The Motion demonstrates that, in direct violation of that assurance, Defendants have taken every opportunity to argue in the 1782 Proceeding that Plaintiffs' counsel should not be heard.

As set out in the Motion, Defendants asked the court in the 1782 Proceedings, as part of contempt proceedings against Careaga, to order Careaga to use search terms that essentially guarantee that privileged documents, including Plaintiff Profiles and every document sent to or from Plaintiffs' attorneys, will be produced. Defendants nevertheless argue that their conduct is not in violation of this Court's orders regarding the scope of discovery because "search terms" are not part of the subpoena. This argument is baseless and completely ignores reality. The Magistrate Judge concluded that Mr. Careaga's original production was incomplete. -- Significantly, Plaintiffs' counsel were not involved in Careaga's production and neither Plaintiffs' counsel nor any Plaintiff has been ordered to produce any document.

Defendants' attempt to force Careaga to use additional search terms came about in the context of Defendants' request for sanctions and a contempt finding against Careaga. Defendants' request that Careaga be ordered to use Defendants' new search terms was coupled with their request that:(1) Careaga be required to produce the new documents within 10-14 days; and (2)

4

Plaintiffs' counsel not be allowed to further participate in the 1782 Proceedings. The entry of an order providing the relief that Defendants requested would force Careaga to choose between being held in contempt of court or immediately producing over 100,000 documents. Careaga could not even begin to review that volume of documents within the time that Defendants requested that he be compelled to do so. And significantly, during a September 15, 2025, contempt hearing Magistrate Judge Louis, acquiescing to Defendants' prior request, indicated that her R&R would not provide for a procedure that would require Careaga to first produce the responsive documents to Plaintiffs' counsel  and allow Plaintiffs an opportunity to assert privilege objections  and have those objections ruled upon prior to production to Defendants. . The documents, many of which are surely, privileged, including work product could very well be produced without Plaintiffs' counsel having the opportunity, that was guaranteed by Defendants to this Court, to preserve privilege objections.

### C. Plaintiffs' Motion is Not Premature

Defendants also argue that their efforts to prevent Plaintiffs' counsel from reviewing or asserting privilege over Careaga's supplemental production are not sanctionable because no supplemental production has occurred." According to Defendants, the Motion is supposedly premature because Careaga has not yet produced, and may not produce, additional documents. This argument is coupled with Defendants' assurance that there is no cause for concern because they have "committed that if Careaga produces any materials that even arguably implicate privilege, they will not review, use, or disseminate those documents until privilege issues have been resolved." *See* Opp. at 8. This argument ignores the meaning and intent of privilege. Rulings that deny attorney work product and attorney-client privilege are classic examples of "cat-out-of-the-bag" rulings. Once the privileged materials are disclosed, they cannot be "undisclosed." This is especially true in cases like those pending before this Court where litigation has now gone on

5

for nearly a decade. If privileged materials, including the mental impressions, tactics and strategies of an adversary, are provided to Defendants, the fact that they promise not to "disseminate" them is irrelevant.

### D. Defendants' Further Efforts to Violate the Court's Sealing Orders

Plaintiffs' Motion also demonstrates that Defendants' conduct is necessarily designed to and will result in further violations of the Court's sealing orders. Defendants insist that this is not a problem because they would not (for the 496th or more time) again violate the Court's sealing orders by providing potentially sealed documents to their Peruvian attorneys or the Peruvian prosecutor. *See* Opp. at 2. This argument makes no sense. First, the sealing orders were always clear. As Plaintiffs documented in briefing regarding their Amended Motion for Sanctions, in a 2024 hearing before this Court, Defendants' counsel stated that their disclosure of names and birth dates of minor Plaintiffs in the discovery pool was in violation of the Court's sealing orders. *See* D.E.898 at 2-4 (citing August 27, 2024, hearing). It was only when Plaintiffs showed that the violations had been repeated for hundreds of other minor Plaintiffs that Defendants attempted to retract their admissions and argued that the sealing orders were effectively meaningless. The Court disagreed. Instead, as discussed above, the Court found that Defendants' disclosure of the minor plaintiffs' names was "intentional and willful" and "in direct violation of the sealing and redaction orders and rules of procedure in this case." *See* Sanctions Order, D.E. 951 at 8-9 (emphasis added). Defendants' retraction, and renewed admission, provides no more reason for comfort than it did the first 495 times. In addition, Defendants' argument would prove nothing more than that their filing of the 1782 Proceedings was in bad faith. The only possible legitimate purpose of the 1782 Proceedings is to obtain materials to (supposedly) support the prosecution. Defendants have no other possible legitimate basis for using those proceedings.

6

Defendants also argue that the deadlines imposed on Careaga by the Southern District of Florida govern only "Careaga's compliance with the subpoena" and do not authorize Defendants "to receive or use any documents without proper review." *See* Opp. at 10. Defendants add that "the mechanics of Careaga's production are supervised by the Florida court," and that they "have no power to prevent" Plaintiffs' counsel from exercising the opportunity "to assert any privilege objections they believe apply." This argument is not only baseless but disingenuous. First, in orders entered before the Opposition was filed, the court in the 1782 Proceedings had already made clear that Careaga remained at risk of being held in contempt and deadlines would not be extended for Plaintiffs' counsel to assert privilege objections. In other words, Careaga would either produce documents or be held in contempt. There would be no time allowed for privilege reviews.

Defendants' further suggestion that they have no power to control what orders are issued in the 1782 Proceedings is simply disingenuous. Defendants filed the motion for contempt and have repeatedly pressed for sanctions against Careaga. After the most recent hearing (September 15) the Magistrate Judge indicated that her R&R would be sent to the District Court. Plaintiffs' counsel then asked that Defendants consent to an order postponing the issuance of the R&R. We are still not sure what Defendants' position on that request actually is. We do know, however, that Defendants did Not consent to the filing of an unopposed motion.[1]

Despite this Court's multiple orders to the contrary, Plaintiffs remain at risk of the mass disclosure of privileged materials that passed through a paralegal's email over the last 12 years. Therefore, it was and remains true that strong, quick action by this Court is called for to avert potentially catastrophic results for both Plaintiffs and the interests of justice.

---

[1] *See* "Meet and Confer" email string, Rodriguez – Kuntz, copy attached as Exhibit "A."

**Conclusion**

For the reasons set out above and in Plaintiffs' Motion, and based on the authorities cited in both, the Court should grant Plaintiffs' Motion for Sanctions.  Should Defendants nevertheless obtain any privileged materials, the Court should also order enter an order disqualifying any attorneys representing Defendants that review any of Plaintiffs' privileged documents obtained through contempt proceedings against Victor Careaga without opportunity for privilege review and objections by Plaintiffs' counsel.

Respectfully submitted,

| **NAPOLI SHKOLNIK PLLC** | **RODRIGUEZ TRAMONT & NUÑEZ, P.A.** |
|---|---|
| By: /s/ Patrick J. Lanciotti<br>Patrick J. Lanciotti, #5407523NY<br>360 Lexington Avenue, Eleventh Floor<br>New York, NY, 10017<br>(212) 397-1000<br>planciott@napolilaw.com | By: /s/ Frank R. Rodriguez<br>Frank R. Rodriguez, #348988FL<br>Paulino A. Nuñez, #814806FL<br>255 Alhambra Cir., Suite 1150<br>Coral Gables, FL 33134<br>(305) 350-2300<br>frr@rtgn-law.com<br>pan@rtgn-law.com |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 22, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

/s/ Paulino A. Nuñez