# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| J.Y.C.C., *et al.*, | Case No. 4:15-CV-01704 |
| Plaintiffs, | (CONSOLIDATED) |
| v. | |
| THE DOE RUN RESOURCES CORPORATION, *et al.*, | |
| Defendants. | |
_____/

### SUR-REPLY IN SUPPORT OF THE COMPANIES' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

As set out in the Companies' response (ECF No. 961, filed September 15, 2025), plaintiffs' motion for sanctions (ECF No. 960) rests on speculation, not evidence. We supplement the record on this misguided motion with the transcript of the September 15, 2025, evidentiary hearing before Magistrate Judge Louis in the Southern District of Florida. As reflected in the hearing transcript, attached for context as **Exhibit A**, plaintiffs' assertions misstate both the Companies' conduct and the standards governing sanctions. Sanctions may be imposed only upon proof of an actual violation and bad faith, not conjecture, and disqualification of counsel is permitted only in clear cases of substantial and irreparable harm. Judge Louis's rulings confirm that plaintiffs' arguments fail under those standards, and her statements further demonstrate that sanctions or disqualification are unwarranted.

**I.   The Court Confirmed that Search Terms Are Not Document Requests**

Judge Louis made plain the unremarkable proposition that search terms are not the same as document requests:

1

> So search terms are a tool. The subpoena, if I remember correctly, does not ask you for all documents that hit on certain search terms. If it did, then those search terms would be the whole search. Your election to use search terms in this case I will, again, make the observation, does not seem to be – "appropriate" is the word I am going to hang onto for a second.
>
> Search terms are most effectively utilized where the person searching for the communications or the documents is not familiar with the items that they are looking for in the first instance. That is not true here.
>
> So I think that the way in which you were using search terms is both superficial and, I fear, intended to avoid finding responsive documents.

Hr'g Tr. 73:13-74:2.

These statements directly dispose of plaintiffs' repeated claim that the Companies somehow expanded the subpoena authorized in their 28 U.S.C. § 1782 action[1] by proposing search terms; the Companies have only proposed those search terms as an aid and courtesy to the respondent in that action. As Judge Louis explained, search terms are merely a filtering mechanism, not the scope of production. Plaintiffs' attempt to equate search term "hits" with responsive documents mischaracterizes the discovery process.

These rulings also reject plaintiffs' equally misplaced claim that the Companies "seek 132,000 documents." Mot. at 8. That number comes from reports generated by 1782 respondent Careaga's vendor after running search terms across repositories, not from any demand by the Companies. Further, it should be noted that plaintiffs' counsel, who are working closely with their paralegal, Victor Careaga, and have access to the records being processed by Consilio, the ESI consulting firm that is working on Careaga's discovery production, could simply request that filters be inserted--like one to capture any document bearing the name of an active or dismissed-without-prejudice plaintiff in this lawsuit—to protect against the central harm they claim to fear.

---

[1] This remains the same exact subpoena that this Court considered when it denied plaintiffs' anti-suit injunction. ECF No. 718.

2

## II.     The Companies Confirmed the Limitation on Discovery in Open Court

At the hearing, the Companies again made clear to Careaga that the scope of the subpoena was expressly limited, and that he was not to produce documents concerning current or dismissed-without-prejudice plaintiffs:

> Nothing has changed from the day we submitted this. We want those 21 topics as modified by the March 22nd [sic[2]] email, so we are not talking about current plaintiffs. We're not, as it developed, talking about dismissed without prejudice plaintiffs, we are not talking about them.

Hr'g Tr. 75:18–22.

This statement made by the Companies in open court confirms that they acted consistently with this Court's orders and forecloses plaintiffs' baseless suggestion that the Companies seek to use Careaga's materials to obtain documents concerning current or dismissed-without-prejudice plaintiffs. As noted above, there is a simple ESI fix to isolate any documents that reference persons falling into either of those two categories.

## III.    The Court Emphasized Intervenors' Role in Supervising Careaga's Production

Judge Louis noted that Intervenors in the 1782 action (counsel to the plaintiffs here) had been permitted to intervene precisely so they could oversee Careaga's compliance with the §1782 subpoena. She explained that Careaga's "continued defense of ignorance" was untenable because Intervenors had been allowed to supervise his production for the past two years, during which Careaga had the benefit of both an ESI vendor and a competent law firm:

> That is precisely why I allowed them to intervene. I'm making the observation and giving you the chance to explain with facts why my observation is not a good one, that the continued defense of ignorance is a bad one, where for the last two years, at least, you have had the benefit of an ESI vendor and a very competent law firm who, though you deny they represent you in a legal capacity,

---

[2] There is no dispute that the actual date of the email was March 2, 2023. The Companies are submitting a correction to the transcript.

I have observed and you have confirmed that they are giving you advice along the way.

Hr'g Tr. 31:7–14.

Judge Louis then confirmed that Careaga had, in fact, received such guidance:

Have you not had the benefit of advice from both the law firm and the ESI vendor for the last two years, as to both what the subpoena means and how you apply an ESI protocol to collect the documents?
THE WITNESS: Yes.

Hr'g Tr. 31:19–23.

This testimony underscores that Intervenors were not in any manner sidelined—they were expressly allowed to intervene to supervise Careaga's compliance with the subpoena.[3] Their claim that the Companies seek to misuse unreviewed documents ignores their own long-standing role in monitoring Careaga's production.

The hearing transcript further confirms that Intervenors have access to Careaga's database and could have conducted their privilege review at any time. Judge Louis elicited the following exchange:

> THE COURT: "Who else has access to the data that Concilio [sic] was hosting?"
> THE WITNESS: "Attorneys in Mr. Rodriguez's firm have access, should they want to look at the responsive documents that I have designated, and if they want to comment on privileges."
> THE COURT: "So that could have already happened?"
> THE WITNESS: "They could have begun that job over the weekend. I'm not sure if they did. But, I have given instructions to Concilio [sic] to give them access to the same database that I am working on, on a daily basis."

Hr'g Tr. 40:14–24.

---

[3] Indeed, the intervening law firms filed at least nine motions over more than two years asserting their claims of privilege in the 1782 proceeding, where the magistrate judge gave them guidance on how to do so, their privilege claims were fully and repeatedly litigated, and were ruled on by the magistrate judge and district court judge.

4

Intervenors have access to the same database as Careaga and are able to conduct privilege review contemporaneously. Plaintiffs' suggestion that the Companies will somehow receive unreviewed materials is flatly contradicted by the record.

If anything, Judge Louis rejected Intervenors' repeated excuses for delay, stressing that access to the documents was available and that any issue with review was "not an excuse." Hr'g Tr. 80:2–6. She denied Intervenors' request to build into her anticipated report and recommendation regarding Careaga's contempt additional time for the review, making clear that the law firms have had ample time, and have time still, and that further delay could not be justified after years of missed deadlines:

> The best that I can say, at this point, in response to your request for just a little bit more time is that the process between a report and recommendation and the objection period and Judge Lenard's ability to react to it may be all the time you have left to purge yourself of this contempt, but I'm not going to delay my end of it any further.

Hr'g Tr. 70:16–21.

> But Mr. Rodriguez, you keep saying that like you need something from me, and you don't. That is between you and Mr. Careaga. The report and recommendation will recommend to Judge Lenard that she find Mr. Careaga is in contempt of the orders. There is -- as I have said already, a built-in objection period. It will not be ripe for some period of time. If you and Mr. Careaga are able to review and purge him of the contempt, that is great.

Hr'g Tr. 83:4–15.

> I can't. Sorry. We are three years in. And I now appreciate with all certainty the deadlines will be ignored, and that there is no hope, frankly, other than a coercive fine of getting these documents produced.

Hr'g Tr. 83:21–24.

This portion of the transcript confirms that privilege review remains available to plaintiffs' law firms, and any issue regarding their review is self-inflicted, not caused by the Companies.

### IV. Plaintiffs Admitted Their Motion Was Premature

The hearing also confirmed that plaintiffs' sanctions motion is premature and that decisions regarding privilege review are outside the Companies' control:

> RODRIGUEZ: In response to our motion for sanctions, one of their positions is wait a minute. These guys aren't -- Judge, why are they telling you this? They have every opportunity to review documents. You know, they are going to have every opportunity to review and submit privilege objections.
>
> Now, part of it is out of their hands. What your Honor rules, your Honor rules. But, part of it is they came in front of you on August 8 and they were saying, "Hey, Judge, we want the documents in ten or 14 days," and they made --look, they can -- they can't have it both ways. So I'm just representing.
>
> THE COURT: I don't know what we are talking about. The order compelling production was in June. Then there was a hearing in August. Then there was a hearing last week. Now, we are here today. And, every single time, it is what is going to happen, and it is never done. So whether they wanted it in ten or 14 days, or three months, either way, nothing has been done.

Hr'g Tr. 81:7–24.

When plaintiffs' law firms, as intervenors in the Southern District of Florida, further requested an "opportunity" to review any new materials, they admitted that no such new production had yet occurred and that they had already reviewed the prior set:

> RODRIGUEZ: What I want is an opportunity to interpose objections to privileged material.
>
> THE COURT: But you say that like you haven't had three months of opportunity to do so. So what is the "ask"?
>
> MR. RODRIGUEZ: No, your Honor excuse me. I have not had an opportunity, because I don't know what documents – I don't know what additional documents Careaga deems relevant to be produced.
>
> We did take a look at all the documents that Careaga identified prior to his deposition, and that he produced at his deposition. We -- sorry, we saw 913 of them, pages, to be accurate.

Hr'g Tr. 82:10–21.

6

Judge Louis made clear that no further court order was needed, because plaintiffs already had the ability to review Careaga's production. By their own admissions, they had seen the earlier set of documents, and no new production has even taken place.

Finally, the Companies recognized their obligations regarding limitations this Court has already imposed:

> [Mr. Kuntz]: With regard to this idea that we are going to – this speculative motion in the Eastern District that we are going to use these things for ill purposes, two things are happening, Judge. This Court is deciding what we get in 1782. Judge Sippel in the Eastern District has set forth restrictions about what that material can be used for. He has made it clear it is not ever coming into his court. He has given us some other restrictions. He has told us -- and we modified this subpoena two years ago -- that we are not to be getting materials related to current plaintiffs, and, in this case, it also means dismissed without prejudice plaintiffs. And, it is our job to ensure that we follow Judge Sippel's orders. It is Mr. Careaga's job to produce under the subpoena as modified by the March 2nd email.
>
> It is Mr. Rodriguez's job to assert whatever privilege claims he believes he has that should forestall us from getting what Mr. Careaga is ready to produce. I can't imagine Mr. Rodriguez is going to pass that opportunity by. He didn't before. You heard from him many times.
>
> Those are the lines here. And to suggest that we are trying to stop them from doing that, we are simply not. We weren't able to stop them from doing that. They didn't stop from doing that. They came to you and tried to do it. It didn't work.
>
> THE COURT: Okay. So the takeaway that I hear is that Mr. Kuntz and his firm will honor the representations he has made as far as it comes down to a specific time delay. As I have indicated before, I am not baking in a specific number of days or weeks into my report and recommendation; i.e., nor could I.

Hr'g Tr. 91:8—92:15

Plaintiffs' sanctions request, then, is built entirely on speculation about materials they admit the Companies haven't received. Because they will have the chance to review for privilege before anything is disclosed, their motion is premature and without merit.

Dated: September 26, 2025                                         Respectfully submitted,
                                                                  By: /s/ *Andres Rivero*
                                                                  ANDRES RIVERO

7

Florida Bar.: 613819

**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Coral Gables, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: receptionist@riveromestre.com

*Attorneys for Doe Run Resources Corp. and The Renco Group, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on September 26, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Andres Rivero*
Andres Rivero