# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:22-cv-21115-JAL


IN RE:  THE RENCO GROUP, INC., AND
THE DOE RUN RESOURCES CORPORATION,


                                        Miami, Florida
                                        September 15, 2025

                                        9:05 A.M. - 12:10 P.M.


                                        Pages 1- 110

_____

EVIDENTIARY HEARING
BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


FOR RENCO GROUP and
DOE RUN RESOURCES CORPORATION:

                        ROBERT J. KUNTZ, ESQ.
                        Devine Goodman Rasco
                        & Watts-FitzGerald, LLP
                        2800 Ponce de Leon Boulevard
                        Suite 1400
                        Coral Gables, FL  33134
                        Rkuntz@riveromestre.com


                        ANALISE NEGRIN RUIZ, ESQ.
                        Devine Goodman Rasco
                        & Watts-FitzGerald, LLP
                        2800 Ponce de Leon Boulevard
                        Suite 1400
                        Coral Gables, FL  33134

2

INTERVENOR PLAINTIFF:

                              JAY HALPERN, ESQ.
                              Halpern Santos & Pinkert
                              150 Alhambra Circle
                              Coral Gables, FL  33134
                              Jay@hsptrial.com


INTERVENOR
RODRIGUEZ TRAMONT & NUNEZ:

                              FRANCISCO RAMON RODRIGUEZ, ESQ.
                              Rodriguez Tramont & Nunez
                              255 Alhambra Circle
                              Suite 1150
                              Coral Gables, FL  33134
                              Frr@rtgn-law.com


RESPONDENT, PRO SE:

                              VICTOR CAREAGA
                              7668 NW 180th Terrace
                              Hialeah, FL  33015




STENOGRAPHICALLY REPORTED BY:

                              SHARON VELAZCO, RPR, FPR
                              Official Court Reporter
                              United States District Court
                              400 North Miami Avenue
                              9th Floor
                              Miami, Florida 33128
                              (305) 523-5636

3

(Call to the Order of the Court:)

THE COURTROOM DEPUTY:  The United States District Court for the Southern District of Florida is now in session, the Honorable Lauren Louis presiding.

THE COURT:  Good morning.  Please be seated.

THE COURTROOM DEPUTY:  Calling case 22-21115, civil, Judge Lenard, In Re:  The Renco Group Inc., and the Doe Run Resources Corporation.

Counsel would you please note your appearances for the record?

MR. KUNTZ:  Good morning, your Honor.  On behalf of petitioners, Robert Kuntz and Analise Negrin Ruiz.

THE COURT:  Good morning.

THE WITNESS:  Good morning, Victor Careaga.  I apologize to all present for being late.

MR. RODRIGUEZ:  Good morning, your Honor.  Frank R. Rodriguez of Rodriguez Tramont and Nunez on behalf of the intervenors, Rodriguez Tramont and Nunez.

MR. HALPERN: Frank Halpern on behalf of Intervenors, Halpern Santos & Pinkert

THE COURT:  Mr. Careaga, we set this hearing, as you know, because there had been not -- there had not been meaningful compliance with the court orders to produce documents that are at issue from petitioner's subpoena.

I had given a deadline by which you could notice on

4

the docket complete compliance negating the need for this hearing, and on that date, we had a discovery hearing, instead.

When I issued the order to show cause, it was on the finding that the petitioner's motion had set forth the prima facie showing that you were not then in compliance with the subpoena.  And, as our discovery conference on the date your notice would otherwise have been due, it really becomes without meaningless dispute that you were not then in compliance.

It is my understanding, sir, as you announced your appearance here this morning, that you intend to continue to represent yourself in this matter.  Let me ask if you understand and appreciate the potential consequences of contempt if I were to -- and the magistrate does not have contempt power unless you do it in front of me -- and please don't -- the magistrate judge certifies facts and sends it up to the District Court judge, and only then, if Judge Lenard agrees with the certification of facts and recommendation would you be held in contempt of court.

Court sanctions can be significant, beyond the Court's admonition and monetary penalties; could be coercive fines that could be imposed daily or weekly until you comply with all the Court's commands, up through the deprivation of liberty if Judge Lenard were so inclined.

5

Do you understand the consequences that could flow from this contempt proceeding?

THE WITNESS:  Yes, I do, your Honor.

THE COURT:  Have you entertained the possibility of retaining an attorney to represent you in this matter?

THE WITNESS:  I have, but I have never had the economic wherewithal to be able to do that, your Honor.

THE COURT:  Have you had all of the time that you need to shop for an attorney and consult someone?

THE WITNESS:  I had time.  I just know, because of my economic situation in the last 12 years, that I would not have been able to retain any -- any attorney that practices in the Southern District to represent me.

THE COURT:  Okay.

All right.  With that in mind, I'm going to ask Mr. Kuntz if it is your intention to make an evidentiary presentation this morning with respect to Mr. Careaga's compliance or lack thereof.

MR. KUNTZ:  Yes, your Honor.  Good morning.  Thank you.

Your Honor, with respect to evidence, the parties have conferred, have exchanged exhibits, conferred, and agreed that all the exhibits that each submitted to the other are admissible to the Court.

I have a binder for the Court, or I have them

6

available on a thumb drive, whichever is most convenient to the Court.

Included in those pieces of evidence are declarations from a representative of Concilio, the ESI vendor, from Joshua Weiss, the general counsel of Renco, from Crystal Salin, the general counsel of Doe Run, from Kevin Shaparo, a Peruvian attorney.

The parties have exchanged and agreed the admissibility of my declaration on the fees and costs incurred.  It is not before your Honor, as it seemed to be. Your Honor ordered that exchange, but it seemed to be that until such time as there is an order finding an entitlement, it would be premature to put that before you.

But, it has been exchanged and agreed to the admissibility thereof by the parties.  So it could be put in evidence, at this time, if you wish.

I also had intended, as I quite frankly, your Honor, don't know how you would like to proceed this morning, in terms of establish the evidence on the grounds today,

I also intended to do a very brief address to the Court to open things, and I have a line of questions for Mr. Careaga, who is the sole witness listed on our witness list.

THE COURT:  Okay.  Brief presentations help me organized the evidence as it comes in and rule on objections,

7

so I am happen to take a brief opening.

With respect to calling Mr. Careaga --

Let me just turn -- Mr. Careaga, is it your intention to testify here in your own defense?

THE WITNESS: To read a statement that I have prepared.

THE COURT: Okay.

MR. KUNTZ: Now, hearing that, Judge, and presuming what the statement is, I think that it would be clear, your lead case would be Baxter versus Palmigiano, that if Mr. Careaga's opening statement is what I expect it might be, an invocation of certain rights with regard to the Constitution, the Court is entitled to take the adverse inference because this is a civil contempt hearing.

If Mr. Careaga does that, I would still lean on my right to put Mr. Careaga on the stand, put my questions before Mr. Careaga, so that the -- not the proffer, but the questions and the potential inferences are before the Court.

THE COURT: Well, let me just ask this.

An order to show cause is by the Court. So in having found that the petitioner has already made a prima facie showing of the absence of compliance here, that is what triggers the Court to step in and say, "Show me why you should not be held in contempt."

It is not a, motion for sanctions for which you carry

8

a burden.

MR. KUNTZ: So of course, your Honor is absolutely correct. The prima facie showing having been made, it falls to Mr. Careaga to show the burden to explain or excuse the noncompliance.

Some facts on the ground have changed slightly in that they have worsened since our last appearances here, and the Court may wish to have a more complete, more detailed set of facts upon which to predicate these findings when they go to Judge Lenard.

But, I am at your service, Judge.

THE COURT: I appreciate it. But, Mr. Careaga -- any contemnor has to have notice before he can be the subject of contempt. So to the extent new facts are being out -- as irritating as it may sound, that would be the subject of another separate order to show cause.

MR. KUNTZ: Your Honor, these -- the investigation would only go -- the questioning of Mr. Careaga would only go to the point at which you put him on notice, which I perceive to have been at the August 8th hearing, or, perhaps it was the August 18th order. I think you were clear from the bench --I think Mr. Careaga has had notice, certainly, for all events up to August 18th, that he was on notice as a contemnor.

But, your Honor, the only other time I can recall conducting anything like this, I was representing the accused

9

contemnor, who was an attorney, and Judge Seitz conducted her own inquiry, and that was how the inquiry went.

It does happen that the person seeking the order to show cause, in this case, the companies, is called upon to make an inquiry of the witness, and I am prepared to do that.

I am, as I say, at your service in that regard.

I want to make sure our record is complete when you send it up to Judge Lenard, if you send it up to Judge Lenard, as I know you do.  That is all.

THE COURT:  I appreciate it.

Why don't you -- let me not work in a vacuum.  There is no jury and no prejudice.

Let me hear the opening you intended, and we will decide where to go from there.

MR. KUNTZ:  Thank you, Judge.

THE COURT:  Mr. Careaga, likewise, are you intending to give me some kind of opening that is either structured on you want to present, or are you just reading your statement as your opening and your testimony all in one?

THE WITNESS:  I will confide in the Court that I am not familiar at all with the actual procedures of a order to show cause hearing.

If I would be able to, after Mr. Kuntz puts me on the stand and asks me questions, if I could return to the stand and then give my statement, as opposed to the giving -- in

order to shorten the time --

THE COURT:  Right.  In terms of it being any particular type of proceeding, it is just an evidentiary hearing, like any other evidentiary hearing.  Okay?

I don't mean to minimize it.  I just mean that in terms of the Court's ability to structure the presentation, it is the same.

So I often find it helpful when parties want to tell me what it is that they expect the evidence will show, and what conclusions they want me to reach.  That's most helpful if I'm going to have several live witnesses so that I can rule on objections, because not each witness presents their entire, the entire case.

So knowing everything that is coming in, in one succinct summation, helps me to understand where things are going.

Now, did you understand -- it doesn't sound like we are going to have that kind of presentation; however, if declarations are coming in, those are still testimony.

So to the extent that you want to give an opening that tells me why -- the why or the what of other people's testimony that I'm going to receive, you are welcome to do so, separate and apart from -- and I guess the biggest difference is one is under oath and one is not.

So if you want to give, like Mr. Kuntz is doing, an

11

argument-styled presentation of what the evidence should lead me to conclude before you are sworn in, you can do so.

THE WITNESS:  I will give a very brief opening to give the Court an idea of the declarations that happened, to let you know what they are, and what were these declarations will show the court what has been done.  So I will do that very briefly within a couple of minutes.

THE COURT:  Okay.

Then let me hear from Mr. Kuntz first.

MR. KUNTZ:  Do you want, your Honor, the exhibits we agreed to admit in a binder or a thumb drive?

THE COURT:  No, I want it in physical copy.

Oh, that is the same copy that Mr. Careaga has at his desk?

MR. KUNTZ:  Yes, your Honor, and it has been exchanged at the deadline your Honor directed.

I'll tell your Honor that the tabs, to me, are a little misleading.  The exhibits are all stickered.  I tell your Honor that the tabs, to me, are actually a little more confusing, but the exhibits are all stickered with their exhibit numbers.

THE COURT:  Okay.  Let me also let you both know that our local rules require that you upload any exhibit electronically after hearing, that is admitted in hearing.  Now, while this list purports to go to Exhibit No. 21, it has

12

a bazillion subdocuments in No. 12.

MR. KUNTZ:  Yes, your Honor.

THE COURT:  That would require that each and every one of these be uploaded; however, I'm looking at them, and a number of them are already on the docket.

MR. KUNTZ:  Yes, your Honor.

THE COURT:  So let me advise you that if you intend to -- if you intend for me to rely on a document, it is my expectation that it is used either in testimony or somehow argued at this hearing.

I'm not a computer who can just digest this and come up on whatever conclusions you all were relying on it for.

Second, to the extent it is already on the docket, let's not weigh Judge Lenard down with a dozen unnecessary exhibits.  So those are my two words of warning.

Go ahead, your opening.

MR. KUNTZ:  Your Honor, with regard to commodious Exhibit 12, you will recall we were at the last hearing, that was a composite exhibit of emails regarding search terms.

And, I think your Honor pointed out that might be more appropriate for this hearing, which is why I included it the way I did.

THE COURT:  Understood.

MR. KUNTZ:  This is our 8th time before this Court since the 1782 petition was granted more than three years ago.

13

The full and protracted procedural history before you in a demonstrative Exhibit 15, called a procedural timeline, and a summary and contextualization of the relevant proceedings, is Demonstrative 14.

These exhibits, as Mr. Careaga's testimony, if it is taken, tell a plain tale.

And, as we stand here, it is a sorry one.

I know that much of this is fresh in the Court's mind, so I will not reiterate what we did in business here on the 8th of August and the 8th of September.

But, let me point out that we now know that the universe of documents that Mr. Careaga has told this Court, at least twice in open court and has testified under oath, was 10,000 documents is, in fact, some much larger number than that.

We learned that, at the last hearing, that most of those documents were not even retrieved for the first time until after the September 8th, the August 8th hearing.

We learned that the most crucial email repository there might be is an email called trabajosarroya@gmail.com, which Mr. Careaga has testified under oath he used to commute with the ground team in Peru, has not been retrieved or reviewed yet.

We still do not have any meaningful production.

We do not have one more page than we had on July 9th,

14

when we received 49 compiled PDFs totalling 1600 pages.

I don't think that the Court needs more than that to make the finding.  And, that's what the Court found.

But, the exhibits and declarations that are before you now, and the testimony, if it comes in, will demonstrate a more complete picture, even so.

The declarations of Josh Weiss and Crystal Salin, who are the general counsel for the petitioners here, contextualize the impact of this delay.

If I can misquote Judge Cardoso from Palsgraf, this is not contempt in the error.  This is contempt that has had substantial economic consequences, and, substantial potential consequences and delays in the proceeding it was meant to serve in Peru.

You have the declaration of Peruvian counsel, Kevin Shaparo, who helps the Court to understand just what those delay-caused risks are, what the consequences of those delays may be.

As I say, we have available for the Court at the time there is a finding in our favor with regard to recompensing us for our costs, we have available for the Court all of that.

Your Honor, this contempt is just about old enough to go to kindergarten.  Mr. Careaga, throughout the process of this contempt, has misrepresented who engaged Concilio, what efforts he made to review documents, how many documents were

15

at issue, what retrieval was done at what repositories, when, and, that the key repository -- this trabajosarroyo gmail address -- "may perhaps have disappeared."

He has offered no argument, at any time in this proceeding, from the day he received the subpoena, that he failed to understand what the subpoena required, that he was incapable of complying, that he was prevented from complying.

We've established that Mr. Careaga, and will further establish, if the Court hears testimony from Mr. Careaga, has willfully -- and "willfully" is a key factor here -- has willfully refused to obey repeated court orders; centrally, but not exclusively, the court order that is the subpoena, a subpoena being an order of the Court.

Mr. Careaga has done nothing to shoulder the burden of excusing this contempt.  We believe that we are entitled to the fees and costs.  To be frank, your Honor, we believe we are entitled to fees and costs that go back well before the motion that really has us here today on which you have ordered us to exchange those fees and costs.  We've presented that.

Frankly, Judge, I think that a fair view of the record would entitle us to fees and costs going back to some earlier iteration of this contempt.

If Mr. Careaga is going to continue to disregard his obligation to comply with the subpoena, we think that the Court is clearly within its rights, within its powers, to

impose a coercive fine.

Neither of these critically would be in the way of punishment, which the civil contempt statute doesn't permit. I will spare the Court the legal analysis unless the Court wants to hear legal argument.  I am sure the Court is very familiar with it.

But, the goal here is simple:  To obtain compliance, and to ensure that the petitioning party, the seeking party has not been forced to expend money it shouldn't have had to expend to gain that compliance.  We are nowhere closer than we were when we were before your Honor on August 8th.

We are no nowhere closer than we were at the July 9th appearance of Mr. Careaga, when he produced the 1600 pages, not documents.

Judge, with regard to this, we have an FTP file available for the Court.  I think it is an FTP.  That is a file-sharing protocol of some kind.  I was very loathe to send the Court 1600 pages of anything.

If your Honor tells me that she will find access to those 1600 pages -- recall that we showed you a sampling of those at the hearing where you found that there was a prima facie case, and ordered Mr. Careaga to show cause -- we showed you a sampling.  You saw that they were compiled.  You saw that they contained no metadata.  We never received any metadata, that they were not in native format.

17

I can give you the whole kit and caboodle.  It is 1600 pages.

And, I wanted guidance from the Court before I dumped a file-sharing address into your email.

But, that is all there has ever been, Judge.

And, you have heard, frankly, from Mr. Careaga to this point.  And, if we put him on the stand, I'm afraid you'll have to hear more.  He has not complied, even though he could have.  That is the core of willful failure to comply, and everything the Court needs -- although I have much more in the way of evidence, if the Court wants it -- that is all the Court needs to find that willful noncompliance and impose the measures that I have asked for this morning.

Thank you, Judge.

THE COURT:  Okay.  Thank you.

Mr. Careaga?

THE WITNESS:  Would you like me to approach the podium, or is it to okay to talk from here?

THE COURT:  I think it is important that you are on a microphone.  So I think the podium is probably your more comfortable bet.

THE WITNESS:  May it please the Court.

Judge, my goal has always been to comply, and certainly not allow the situation to get to this point.

And, since our last hearing of August 8th, I've

18

worked day and night in order to begin the process of fully complying.  I think there has been some compliance, but I'm aware of the fact that this Court has emphasized in its order that there were documents that needed to be produced that were not, beforehand.

Before I go further and just comment on some points that were made by Mr. Kuntz, I do want to summarize for the Court the declarations that have been agreed to by opposing counsel as to their authenticity and admissibility, as well.

The first one, Judge -- and I apologize.  I have not premarked the two declarations, and there's a third one.  The two declarations that were shared already with them, I don't have them premarked, but if I could just represent to the Court that the first one, second one, and third one will be respondent's one and two and three, that would assist the Court, I would appreciate that, but I don't have them premarked.

THE COURT:  What are their respective names?

THE WITNESS:  The first declaration is of Andrew Kent, senior project manager at Concilio, LLC, which is the E-discovery company that has assisted me since -- consistently, particularly since our last hearing.  It is a 224-page document.

Seven pages of it are representations and affirmations by Mr. Kent, detailing all the work that has been

19

done by them and myself since our last hearing.

Besides those seven pages, the remainder are search term reports, which your Honor has heard, from time to time in our hearings, that have been exchanged between myself and the opposing side.

So all the data associated with the search term reports complies with the remaining pages of the declaration. That would be the first one that I would have.  It details all the work that has been done with all the universe of documents that were created.

Mr. Kuntz pointed out that I may have represented to the Court that there were 10,000 emails from the get-go.

I don't think that certainly was the case, until such time as I took it upon myself to broaden the "searchability" of documents that could be related to the subpoenaed items, which are -- which are associated with the -- with the recruitment of plaintiffs -- that is the subject of the Peruvian criminal investigation, so that my focus at all times was to broaden my search to eventually also advise opposing counsel, as opposed to the initial search of terms that may have been a small number, my search terms was broadened to 22 search terms.

THE COURT:  What is the second declaration?

THE WITNESS:  The second declaration is, again, also of Mr. Andrew Kent.  It is a short, two-page declaration that,

20

declaration from Mr. Kent.

Again, he is the senior project -- let me be absolutely sure how he describes himself -- senior project manager for Concilio.

The second declaration was a short declaration by him attesting to the fact that there were no data that they were able to remotely retrieve from earlier than the year 2014.

And, that's important to point out, your Honor, because as you know, there are two sets of intervenors. The first set of intervenors worked with me while I was licensed to practice from 2006 through 2013, and I gave instructions after our last hearing to go back, as far back as 2006, so that we could ascertain if there was data that could eventually be the subject of this 1782 action.

Concilio went ahead and did their investigations. They went ahead and received all of the email accounts that I could have possibly used from 2006, forward, because that's when the search for this case began.

So this particular two-page affidavit simply states that they inspected the email accounts that I used, and no data was found from 2014 beforehand, which would mean that that would be for the benefit of the intervenors, Halpern, Pinkert and Santos, because they would not -- there would be no documents associated with them, as my relationship with them ended in 2013.

So that is the second declaration, your Honor.

And the third one simply is the declaration that was already filed in court.  I believe it was electronic, control filing number 178, of Peruvian counsel Rocio Sanchez Saavedra, in which she comments on the legal context of the Peruvian proceedings.  I basically did that in order to respond to the most recent affidavit that attorney Shapora has filed on behalf of the respondents.

THE COURT:  Sorry.  What is the declarant's name?

THE WITNESS:  It is Rocio Sanchez Saavedra, and I believe it is electronic control filing number 178.

I do have a copy here in case you need it.

THE COURT:  Okay.  All right.  So you are going to rely on those three declarations, as well as your own testimony?

THE WITNESS:  Yes.

And, I did not bring this to Mr. Kuntz's attention, but I also would like to just bring up the filing that I made on the 8th.

I wrote a response to your order, to your Honor's order to show cause last Monday.  There was a written response, and I would like it to just be a part of the documents that I would like the Court to refer to.

THE COURT:  That is Document 191?

THE WITNESS:  I believe so.

22

Mr. Kuntz, any objection?

THE COURT: Hold on. Even though you have signed it, this isn't testimony. So to the extent that you want to, under oath, advance facts contained in here, but I am not relying on it as evidence, as such. Do you understand the difference?

THE WITNESS: I am not sure I do, your Honor.

THE COURT: Okay. Then let me say it plainly. I am not taking it in as an exhibit. I won't be citing to it for any factual findings.

But, that does not stop you from taking an oath and, either in response to my questions or in your own exploration, sorry, explanation, covering the same ground that is covered in that response.

With that, are you -- is there something else that you wanted to add before you are sworn?

THE WITNESS: Oh, one last thing, one last comment, and I will step off the podium.

To be clear, the Concilio LLC company was retained by Napoli Shkolnik, which was one of the intervenors for my use and benefit, your Honor. So I just wanted to make that statement in response to Mr. Kuntz's statement that I've -- that I may have misrepresented that particular relationship.

So with that, I'll step off the podium, your Honor.

THE COURT: I'm sorry. To be clear, Concilio was

retained by the law firm?

THE WITNESS:  That's correct, by Napoli Shkolnik for my use and benefit to assist me with all the remote retrieval on the data collection for the last 30 days with them, which are evidenced by all the reports they generated and the declarations that they have signed off on and that I would like to introduce and have as evidence in this matter.

THE COURT:  Okay.  All right.

Let me have you sworn.

You will have to come up and sit in the witness box.

Otherwise, you are going to be on your feet for a while.

(Mr. Victor Careaga duly sworn as a witness).

THE WITNESS:  I do.

THE COURTROOM DEPUTY:  Thank you.

Please be seated.

State your name.  Spell your last name for the record.

THE WITNESS:  Victor A. Careaga, last name, C-A-R-E-A-G-A.

THE COURT:  Mr. Careaga, I think that you said you wanted to start with a prepared statement.

THE WITNESS:  Judge, if I may read that at the conclusion of this matter, I think it might be most appropriate then, and, depending upon how things go, maybe I

24

may not do that.

THE COURT:  Okay.

THE WITNESS:  But, could I do that after the presentation of --

THE COURT:  It is up to you.  But, you are surrounded by papers, which I had assumed -- which is what you wanted to read to me.

Like any other witness, you should not be looking at exhibits unless you are being questioned about a particular exhibit, or you need it to refresh your recollection.

And, the record should reflect what it is you are relying on to do so.

So can we turn everything facedown.

All right.  Okay.

And, likewise, I still see you have a yellow pad of notes.

Okay.  To the extent one of your answers would require you to look at a document in order to refresh your recollection, tell me what that document is and I will give you time to look at it, if I think we need to know the answer to something, or if we need to move on, okay?

THE WITNESS:  Okay.

THE COURT:  Mr. Careaga, I'm going to start with really no easy questions.  First and foremost, are you taking legal advice from Mr. Rodriguez in this matter?

Case: 4:15-cv-01704-RWS   Doc. #: 965-1   Filed: 09/26/25   Page: 26 of 111 PageID #: 29326

25

THE WITNESS:  No, I am not.  He has made it clear he cannot provide me legal advice.

THE COURT:  Okay.  Since we have been here -- and the "here" started almost a half-hour late -- but in the half-hour we have been here, I am sitting here watching Mr. Rodriguez talking to you at counsel table.  What are those communications?

THE WITNESS:  He has just made comments about what Mr. Kuntz was saying to you.

THE COURT:  Like what?

THE WITNESS:  Like there was mention of 10,000 documents, why are there 300,000 documents now.  That was one of the statements that was made.

THE COURT:  That is what Mr. Rodriguez said to you?

THE WITNESS:  Yes.

THE COURT:  That doesn't even make sense.

THE WITNESS:  Well, Mr. Kuntz said in his opening statement I made a misrepresentation that there were initially 10,000 and now the universal searchable documents has gone up as high as 300,000.

THE COURT:  Right.  And that is accurate, or at least, we have tread that ground.

So Mr. Rodriguez's observation to you at counsel table was what?

THE WITNESS:  To explain, to explain why.

26

THE COURT:  Right.  So that's why you understand -- it is my observation that it seems like you are, in fact, getting advice from Mr. Rodriguez, and have been throughout this proceeding.  Do you dispute that?

THE WITNESS:  If you consider -- if you consider that legal advice, your Honor.

THE COURT:  I am asking you.

THE WITNESS:  I am being asked to explain something. I don't consider that being provided legal advice.  That is just my own personal take.

THE COURT:  As you sit here, do you dispute you have not produced the documents that are required under the subpoena or my orders?

THE WITNESS:  Not yet, your Honor.  I am in the process, but not yet.

THE COURT:  My question was, do you dispute that you have not produced?

So your answer is you do not dispute that?

THE WITNESS:  That is correct, your Honor.

THE COURT:  So then we can -- I don't want to put you through the examination that is geared to establishing that you are not in a place of compliance if that is something on which we agree.

But, I want to be clear that if it is my understanding then, since you just told me you don't dispute

27

it, that the focus of this hearing would be on your explanation for why you are not in compliance.  I'm not trying to deprive you of your right to have evidence on the first point; that is, whether or not you've complied with court orders.  Do you understand what I'm saying?

THE WITNESS:  Yes.

THE COURT:  So let me just ask you directly.  If it is not in dispute that you haven't complied with the court orders, do you likewise agree that our focal point today would just be on your defense of why you have not complied?

THE WITNESS:  That is fair, your Honor.

THE COURT:  Then we stay focused there.  Okay?

I have been with you now for about three years.

THE WITNESS:  Sounds about right.

THE COURT:  I have always been at an informational disadvantage here, meaning I only know what you tell me, and whatever representations you make about the data repositories that you have, what data they hold, what you've produced, how sophisticated you are.  I have deferred every time to your representations.  Now, you are sitting here under oath, and I'm skeptical.

At bottom, I don't even, frankly, know what questions to ask you about your reasons for not having complied.  So I know you wanted to save your statement until the end.  But, I have the very open-ended question for you.  Why shouldn't you

be found in contempt?

Because your response, you know, it kind of travels on grounds that we have already covered in terms of trying to convey that, despite your best efforts, you just have not gotten it done yet.  But, I will reiterate that we are three years in.  So why should you not be found in contempt?

THE WITNESS:  Judge, my ESI shortcomings, my inability to kept abreast of the technology for the last 12 years, because I have not had an office set up or resources in order to become more proficient in the ESI field, along with my genuine misunderstandings of the scope and breadth of documents that eventually should be produced, pursuant to the subpoenaed items -- it only came to light to me in the last couple of months that there was email metadata that I never produced, as the Court pointed out in its order.  There were no WhatsApp text messages, as the Court pointed out in its order.  So these were all things that I became only aware in the last two months.

I do recognize this proceeding started years back.  So is it my fault that I did not grasp fully the breadth and scope of the production that needed to be done?

Yes.  That was ignorance on my part, but never willful intent.  I do understand the power of contempt is not to punish but to coerce someone to produce the documents pursuant to subpoena duces tecum, and those are the reasons I

29

can begin to tell the Court why I have not done a more thorough comprehensive job to eventually procure all the documents that may be relevant to the prosecutorial investigation in Peru.

THE COURT:  When do you think -- Mr. Careaga, if I had to look back at the transcripts, when do you think is the first time that you stood in court and told me that you didn't understand the ESI protocols?

THE WITNESS:  I would be guessing, your Honor.

I just don't remember if I ever was that clear in a representation.  I think that there may be some comments to that -- negligent pleadings I may have filed.

But, I don't recall if I was ever as blunt about my ESI deficiencies as I am being with you now.

THE COURT:  When was Concilio retained for you?

THE WITNESS:  I believe they were retained in July of 2023.  There was not much work done then.

But, the lion's share of the work after our September 8th hearing began immediately after that -- excuse me, not September 8th.  August 8th.

And, that's when my earnest approach to them began in terms of "Get me all of the data associated -- possibly associated with my email accounts, and my text messages, WhatsApp in particular, dating back to 2006."

So that was an initiative of mine because I wanted to

30

eventually be able to tell this Court and Mr. Kuntz that I didn't leave any stone unturned in terms of all the data I could possibly --

THE COURT:  Slow down for the court reporter, please.

THE WITNESS:  Yes.  I wanted to be as comprehensive in my, in my search backwards because I have been involved in this case for so long.  So I wanted to broaden my search, as I indicated earlier to the Court.

THE COURT:  So at least for the last two years, ESI ignorance is not an excuse, because someone is paying an ESI expert to assist you.  And that expert is being paid for by which firm?

THE WITNESS:  Napoli Shkolnik.

THE COURT:  And so similar to Mr. Rodriguez's assist here this morning and suggesting that you explain a part of Mr. Kuntz's opening away, how long have you had the benefit of his firm's advice?

THE WITNESS:  His firm and me continually address matters involved with the underlying litigation of which this 1782 application is directly tied to.

THE COURT:  Specific to my proceeding -- because I'm not involved in either the underlying litigation or the Peruvian criminal investigation.  I'm only talking about compliance with my subpoena -- or the ones issued by my court, I should say.

31

My question is, bluntly, have you the benefit of him and his firm's advice to you continuously?

THE WITNESS:  In terms of them wanting to eventually get responsive documents for me so they can invoke privileges, those topics have been often.

THE COURT:  Obviously, I'm not asking about that. That is precisely why I allowed them to intervene.  I'm making the observation and giving you the chance to explain with facts why my observation is not a good one, that the continued defense of ignorance is a bad one, where for the last two years, at least, you have had the benefit of an ESI vendor and a very competent law firm who, though you deny they represent you in a legal capacity, I have observed and you have confirmed that they are giving you advice along the way.

Between those two people, the law firm and the vendor, your ignorance, either of ESI practice or of what the scope of the subpoena calls for, is not a great excuse because you have those two experts to lean on.

Have you not had the benefit of advice from both the law firm and the ESI vendor for the last two years, as to both what the subpoena means and how you apply an ESI protocol to collect the documents?

THE WITNESS:  Yes.

THE COURT:  Okay.  So Mr. Careaga, every time you come into court, you tell me how earnestly and how hard you

32

are working to comply with it.  And, yet, to what degree would you say you have completed the production that's called for in the subpoena?

THE WITNESS:  Well, as the Court knows, there are two sets of universes of documents.  Those that would be associated with my group of search terms and those of the petitioner's, which are over 200, although we did get a list of priority terms at our last hearing of 50.

So I have made it a point to begin reviewing the searchable documents from my -- that I have been -- that have been compiled by Concilio, those in particular that were not produced beforehand, such as email metadata and WhatsApp messages because those have been remotely retrieved.

There are about 3,200 email documents and about 1,100 WhatsApp text messages which I began reviewing in Concilio's relativity workspace.

I have gone through 1,400 of those.  It looks like that is a -- that is an amount that I can cover on a weekly basis.  So I would expect to be able to cover the universe of documents pursuant to my 22 search terms before the month is over.

That doesn't address Mr. Kuntz's request of reviewing 50 search terms, which, in the last hearing, he offered to have reviewed by me.  So that's where we are in terms of what I've been able to do since last week.

33

THE COURT:  Before the month is over, in another two weeks -- so wait.  If I hear you correctly, though, since this order to show cause was entered in August, you have not produced any new documents; is that correct?

THE WITNESS:  That's correct.

THE COURT:  Okay.  That --

THE WITNESS:  If I may, your Honor, I go -- I review the documents.  I determine which ones are responsive and relevant, and then, subject to legal privileges being invoked, once I determine the set of responsive and relevant documents, those are the ones that I would be in a position to turn over to Mr. Kuntz.

THE COURT:  That was five weeks ago.

THE WITNESS:  I understand.  But, I did not have the benefit of all of the data of this -- of all the email data, dating back to 2014, also the WhatsApp text messages.  I did not have the benefit of Concilio retrieving remotely all that data and then injecting it into its workspace so I could start reviewing it.

THE COURT:  How many documents have you reviewed?

THE WITNESS:  About 1400, give or take a few since last week.

THE COURT:  When did you start reviewing?

THE WITNESS:  As early as Tuesday of last week.  It could have been Wednesday morning, but it could have been as

34

early as Tuesday, a day after our hearing.

THE COURT:  And how many documents have you identified as responsive?

THE WITNESS:  Approximately between 20 and 25 percent.

THE COURT:  But -- okay.  So 350.

THE WITNESS:  Yes.  Give or take, yes, your Honor. It would be about 20, 25 -- I haven't kept on an accurate track yet, but as I have gone through these documents, I have estimated that 20 to 25 percent are responsive.

THE COURT:  What impeded you from producing those 350 documents that you have identified since the last hearing?

THE WITNESS:  Those documents -- it is my understanding that the intervenors, who have never looked at them, could go ahead and then invoke privileges for them, and I could -- and that's why I haven't done that, because they would have the opportunity to do so.

But, if the Court instructs me to turn them over on a rolling basis --

THE COURT:  Oh, no.  I instructed you to do that at least months ago.

So my question is what impeded you from turning over the 350 documents or so that you have identified?

Do I understand correctly that your answer is the hypothetical possibility that they could be privileged, even

35

though apparently, no one has, in fact, asserted a privilege?

THE WITNESS:  That's the reason why I haven't turned them over, because I thought that process needed to be done.

THE COURT:  I'm not sure that I understand how this is anything other than willful contempt.  You've identified 350 or so documents that you recognize are responsive, and yet, they are just sitting there on the hypothetical that they could be privileged, not, "I've asked someone if they want to review them; I've given them access and we are paying for it."

I'm struggling to understand this dispute from your side.

THE WITNESS:  I don't understand what -- Judge, what I just finished doing, more documents reviewing last night.  There could be between 300 and 350.  I'm ready to turn those over.

It was never my understanding that I needed to do that on a rolling basis.  If your Honor ever ordered me to so, I don't recall that being the case.  If not, I would have gladly done that.

THE COURT:  I don't know why you think that it takes an order, an additional order on top of the multitude of orders that have commanded you to turn these documents over, to specify that you should, in fact, do it.

I'm not even sure how I make sense of this explanation.

36

The point that I'm making is that it seems absolutely undeniable that this is willful and an intentional choice to prevent this production, hard stop, at all costs, no matter what.

THE WITNESS:  Most -- your Honor, I'm just -- I couldn't disagree with you more.  It is just that my frame of mind is to turn over -- I'm going through these documents.  I can turn them over to Mr. Kuntz.  Why wouldn't I?

Why would I willfully refrain those if I am going over and over to review those, hours and hours of documents?

I am happy to start doing that, as long as Concilio tells me, "We are going to carve out these documents, you can turn them over."

I am happy to do that.  I do not have a mindset of willfully refraining these documents, your Honor.  I'm happy to turn them over.

And then I know that Mr. Kuntz wants his documents, and he is going to start receiving documents already.  If -- now that I am clear as to what your Honor is impressing upon me, I can start producing those daily, every two days, with the assistance of Concilio.  I have no problem doing that.

THE COURT:  You have said things like that consistently for the last few years, that you would be happy to, that you would, and you have not.

THE WITNESS:  Judge, I have produced 1600 documents

37

in the past.  Now I understand that my universe of -- my search should have been broader, and I took the initiative to begin a broader search that has increased the universe of documents to hundreds of thousands.  So I have complied in the past with producing documents.  They were insufficient, and because Mr. Kuntz made the representation these are patently insufficient, I took the initiative to make sure we broaden the search of documents, increase the number of search terms, and initially take a look at the -- eventually take a look at all the data dating back to the years that I have described.

THE COURT:  So when the order told you to complete production before today, in what way was that not clear?

THE WITNESS:  I understand production to mean that -- I didn't have an understanding that as you come up with responsive documents, you turn those over on a rolling daily basis.  That has not been my mindset, nor did I read that anywhere in any order.

THE COURT:  My order, at Page 8, reads, "Careaga shall complete his production before September 15th, 2025."

THE WITNESS:  That's correct.  And I have not completed it.  I have begun it.

THE COURT:  How did you begin it?

THE WITNESS:  I have begun, but I have not completed the production, as your Honor states.

THE COURT:  Tell me, I think that this is the third

38

time I'm asking.  How have you begun this production?

Are you referring to the steps that you are representing to us that you are doing -- now, I guess, perhaps -- well, no, I want to stay where I was.

In what way was the command to complete your production by September 15th unclear?

THE WITNESS:  No, it was not unclear.  The order read that, and I began attempting to comply with my review of documents.  When I realized we were talking 4,000 documents, not considering any that are in Mr. Kuntz's search terms, I realized it was going to be next to impossible to do that, but I needed to start.  And, that's why I have gone as far as 1400 within my group of search terms.

So yes, the complete production, it would have been -- I could have -- could it have happened before, by today, with my search terms?  Possibly.

But, it would have been impossible to attempt to retrieve responsive documents from Mr. Kuntz's 50 search terms because after running a search term report on his list of 50, we're talking over one hundred thousand documents.  I don't have the number in front of me, but I know it is a voluminous number, still.

So I am giving the Court the best answers that I can. I'm not trying to hide anything.  That has been my mindset all along, working day and night to begin complying with the

39

demands of the petitioners, to enhance my search, and to comply with your Honor's orders.

THE COURT: Just scanning through my notes of our August 8th hearing, which was five weeks ago, and, it does not seem to me that there is anything different to show by way of compliance in those five weeks. You are describing some internal process, all of which could have and should have been done before the August 8th hearing occurred.

But, in any way around it, we sit here in the same position, in terms of your compliance with court orders, and as we were five weeks ago.

THE WITNESS: There could be 1400 documents or so produced immediately.

THE COURT: How did we go from 350 to 1400?

THE WITNESS: Excuse me, excuse me. The 1400 is what I have reviewed.

The 20, 25 percent, as the Court has estimated, 350, those could be turned over immediately.

THE COURT: Why shouldn't I recommend to Judge Lenard that she imposes a daily coercive fine on every day that you represent that you -- well, let me say that differently -- on every day that passes, that you remain not in compliance with the court order?

THE WITNESS: Judge, all I can tell you is I can continue on a daily basis to review my universe of documents

40

associated with my search terms.  I can do that on a daily basis, which I began doing this week, and if I can finish it before the end of the month, I will strive to do that.

If I can do it in five, six, seven days, if I need to hardly get any sleep to go through those 4,200 in order to get to the 20, 25 percent I have been seeing that are responsive, I will do that, your Honor.

I mean, I am in no position to afford any payments. I don't want to go ahead and continue to tell the Court that I'm not in a position to do that.  I am now in a position to review documents because that began last week, I am in a position to complete my entire search by the end of the month, if not sooner.

THE COURT:  Who else has access to the data that Concilio was hosting?

THE WITNESS:  Attorneys in Mr. Rodriguez's firm have access, should they want to look at the responsive documents that I have designated, and if they want to comment on privileges.

THE COURT:  So that could have already happened?

THE WITNESS:  They could have begun that job over the weekend.  I'm not sure if they did.  But, I have given instructions to Concilio to give them access to the same database that I am working on, on a daily basis.

THE COURT:  My notes from the last hearing includes a

41

proffer that you made that since Concilio has retrieved all data that was either in your laptop or android, which they accomplished remotely -- now, there was data hosted up through 2006.  Today, you represent that there is no data going back to 2006.  Which is correct, the under oath testimony you are giving today, or your proffer from the last hearing?

THE WITNESS:  Could you read that proffer of the last hearing, please, your Honor?

THE COURT:  You advanced the phrase, I put it in quotes in my notes, "now all hosted up through 2006."

THE WITNESS:  That references that I gave instructions for all my email accounts that I recalled using from 2006, forward.  Those, I turned over to Concilio so they could scour all those email accounts to see if there was any documents that existed in those servers from 2006 to present.

So recently, they have advised -- and that is the content of the second declaration that says, "We have gone through all your email accounts that you have given us that you recall using since 2006, forward, and there is nothing before 2014."

So that reference in the last hearing would have been to the effect that I gave instructions to make sure that we went back -- as far back as 2006 because I have been involved in this case since then.

42

THE COURT:  What are the 22 search terms that you have applied and are -- and that you represent with searching now?

THE WITNESS:  If your Honor will allow me to look at one of the exhibits --

THE COURT:  Yes.  I was actually -- are they contained on one document as an exhibit?

THE WITNESS:  I believe so, your Honor.  If you allow me to look --

THE COURT:  Yes, I would like to mark it.

THE WITNESS:  Your Honor, if I may approach the bench, or if I could --

THE COURT:  You can just hand it to Ms. Williams, and she will give it to me.

THE WITNESS:  I'm going to hand your assistant the seven-page declaration from Mr. Kent and the first exhibit, which is called WhatsApp Victor Terms.  You will see in the last two pages the 22 search terms.

THE COURT:  Do you have a copy of this, Mr. Kuntz?

MR. KUNTZ:  I know I was served one.  I didn't get one this morning, Mr. Careaga.

THE COURT:  Hang on.

Mr. Careaga, is this what you handed me, the declaration of Andrew Kent, is this your R-1?

THE WITNESS:  Yes.

THE COURT:  And then you have picked out some of the exhibits.

THE WITNESS:  Yes.  The first exhibit, as your Honor sees, is of the search of WhatsApp terms, and the last two pages you will see at the bottom of the next-to-last page, there are two terms, and the last page, 20 terms.  So the 22 are there.

THE COURT:  Okay.  Do you have a copy with you?

THE WITNESS:  Not with me.

THE COURT:  It says that this report was generated on August 21st.  Is that right?

THE WITNESS:  I do not know if it was generated on that day.

THE COURT:  These results don't add up anywhere close to 1400.  They don't approach 300.

THE WITNESS:  You are just looking at one of many exhibits of all the searches that have been conducted amongst email data and WhatsApp search messages.

THE COURT:  Mr. Careaga, my question had been what are the 22 search terms that you used to amass this body of 1400 documents.  And, your answer was, "Let me show you the exhibit with those 22 search terms."

THE WITNESS:  With the names, with the actual search terms, that's correct.  I am just handing you the last two pages of that exhibit to describe the 22 search terms.

44

THE COURT:  And, your explanation that even though this is the report that you are showing me, that this is not -- wait, I am sorry.  I don't even know how to rephrase what you just told me.

You handed me something that has got -- I don't know what I'm looking at.  What am I supposed to be looking at here?

THE WITNESS:  Just the last page, your Honor.  Those pages of this 24-page exhibit.  Just look at the last two pages I handed you.

THE COURT:  It does, in fact, have 22 search terms.  It adds up to possibly 200 documents, maybe 250.

THE WITNESS:  If I may, Judge, I have not reviewed any WhatsApp text messages in the first group of 1400.  My first focus has been to review the 3200 emails that have been associated with my search terms.  I'm just handing you the WhatsApp exhibit because --

THE COURT:  Oh, that is the explanation.  This is the results as applied on your WhatsApp?

THE WITNESS:  That's correct, which that will be after I finish the first 3200, then I will do the 1100 that I have been told by Concilio that exists of WhatsApp text messages.

So those search terms are being applied to all 3200 emails that are hit on those 22 terms.

45

And, I will do the same thing for the WhatsApp text messages. I will be applying those 22 search terms to the 1100 WhatsApp text messages I have been told have been retrieved.

THE COURT: Okay. Now, I need you to do that again.

You are saying 1100 WhatsApp messages have been retrieved from your devices.

THE WITNESS: Yes, from my smart phone.

THE COURT: What is the reference to 3200 emails?

THE WITNESS: Those are emails, as opposed to WhatsApp text messages. The emails were retrieved from my computer, from the email accounts, and that separately, they retrieved remotely what -- my WhatsApp text messages from my android phone.

THE COURT: No, I want you to stay focused on what proffer you just made to me about 3,200 emails.

THE WITNESS: And what is your question, your Honor, regarding that?

THE COURT: What 3,200 emails? What are 3,200 emails? We have been told there are 3 thousand emails, that there are 14 hundred emails, now you have a new number that is 3,200 emails.

THE WITNESS: The 3,200 are document hits of the search terms.

THE COURT: Then what is 1400 emails?

46

THE WITNESS:  From within the 3,200 that I need to review, I have reviewed 1400.

THE COURT:  That would be almost half?

THE WITNESS:  Just about, yes.

THE COURT:  Mr. Kuntz, have you gone through these Kent declarations before?

MR. KUNTZ:  Yes.  When we did the exchange last Thursday, we looked at them.

THE COURT:  Mr. Careaga, the declaration says that you contacted Concilio again in August of 2025.

THE WITNESS:  Immediately after our August 8th hearing.

THE COURT:  Mr. Careaga, on June 18th of this year, I entered an order that commanded you to sit for deposition and complete your production of responsive of documents within 21 days of this order.

You didn't contact Concilio until August.

THE WITNESS:  That's correct.

THE COURT:  Why is the intervening time between June 18th and -- as generously as I can be here, August 1st -- anything other than willful disobedience of the Court's order?

THE WITNESS:  Judge, I sat down for deposition.  I did not produce as many documents as Mr. Kuntz has stated.  I did produce 1600 documents.  I sat down for the deposition.  I was there for five hours.  And, since then, it was brought to

47

the Court's attention that the production was incomplete, and I have set out to rectify that.

But, on that date, I did produce documentation, albeit incomplete, as the Court has now concluded.

But, I don't think that that's willful, on my end, to just have partially complied. And, since then, I'm aware that -- I'm aware to now fully comply.

THE COURT: And what would have prevented you from understanding in June that you needed to fully comply with the Court's orders?

THE WITNESS: I believe that the documentation that I retrieved, at that point, pursuant to the shorter list of search terms I have reviewed, was sufficient.

THE COURT: You are going to have to be much more specific. This is a very important issue to me.

THE WITNESS: If I recall, if I recall correctly, I went ahead and reviewed documents between June and that deposition date. They were retrieved. They were put together and those were eventually turned over in USB flash drives to Mr. Kuntz.

THE COURT: Your use of the passive voice is noticeable.

THE WITNESS: Judge, if -- maybe that is just my style of talking. I am not trying to "should" or "could" anything. I am being as honest as I possibly can.

48

THE COURT:  I am trying to elicit from you any facts that are specific and capable of being objectively confirmed as possible.

THE WITNESS:  But, that did occur, your Honor. Documentation was turned over to Mr. Kuntz on that day, and testimony was given for five and-a-half hours.  Unless I'm not understanding the Court's question, there was some compliance on that day.  I recognize that it is not complete.  That's why these proceedings have since ensued.

THE COURT:  In July of 2023, Concilio was unable to collect any email from either of your Yahoo accounts, the careagalaw.com account, a third Yahoo account, and your netside.net account.  Do I understand that correctly?

I am look at Paragraph 34 of Mr. Kent's declaration.

THE WITNESS:  Yes.  And, in fact, in one of my pleadings, I did attach emails of July 11, 2023, where I gave -- where I gave the names of the email accounts, and their response.  As to three of them, I believe, there was no content -- three of them no longer existed, the accounts, and two of them had no content in them.  So I did receive a written response from Concilio addressing those five email accounts, and that was attached to one of my exhibits to my pleadings.

Since then, also to appease Mr. Kuntz's comment about the 6th account, trabajosarroyo, that has also been made part

49

of the universal searchable documents that I am in the process of reviewing.  So that's being included in my review.

THE COURT:  This affidavit refers to -- I don't know, even the numbering and the pages aren't numbered.  But, he says that in August of '25, the total volume of email that was processed, including both the original email set of July of 2023 -- is this set, email set -- oh, that only includes the G-mail account.

How do you explain a collection of 15,000 documents in a G-mail account in 2023 that revisits the same accounts, but comes up with 330,000 documents?

THE WITNESS:  Those are, as far as -- as best as I can understand, those account for the 200-something, 270-something search terms that Mr. Kuntz's office proposed, that I invited him to go ahead and tell me which search terms they wanted to have reviewed by Concilio.  Those numbers were increased after those search terms were accounted for.

I also instructed, your Honor, that the -- that my -- that the document retrieval be updated, meaning from July 2023 to the present time, all emails and WhatsApp text messages that have occurred in the last two-year period, I also requested that that be updated for the ongoing review.

THE COURT:  No. It can't be explained by -- the expansion from 15,000 to 330,000 cannot be explained by the application of Mr. Kuntz's search terms because it is

50

explained that Mr. Kuntz's terms were applied to a smaller population of only 21,000 documents.

So I don't understand how the same body of email that is collected in 2023 expands to 330,000 documents in 2025.

In fact, it makes it explicit, "Mr. Careaga then requested that we run opposing counsel's search terms over the entire email set of 331,000 documents without Pell's Ring It for the email addresses."

You know what the obvious and built-in waste in this process is that if there are documents that are responsive, you, as the author, or recipient of those emails, would be in a unique position to find them without the application of all these search terms.

THE WITNESS:  I don't understand the question, your Honor.

THE COURT:  It was an observation.

Let me end where I started, which is we agree that you have failed to comply with the subpoena for the Court's orders.  And, you remain not in compliance with.  So what would remain for me to recommend to Judge Lenard a finding that you are in contempt is a finding that your lack of compliance is willful.

Or, the flip side of that, a finding that your failure to comply is due to either -- to your inability to comply, for lack of clarity in the order -- we have agreed

51

that the order was clear.  As I sit here, the only explanation that I take from what you've told me so far on inability is your insistence that you lacked the sophistication to know what you needed to do.

If you think I misunderstand where the record is now, what the evidence is, I invite you to tell me, or, if you think that I understand it, I may ask Mr. Kuntz if he has additional questions.

THE WITNESS:  I think the Court understands it.  It is -- it is my inability to comply that I hope that the Court can understand.

THE COURT:  Mr. Kuntz, I want to make the observation now that what I have heard would not lead me to a finding that Mr. Careaga has had an inability to comply with the Court's orders.

With that in mind, much more questioning on that point may be cumulative.  So if you have additional questions that you think that I have overlooked that are necessary for my report and recommendation to Judge Lenard, I would invite you to bring those things out now.

Mr. Careaga, do you still want to read your statement to me at the end of Mr. Kuntz's questionings?

THE WITNESS:  I may, your Honor.

THE COURT:  Okay.

MR. KUNTZ:  Your Honor, thank you.  I will try, on

52

the fly, to make sure that the cross-examination focuses on the question of willfulness.  I am afraid it is also going to include an exploration of fact, that part of this sort of campaign of contumacious defiance has continued to this morning in what can only be charitably be referred to as less-than-truthful responses to direct questions from the Court.

So understanding that I'm working through a little more complete outline than I think the Court wants to hear, I do have some questions.

THE COURT:  Okay.

MR. KUNTZ:  Thank you.

CROSS-EXAMINATION

BY MR. KUNTZ:

Q.  So Mr. Careaga, you've said that you produced 1600 documents.  Isn't it, in fact, the case that you produced 1600 pages of documents; correct?

A.  I consider those pages to be documents.

Q.  You have produced no documents to this date in native format, have you?

A.  That's correct.

Q.  You've produced no document to this point that has any metadata attached to it, have you?

A.  That's correct.

Q.  Since your July 9th deposition, you have not produced

anything at all, have you?

A.  That's correct.

Q.  You've produced no WhatsApp or text messages, have you?

A.  Correct.

Q.  Following the August 8th hearing, it was not until 14th of August that you instructed Concilio to do a second review; correct?

A.  I'll defer to the dates on the email correspondence that has been exchanged with them.

Q.  Well, let me ask you to turn to Exhibit 19.

Do you need your binder?

I will approach the witness, your Honor, with the binder.

Exhibit 19 is the Declaration of Mr. Eric Fuller at Concilio.

And, although sadly, Mr. Fuller's declaration does not contain pages, there are numbered pages to which he is responding.  So if you will find question five, just above that, you find Mr. Fuller's statement, which is now in evidence that on August 14th, 2025, Concilio performed a supplemental ESI collection.

A.  I don't see that in Exhibit 19, sir.

Q.  Exhibit 19, you can go to -- page back one --

A.  Oh, there is a --

Q.  One, two, three -- on the top of the fourth page.

A.   The fourth page, the question five?

Q.   Just above question five.

Mr. Fuller testifies that Concilio conducted a supplemental ESI collection on August 14th, 2025.

And my question to you is, isn't it true that it was not until then, since 2023, that Concilio performed any ESI collection?

A.   I'm not sure of the date, if they did or did not do it before that date, sir.

Q.   The last time you asked Concilio to do an ESI collection was, in fact, in 2023, wasn't it?

Turn back one page in Mr. Fuller's declaration.

A.   Paragraph number six, at the bottom?

Q.   No, sir, turn back:  He stated under oath that July 2023, Concilio collected ESI from victorcareaga23@gmail.com, etcetera, and this was before August, the last time you asked Concilio to conduct a collection.  Isn't that true?

A.   I defer to what is stated, sir.

Q.   In fact, let's talk about the trabajosarroyo gmail.

Isn't it true that you used that email with the ground team in Peru?

A.   Yes.  It was an email created by one the ground team members.

Q.   And, certainly, communications with the ground team members in Peru, you understood from the day you got this

subpoena that those communications were a topic of the 21, the list of 21 topics of documents to produce, didn't you?

A.   I believe so.

Q.   All right.  You've never asked Concilio to review that email, have you?

A.   I don't know.

Q.   Well, Concilio provided, in Mr. Fuller's declaration, which you have before you, a list of all of the emails that it's reviewed from, in 2023?

A.   That is question six, yes.

Q.   Trabajosarroyo@gmail.com is not among them, is it?

A.   It is not.

Q.   And in 2025, they conducted a supplemental review of your email, the victorcareaga23, but in fact, in Mr. Fuller's declaration, he never lists Trabajosarroyo@gmail.com as having been reviewed?

A.   I don't know.  I don't know if he addressed that specifically.

     All I know is I did instruct Mr. Andrew Kent to include that in this ESI collection in August of 2025.

Q.   But, in fact, it has never been collected, has it?

A.   As far as I'm concerned, it has been.

Q.   Okay.

     THE COURT:  Wait.  I need to understand.  Is there a dispute over whether or not email data has been collected from

56

the email account that you used to communicate with the ground team Trabajosarroyo@gmail.com?

When you say, "As far as I know, it has been done," what is that supposed to mean?

THE WITNESS: They said they would go ahead and retrieve.

THE COURT: Who is "they?"

THE WITNESS: Concilio.

THE COURT: No, you don't talk to Concilio. You talk to a person, do you not?

THE WITNESS: Yes.

THE COURT: Who?

THE WITNESS: Mr. Andrew Kent.

THE COURT: You spoke to Andrew Kent?

THE WITNESS: Yes.

THE COURT: And if I needed to ask him under oath, he would say you instructed him to pull the email data from that account?

THE WITNESS: In August of 2025, yes, he would.

BY MR. KUNTZ:

Q. Mr. Careaga, you've known since you received an email from us in March 2nd, 2023, that we had agreed that your production under the subpoena would be modified so as not to include documents from current plaintiffs.

You do recall that, don't you?

57

A.   Yes.  The subpoena stated that, yes.

Q.   Let's talk about our efforts to depose you.  Your deposition was first set for March 7th of 2023?

A.   Correct.  I believe that's correct.

Q.   And that date was set with your agreement; correct?

A.   It would have been.

Q.   And you didn't appear, did you?

A.   I don't -- I can't recall if I did or didn't.  I was surprised to read that.

Q.   Let me direct you to Exhibit 3.

THE COURT:  Mr. Kuntz, I am sorry.  I can't move past this because I am trying to understand where it came down on this email account, because Kent's affidavit does not list that Trabajo email account as one from which he pulled data.

MR. KUNTZ:  No, ma'am.

THE COURT:  He says that you asked him to include it as a search term not previously applied in July of 2023.

MR. KUNTZ:  That was the gravamen of my question, your Honor, combining the Fuller and Kent declarations.  It may have been run as a search term.  But trabajosarroyo was never collected.

THE COURT:  What is the difference?

THE WITNESS:  Based on what Mr. Kuntz is saying, I have every reason that it would have been.  I can't tell you that it was actually done.

58

THE COURT:  Actually, you just did tell me it was done.  You told me --

THE WITNESS:  I instructed --

THE COURT:  You told me that you told Kent to pull the data from that email address.

THE WITNESS:  Yes.

THE COURT:  Yes, that's what you told me.

THE WITNESS:  Yes.  That's what I told him to do.

THE COURT:  That is contradicted by his declaration.

Do you have anything that corroborates your testimony that contradicts his declaration?

THE WITNESS:  I would have to search my emails, your Honor, in order to come up with the emails in which I instructed him to make sure that that was done.

THE COURT:  Why would he have disobeyed your instructions?

THE WITNESS:  I do not know, your Honor.

THE COURT:  Neither do I.

MR. KUNTZ:  Shall I continue, your Honor?

THE COURT:  Okay.

BY MR. KUNTZ:

Q.  Mr. Careaga, please take a look at Exhibit 3.

Mr. Careaga, Exhibit 3 is a certified nonappearance with respect to your duly noticed deposition of 7, March, 2023.

59

Does that help to refresh your recollection regarding whether you appeared at your deposition that had been scheduled for the date upon which you agreed it should go forward?

A.   The certificate speaks for itself.  I did not show up on that day.  I don't remember why I did not, but the certificate speaks for itself.

Q.   Your deposition was then reset until, not until, your deposition was then reset for 10, August, 2023.  Correct?

A.   Yes.

Q.   And, you appeared at that one?

A.   Yes.

Q.   At that deposition, you claimed a right of silence under provisions of Peruvian law; correct?

A.   Correct.

Q.   Thereafter, the Court, after briefing on that topic, ruled that you were not entitled to such a privilege, didn't it?

A.   Yes.

Q.   So then your deposition was reset again for 2023, for 27, December, 2023.  Correct?

A.   December of 2023?

Q.   Correct.

A.   I will defer to your date.

Q.   And you didn't show up for that deposition, did you?

A.   If you have a certificate of nonappearance, then I will

60

defer to that.

Q.  Let me direct you to Exhibit 6, and tell me if that refreshes your recollection regarding whether you attended the deposition on 27, December, 2023.

A.  It states I did not.

Q.  Finally, on July 9th of this year, you appeared for deposition; correct?

A.  Yes.

Q.  At that deposition, you had two thumb drives handed over at the start of the deposition, correct?

A.  Yes.

Q.  You stated that those thumb drives had documents on them from the two Eastern District -- related to production that was in one way or another tied to two Eastern District of Missouri cases.  That is how you organized your production to us; correct?

A.  That may have been the case, yes.

Q.  In fact, that production contained 49 compiled PDFs which combined various sorts of documents within single PDFs; correct?

A.  I will defer to your description of them, Mr. Kuntz.

Q.  There were a total of 1600 pages; correct?

A.  Again, I defer to your statement in that regard.

Q.  At your July 9th deposition, you produced no WhatsApp messages, did you?

61

A.   I did not.

Q.   And, you testified you did not believe it was possible for you to produce any WhatsApp messages, didn't you?

A.   That was my understanding as of that date.

Q.   And, you since learned that that's not true, haven't you?

A.   That is not true.  The documents can be retrieved, yes.

Q.   Now, at July 9th -- at the July 9th deposition, or earlier this summer, you didn't produce -- we do agree that the victorcareaga23@gmail account was collected and reviewed; correct?

A.   Yes.

Q.   You didn't produce a single email from the victorcareaga23@gmail on July 9th, did you?

A.   I'm not sure if I did or didn't.

Q.   To make it easy, you didn't produce a single email, did you?

A.   I don't recall if I did or not.

Q.   Okay.  And, you testified at that deposition that besides the trabajosarroyo@gmail account, WhatsApp constituted a principal means of communication with the ground team in Peru; correct?

A.   Yes.

Q.   And, you understood, then, as you had since you got the subpoena, that communications with the ground team at Peru would certainly be likely to contain documents responsive to

62

the subpoena that you received in 2022?

A.  Once I learned that the -- although I had not retrieved -- I had not stored, manually, my WhatsApp text messages, once I learned it could be done, technologically, then I immediately made sure they were all retrieved.

Q.  At the August 8th hearing before General Magistrate Louis, in this very room, you were not represented by counsel; correct?

A.  Correct.

Q.  You are a former attorney, correct?

A.  Yes.

Q.  And you do understand that irrespective of whether you are under oath or not, there is a duty to be candid and truthful with the Court; correct?

A.  Absolutely.

Q.  Okay.  On at least two occasions, you have stated in open court that the universe of documents that needed to be reviewed was about 10,000 emails.  Correct?

A.  I may have made -- I may have made reference to that document.  I do not know if I actually said that, but I will defer to what is in the transcripts of those proceedings, sir. I'm not going to go ahead and --

Q.  Well, let's do that.  Take a look at Exhibit 9, which is an excerpt from the transcript.

        Please take a look at Exhibit 9, which is an excerpt

63

from the transcript of the proceeding before Judge Louis on 31 July of 2023.

Pages 33, Page 33, 21 to 25.  Page 34, 1 to 23.

Rather than read the entire thing into the record, when you read that, do you agree with me that you told Judge Louis that the universe of documents was 10,000?

A.  May I read the lines?

Just one second, please.

Q.  If I'm going to impeach you with it, it is proper I do that.  On July 31, 2023, at Page 33, 21 to 34, 23:

"THE COURT:  Mr. Careaga, you told me at the last hearing that you sent them tens of thousands of emails.  Did you send them a new batch that was only a couple of emails?

"MR. CAREAGA:  Once I went ahead and did that, then I was provided the assistance of Concilio in order to narrow down from the universe of 10,000 emails, which would be responsive to the numbered items of the subpoena."

I correctly read that piece of the transcript, didn't I?

A.  Yes, you did.

Q.  Were you telling the Court the truth when you said that, the universe of 10,000 documents?

A.  I made that representation, sir.

Q.  And then again, very recently, in August 8th of 2025, at a hearing in this room, Page 42, lines 3 to 18 -- this is

64

Exhibit 10 -- didn't you tell the Court that the universe of documents was 10,000 pages -- 10,000 documents, sorry.

Well, before you look at the exhibit, sir, do you recall telling the Court that the universe was 10,000 emails?

A.  I will defer to what I said in open court, sir.

Q.  Well, my question is a yes or no one, and I don't want you to defer.  Did you tell the Court that there were 10,000 emails?

A.  If the transcript says so, then I did.

Q.  Did you -- you are impeaching yourself, which I appreciate, but my question is just a yes or no.

A.  What page is that, Mr. Kuntz?

Q.  Page 42, Mr. Careaga.  I estimated there were 10,000 emails that had to have been produced by me over the course of the last 17, 18 years in this case that has dragged on.  So I advised -- I indicated that there is easily 10,000 emails."

Did you tell the truth when you told Judge Louis that?

A.  That's what I said.

Q.  Okay.

I'm cutting some things here, your Honor.

MR. RODRIGUEZ:  Could we take a comfort break?

MR. KUNTZ:  We are at two hours and 15.

THE COURT:  Mr. Careaga, you remain under oath.  You can't speak to anyone about the testimony you have just given.

65

(Recess from 11:25 A.M. to.  11:34 A.M.)

MR. KUNTZ:  I am almost done, your Honor.

May I resume?

THE COURT:  Yes.

BY MR. KUNTZ:

Q.  In 2023, when Concilio was first engaged, nothing would have prevented them from are retrieving and reviewing the trabajosarroya@gmail account, would it?

A.  Right.

Q.  And yet, when I asked you just a few weeks ago on July 9th, to account for why that hadn't happened, you told me, well, perhaps it had disappeared.

That was your explanation in July, wasn't it?

A.  I don't recall saying that.  If I did, I -- to me, I thought that I had overlooked providing that email to them because it wasn't mine.  It belonged to someone else.  That's why I got it now, that it is included.

Q.  Sir, do you recall coming to my office on July 9th and giving your deposition under oath?

A.  Yes.

Q.  Do you recall being asked this question and giving this answer on July 9th?

This is your July 9th declaration, Page 198, 17 to 22.

"Q.  What if I were to tell you that, in fact, your

66

production today contains no emails from trabajosarroya@gmail.com?

How would you account for that?

"A.   I wouldn't.  Perhaps they disappeared from the Google server.  That would explain it."

Do you recall being asked that question and giving that answer, sir?

THE WITNESS:  If that is what the transcript said, I defer to it.

BY MR. KUNTZ:

Q.  Do you recall taking an oath just like the one you took here today, sir?

A.  Yes.

Q.  Were you telling the truth then, or are you telling the truth now?

A.  Telling the truth then and now.

Q.  In fact, the trabajosarroyo@gmail account still exists, doesn't it?

A.  I believe it does, yes.

Q.  And you knew in July of this year, when I asked you that question, that the email existed, didn't you?

A.  Like I said, I may have overlooked not providing that email address to Concilio.

Q.  Throughout this entire saga, you have been in communication with the attorneys at Rodriguez Tramont with

67

respect to your efforts to comply with the 1728 subpoena, haven't you?

A.   Yes.

Q.   You have been in contact with Mr. Halpern, haven't you?

A.   Yes.

Q.   You have been in contact with Mr. Shkolnik, haven't you?

A.   No --

Q.   With Mr. Shkolnik's firm?

A.   Spoken to someone, I don't believe so, but emails, yes.

Q.   In fact, Mr. Shkolnik's firm paid for and continues to paid for Concilio's not inconsiderable fees, don't they?

A.   I believe they do, yes.

Q.   You knew from the beginning of this proceeding when you first received the subpoena that arose from the 1782 petition that the purpose of this discovery sought here was to assist in a criminal investigation in Peru; correct?

A.   Yes.

Q.   And, you knew that if documents were not produced in the 1782 proceeding here, they could certainly not be provided to the prosecutor in Peru, could they?

A.   They could not.

Q.   In fact, sir, that's why you have resisted so strenuously and for so long producing documents under the 1782 petition subpoena that you received in June of '22; correct?

A.   No, that's not the reason.

68

MR. KUNTZ:  Your Honor, I have nothing further for this witness.

Thank you, your Honor.

THE COURT:  Mr. Careaga, you get the last word here, sir.

THE WITNESS:  Most respectfully, Judge, I don't want to take much more of the Court's time.  The Court has been more than generous, and has asked very relevant questions, and I have tried to answer them to the best of my ability and truthfully.

My inability to comply has been at several levels, as I have tried to explain.  And, I'm going to continue to -- my reviews and produce documents now without further delay, because that's what needs to be done here.

And, to the extent that I can be given additional time to comply with the production, like I said, I can finish the production of my -- of my document hits before the month is over.

And, I'm ready to do that, and I will work diligently until that's finished.  And, I will provide documents on a rolling basis, if I have to, to Mr. Kuntz, because that is what your orders apparently have commanded me to do, and I am ready to do that.

I don't want to -- I have not done anything willfully.  Could I have done anything that perhaps have been

69

because of a lack of knowledge and awareness, that, I would agree with.  But, I want to continue to do -- to exert my best efforts to comply with the subpoenaed items.

THE COURT:  Did you want to read your statement?

THE WITNESS:  No, Judge.  I think that the statement kind of was addressed by me in answers to most of your questions.  So it would be cumulative.

THE COURT:  Okay.  I find -- I understand that you are no longer a member of the Bar.  But, it is hard for me not to look at you and see an attorney, as you sit here, and as you have always addressed me like a practicing attorney.

And so I find it very difficult, frankly, to make these findings and this recommendation.

But, you are clearly in contempt of the Court's order, and to the extent that you continue to insist on -- that there is an ignorance that has prevented you from compliance, it would be considered, at best, a deliberate ignorance, as opposed to any genuine misunderstanding, either of the orders or the ESI process.

To the extent you have either deprived Concilio of information that it would need in order to intelligently advise you through this process, or, refused to ask for its help, these are all indicia of willfulness.

The reality is that because of the limits of magistrate judge jurisdiction, you won't be held in contempt

70

immediately.  But, I am going to make the recommendation to Judge Lenard that she conduct her own contempt proceedings, and impose the coercive fine, because I do not believe that anything less will, in fact, bring about your compliance with these Court orders.

The disregard for the Court orders is pervasive. And, I am not without context for the complexity of the dispute between the parties that are here.  But, I'm going to stay in my lane.  I was asked to comply lawful discovery orders.  I was never given a good reason not to do so.

And, those are the orders that I have entered.

You are aware of process and the ability to ask the 11th Circuit to kick the tires on those orders.  That has been done.  These are lawful, outstanding orders.  They are just not getting complied with.

The best that I can say, at this point, in response to your request for just a little bit more time is that the process between a report and recommendation and the objection period and Judge Lenard's ability to react to it may be all the time you have left to purge yourself of this contempt, but I'm not going to delay my end of it any further.

MR. KUNTZ:  Your Honor has stated that she intends to impose -- to recommend a coercive fine.  May I ask your Honor to address the question of recompense for fees and costs.

THE COURT:  Yes.  I do not think that it is

premature. It is actually -- I mean, one of the bases that we use for contempt is to address the consequences it has had on the other party.

MR. KUNTZ: I am going to, if I may, hand the Court the declaration regarding fees and costs for this motion. It has already been shared with and consented to by Mr. Careaga. Of course, we will make a notice of filing so it is before the Court, but I held back on it because it felt premature in that regard.

THE COURT: I understand.

MR. CAREAGA: If I may respond, your Honor, I would make a comment. Please.

THE COURT: Of course.

MR. CAREAGA: I consented to the exhibits, the declaration in support of attorney's fees and costs. I never addressed that in communications. When he said I consented to, I did not. It was sent to me.

MR. KUNTZ: That's fair. Your Honor, that is fine.

THE COURT: Hold up.

Sorry, but I appreciate the politeness you are both showing each other, but understand the limits on what this is. It is not -- I don't understand you to have consented to an entry of the fees in this amount. But, rather, that he has demonstrated to you that this is what he would ask for.

MR. CAREAGA: Yes.

72

THE COURT:  Which I safely assume you oppose.

MR. CAREAGA:  That is fair to say, your Honor.

THE COURT:  That is a limit.  This is tantamount to a limit for fees.

MR. KUNTZ:  I didn't mean to suggest that Mr. Careaga agreed to the amount.

THE COURT:  I would have had many, many questions for him if he had.

MR. KUNTZ:  Your Honor, I have one last question for the Court.

You expressed at one point -- and we may be past this exit on the highway -- you expressed, at one point, your desire to actually be able to see the July 9th production to decide that it was, in fact, deficient.

We showed you a sample in open court.  We never burdened you with the 1600 pages.  I can do that in a file share.  I can do it not at all, as you think it is useful for you.

THE COURT:  I don't think it is necessary on the concession that the question here is not whether Mr. Careaga has complied, but why not.

To the extent the 1600 pages may have demonstrated his good intentions along the way, it is not enough.

So it is --

MR. KUNTZ:  Thank you, Judge.

73

THE COURT:  Mr. Kuntz, here are a couple of other parting thoughts.  There is a superficial reliance on suit search terms.  Since we are still talking about --

And, Mr. Careaga, I don't know how to impress this on you firmly enough, as if I haven't said it repeatedly at every hearing.

My strong wish for you is that you are not found in contempt by Judge Lenard, and so you have purged yourself of the contempt.  So please take my next comments in the vein that they are intended, and that is to enable -- well, no, to caution you about what land mines are still in your way.  They are mostly self-imposed.

So search terms are a tool.  The subpoena, if I remember correctly, does not ask you for all documents that hit on certain search terms.  If it did, then those search terms would be the whole search.  Your election to use search terms in this case, I will, again, make the observation, does not seem to be -- "appropriate" is the word I am going to hang onto for a second.

Search terms are most effectively utilized where the person searching for the communications or the documents is not familiar with the items that they are looking for in the first instance.  That is not true here.

THE WITNESS:  Correct.

THE COURT:  So I think that the way in which you were

74

using search terms is both superficial and, I fear, intended to avoid finding responsive documents.

So when you end up in front of Judge Lenard, I caution you that your insistence that you looked at every document that hit on your 22 search terms will probably be insufficient to purge you of contempt; and, likewise, I would at least make the observation that because the search terms are such an ill-fit for this particular search, even Mr. Kuntz's search terms might not absolve you of finding what it is that you were asked to look for.

That's one thing.

The next thing is there is still the matter of the deposition. What is your ask with respect to the deposition?

MR. KUNTZ: Right. May I say something about search terms first, very quickly?

THE COURT: Okay.

MR. KUNTZ: Judge, our view is and always has been -- and I hope it is clear, especially from the perspective of the requesting party -- the search terms are a courtesy, a convenience we cannot expand. You recall that at one time, I wanted to expand the scope of the subpoena a little bit, and we quickly realized the subpoena and the requests are the subpoena and the requests, and nothing else that has happened has ever changed those.

I don't presume that my search terms could expand,

75

nor do I concede they contract Mr. Careaga's singular responsibility to produce.

Now, to your question about deposition, we want Mr. Careaga's deposition, but we want Mr. Careaga's deposition from a place of being informed.

There is going to be a hearing -- I believe the date is November 20th in Peru where the prosecutor is going to make some decisions. We will do what we can to explain to the prosecutor that's what happening here, and why he doesn't have documents that we'd like for him to have; why he doesn't have sworn testimony from Mr. Careaga that we'd like for him to have.

The very purpose that we've been here on this 1782 all this time, my "ask" with regard to the deposition is that once we get production that is in the ballpark of complying with this subpoena, I want more time to ask Mr. Careaga about those documents.

Nothing has changed from the day we submitted this. We want those 21 topics as modified by the March 22nd email, so we are not talking about current plaintiffs. We're not, as it developed, talking about dismissed without prejudice plaintiffs, we are not talking about them.

I just want the documents I'm entitled to that Mr. Careaga has the obligation to provide to me, and then I'd like to ask him questions under oath.

So my ask, Judge, is to be able to do that, without knowing what we are going to get, when we are going to get and how much we are going to get.

It is -- you know, I -- if I were writing the order, I guess some reasonable time after compliance with the document production, the witness will sit for, you know -- certainly, I'm going to need another couple of days, but I think I have two-and-a-half hours left, or something like that under the rule.

THE COURT:  Hold that thought.  Let me just ask Mr. Careaga whether or not you need -- whether or not you think the record, at this point, requires another court order command for you to sit for a continued deposition, if that's an issue that you don't contest.

THE WITNESS:  I do not contest that, your Honor.

THE COURT:  Let me make another observation; the intervenor's right or ability to review the documents for privilege.

Mr. Careaga has testified that the intervenors have and always have had access to the documents.  To the extent the intervenors intend to review the documents, that is not to delay things.  That only cuts against -- I mean, it comes down to Judge Lenard and Mr. Careaga.  And, it will not be well-placed for him to appear in front of Judge Lenard and say, "Well, I'm ready to go, but the intervenors want to take

77

a look at these documents."

You don't need anything from anyone if you have access to these documents.

MR. RODRIGUEZ:  Can I be heard?

THE COURT:  Do you dispute the characterization that Mr. Careaga testified to?

MR. RODRIGUEZ:  Yes.

THE COURT:  Why?

MR. RODRIGUEZ:  Because we have not had access to the documents.

THE COURT:  Who is "we"?

MR. RODRIGUEZ:  Sorry, my law firm has not had access to the documents.

THE COURT:  Who does?

MR. RODRIGUEZ:  Relativity, recently, like within the last couple of days, sent out emails and gave us passwords to access.  And, what I understand -- by the way, Judge --

THE COURT:  Hold up, sorry.  I am a little touchy about the "I understand" proffers.  So you either know something or you don't.  But, this has gone sideways in a hurry.  So Mr. Careaga testified that the firm that is paying Concilio has access to the documents.

Can you refute that?

MR. RODRIGUEZ:  Judge, look.  I choose my words very carefully.  I think part of the issue, if I can very

78

respectfully point this out to your Honor -- your Honor is an expert, because one of your functions as magistrate judge is to deal with these issues all the time. I am a dinosaur. Okay. I don't say it proudly, but I am a dinosaur.

I don't fully understand how these things work. I will try to answer your question as best I can. Napoli Shkolnik paid and is paying for Concilio -- essentially, like you pay a lawyer to represent somebody -- to do Mr. Careaga's bidding and assist him in complying with the discovery demands and Your Honor's orders. That is what I know.

Here is what I separately know. Recently, when Mr. Careaga was telling us that he had determined that these additional documents exist that could be responsive, and he is reviewing them, I said, "Let us review them on a rolling basis, as well, so we can review them for privilege."

Relativity sent an email out -- I'm losing track of time, maybe Thursday or Friday of last week with an access information.

We haven't been able to gain access to it, and we have been trying to gain access to it for several days.

And, as of Sunday, our last effort was Sunday at 5:00 o'clock, to which my associate said, "Hey, you know" -- well, anyway, I won't get into that.

We haven't been able to get access to it.

We want to look at -- by the way -- and I'm sorry if

79

your Honor has a problem with this, and I say it very respectfully.  But you know, I am an attorney, and I am very careful when I talk to a federal district judge what I say, as I understand it, we have not had access, nor has Napoli Shkolnik.  If Napoli Shkolnik, using Relativity on a regular basis, okay -- the issue here is that this part of the case has been sort of our responsibility.  Not "sort of," our responsibility because we are here in the Southern District, and so we are taking the laboring oar.

I am representing the interest of both intervenors. I'm not being coy.  I'm not trying to not respond to a question.  I will say this --

THE COURT:  The only question that I had asked was whether you dispute that you had access to the documents.

MR. RODRIGUEZ:  Yes.

THE COURT:  And I will say this.  It is no excuse to not have familiarity, or to have competence in all things required for your client, including ESI, the familiarity, when it is required.

And, in this particular case, the only thing that is required is your knowledge of a factual and legal basis to assert privilege, if any.

The court, the report and recommendation will not be building in any recommendation for allowance of time for the intervenors to review.  Hopefully, that lights the fire to get

80

whatever access you need or want to the documents.

It should have been done three months ago.  The fact that it hasn't been done is not an excuse, nor is email access or any of the other exciting things that have been proffered. You want to look at them and you can't get into Relativity, print them.  There is a work-around.

MR. RODRIGUEZ:  Your Honor, if I may, please.

Your Honor had asked me at the last hearing how many documents have my law firm reviewed, how many we provided.

We Bates-stamped all the documents that were provided, and we broke them down into prelitigation and post litigation.  And, there is -- one is 001 to 221, prelitigation, and the other is 001 to 692, post litigation. So we've looked at 913 documents.

I want to make this point.  We filed, recently, in the Eastern District of Missouri, Judge Sippel's courtroom, a motion for sanctions against, in that case, defendant's counsel; in this case, petitioner's counsel -- sorry, excuse me.  In that case, defendants -- the defendant, in this case, petitioner -- not against counsel.  A motion for sanctions because we believe that these defendants have violated the court order in terms of the documents that they are going after.  The judge, Judge Sippel, was pretty clear.  "I don't want you going over -- I don't want you asking for documents that implicate existing clients."

81

The way they interpret the order is, as long as we redact the names of any existing clients, we are good.

I think Judge Sippel's priorities make it clear that is not the interpretation that he is looking for.

In response -- we filed it on Saturday.  In response -- they filed a response on Sunday.

In response to our motion for sanctions, one of their positions is wait a minute.  These guys aren't -- Judge, why are they telling you this?  They have every opportunity to review documents.  You know, they are going to have every opportunity to review and submit privilege objections."

Now, part of it is out of their hands.  What your Honor rules, your Honor rules.  But, part of it is they came in front of you on August 8 and they were saying, "Hey, Judge, we want the documents in ten or 14 days," and they made -- look, they can -- they can't have it both ways.  So I'm just representing.

THE COURT:  I don't know what we are talking about.  The order compelling production was in June.  Then there was a hearing in August.  Then there was a hearing last week.  Now, we are here today.  And, every single time, it is what is going to happen, and it is never done.

So whether they wanted it in ten or 14 days, or three months, either way, nothing has been done.

So let me say it this way:  If you -- if there is

82

a -- so that I can contextualize the comments, if there is something you are asking for, will you tell me that directly?

MR. RODRIGUEZ:  Something I am asking for?

THE COURT:  Yes.  Tell me the "why."

You said you want to be heard.  Tell me the "why" so I can contextualize the comments.

MR. RODRIGUEZ:  By the way, Judge, forgive me if I am sitting down.  I just want to be on the microphone.  I don't want to be disrespectful.

What I want is an opportunity to interpose objections to privileged material.

THE COURT:  But you say that like you haven't had three months of opportunity to do so.  So what is the "ask"?

MR. RODRIGUEZ:  No, your Honor excuse me.  I have not had an opportunity, because I don't know what documents -- I don't know what additional documents Careaga deems relevant to be produced.

We did take a look at all the documents that Careaga identified prior to his deposition, and that he produced at his deposition.  We -- sorry, we saw 913 of them, pages, to be accurate.

THE COURT:  Yes.  And to be perfectly clear, pages are not documents.  Documents are defined under federal rules. But what is the ask?

MR. RODRIGUEZ:  The ask is that I would like an

83

opportunity, on behalf of my clients, to review any new material, new documents that Mr. Careaga has identified post deposition, post August 8th, post August 8th hearing.

THE COURT:  But Mr. Rodriguez, you keep saying that like you need something from me, and you don't.  That is between you and Mr. Careaga.

The report and recommendation will recommend to Judge Lenard that she find Mr. Careaga is in contempt of the orders.

There is -- as I have said already, a built-in objection period.  It will not be ripe for some period of time.

If you and Mr. Careaga are able to review and purge him of the contempt, that is great.

MR. RODRIGUEZ:  I understand your question now that you asked a minute ago, and I didn't mean to skirt it.  But my ask is that you build in, in your report and recommendation, that he can purge himself of the contempt if he produces the documents to my firm, and then give me like a week or just a few days --

THE COURT:  I can't.  Sorry.  We are three years in. And I now appreciate with all certainty the deadlines will be ignored, and that there is no hope, frankly, other than a coercive fine of getting these documents produced.

MR. RODRIGUEZ:  I know that.  You know, and you and I

84

have been in front of each other several times, and I just would like an opportunity, for whatever it is worth.

I didn't say one word during the evidentiary hearing. But my sense is, like many, if not all, federal judges and magistrates, you have a sense of fairness in order to do the right thing.

And, I want to tell you that Mr. Careaga is a train wreck. I mean, but you attribute a motive. I will give you an example, based on the comment I made to him. I told him from the beginning, "Explain to Judge Louis how this thing went from 10,000 to 331,000."

It is not a complicated explanation. He has no reason to lie. He didn't misrepresent anything. All this is, was he initially, back in 2023, he took all these documents, went over to Concilio. He then reduced the size -- and it was 200 and odd thousand documents. He reduced the size of this documents. This I know from conversations. He reduced the size of those documents by giving Concilio roughly 20 email addresses that he viewed as his orbit of business contacts. That reduced the number -- it was never 10,000. It was 15,000 and change. I don't know where the 10,000 number comes from.

He has no reason to lie about it.

So from that 15,000 number, he used his search terms, which I think were eight or so, ten, if I am not mistaken, and he came up with -- that relate to my firm, 913 documents. And

85

the rest I am assuming were from the other law firm. That's what happened.

This time around, because there's two more years involved, and I think more email addresses, the 200,000 universe of documents turned into 330,000 universe of documents.

He did the same thing. He gave the 20 email addresses of people he viewed were in his business orbit, and he reduced that number to 21,444. And then he used the 22 search terms. And, by the way, I'm telling you what I believe to be the case, what I understand to be the case, and I think what those reports reflect.

He took the 21,444 documents, which was the end result of inputting these 20-odd email addresses to the 330,000 universe of documents, and he came up with, I don't know, 3,200, what he is saying on the stand. I have no reason to disbelieve that, and then WhatsApp emails.

My point to you, Judge, is what I have just told you is not terribly complicated. It is not a terribly complicated thought. He has no reason to lie.

He has problems processing information. I'm sitting here scratching my head, what is the heck is going on here?

You know, he has no reason to lie to you. He doesn't have the proverbial -- he doesn't have the wherewithal to be sanctioned.

And you can see -- your Honor is an experienced hand, being on the bench, he is shaking on the stand.

I don't -- look. It is a train wreck, but it is not -- not lying.

I just gave an example of his testimony, and I'm sitting here, he is his own worst enemy. True.

But, look, we -- our position in this, we don't represent him. We -- look, we have a conflict, Judge.

Our interests with our clients, are 1500 to 2,000 clients, which are in the Andes mountains in Peru. He is not our client. I didn't think this was going to be a big deal. I have a five-person law firm, and your Honor knows I have another case in front of your Honor which is -- we are spread pretty thin. And, Napoli Shkolnik has a bigger operation and they have a lot of resources relative to plaintiffs' firms, but they don't have the resources these guys have. These guys are playing scorched earth ball.

THE COURT: I have to stop you.

Hang on, Mr. Rodriguez.

We are going -- I keep coming back to the why.

When someone asks something of the Court, there is a why. It is like you want to testify for Mr. Careaga's behalf. You are not counsel, you are not a witness. I hear you when you say that yes, we want to get it right. But, when it comes down to there are commands to produce documents. Mr. Careaga

87

is repeatedly just not doing it.

So -- and I understand, that's what I meant when I said I'm not unmindful of the context of the other litigation that's going on.  It is just that that is -- that is not my case.

MR. RODRIGUEZ:  I understand.  That's why we filed -- Judge Sippel entered orders, and we feel they have been violated, and we filed a motion for sanctions and to disqualify them.  If they get these documents, it will be up to Judge Sippel to resolve.

The only thing of that, that I thought was noteworthy, was --

THE COURT:  Was that they said, of course, they will have an opportunity to review.

MR. RODRIGUEZ:  Right.

THE COURT:  And, again, to me, that comes down to between you and Mr. Careaga.  But, if he is not giving you the documents, you can't review them.

MR. RODRIGUEZ:  It is not only an opportunity to review.  It is an opportunity to be heard.  An opportunity to review -- and there was one example.

THE COURT:  Heard you when?  What are you talking about?

MR. RODRIGUEZ:  I'm talking about reviewing the documents, the ones that Careaga proposes now to produce, you

88

know, through the subpoena.  These are new documents.  Not old ones.  New documents.

THE COURT:  I know.

MR. RODRIGUEZ:  We want an opportunity to review them and interpose objections on behalf of our clients, and have them considered.

THE COURT:  Considered by whom?

MR. RODRIGUEZ:  By your Honor, by you.

THE COURT:  In what context would I be hearing your privilege objections, at this point?

MR. RODRIGUEZ:  At this point, this is what I -- sorry, this is what occurred.  We had documents that Careaga previously identified, that we objected to.  Your Honor denied our objections.  We had our say with Judge Lenard.  It is -- by the way, it is now pending in the 11th Circuit.  It is not resolved in the 11th Circuit.  The 11th Circuit didn't grant our motion for emergency stay, but it is not resolved.

That hearing is an oral argument in December.  Our position is still alive and, as I understand it, the 11th doesn't usually grant oral argument.  So who knows what is going to happen there.  So that's what occurred with respect to those documents.

Now, we have a totally different set of documents that are being identified.  We haven't looked at those.  We haven't seen those.  We don't know what they are.  We should

89

have an opportunity to review those and interpose objections to those new documents, just like counsel.  And, I filed those things before your Honor so you could see.

They took the position in front of Sippel, "Hey, Judge, Rodriguez and Napoli Shkolnik are going to have an opportunity to review the documents on behalf of their clients, and they will have an opportunity to interpose objections," and that is what I want.

What they are representing to a federal district judge in the Eastern District of Missouri, that is what I should get.  That is what I want on behalf of my clients.

Careaga is not my client.  My clients are the 1500 to 2,000 persons that are in the Andes mountains in Peru.

THE COURT:  I know.  I know.  And I read what you filed last night, and I saw -- I don't know if it is Mr. Kuntz, but whoever was the --

MR. RODRIGUEZ:  Andres Rivero, Mr. Kuntz's partner, one of the main partners in the firm.

THE COURT:  Whoever is representing or speaking for the defendants in that pleading, said exactly what you have represented, or what you are advancing.

And, I assume, as an officer of the Court, that Mr. Kuntz and Mr. Rivera stand by that representation.

So as it comes down to the -- again, you said, "I want to be heard," this is a show cause hearing.  In terms of

90

the report and recommendation that I am sending up to Judge Lenard, it is that Mr. Careaga is in contempt of the court order.  So, and that is -- as far as the -- I think the reason that you and I are having a disconnect is because, from my perspective, that is between me and Mr. Careaga and Judge Lenard.  What occurs between the Rivero firm and your firm and the documents and Mr. Careaga, is separate from.

MR. KUNTZ:  Your Honor, if I could just -- I will be very brief.  I remain dubious that Mr. Rodriguez's firm is ever going to be able to establish privilege in documents in third-party hands somewhere across Central America that have been spread around --

THE COURT:  Mr. Kuntz, hold on.  Sorry, but I will do the same thing.  Tell me the "why" of what you're proffering to me so that I can contextualize what you are going to tell me.

MR. KUNTZ:  Two whys.

Everything I say here is going to be put in front of Judge Sippel, to make sure we are complying with his orders, which we scrupulously are.

Two, with regard to Mr. Rodriguez asking for an opportunity to review whatever Mr. Careaga ever produces before it comes to us, I want to address that ask in this way: They absolutely have a right to assert whatever privilege claims they have, however they want to assert them.

91

It can't be suggested we have prevented them from doing that.  Your Honor will remember prodigious litigation in this courtroom, in front of Judge Lenard, back before you, you told them how to assert their privilege.  They didn't.  You and Judge Lenard found there wasn't privilege.

I presume they are going to do that at the appropriate time and place again.

With regard to this idea that we are going to -- this speculative motion in the Eastern District that we are going to use these things for ill purposes, two things are happening, Judge.

This Court is deciding what we get in 1782.

Judge Sippel in the Eastern District has set forth restrictions about what that material can be used for.  He has made it clear it is not ever coming into his court.

He has given us some other restrictions.  He has told us -- and we modified this subpoena two years ago -- that we are not to be getting materials related to current plaintiffs, and, in this case, it also means dismissed without prejudice plaintiffs.

And, it is our job to ensure that we follow Judge Sippel's orders.  It is Mr. Careaga's job to produce under the subpoena as modified by the March 2nd email.

It is Mr. Rodriguez's job to assert whatever privilege claims he believes he has that should forestall us

92

from getting what Mr. Careaga is ready to produce.

I can't imagine Mr. Rodriguez is going to pass that opportunity by.  He didn't before.  You heard from him many times.

Those are the lines here.  And to suggest that we are trying to stop them from doing that, we are simply not.  We weren't able to stop them from doing that.  They didn't stop from doing that.  They came to you and tried to do it.  It didn't work.

THE COURT:  Okay.  So the takeaway that I hear is that Mr. Kuntz and his firm will honor the representations he has made as far as it comes down to a specific time delay.  As I have indicated before, I am not baking in a specific number of days or weeks into my report and recommendation; i.e., nor could I.

We think about the posture in which this has gotten here -- I can't send something up to Judge Lenard that said, "So long as he produced by X, Y, Z" -- no.  As he sits, he is in contempt of court.  If he gets to a place before Judge Lenard has the opportunity to decide what contempt is necessary to purge him of it, to purge him of it, he is already purged of the contempt, he finds himself in a different posture.

But, the bottom line is I have heard nothing that would put me in a position to find that Mr. Careaga has been

93

unable to comply with the court orders, nor is the order unclear.  It is without dispute that he is not in compliance with the court orders.  Every judge on every one of your cases has got do their specific job, and, I'm going to stay in my lane and do mine.

MR. RODRIGUEZ:  I understand, your Honor.

THE COURT:  I know you will competently raise it in front of Judge Sippel or Judge Lenard if you think that there is a violation of any other court order.  But, that's why I keep asking why, what is the why.

At this posture, it is no longer a place for me to say, "Produce the documents by X, Y, Z date to Mr. Rodriguez, who will then, in turn" -- it is just not where we are now.

Mr. Careaga, good luck.

You are all excused.

MR. RODRIGUEZ:  Judge, thank you for being generous with your time.  I appreciate it very much.  Have a good afternoon.

THE COURT:  You're not wrong, Mr. Rodriguez.  Not only do I want us to get it right, I just want this to be revolved.

You know, I mean -- and by that, I don't mean I want it off the Court's docket.  I really want to see you guys stop fighting about this, I hope.  I hope.

I understand it is important.  I just think that

94

there is a little bit of -- well, there is just too many years, I think, of fighting, that now it is just maybe we can't live without it.

But, I would love for you to live without it.

MR. CAREAGA:  Judge, if I may, just to make sure they're put back to the first exhibit.

THE COURT:  These are all just what I might call either courtesy copies or in court copies.

But when a party or an attorney advances an exhibit at a hearing, and it is accepted -- and this one has been, and it was the only one that was advanced or described, and, likewise, not everything in this binder -- and I cautioned everybody, if you are not relying on it, having it sit up here is not admission.

So the exhibits that you each relied on or discussed at the hearing have to be uploaded pursuant to our local rules.  Okay?

So the copy that is sitting here, if you want it back, I will give it back to you.  I made little dots on it because I was counting 22.

MR. CAREAGA:  As far as the uploading, Judge, I don't have access to the PACER account.  Or, you know, how can I go back?

THE COURT:  I would ask the clerk's office.  I just make reference to the local rule.  I think it is 53 that

95

requires you to upload it.  And the Court Clerk's office will help you.

MR. KUNTZ:  Your Honor, with regard to uploading -- because I revised that line of questions, at your Honor's request, as soon as we get the transcript and we see what we actually put in -- because I cannot say I actual remember -- we will upload what I put in with my declaration.

(Proceedings concluded at 12:10 p.m.)

_   _   _

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

September 18, 2025          /s/Sharon Velazco
        DATE                SHARON VELAZCO, RPR, FPR
                            Official Court Reporter
                            United States District Court
                            400 North Miami Avenue
                            9th Floor
                            Miami, Florida 33128

1

**'**

**'22** [1] - 67:25
**'25** [1] - 49:6

**/**

**/s/Sharon** [1] - 95:15

**0**

**001** [2] - 80:13, 80:14

**1**

**1** [1] - 63:4
**1,100** [1] - 32:15
**1,400** [1] - 32:18
**10** [2] - 59:10, 64:2
**10,000** [17] - 13:15, 19:13, 25:12, 25:20, 62:19, 63:7, 63:17, 63:23, 64:3, 64:5, 64:8, 64:14, 64:17, 84:12, 84:21, 84:22
**11** [1] - 48:17
**1100** [3] - 44:22, 45:4, 45:7
**1150** [1] - 2:8
**11:25** [1] - 65:2
**11:34** [1] - 65:2
**11th** [5] - 70:14, 88:16, 88:17, 88:20
**12** [4] - 5:12, 12:2, 12:19, 28:10
**12:10** [2] - 1:7, 95:9
**14** [4] - 13:5, 45:22, 81:16, 81:24
**1400** [12] - 1:17, 1:22, 33:22, 38:13, 39:13, 39:15, 39:16, 43:16, 43:22, 44:15, 46:1, 46:3
**14th** [3] - 53:6, 53:21, 54:5
**15** [3] - 1:6, 13:3, 64:24
**15,000** [4] - 49:10, 49:25, 84:21, 84:24
**150** [1] - 2:3
**1500** [2] - 86:10, 89:13
**15th** [2] - 37:20, 38:7
**1600** [12] - 14:2, 16:14, 16:19, 16:21, 17:3, 37:1, 46:25, 52:16, 52:18, 60:23, 72:17, 72:23
**17** [2] - 64:16, 65:24
**1728** [1] - 67:2

**178** [2] - 21:5, 21:12
**1782** [8] - 13:1, 20:15, 30:21, 67:15, 67:20, 67:24, 75:14, 91:13
**18** [3] - 64:1, 64:16, 95:15
**180th** [1] - 2:11
**18th** [4] - 8:22, 8:24, 46:14, 46:21
**19** [4] - 53:11, 53:15, 53:23, 53:24
**191** [1] - 21:25
**198** [1] - 65:24
**1:22-cv-21115-JAL** [1] - 1:2
**1st** [1] - 46:21

**2**

**2,000** [2] - 86:10, 89:14
**20** [8] - 34:5, 34:9, 34:11, 39:18, 40:7, 43:7, 84:19, 85:8
**20-odd** [1] - 85:15
**200** [3] - 32:8, 44:13, 84:17
**200,000** [1] - 85:5
**200-something** [1] - 49:14
**2006** [11] - 20:12, 20:13, 20:18, 29:25, 41:5, 41:6, 41:12, 41:15, 41:17, 41:21, 41:25
**2013** [2] - 20:12, 21:1
**2014** [4] - 20:8, 20:22, 33:17, 41:22
**2022** [1] - 62:2
**2023** [24] - 29:18, 48:11, 48:17, 49:8, 49:11, 49:20, 50:5, 54:7, 54:12, 54:15, 55:10, 56:23, 57:4, 57:18, 59:1, 59:10, 59:20, 59:21, 59:22, 60:5, 63:3, 63:11, 65:7, 84:15
**2025** [11] - 1:6, 37:20, 46:11, 50:5, 53:21, 54:5, 55:14, 55:21, 56:20, 63:25, 95:15
**20th** [1] - 75:8
**21** [7] - 12:1, 46:17, 55:2, 55:3, 63:4, 63:11, 75:20
**21,000** [1] - 50:3
**21,444** [2] - 85:10,

85:14
**21st** [1] - 43:12
**22** [15] - 19:22, 32:21, 42:2, 42:19, 43:7, 43:21, 43:23, 44:1, 44:12, 45:1, 45:3, 65:25, 74:6, 85:10, 94:21
**22-21115** [1] - 3:6
**221** [1] - 80:13
**224-page** [1] - 18:24
**22nd** [1] - 75:20
**23** [2] - 63:4, 63:11
**24-page** [1] - 44:10
**25** [6] - 34:6, 34:9, 34:11, 39:18, 40:7, 63:4
**250** [1] - 44:13
**255** [1] - 2:7
**27** [2] - 59:20, 60:5
**270-something** [1] - 49:15
**2800** [2] - 1:17, 1:21
**2nd** [2] - 56:23, 91:24

**3**

**3** [5] - 45:21, 57:11, 58:23, 58:24, 64:1
**3,200** [8] - 32:15, 45:17, 45:20, 45:23, 45:24, 46:2, 85:17
**30** [1] - 23:5
**300** [2] - 35:15, 43:16
**300,000** [2] - 25:13, 25:21
**305** [1] - 2:19
**31** [2] - 63:2, 63:11
**3200** [4] - 44:16, 44:22, 44:25, 45:10
**33** [3] - 63:4, 63:11
**330,000** [5] - 49:12, 49:25, 50:5, 85:6, 85:16
**33015** [1] - 2:12
**331,000** [2] - 50:8, 84:12
**33128** [2] - 2:18, 95:18
**33134** [4] - 1:18, 1:22, 2:3, 2:8
**34** [3] - 48:15, 63:4, 63:11
**350** [7] - 34:7, 34:12, 34:24, 35:7, 35:15, 39:15, 39:18

**4**

**4,000** [1] - 38:10
**4,200** [1] - 40:6
**400** [2] - 2:17, 95:17
**42** [2] - 64:1, 64:14
**49** [2] - 14:2, 60:19

**5**

**50** [4] - 32:9, 32:24, 38:19, 38:20
**523-5636** [1] - 2:19
**53** [1] - 95:1
**5:00** [1] - 78:23

**6**

**6** [1] - 60:3
**692** [1] - 80:14
**6th** [1] - 49:1

**7**

**7** [1] - 58:25
**7668** [1] - 2:11
**7th** [1] - 57:4

**8**

**8** [2] - 37:19, 81:15
**8th** [20] - 8:21, 12:25, 13:11, 13:19, 16:12, 18:1, 21:20, 29:20, 29:21, 39:5, 39:9, 46:12, 53:6, 62:7, 63:25, 83:4

**9**

**9** [2] - 62:24, 63:1
**913** [3] - 80:15, 82:21, 85:1
**9:05** [1] - 1:7
**9th** [15] - 2:18, 14:1, 16:13, 53:1, 60:7, 60:25, 61:8, 61:14, 65:12, 65:19, 65:23, 65:24, 72:14, 95:18

**A**

**A.M** [3] - 1:7, 65:2
**ability** [5] - 10:7, 68:10, 70:13, 70:20, 76:18
**able** [14] - 5:8, 5:13, 9:24, 20:8, 30:2, 32:20, 33:1, 72:14, 76:2, 78:20, 78:25,

83:14, 90:11, 92:8
**above-entitled** [1] - 95:13
**abreast** [1] - 28:9
**absence** [1] - 7:23
**absolutely** [5] - 8:3, 20:4, 36:2, 62:16, 90:25
**absolve** [1] - 74:10
**accepted** [1] - 94:11
**access** [20] - 16:20, 35:10, 40:15, 40:18, 40:24, 76:21, 77:4, 77:10, 77:13, 77:18, 77:23, 78:18, 78:20, 78:21, 78:25, 79:5, 79:15, 80:2, 80:4, 94:23
**accomplished** [1] - 41:4
**account** [18] - 48:13, 48:14, 49:1, 49:9, 49:11, 49:14, 56:2, 56:19, 57:14, 57:15, 61:10, 61:20, 65:9, 65:12, 66:4, 66:18, 94:23
**accounted** [1] - 49:18
**accounts** [12] - 20:17, 20:21, 29:24, 41:14, 41:16, 41:20, 45:13, 48:12, 48:18, 48:20, 48:23, 49:11
**accurate** [4] - 25:22, 34:9, 82:22, 95:13
**accused** [1] - 9:1
**action** [1] - 20:15
**actual** [3] - 9:22, 43:24, 95:7
**add** [2] - 22:17, 43:15
**additional** [6] - 35:22, 51:9, 51:18, 68:16, 78:14, 82:17
**address** [10] - 6:21, 15:4, 17:5, 30:19, 32:23, 58:6, 66:24, 70:25, 71:3, 90:24
**addressed** [4] - 55:18, 69:7, 69:12, 71:17
**addresses** [5] - 50:9, 84:20, 85:5, 85:9, 85:15
**addressing** [1] - 48:22
**adds** [1] - 44:13
**admissibility** [3] - 6:10, 6:16, 18:10

**admissible** [1] - 5:25
**admission** [1] - 94:15
**admit** [1] - 11:12
**admitted** [1] - 11:25
**admonition** [1] - 4:23
**advance** [1] - 22:5
**advanced** [2] - 41:11, 94:12
**advances** [1] - 94:10
**advancing** [1] - 89:22
**adverse** [1] - 7:14
**advice** [9] - 25:1, 25:3, 26:4, 26:7, 26:10, 30:18, 31:3, 31:15, 31:20
**advise** [3] - 12:8, 19:20, 69:23
**advised** [2] - 41:18, 64:17
**affidavit** [4] - 20:20, 21:8, 49:4, 57:14
**affirmations** [1] - 19:1
**afford** [1] - 40:9
**afraid** [2] - 17:8, 52:3
**afternoon** [1] - 93:19
**again,also** [1] - 19:25
**ago** [9] - 13:1, 33:14, 34:22, 39:5, 39:12, 65:11, 80:3, 83:17, 91:18
**agree** [6] - 26:24, 27:10, 50:18, 61:9, 63:6, 69:3
**agreed** [9] - 5:23, 6:9, 6:15, 11:12, 18:9, 51:1, 56:23, 59:4, 72:7
**agreement** [1] - 57:6
**agrees** [1] - 4:20
**ahead** [10] - 12:17, 20:16, 20:17, 34:16, 40:10, 47:18, 49:16, 56:6, 62:23, 63:15
**albeit** [1] - 47:5
**Alhambra** [2] - 2:3, 2:7
**alive** [1] - 88:20
**allow** [3] - 17:25, 42:5, 42:9
**allowance** [1] - 79:25
**allowed** [1] - 31:8
**almost** [3] - 25:5, 46:4, 65:3
**alson** [1] - 3:21
**amass** [1] - 43:21

**America** [1] - 90:12
**amount** [3] - 32:19, 71:24, 72:7
**ANALISE** [1] - 1:20
**Analise** [1] - 3:12
**analysis** [1] - 16:5
**and-a-half** [1] - 48:7
**Andes** [2] - 86:11, 89:14
**Andres** [1] - 89:18
**Andrew** [6] - 18:20, 20:1, 42:25, 55:20, 56:14, 56:15
**android** [2] - 41:3, 45:15
**announced** [1] - 4:12
**answer** [8] - 24:21, 26:19, 34:25, 43:22, 65:23, 66:8, 68:10, 78:7
**answers** [3] - 24:18, 38:24, 69:7
**anyway** [1] - 78:24
**apart** [1] - 10:24
**apologize** [2] - 3:15, 18:11
**appear** [2] - 57:8, 76:25
**appearance** [2] - 4:13, 16:14
**APPEARANCES** [1] - 1:12
**appearances** [2] - 3:9, 8:8
**appeared** [3] - 59:3, 59:12, 60:7
**appease** [1] - 48:25
**application** [3] - 30:21, 50:1, 50:13
**applied** [5] - 42:3, 44:20, 44:25, 50:2, 57:18
**apply** [1] - 31:22
**applying** [1] - 45:3
**appreciate** [8] - 4:15, 8:13, 9:11, 18:17, 64:12, 71:21, 83:23, 93:18
**approach** [5] - 17:18, 29:22, 42:12, 43:16, 53:13
**appropriate** [4] - 12:22, 24:1, 73:19, 91:8
**argued** [1] - 12:11
**argument** [5] - 11:2, 15:5, 16:6, 88:19, 88:21
**argument-styled** [1] - 11:2

**arose** [1] - 67:15
**ascertain** [1] - 20:14
**assert** [5] - 79:23, 90:25, 91:1, 91:5, 91:25
**asserted** [1] - 35:2
**assist** [6] - 18:16, 23:4, 30:12, 30:15, 67:16, 78:10
**assistance** [2] - 36:22, 63:16
**assistant** [1] - 42:16
**assisted** [1] - 18:22
**associate** [1] - 78:23
**associated** [8] - 19:7, 19:17, 20:25, 29:23, 29:24, 32:7, 40:2, 44:17
**assume** [2] - 72:2, 89:23
**assumed** [1] - 24:7
**assuming** [1] - 85:2
**attach** [1] - 48:17
**attached** [2] - 48:23, 52:24
**attempt** [1] - 38:18
**attempting** [1] - 38:9
**attended** [1] - 60:4
**attention** [2] - 21:18, 47:2
**attesting** [1] - 20:7
**attorney** [11] - 5:6, 5:10, 5:13, 6:8, 9:2, 21:8, 62:11, 69:11, 69:12, 79:3, 94:10
**attorney's** [1] - 71:16
**attorneys** [2] - 40:17, 67:1
**attribute** [1] - 84:9
**August** [31] - 8:21, 8:22, 8:24, 13:11, 13:19, 16:12, 18:1, 29:21, 33:4, 39:5, 39:9, 43:12, 46:11, 46:12, 46:18, 46:21, 49:6, 53:6, 53:7, 53:21, 54:5, 54:17, 55:21, 56:20, 59:10, 62:7, 63:25, 81:15, 81:21, 83:4
**authenticity** [1] - 18:10
**author** [1] - 50:12
**available** [4] - 6:2, 14:20, 14:22, 16:17
**Avenue** [2] - 2:17, 95:17
**avoid** [1] - 74:3
**aware** [5] - 18:4, 28:18, 47:7, 47:8, 70:13
**awareness** [1] - 69:2

## B

**backwards** [1] - 30:7
**bad** [1] - 31:11
**baking** [1] - 92:14
**ball** [1] - 86:18
**ballpark** [1] - 75:16
**Bar** [1] - 69:10
**based** [2] - 57:24, 84:10
**bases** [1] - 71:2
**basis** [11] - 32:20, 34:20, 35:18, 37:17, 40:1, 40:3, 40:25, 68:22, 78:16, 79:7, 79:22
**batch** [1] - 63:14
**Bates** [1] - 80:11
**Bates-stamped** [1] - 80:11
**Baxter** [1] - 7:11
**bazillion** [1] - 12:2
**became** [1] - 28:18
**become** [1] - 28:11
**becomes** [1] - 4:9
**BEFORE** [1] - 1:11
**beforehand** [3] - 18:6, 20:22, 32:13
**began** [7] - 20:19, 29:20, 29:22, 32:16, 38:9, 40:3, 40:12
**begin** [6] - 18:2, 29:2, 32:10, 37:4, 37:23, 39:1
**beginning** [2] - 67:14, 84:11
**begun** [4] - 37:22, 37:24, 38:2, 40:22
**behalf** [9] - 3:11, 3:17, 3:21, 21:9, 83:2, 86:23, 88:6, 89:7, 89:12
**believes** [1] - 92:1
**belonged** [1] - 65:17
**bench** [3] - 8:22, 42:13, 86:3
**benefit** [9] - 20:23, 22:22, 23:4, 30:17, 31:2, 31:12, 31:20, 33:16, 33:18
**best** [8] - 28:5, 38:24, 49:13, 68:10, 69:3, 69:18, 70:17, 78:7
**bet** [1] - 17:22
**between** [12] - 19:5, 31:16, 34:5, 35:15,

46:20, 47:18, 70:9, 70:19, 83:7, 87:18, 90:6, 90:7
**beyond** [1] - 4:22
**bidding** [1] - 78:10
**big** [1] - 86:12
**bigger** [1] - 86:15
**biggest** [1] - 10:24
**binder** [5] - 6:1, 11:12, 53:12, 53:14, 94:13
**bit** [3] - 70:18, 74:22, 94:2
**blunt** [1] - 29:14
**bluntly** [1] - 31:2
**body** [2] - 43:21, 50:4
**bottom** [4] - 27:23, 43:6, 54:14, 92:25
**Boulevard** [2] - 1:17, 1:21
**box** [1] - 23:11
**breadth** [2] - 28:12, 28:21
**break** [1] - 64:23
**brief** [5] - 6:21, 6:25, 7:2, 11:4, 90:10
**briefing** [1] - 59:17
**briefly** [1] - 11:8
**bring** [4] - 21:18, 21:19, 51:21, 70:5
**broaden** [4] - 19:15, 19:20, 30:8, 37:8
**broadened** [1] - 19:22
**broader** [2] - 37:3, 37:4
**broke** [1] - 80:12
**brought** [1] - 47:1
**build** [1] - 83:18
**building** [1] - 79:25
**built** [2] - 50:10, 83:11
**built-in** [2] - 50:10, 83:11
**burden** [3] - 8:2, 8:5, 15:15
**burdened** [1] - 72:17
**business** [3] - 13:10, 84:20, 85:9
**BY** [6] - 2:15, 52:15, 56:21, 58:22, 65:6, 66:11

## C

**C-A-R-E-A-G-A** [1] - 23:21
**caboodle** [1] - 17:2
**campaign** [1] - 52:5

**candid** [1] - 62:14
**cannot** [4] - 25:3, 49:25, 74:21, 95:7
**capable** [1] - 48:3
**capacity** [1] - 31:14
**Cardoso** [1] - 14:11
**CAREAGA** [8] - 2:11, 63:15, 71:12, 71:15, 72:1, 72:3, 94:6, 94:22
**careaga** [1] - 64:25
**Careaga** [79] - 3:14, 3:22, 6:23, 7:3, 7:4, 7:16, 7:17, 7:18, 8:5, 8:13, 8:19, 8:23, 9:17, 11:14, 13:13, 13:22, 14:24, 15:9, 15:10, 15:15, 15:24, 16:14, 16:23, 17:7, 17:17, 23:14, 23:20, 23:22, 24:24, 29:6, 31:25, 37:19, 42:22, 42:24, 43:20, 46:10, 46:14, 50:6, 51:15, 51:22, 52:16, 56:22, 58:23, 58:24, 63:12, 64:14, 68:5, 71:7, 72:6, 72:21, 73:5, 75:12, 75:17, 75:25, 76:12, 76:20, 76:24, 77:7, 77:22, 78:13, 82:17, 82:19, 83:3, 83:7, 83:9, 83:14, 84:8, 87:1, 87:18, 88:1, 88:13, 89:13, 90:3, 90:6, 90:8, 90:23, 92:2, 93:1, 93:15
**Careaga's** [9] - 5:18, 7:12, 13:6, 75:2, 75:5, 78:9, 86:23, 91:23
**careagalaw.com** [1] - 48:13
**careful** [1] - 79:4
**carefully** [1] - 78:1
**carry** [1] - 8:1
**carve** [1] - 36:13
**case** [26] - 3:6, 7:11, 9:5, 10:14, 16:23, 19:14, 20:19, 21:13, 30:8, 35:19, 42:1, 52:17, 60:18, 64:16, 73:18, 79:7, 79:21, 80:18, 80:19, 80:20, 85:12, 86:14, 87:6, 91:20
**CASE** [1] - 1:2
**cases** [2] - 60:16, 93:4
**caused** [1] - 14:18
**caution** [2] - 73:12,

74:5
**cautioned** [1] - 94:13
**Central** [1] - 90:12
**centrally** [1] - 15:12
**certain** [2] - 7:13, 73:16
**certainly** [7] - 8:23, 17:25, 19:14, 54:25, 62:1, 67:20, 76:8
**certainty** [1] - 83:23
**certificate** [3] - 59:6, 59:7, 60:1
**certification** [1] - 4:20
**certified** [1] - 58:24
**certifies** [1] - 4:18
**certify** [1] - 95:13
**chance** [1] - 31:9
**change** [1] - 84:22
**changed** [3] - 8:7, 74:25, 75:19
**characterization** [1] - 77:6
**charitably** [1] - 52:6
**choice** [1] - 36:3
**choose** [1] - 77:25
**Circle** [2] - 2:3, 2:7
**Circuit** [4] - 70:14, 88:16, 88:17
**citing** [1] - 22:10
**civil** [3] - 3:6, 7:15, 16:4
**claimed** [1] - 59:14
**claims** [2] - 91:1, 92:1
**clarity** [1] - 51:1
**clear** [15] - 7:10, 8:22, 22:20, 23:1, 25:2, 26:25, 29:11, 36:20, 37:13, 51:2, 74:19, 80:24, 81:4, 82:23, 91:16
**clearly** [2] - 16:1, 69:15
**clerk's** [1] - 94:25
**Clerk's** [1] - 95:2
**client** [3] - 79:19, 86:12, 89:13
**clients** [9] - 81:1, 81:3, 83:2, 86:10, 86:11, 88:6, 89:8, 89:12, 89:13
**close** [1] - 43:15
**closer** [2] - 16:11, 16:13
**coerce** [1] - 28:25
**coercive** [6] - 4:23, 16:2, 39:21, 70:4, 70:24, 83:25
**collect** [2] - 31:23,

48:12
**collected** [6] - 50:5, 54:16, 55:22, 56:1, 57:22, 61:10
**collection** [7] - 23:5, 49:10, 54:5, 54:8, 54:11, 54:18, 55:21
**collection,** [1] - 53:22
**combined** [1] - 60:20
**combining** [1] - 57:20
**comfort** [1] - 64:23
**comfortable** [1] - 17:22
**coming** [5] - 10:15, 10:20, 65:19, 86:21, 91:16
**command** [2] - 38:6, 76:14
**commanded** [3] - 35:23, 46:15, 68:23
**commands** [2] - 4:25, 87:1
**comment** [6] - 18:7, 22:18, 40:19, 48:25, 71:13, 84:10
**comments** [6] - 21:6, 25:9, 29:12, 73:10, 82:2, 82:7
**commodious** [1] - 12:18
**communicate** [1] - 56:2
**communication** [2] - 61:21, 67:1
**communications** [6] - 25:8, 54:25, 55:2, 61:25, 71:17, 73:22
**commute** [1] - 13:22
**companies** [1] - 9:5
**company** [2] - 18:22, 22:20
**compelling** [1] - 81:20
**competence** [1] - 79:18
**competent** [1] - 31:13
**competently** [1] - 93:8
**compiled** [4] - 14:2, 16:24, 32:12, 60:19
**complete** [12] - 4:2, 8:9, 9:8, 14:7, 37:12, 37:20, 38:6, 38:15, 40:13, 46:16, 48:9, 52:10
**completed** [3] - 32:3, 37:22, 37:24

**complexity** [1] - 70:8
**compliance** [22] - 3:24, 4:2, 4:7, 4:11, 5:19, 7:23, 16:8, 16:11, 18:3, 26:23, 27:3, 30:25, 39:7, 39:11, 39:23, 48:8, 50:20, 50:23, 69:18, 70:5, 76:6, 93:3
**complicated** [3] - 84:13, 85:20
**complied** [9] - 17:9, 27:5, 27:9, 27:11, 27:24, 37:5, 47:7, 70:16, 72:22
**complies** [1] - 19:8
**comply** [20] - 4:24, 15:25, 17:10, 17:24, 32:2, 38:9, 39:3, 47:8, 47:10, 50:19, 50:25, 51:1, 51:11, 51:15, 67:2, 68:12, 68:17, 69:4, 70:10, 93:2
**complying** [7] - 15:8, 18:3, 39:1, 75:16, 78:10, 90:20
**composite** [1] - 12:20
**comprehensive** [2] - 29:3, 30:6
**computer** [2] - 12:12, 45:13
**concede** [1] - 75:2
**concerned** [1] - 55:23
**concession** [1] - 72:21
**Concilio** [42] - 6:5, 14:25, 18:21, 20:5, 20:16, 22:20, 23:1, 29:16, 32:12, 33:18, 36:12, 36:22, 40:16, 40:24, 41:2, 41:15, 44:23, 46:11, 46:18, 48:11, 48:22, 49:17, 53:7, 53:16, 53:21, 54:4, 54:7, 54:11, 54:16, 54:18, 55:5, 55:8, 56:9, 56:10, 63:16, 65:7, 66:24, 69:21, 77:23, 78:8, 84:16, 84:19
**Concilio's** [2] - 32:16, 67:12
**conclude** [1] - 11:3
**concluded** [2] - 47:5, 95:9
**conclusion** [1] - 23:25
**conclusions** [2] -

10:11, 12:13
**conduct** [2] - 54:18, 70:3
**conducted** [4] - 9:2, 43:18, 54:4, 55:14
**conducting** [1] - 9:1
**conference** [1] - 4:8
**conferred** [2] - 5:23
**confide** [1] - 9:21
**confirmed** [2] - 31:15, 48:3
**conflict** [1] - 86:9
**confusing** [1] - 11:21
**consented** [4] - 71:7, 71:15, 71:17, 71:23
**consequences** [6] - 4:15, 5:2, 14:13, 14:14, 14:18, 71:3
**consider** [4] - 26:6, 26:10, 52:19
**considered** [3] - 69:18, 88:7, 88:8
**considering** [1] - 38:11
**consistently** [2] - 18:23, 36:24
**constituted** [1] - 61:20
**Constitution** [1] - 7:14
**consult** [1] - 5:10
**contact** [3] - 46:18, 67:5, 67:7
**contacted** [1] - 46:11
**contacts** [1] - 84:20
**contain** [2] - 53:18, 62:1
**contained** [4] - 16:25, 22:5, 42:8, 60:19
**contains** [1] - 66:2
**contemnor** [3] - 8:14, 8:24, 9:2
**contempt** [34] - 4:16, 4:17, 4:21, 5:3, 7:15, 7:25, 8:15, 14:12, 14:23, 14:25, 15:16, 15:23, 16:4, 28:2, 28:7, 28:24, 35:6, 50:22, 69:15, 70:1, 70:3, 70:21, 71:3, 73:9, 73:10, 74:7, 83:9, 83:15, 83:19, 90:3, 92:20, 92:21, 92:23
**content** [3] - 41:19, 48:20, 48:21
**contest** [2] - 76:15, 76:16
**context** [4] - 21:6,

70:8, 87:4, 88:10
**contextualization** [1] - 13:4
**contextualize** [4] - 14:10, 82:2, 82:7, 90:16
**continually** [1] - 30:19
**continue** [8] - 4:13, 15:24, 40:1, 40:10, 58:20, 68:13, 69:3, 69:16
**continued** [3] - 31:10, 52:5, 76:14
**continues** [1] - 67:11
**continuously** [1] - 31:3
**contract** [1] - 75:2
**contradicted** [1] - 58:10
**contradicts** [1] - 58:12
**control** [2] - 21:4, 21:12
**contumacious** [1] - 52:5
**convenience** [1] - 74:21
**convenient** [1] - 6:2
**conversations** [1] - 84:18
**convey** [1] - 28:5
**copies** [2] - 94:9
**copy** [6] - 11:13, 11:14, 21:13, 42:20, 43:9, 94:19
**Coral** [4] - 1:18, 1:22, 2:3, 2:8
**core** [1] - 17:10
**Corporation** [2] - 1:4, 3:8
**CORPORATION** [1] - 1:14
**correct** [39] - 8:4, 23:3, 26:20, 33:5, 33:6, 37:21, 41:6, 43:25, 44:21, 46:19, 52:18, 52:22, 52:25, 53:3, 53:5, 53:8, 57:5, 57:6, 59:10, 59:15, 59:16, 59:21, 59:23, 60:8, 60:11, 60:17, 60:21, 60:23, 61:11, 61:22, 62:9, 62:10, 62:11, 62:15, 62:19, 67:17, 67:25, 73:25
**correctly** [6] - 33:3, 34:25, 47:17, 48:14, 63:19, 73:15
**correspondence** [1]

- 53:9
**corroborates** [1] - 58:11
**costs** [10] - 6:10, 14:22, 15:17, 15:18, 15:20, 15:22, 36:4, 70:25, 71:6, 71:16
**counsel** [16] - 3:9, 6:6, 6:7, 14:9, 14:16, 18:10, 19:21, 21:5, 25:7, 25:24, 62:8, 80:19, 80:21, 86:24, 89:3
**counsel's** [1] - 50:7
**counting** [1] - 94:21
**couple** [6] - 11:8, 28:15, 63:14, 73:2, 76:8, 77:17
**course** [5] - 8:3, 64:15, 71:8, 71:14, 87:14
**COURT** [177] - 1:1, 3:5, 3:13, 3:22, 5:5, 5:9, 5:15, 6:25, 7:8, 7:20, 8:13, 9:11, 9:17, 10:3, 11:9, 11:13, 11:23, 12:4, 12:8, 12:24, 17:16, 17:20, 18:19, 19:24, 21:10, 21:14, 21:25, 22:3, 22:9, 23:1, 23:9, 23:22, 24:3, 24:6, 24:24, 25:4, 25:11, 25:15, 25:17, 25:22, 26:2, 26:8, 26:12, 26:17, 26:21, 27:8, 27:13, 27:16, 29:6, 29:16, 30:5, 30:10, 30:15, 30:22, 31:7, 31:25, 33:2, 33:7, 33:14, 33:21, 33:24, 34:3, 34:7, 34:12, 34:21, 35:5, 35:21, 36:23, 37:12, 37:19, 37:23, 38:1, 39:4, 39:15, 39:20, 40:15, 40:21, 41:1, 41:11, 42:2, 42:7, 42:11, 42:14, 42:20, 42:23, 43:2, 43:9, 43:11, 43:15, 43:20, 44:2, 44:12, 44:19, 45:6, 45:10, 45:16, 45:20, 46:1, 46:4, 46:6, 46:10, 46:14, 46:20, 47:9, 47:15, 47:22, 48:2, 48:11, 49:4, 49:24, 50:17, 51:13, 51:25, 52:12, 55:25, 56:8, 56:10, 56:13,

56:15, 56:17, 57:12, 57:17, 57:23, 58:2, 58:5, 58:8, 58:10, 58:16, 58:19, 58:21, 63:12, 64:25, 65:5, 68:5, 69:5, 69:9, 71:1, 71:11, 71:14, 71:20, 72:2, 72:4, 72:8, 72:20, 73:2, 74:1, 74:17, 76:11, 76:17, 77:6, 77:9, 77:12, 77:15, 77:19, 79:14, 79:17, 81:19, 82:5, 82:13, 82:23, 83:5, 83:22, 86:19, 87:14, 87:17, 87:23, 88:4, 88:8, 88:10, 89:15, 89:20, 90:14, 92:11, 93:8, 93:20, 94:8, 94:25
**Court** [75] - 2:16, 2:17, 3:1, 3:3, 4:19, 5:25, 6:1, 6:3, 6:22, 7:14, 7:19, 7:21, 7:24, 8:9, 9:21, 11:5, 12:25, 13:13, 14:3, 14:4, 14:17, 14:20, 14:22, 15:10, 15:14, 16:1, 16:5, 16:6, 16:17, 16:19, 17:4, 17:11, 17:12, 17:13, 17:23, 18:4, 18:9, 18:15, 18:17, 19:13, 21:24, 28:16, 28:17, 29:2, 30:2, 30:9, 32:5, 34:19, 38:24, 39:18, 40:10, 47:5, 51:10, 51:11, 52:8, 52:10, 59:17, 62:15, 63:22, 64:2, 64:5, 64:8, 68:8, 70:6, 70:7, 71:5, 71:9, 72:11, 86:22, 89:23, 91:13, 95:2, 95:16, 95:17
**court** [29] - 3:24, 4:21, 4:22, 11:7, 13:14, 15:12, 15:13, 21:4, 27:5, 27:9, 29:8, 30:5, 30:25, 32:1, 39:11, 39:24, 62:18, 64:6, 72:16, 76:13, 79:24, 80:23, 90:3, 91:16, 92:20, 93:2, 93:4, 93:10, 94:9
**Court's** [13] - 4:23, 4:25, 10:7, 13:9, 46:22, 47:2, 47:11, 48:8, 50:19, 51:15, 68:8, 69:15, 93:24
**courtesy** [2] - 74:20, 94:9

**courtroom** [2] - 80:17, 91:4
**COURTROOM** [3] - 3:2, 3:6, 23:16
**cover** [2] - 32:19, 32:20
**covered** [2] - 22:14, 28:4
**covering** [1] - 22:14
**coy** [1] - 79:12
**created** [2] - 19:11, 54:23
**criminal** [3] - 19:19, 30:24, 67:17
**critically** [1] - 16:3
**cross** [1] - 52:2
**CROSS** [1] - 52:14
**cross-examination** [1] - 52:2
**CROSS-EXAMINATION** [1] - 52:14
**crucial** [1] - 13:20
**Crystal** [1] - 14:8
**crystal** [1] - 6:6
**cumulative** [2] - 51:18, 69:8
**current** [3] - 56:25, 75:21, 91:19
**cuts** [1] - 76:23
**cutting** [1] - 64:22

# D

**daily** [7] - 4:24, 36:21, 37:16, 39:21, 40:1, 40:2, 40:25
**data** [22] - 19:7, 20:7, 20:14, 20:22, 23:5, 27:18, 27:19, 29:23, 30:3, 33:16, 33:19, 37:11, 40:15, 41:3, 41:4, 41:5, 43:19, 56:1, 56:18, 57:15, 58:6
**database** [1] - 40:25
**DATE** [1] - 95:16
**date** [13] - 4:3, 4:8, 47:4, 47:19, 52:20, 54:9, 54:10, 57:6, 59:4, 59:24, 61:5, 75:7, 93:13
**dates** [1] - 53:9
**dating** [3] - 29:25, 33:17, 37:11
**days** [11] - 23:5, 36:21, 40:5, 46:17, 76:8, 77:17, 78:21, 81:16, 81:24, 83:21, 92:15

**de** [2] - 1:17, 1:21
**deadline** [2] - 4:1, 11:17
**deadlines** [1] - 83:23
**deal** [2] - 78:4, 86:12
**December** [4] - 59:21, 59:22, 60:5, 88:19
**decide** [3] - 9:15, 72:15, 92:21
**deciding** [1] - 91:13
**decisions** [1] - 75:9
**declarant's** [1] - 21:10
**Declaration** [1] - 53:15
**declaration** [27] - 6:10, 14:16, 18:20, 19:8, 19:24, 19:25, 20:1, 20:2, 20:6, 21:2, 21:3, 41:19, 42:17, 42:25, 46:10, 48:15, 53:17, 54:13, 55:8, 55:16, 58:10, 58:12, 65:24, 71:6, 71:16, 95:8
**declarations** [13] - 6:4, 10:20, 11:5, 11:6, 14:5, 14:8, 18:9, 18:12, 18:13, 21:15, 23:7, 46:7, 57:20
**deems** [1] - 82:17
**defendant** [1] - 80:20
**defendant's** [1] - 80:18
**defendants** [3] - 80:20, 80:22, 89:21
**defense** [3] - 7:5, 27:11, 31:11
**defer** [10] - 53:9, 54:19, 59:24, 60:2, 60:22, 60:24, 62:22, 64:6, 64:8, 66:10
**deferred** [1] - 27:20
**defiance** [1] - 52:5
**deficiencies** [1] - 29:15
**deficient** [1] - 72:15
**defined** [1] - 82:24
**degree** [1] - 32:2
**delay** [6] - 14:10, 14:18, 68:14, 70:22, 76:23, 92:13
**delay-caused** [1] - 14:18
**delays** [2] - 14:14, 14:18
**deliberate** [1] - 69:18
**demands** [2] - 39:2, 78:10

**demonstrate** [1] - 14:6
**demonstrated** [2] - 71:25, 72:23
**demonstrative** [1] - 13:3
**Demonstrative** [1] - 13:5
**denied** [1] - 88:14
**deny** [1] - 31:13
**depose** [1] - 57:3
**deposition** [31] - 46:15, 46:23, 46:25, 47:19, 53:1, 57:4, 58:25, 59:3, 59:9, 59:10, 59:14, 59:20, 59:25, 60:5, 60:8, 60:10, 60:11, 60:25, 61:8, 61:19, 65:20, 74:14, 75:4, 75:5, 75:15, 76:14, 82:20, 82:21, 83:4
**deprivation** [1] - 4:25
**deprive** [1] - 27:4
**deprived** [1] - 69:21
**DEPUTY** [3] - 3:2, 3:6, 23:16
**describe** [1] - 44:1
**described** [2] - 37:11, 94:12
**describes** [1] - 20:4
**describing** [1] - 39:7
**description** [1] - 60:22
**designated** [1] - 40:19
**desire** [1] - 72:14
**desk** [1] - 11:15
**despite** [1] - 28:5
**detailed** [1] - 8:9
**detailing** [1] - 19:1
**details** [1] - 19:9
**determine** [2] - 33:9, 33:11
**determined** [1] - 78:13
**developed** [1] - 75:22
**devices** [1] - 45:8
**Devine** [2] - 1:16, 1:20
**difference** [3] - 10:24, 22:7, 57:23
**different** [3] - 39:6, 88:24, 92:24
**differently** [1] - 39:22
**difficult** [1] - 69:13
**digest** [1] - 12:12

**diligently** [1] - 68:20
**dinosaur** [2] - 78:4, 78:5
**direct** [3] - 52:7, 57:11, 60:3
**directed** [1] - 11:17
**directly** [3] - 27:8, 30:21, 82:3
**disadvantage** [1] - 27:17
**disagree** [1] - 36:7
**disappeared** [3] - 15:4, 65:13, 66:5
**disbelieve** [1] - 85:18
**disconnect** [1] - 90:5
**discovery** [6] - 4:3, 4:8, 18:22, 67:16, 70:10, 78:10
**discussed** [1] - 94:16
**dismissed** [2] - 75:22, 91:20
**disobedience** [1] - 46:22
**disobeyed** [1] - 58:16
**dispute** [13] - 4:10, 26:5, 26:12, 26:17, 26:19, 27:1, 27:9, 35:11, 56:1, 70:9, 77:6, 79:15, 93:3
**disqualify** [1] - 87:10
**disregard** [2] - 15:24, 70:7
**disrespectful** [1] - 82:10
**District** [13] - 2:17, 3:2, 3:3, 4:19, 5:14, 60:14, 60:15, 79:9, 80:17, 89:11, 91:10, 91:14, 95:17
**district** [2] - 79:4, 89:10
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**docket** [4] - 4:2, 12:6, 12:14, 93:24
**document** [12] - 12:9, 18:24, 24:19, 24:20, 42:8, 45:24, 49:20, 52:23, 62:21, 68:18, 74:6, 76:7
**Document** [1] - 21:25
**documentation** [3] - 47:4, 47:12, 48:6
**documents** [144] - 3:25, 13:13, 13:15,

13:18, 15:1, 16:15, 18:5, 19:10, 19:16, 20:25, 21:24, 25:13, 25:20, 26:13, 28:13, 28:25, 29:4, 31:5, 31:23, 32:6, 32:11, 32:15, 32:21, 33:5, 33:9, 33:11, 33:21, 34:3, 34:10, 34:13, 34:14, 34:24, 35:7, 35:14, 35:23, 36:8, 36:11, 36:13, 36:16, 36:18, 36:19, 37:1, 37:5, 37:6, 37:9, 37:16, 38:10, 38:19, 38:21, 39:13, 40:1, 40:12, 40:18, 41:17, 43:22, 44:13, 46:16, 46:24, 46:25, 47:18, 49:2, 49:10, 49:12, 50:3, 50:5, 50:8, 50:11, 52:17, 52:18, 52:19, 52:20, 55:3, 56:25, 60:13, 60:20, 61:7, 62:1, 62:18, 63:7, 63:23, 64:3, 67:19, 67:24, 68:14, 68:21, 73:15, 73:22, 74:3, 75:11, 75:18, 75:24, 76:18, 76:21, 76:22, 77:2, 77:4, 77:11, 77:14, 77:23, 78:14, 79:15, 80:2, 80:10, 80:11, 80:15, 80:23, 80:25, 81:11, 81:16, 82:16, 82:17, 82:19, 82:24, 83:3, 83:20, 83:25, 84:15, 84:17, 84:18, 84:19, 85:1, 85:6, 85:7, 85:14, 85:16, 87:1, 87:10, 87:19, 88:1, 88:2, 88:3, 88:13, 88:23, 88:24, 89:3, 89:7, 90:8, 90:11, 93:13
**Doe** [3] - 1:4, 3:7, 6:7
**DOE** [1] - 1:14
**done** [27] - 11:7, 15:2, 15:15, 19:2, 19:10, 28:6, 28:22, 29:2, 29:18, 34:17, 35:4, 35:20, 39:9, 56:4, 58:1, 58:3, 58:15, 62:5, 65:3, 68:15, 68:25, 69:1, 70:15, 80:3, 80:4, 81:23, 81:25
**dots** [1] - 94:20
**down** [13] - 12:15,

30:5, 46:23, 46:25, 57:13, 63:17, 76:23, 80:12, 82:9, 87:1, 87:17, 89:25, 92:13
**dozen** [1] - 12:15
**dragged** [1] - 64:16
**drive** [2] - 6:2, 11:12
**drives** [3] - 47:20, 60:10, 60:13
**dubious** [1] - 90:10
**duces** [1] - 29:1
**due** [2] - 4:9, 50:25
**duly** [2] - 23:14, 58:25
**dumped** [1] - 17:4
**during** [1] - 84:4
**duty** [1] - 62:14

## E

**E-discovery** [1] - 18:22
**early** [2] - 33:25, 34:2
**earnest** [1] - 29:22
**earnestly** [1] - 32:1
**earth** [1] - 86:18
**easily** [1] - 64:17
**Eastern** [6] - 60:14, 60:15, 80:17, 89:11, 91:10, 91:14
**easy** [2] - 24:25, 61:16
**economic** [3] - 5:8, 5:12, 14:13
**effect** [1] - 41:24
**effectively** [1] - 73:21
**effort** [1] - 78:22
**efforts** [5] - 15:1, 28:5, 57:3, 67:2, 69:4
**eight** [1] - 84:25
**either** [13] - 9:18, 12:10, 22:13, 30:23, 31:17, 41:3, 48:12, 50:25, 69:19, 69:21, 77:20, 81:25, 94:9
**election** [1] - 73:17
**electronic** [2] - 21:4, 21:12
**electronically** [1] - 11:25
**elicit** [1] - 48:2
**email** [49] - 13:20, 13:21, 17:5, 20:17, 20:21, 28:15, 29:24, 32:13, 32:15, 33:16, 41:14, 41:16, 41:20, 43:19, 45:13, 48:12, 48:18, 48:22, 49:6, 49:7, 49:8, 50:4, 50:8,

50:9, 53:9, 54:21, 54:23, 55:6, 55:15, 56:1, 56:2, 56:18, 56:22, 57:14, 57:15, 58:6, 61:13, 61:16, 65:16, 66:22, 66:24, 75:20, 78:17, 80:4, 84:19, 85:5, 85:8, 85:15, 91:24
**emails** [32] - 12:20, 19:13, 44:16, 45:1, 45:10, 45:11, 45:12, 45:17, 45:20, 45:21, 45:22, 45:23, 46:1, 48:17, 49:21, 50:12, 55:9, 58:13, 58:14, 62:19, 63:13, 63:14, 63:17, 64:5, 64:9, 64:15, 64:17, 66:2, 67:10, 77:17, 85:18
**emergency** [1] - 88:18
**emphasized** [1] - 18:4
**enable** [1] - 73:11
**end** [9] - 27:25, 40:4, 40:13, 47:6, 50:18, 51:23, 70:22, 74:4, 85:14
**ended** [2] - 21:1, 28:1
**enemy** [1] - 86:7
**engaged** [2] - 14:25, 65:7
**enhance** [1] - 39:2
**ensued** [1] - 48:10
**ensure** [2] - 16:9, 91:22
**entered** [4] - 33:4, 46:15, 70:12, 87:8
**entertained** [1] - 5:5
**entire** [6] - 10:13, 10:14, 40:13, 50:8, 63:5, 66:25
**entitle** [1] - 15:22
**entitled** [6] - 7:14, 15:16, 15:18, 59:18, 75:24, 95:13
**entitlement** [1] - 6:13
**entry** [1] - 71:24
**Eric** [1] - 53:15
**error** [1] - 14:12
**ESI** [19] - 6:5, 28:8, 28:11, 29:9, 29:15, 30:10, 30:11, 31:12, 31:17, 31:21, 31:22, 53:22, 54:5, 54:7, 54:11, 54:16, 55:21, 69:20, 79:19
**especially** [1] - 74:19

**Esq** [1] - 2:7
**ESQ** [3] - 1:15, 1:20, 2:2
**essentially** [1] - 78:8
**establish** [3] - 6:20, 15:10, 90:11
**established** [1] - 15:9
**establishing** [1] - 26:22
**estimated** [3] - 34:11, 39:18, 64:14
**etcetera** [1] - 54:17
**events** [1] - 8:23
**eventually** [8] - 19:20, 20:15, 28:13, 29:3, 30:2, 31:4, 37:10, 47:20
**evidence** [13] - 5:22, 6:4, 6:17, 6:20, 7:1, 10:10, 11:2, 17:12, 22:6, 23:8, 27:4, 51:7, 53:21
**evidenced** [1] - 23:6
**EVIDENTIARY** [1] - 1:10
**evidentiary** [4] - 5:17, 10:4, 10:5, 84:4
**exactly** [1] - 89:21
**examination** [2] - 26:22, 52:2
**EXAMINATION** [1] - 52:14
**example** [3] - 84:10, 86:6, 87:22
**excerpt** [2] - 62:25, 63:1
**exchange** [3] - 6:12, 15:20, 46:8
**exchanged** [6] - 5:23, 6:9, 6:15, 11:17, 19:5, 53:10
**exciting** [1] - 80:5
**exclusively** [1] - 15:13
**excuse** [10] - 8:5, 29:20, 30:11, 31:18, 39:16, 79:17, 80:4, 80:19, 82:15
**excused** [1] - 93:16
**excusing** [1] - 15:16
**exert** [1] - 69:3
**exhibit** [15] - 11:22, 11:24, 12:20, 22:10, 24:11, 42:8, 42:17, 43:4, 43:23, 44:1, 44:10, 44:18, 64:4, 94:7, 94:10
**Exhibit** [14] - 12:1, 12:19, 13:3, 53:11,

53:15, 53:23, 53:24, 57:11, 58:23, 58:24, 60:3, 62:24, 63:1, 64:2
**exhibits** [15] - 5:23, 5:24, 11:11, 11:19, 11:21, 12:16, 13:6, 14:5, 24:10, 42:6, 43:3, 43:18, 48:23, 71:15, 94:16
**exist** [1] - 78:14
**existed** [3] - 41:17, 48:20, 66:22
**existing** [2] - 81:1, 81:3
**exists** [2] - 44:23, 66:18
**exit** [1] - 72:13
**expand** [3] - 74:21, 74:22, 75:1
**expands** [1] - 50:5
**expansion** [1] - 49:25
**expect** [3] - 7:12, 10:10, 32:20
**expectation** [1] - 12:10
**expend** [2] - 16:10, 16:11
**experienced** [1] - 86:2
**expert** [3] - 30:12, 78:3
**experts** [1] - 31:19
**explain** [10] - 8:5, 26:1, 26:9, 30:16, 31:9, 49:10, 66:6, 68:13, 75:9
**Explain** [1] - 84:11
**explained** [3] - 49:24, 49:25, 50:2
**explanation** [8] - 22:14, 27:3, 36:1, 44:2, 44:19, 51:2, 65:14, 84:13
**explicit** [1] - 50:6
**exploration** [2] - 22:13, 52:4
**expressed** [2] - 72:12, 72:13
**extent** [10] - 8:15, 10:21, 12:14, 22:4, 24:18, 68:16, 69:16, 69:21, 72:23, 76:21

## F

**facedown** [1] - 24:14
**facie** [4] - 4:7, 7:22, 8:4, 16:23

**fact** [23] - 13:15, 18:4, 20:7, 26:3, 35:2, 35:24, 44:12, 48:16, 50:6, 52:4, 52:17, 54:12, 54:20, 55:15, 55:22, 60:19, 66:1, 66:18, 67:11, 67:23, 70:5, 72:15, 80:3
**factor** [1] - 15:11
**facts** [8] - 4:18, 4:20, 8:7, 8:10, 8:15, 22:5, 31:10, 48:2
**factual** [2] - 22:11, 79:22
**failed** [2] - 15:7, 50:19
**failure** [2] - 17:10, 50:25
**fair** [4] - 15:21, 27:12, 71:19, 72:3
**fairness** [1] - 84:6
**falls** [1] - 8:4
**familiar** [3] - 9:22, 16:7, 73:23
**familiarity** [2] - 79:18, 79:19
**far** [10] - 20:13, 38:13, 41:25, 49:13, 51:3, 55:23, 56:4, 90:4, 92:13, 94:22
**fault** [1] - 28:21
**favor** [1] - 14:21
**fear** [1] - 74:2
**federal** [4] - 79:4, 82:24, 84:5, 89:10
**fees** [11] - 6:10, 15:17, 15:18, 15:20, 15:22, 67:12, 70:25, 71:6, 71:16, 71:24, 72:5
**feet** [1] - 23:12
**felt** [1] - 71:9
**few** [4] - 33:22, 36:24, 65:11, 83:21
**field** [1] - 28:11
**fighting** [2] - 93:25, 94:3
**file** [4] - 16:16, 16:18, 17:5, 72:17
**file-sharing** [2] - 16:18, 17:5
**filed** [10] - 21:4, 21:8, 29:13, 80:16, 81:6, 81:7, 87:7, 87:9, 89:3, 89:16
**filing** [4] - 21:5, 21:12, 21:19, 71:8
**finally** [1] - 60:7
**findings** [3] - 8:10, 22:11, 69:14

**fine** [6] - 16:2, 39:21, 70:4, 70:24, 71:19, 83:25
**fines** [1] - 4:24
**finish** [3] - 40:3, 44:22, 68:17
**finished** [2] - 35:14, 68:21
**fire** [1] - 80:1
**firm** [21] - 23:2, 30:13, 30:19, 31:13, 31:16, 31:21, 40:17, 67:9, 67:11, 77:13, 77:22, 80:10, 83:20, 85:1, 85:2, 86:13, 89:19, 90:7, 90:10, 92:12
**firm's** [2] - 30:18, 31:3
**firmly** [1] - 73:6
**firms** [1] - 86:16
**first** [21] - 11:10, 13:18, 18:11, 18:15, 18:20, 19:9, 20:11, 24:25, 27:4, 29:8, 42:17, 43:4, 44:15, 44:16, 44:22, 57:4, 65:7, 67:15, 73:24, 74:16, 94:7
**fit** [1] - 74:9
**FitzGerald** [2] - 1:16, 1:21
**five** [12] - 33:14, 39:5, 39:7, 39:12, 40:5, 47:1, 48:7, 48:22, 53:19, 54:2, 54:3, 86:13
**five-person** [1] - 86:13
**FL** [5] - 1:18, 1:22, 2:3, 2:8, 2:12
**flash** [1] - 47:20
**FLEISCHER** [1] - 1:11
**flip** [1] - 50:24
**Floor** [2] - 2:18, 95:18
**FLORIDA** [1] - 1:1
**Florida** [4] - 1:6, 2:18, 3:3, 95:18
**flow** [1] - 5:2
**fly** [1] - 52:2
**focal** [1] - 27:10
**focus** [3] - 19:19, 27:2, 44:16
**focused** [2] - 27:13, 45:16
**focuses** [1] - 52:2
**follow** [1] - 91:22
**following** [1] - 53:6

**FOR** [1] - 1:14
**forced** [1] - 16:10
**foregoing** [1] - 95:13
**foremost** [1] - 24:25
**forestall** [1] - 92:1
**forgive** [1] - 82:8
**format** [2] - 17:1, 52:21
**former** [1] - 62:11
**forth** [2] - 4:6, 91:14
**forward** [4] - 20:18, 41:15, 41:21, 59:5
**fourth** [2] - 54:1, 54:2
**FPR** [2] - 2:16, 95:16
**frame** [2] - 3:20, 36:7
**Francisco** [1] - 2:7
**frank** [2] - 3:16, 15:17
**Frank** [2] - 3:19, 3:21
**frankly** [6] - 6:18, 15:21, 17:7, 27:23, 69:13, 83:24
**fray** [1] - 3:19
**fresh** [1] - 13:9
**Friday** [1] - 78:18
**front** [11] - 4:17, 38:22, 74:4, 76:25, 81:15, 84:2, 86:14, 89:5, 90:19, 91:4, 93:9
**frr@rtgn** [1] - 2:9
**frr@rtgn-law.com** [1] - 2:9
**FTP** [2] - 16:16, 16:17
**full** [1] - 13:2
**Fuller** [2] - 53:15, 57:20
**fuller** [1] - 54:4
**Fuller's** [2] - 53:17, 53:20
**fuller's** [3] - 54:13, 55:8, 55:15
**fully** [5] - 18:2, 28:21, 47:8, 47:10, 78:6
**functions** [1] - 78:3

## G

**G-mail** [2] - 49:9, 49:11
**Gables** [4] - 1:18, 1:22, 2:3, 2:8
**gain** [3] - 16:11, 78:20, 78:21
**geared** [1] - 26:22
**General** [1] - 62:7
**general** [3] - 6:6, 6:7,

14:9
**generated** [3] - 23:6, 43:11, 43:13
**generous** [2] - 68:9, 93:17
**generously** [1] - 46:21
**genuine** [2] - 28:12, 69:19
**get-go** [1] - 19:13
**given** [9] - 4:1, 35:10, 40:23, 41:20, 48:7, 65:1, 68:16, 70:11, 91:17
**gladly** [1] - 35:20
**gmail** [2] - 15:3, 54:20
**goal** [2] - 16:8, 17:24
**Goodman** [2] - 1:16, 1:20
**Google** [1] - 66:6
**grant** [2] - 88:17, 88:21
**granted** [1] - 13:1
**grasp** [1] - 28:21
**gravamen** [1] - 57:19
**great** [2] - 31:18, 83:15
**ground** [10] - 8:7, 13:23, 22:14, 25:23, 54:22, 54:23, 54:25, 56:2, 61:21, 61:25
**grounds** [2] - 6:20, 28:4
**Group** [2] - 1:4, 3:7
**group** [3] - 32:7, 38:14, 44:15
**GROUP** [1] - 1:14
**guess** [3] - 10:24, 38:4, 76:6
**guessing** [1] - 29:10
**guidance** [1] - 17:4
**guys** [4] - 81:9, 86:17, 93:24

## H

**half** [5] - 25:5, 46:4, 48:7, 76:9
**half-hour** [2] - 25:5
**Halpern** [3] - 3:21, 20:23, 67:5
**HALPERN** [1] - 2:2
**halpern** [1] - 2:2
**hand** [4] - 42:14, 42:16, 71:5, 86:2
**handed** [4] - 42:24, 44:6, 44:11, 60:10
**handing** [2] - 43:25, 44:17

**hands** [2] - 81:13, 90:12
**hang** [3] - 42:23, 73:19, 86:20
**happy** [4] - 36:12, 36:15, 36:16, 36:24
**hard** [3] - 32:1, 36:4, 69:10
**hardly** [1] - 40:6
**head** [1] - 85:23
**hear** [8] - 9:14, 11:10, 16:6, 17:9, 33:3, 52:10, 86:24, 92:11
**heard** [10] - 17:7, 19:4, 51:14, 77:5, 82:6, 87:21, 87:23, 90:1, 92:4, 92:25
**HEARING** [1] - 1:10
**hearing** [50] - 3:22, 4:3, 7:9, 7:15, 8:21, 9:23, 10:5, 11:25, 12:11, 12:19, 12:22, 13:17, 13:19, 16:22, 18:1, 18:23, 19:2, 20:13, 27:2, 29:20, 32:9, 32:24, 34:2, 34:13, 39:5, 39:9, 41:1, 41:8, 41:10, 41:23, 46:13, 53:6, 62:7, 63:13, 64:1, 73:7, 75:7, 80:9, 81:21, 83:4, 84:4, 88:10, 88:19, 90:1, 94:11, 94:17
**hearings** [1] - 19:5
**hears** [1] - 15:10
**heck** [1] - 85:23
**held** [4] - 4:21, 7:25, 70:1, 71:9
**help** [4] - 6:25, 59:2, 69:24, 95:3
**helpful** [2] - 10:9, 10:11
**helps** [2] - 10:16, 14:17
**hereby** [1] - 95:13
**Hialeah** [1] - 2:12
**hide** [1] - 38:25
**high** [1] - 25:21
**highway** [1] - 72:13
**himself** [3] - 20:4, 83:19, 92:23
**history** [1] - 13:2
**hit** [3] - 45:1, 73:16, 74:6
**hits** [2] - 45:24, 68:18
**hold** [6] - 22:3, 27:19, 71:20, 76:11,

77:19, 90:14
**honest** [1] - 48:1
**Honor** [90] - 3:11, 3:16, 5:4, 5:8, 5:20, 5:22, 6:11, 6:12, 6:18, 8:3, 8:18, 8:25, 11:11, 11:16, 11:17, 11:18, 11:20, 12:3, 12:7, 12:18, 12:21, 14:23, 15:17, 16:12, 16:20, 19:4, 20:9, 21:2, 22:8, 22:22, 22:25, 26:7, 26:15, 26:20, 27:12, 29:10, 33:8, 34:8, 35:18, 36:6, 36:16, 36:20, 37:25, 40:8, 41:10, 42:5, 42:9, 42:12, 43:4, 44:9, 45:18, 48:5, 49:19, 50:16, 51:24, 52:1, 53:13, 57:20, 58:14, 58:18, 58:20, 64:22, 65:3, 68:2, 68:4, 70:23, 70:24, 71:12, 71:19, 72:3, 72:10, 76:16, 78:2, 79:2, 80:8, 80:9, 81:14, 82:15, 86:2, 86:13, 86:14, 88:9, 88:14, 89:4, 90:9, 91:3, 93:7, 95:4
**honor** [1] - 92:12
**Honor's** [4] - 21:21, 39:3, 78:11, 95:5
**HONORABLE** [1] - 1:11
**Honorable** [1] - 3:4
**hope** [5] - 51:11, 74:19, 83:24, 93:25
**hopefully** [1] - 80:1
**hosted** [2] - 41:4, 41:12
**hosting** [1] - 40:16
**hour** [2] - 25:5
**hours** [6] - 36:11, 47:1, 48:7, 64:24, 76:9
**hundred** [2] - 38:21, 45:22
**hundreds** [1] - 37:5
**hurry** [1] - 77:22
**hypothetical** [2] - 35:1, 35:8

## I

**i.e** [1] - 92:15
**idea** [2] - 11:5, 91:9
**identified** [8] - 34:4, 34:13, 34:24, 35:6,

82:20, 83:3, 88:14, 88:25
**ignorance** [6] - 28:23, 30:11, 31:11, 31:17, 69:17, 69:19
**ignored** [1] - 83:24
**ill** [2] - 74:9, 91:11
**ill-fit** [1] - 74:9
**imagine** [1] - 92:3
**immediately** [6] - 29:20, 39:14, 39:19, 46:12, 62:5, 70:2
**impact** [1] - 14:10
**impeach** [1] - 63:10
**impeaching** [1] - 64:11
**impeded** [2] - 34:12, 34:23
**implicate** [1] - 81:1
**important** [4] - 17:20, 20:9, 47:16, 94:1
**impose** [4] - 16:2, 17:13, 70:4, 70:24
**imposed** [2] - 4:24, 73:13
**imposes** [1] - 39:21
**impossible** [2] - 38:12, 38:18
**impress** [1] - 73:5
**impressing** [1] - 36:20
**IN** [1] - 1:4
**inability** [6] - 28:9, 50:25, 51:3, 51:11, 51:15, 68:12
**Inc** [2] - 1:4, 3:7
**incapable** [1] - 15:8
**inclined** [1] - 5:1
**include** [4] - 52:4, 55:21, 56:24, 57:17
**included** [4] - 6:4, 12:22, 49:3, 65:18
**includes** [2] - 41:1, 49:8
**including** [2] - 49:7, 79:19
**incomplete** [2] - 47:2, 47:5
**inconsiderable** [1] - 67:12
**increase** [1] - 37:9
**increased** [2] - 37:4, 49:18
**incurred** [1] - 6:11
**indicated** [3] - 30:9, 64:17, 92:14
**indicia** [1] - 69:24
**inference** [1] - 7:15
**inferences** [1] - 7:19

**information** [3] - 69:22, 78:19, 85:22
**informational** [1] - 27:16
**informed** [1] - 75:6
**initial** [1] - 19:21
**initiative** [3] - 30:1, 37:3, 37:8
**injecting** [1] - 33:19
**inputting** [1] - 85:15
**inquiry** [3] - 9:3, 9:6
**insist** [1] - 69:16
**insistence** [2] - 51:4, 74:5
**inspected** [1] - 20:21
**instance** [1] - 73:24
**instead** [1] - 4:4
**instruct** [1] - 55:20
**instructed** [6] - 34:21, 49:19, 53:7, 56:18, 58:4, 58:15
**instructions** [5] - 20:12, 40:24, 41:14, 41:24, 58:17
**instructs** [1] - 34:19
**insufficient** [3] - 37:6, 37:8, 74:7
**intelligently** [1] - 69:22
**intend** [4] - 4:13, 12:8, 12:9, 76:22
**intended** [5] - 6:18, 6:21, 9:14, 73:11, 74:2
**intending** [1] - 9:17
**intends** [1] - 70:23
**intent** [1] - 28:24
**intention** [2] - 5:17, 7:4
**intentional** [1] - 36:3
**intentions** [1] - 72:24
**interest** [1] - 79:11
**interests** [1] - 86:10
**internal** [1] - 39:8
**interpose** [4] - 82:11, 88:6, 89:2, 89:8
**interpret** [1] - 81:2
**interpretation** [1] - 81:5
**intervene** [1] - 31:8
**intervening** [1] - 46:20
**INTERVENOR** [2] - 2:1, 2:6
**intervenor's** [1] - 76:18
**intervenors** [12] - 3:18, 3:20, 20:10, 20:11, 20:23, 22:21, 34:15, 76:20, 76:22,

77:1, 79:11, 80:1
**introduce** [1] - 23:8
**investigation** [5] - 8:18, 19:19, 29:5, 30:24, 67:17
**investigations** [1] - 20:16
**invite** [2] - 51:7, 51:20
**invited** [1] - 49:16
**invocation** [1] - 7:13
**invoke** [2] - 31:5, 34:16
**invoked** [1] - 33:10
**involved** [5] - 30:7, 30:20, 30:23, 41:25, 85:5
**irrespective** [1] - 62:13
**irritating** [1] - 8:16
**issue** [6] - 3:25, 15:2, 47:16, 76:15, 78:1, 79:7
**issued** [2] - 4:5, 30:25
**issues** [1] - 78:4
**items** [5] - 19:16, 28:14, 63:18, 69:4, 73:23
**iteration** [1] - 15:23
**itself** [2] - 59:6, 59:8

## J

**JAY** [1] - 2:2
**jay@hsptrial.com** [1] - 2:4
**job** [6] - 29:3, 40:22, 91:22, 91:23, 91:25, 93:5
**Josh** [1] - 14:8
**Joshua** [1] - 6:5
**judge** [18] - 4:18, 4:19, 16:16, 17:24, 23:24, 28:8, 37:1, 39:25, 46:23, 47:24, 70:1, 74:18, 77:25, 78:3, 79:4, 80:24, 89:11, 93:4
**Judge** [64] - 3:7, 4:19, 5:1, 7:9, 8:11, 8:12, 9:2, 9:9, 9:16, 12:15, 14:11, 15:21, 17:6, 17:15, 18:11, 35:13, 39:20, 44:14, 50:21, 51:20, 63:2, 63:7, 64:18, 68:7, 69:6, 70:3, 70:20, 73:1, 73:9, 74:4, 76:2, 76:24, 76:25, 77:18,

80:17, 80:24, 81:4, 81:9, 81:15, 82:8, 83:9, 84:11, 85:19, 86:9, 87:8, 87:11, 88:15, 89:6, 90:2, 90:6, 90:20, 91:4, 91:6, 91:12, 91:14, 91:23, 92:18, 92:20, 93:9, 93:17, 94:6, 94:22
**JUDGE** [1] - 1:11
**judges** [1] - 84:5
**July** [24] - 14:1, 16:13, 29:17, 48:11, 48:17, 49:7, 49:20, 53:1, 54:15, 57:18, 60:7, 60:25, 61:8, 61:14, 63:3, 63:11, 65:12, 65:14, 65:19, 65:23, 65:24, 66:21, 72:14
**June** [6] - 46:14, 46:21, 47:10, 47:18, 67:25, 81:20
**jurisdiction** [1] - 70:1
**jury** [1] - 9:13

## K

**keep** [3] - 83:5, 86:21, 93:11
**Kent** [12] - 18:21, 19:1, 20:1, 20:2, 42:17, 42:25, 46:7, 55:20, 56:14, 56:15, 57:20, 58:5
**Kent's** [2] - 48:15, 57:14
**kept** [2] - 28:9, 34:9
**Kevin** [2] - 6:7, 14:16
**key** [2] - 15:3, 15:11
**kick** [1] - 70:14
**kind** [5] - 9:18, 10:19, 16:18, 28:3, 69:7
**kindergarten** [1] - 14:24
**kit** [1] - 17:2
**knowing** [2] - 10:15, 76:3
**knowledge** [2] - 69:2, 79:22
**known** [1] - 56:22
**knows** [3] - 32:5, 86:13, 88:21
**KUNTZ** [39] - 1:15, 3:11, 5:20, 7:9, 8:3, 8:18, 9:16, 11:11, 11:16, 12:3, 12:7,

12:18, 12:25, 42:21, 46:8, 52:1, 52:13, 52:15, 56:21, 57:16, 57:19, 58:20, 58:22, 64:24, 65:3, 65:6, 66:11, 68:2, 70:23, 71:5, 71:19, 72:6, 72:10, 73:1, 74:15, 74:18, 90:9, 90:18, 95:4
**Kuntz** [32] - 3:12, 5:17, 9:24, 11:1, 11:10, 18:8, 19:12, 22:2, 25:10, 25:18, 30:2, 33:13, 36:9, 36:18, 37:7, 42:20, 46:6, 46:24, 47:21, 48:6, 51:8, 51:13, 57:12, 57:24, 60:22, 64:13, 68:22, 73:2, 89:17, 89:24, 90:14, 92:12
**Kuntz's** [13] - 21:18, 22:23, 30:17, 32:23, 38:11, 38:19, 48:25, 49:15, 50:1, 50:2, 51:23, 74:10, 89:18

## L

**laboring** [1] - 79:10
**lack** [4] - 5:19, 50:22, 51:1, 69:2
**lacked** [1] - 51:4
**land** [1] - 73:12
**lane** [2] - 70:10, 93:6
**laptop** [1] - 41:3
**larger** [1] - 13:15
**last** [54] - 5:12, 8:8, 12:19, 13:17, 18:1, 18:23, 19:2, 20:13, 21:22, 22:18, 23:5, 23:18, 23:20, 28:9, 28:14, 28:19, 30:10, 31:11, 31:21, 32:9, 32:24, 33:1, 33:23, 33:25, 34:13, 35:14, 36:24, 40:12, 41:1, 41:7, 41:9, 41:23, 42:19, 43:5, 43:6, 43:7, 43:25, 44:9, 44:10, 46:8, 49:22, 54:11, 54:17, 63:12, 64:16, 68:5, 72:10, 77:17, 78:18, 78:22, 80:9, 81:21, 89:16
**late** [2] - 3:15, 25:5
**LAUREN** [1] - 1:11
**Lauren** [1] - 3:4
**law** [9] - 23:2, 31:13,

31:16, 31:21, 59:15, 77:13, 80:10, 85:2, 86:13
**law.com** [1] - 2:9
**lawful** [2] - 70:10, 70:15
**lawyer** [1] - 78:9
**lead** [3] - 7:11, 11:2, 51:14
**lean** [2] - 7:16, 31:19
**learned** [5] - 13:17, 13:20, 61:6, 62:3, 62:5
**least** [7] - 13:14, 25:23, 30:10, 31:12, 34:22, 62:17, 74:8
**leave** [1] - 30:3
**left** [2] - 70:21, 76:9
**legal** [10] - 16:5, 16:6, 21:6, 25:1, 25:3, 26:7, 26:10, 31:14, 33:10, 79:22
**Lenard** [24] - 3:7, 4:19, 5:1, 8:11, 9:9, 12:15, 39:20, 50:21, 51:20, 70:3, 73:9, 74:4, 76:24, 76:25, 83:9, 88:15, 90:3, 90:7, 91:4, 91:6, 92:18, 92:21, 93:9
**Lenard's** [1] - 70:20
**Leon** [2] - 1:17, 1:21
**less** [2] - 52:7, 70:5
**less-than-truthful** [1] - 52:7
**levels** [1] - 68:12
**liberty** [1] - 5:1
**licensed** [1] - 20:11
**lie** [4] - 84:14, 84:23, 85:21, 85:24
**light** [1] - 28:14
**lights** [1] - 80:1
**likely** [1] - 62:1
**likewise** [5] - 9:17, 24:16, 27:10, 74:7, 94:13
**limit** [2] - 72:4, 72:5
**limits** [2] - 69:25, 71:22
**line** [3] - 6:22, 92:25, 95:5
**lines** [3] - 63:8, 64:1, 92:6
**lion's** [1] - 29:19
**list** [8] - 6:24, 12:1, 32:8, 38:20, 47:13, 55:3, 55:9, 57:14
**listed** [1] - 6:23
**lists** [1] - 55:16
**litigation** [6] - 30:20,

30:23, 80:13, 80:14, 87:4, 91:3
**live** [3] - 10:12, 94:4, 94:5
**LLC** [2] - 18:21, 22:20
**LLP** [2] - 1:16, 1:21
**loathe** [1] - 16:18
**local** [3] - 11:24, 94:17, 95:1
**look** [25] - 24:19, 24:21, 29:7, 37:10, 40:18, 42:5, 42:10, 44:10, 48:15, 58:23, 62:24, 63:1, 64:4, 69:11, 74:11, 77:2, 77:25, 79:1, 80:6, 81:17, 82:19, 86:4, 86:8, 86:9
**looked** [5] - 34:15, 46:9, 74:5, 80:15, 88:25
**looking** [7] - 12:5, 24:9, 43:17, 44:7, 73:23, 81:5
**looks** [1] - 32:18
**losing** [1] - 78:17
**Louis** [6] - 3:4, 62:7, 63:2, 63:7, 64:18, 84:11
**LOUIS** [1] - 1:11
**love** [1] - 94:5
**luck** [1] - 93:15
**lying** [1] - 86:5

## M

**ma'am** [1] - 57:16
**magistrate** [4] - 4:16, 4:18, 70:1, 78:3
**MAGISTRATE** [1] - 1:11
**Magistrate** [1] - 62:7
**magistrates** [1] - 84:6
**mail** [2] - 49:9, 49:11
**main** [1] - 89:19
**manager** [2] - 18:21, 20:5
**manually** [1] - 62:4
**March** [5] - 56:23, 57:4, 58:25, 75:20, 91:24
**mark** [1] - 42:11
**material** [3] - 82:12, 83:3, 91:15
**materials** [1] - 91:19
**matter** [8] - 4:14, 5:6, 23:8, 23:25, 25:1, 36:4, 74:13, 95:13

**matters** [1] - 30:20
**mean** [13] - 10:6, 20:22, 37:14, 40:9, 56:5, 71:2, 72:6, 76:23, 83:17, 84:9, 93:23
**meaning** [2] - 27:17, 49:20
**meaningful** [2] - 3:24, 13:25
**meaningless** [1] - 4:10
**means** [3] - 31:22, 61:21, 91:20
**meant** [2] - 14:14, 87:3
**measures** [1] - 17:14
**member** [1] - 69:10
**members** [2] - 54:24, 55:1
**mention** [1] - 25:12
**messages** [18] - 28:17, 29:24, 32:14, 32:16, 33:17, 43:19, 44:15, 44:24, 45:3, 45:4, 45:7, 45:12, 45:14, 49:21, 53:4, 61:1, 61:4, 62:4
**messmoney** [1] - 3:17
**metadata** [5] - 16:25, 17:1, 28:15, 32:13, 52:24
**MIAMI** [1] - 1:2
**Miami** [5] - 1:6, 2:17, 2:18, 95:17, 95:18
**microphone** [2] - 17:21, 82:9
**might** [6] - 7:12, 12:21, 13:21, 23:25, 74:10, 94:8
**mind** [4] - 5:16, 13:10, 36:8, 51:17
**mindset** [3] - 36:15, 37:17, 38:25
**mine** [3] - 30:1, 65:17, 93:6
**mines** [1] - 73:12
**minimize** [1] - 10:6
**minute** [2] - 81:9, 83:17
**minutes** [1] - 11:8
**misleading** [1] - 11:19
**misquote** [1] - 14:11
**misrepresent** [1] - 84:14
**misrepresentation** [1] - 25:19
**misrepresented** [2] -

14:25, 22:24
**Missouri** [3] - 60:15, 80:17, 89:11
**mistaken** [1] - 84:25
**misunderstand** [1] - 51:6
**misunderstanding** [1] - 69:19
**misunderstandings** [1] - 28:12
**modified** [4] - 56:24, 75:20, 91:18, 91:24
**Monday** [1] - 21:22
**monetary** [1] - 4:23
**money** [2] - 3:20, 16:10
**month** [5] - 32:21, 33:2, 40:4, 40:13, 68:18
**months** [6] - 28:15, 28:19, 34:22, 80:3, 81:25, 82:14
**morning** [14] - 3:5, 3:11, 3:13, 3:14, 3:16, 4:13, 5:18, 5:20, 6:19, 17:14, 30:16, 34:1, 42:22, 52:6
**most** [10] - 6:2, 10:11, 13:17, 13:20, 21:8, 23:25, 36:6, 68:7, 69:7, 73:21
**mostly** [1] - 73:13
**motion** [10] - 4:6, 8:1, 15:19, 71:6, 80:18, 80:21, 81:8, 87:9, 88:18, 91:10
**motive** [1] - 84:9
**mountains** [2] - 86:11, 89:14
**move** [2] - 24:22, 57:12
**MR** [71] - 3:11, 3:16, 5:20, 7:9, 8:3, 8:18, 9:16, 11:11, 11:16, 12:3, 12:7, 12:18, 12:25, 42:21, 46:8, 52:1, 52:13, 52:15, 56:21, 57:16, 57:19, 58:20, 58:22, 63:15, 64:23, 64:24, 65:3, 65:6, 66:11, 68:2, 70:23, 71:5, 71:12, 71:15, 71:19, 72:1, 72:3, 72:6, 72:10, 73:1, 74:15, 74:18, 77:5, 77:8, 77:10, 77:13, 77:16, 77:25, 79:16, 80:8, 82:4, 82:8, 82:15, 83:1, 83:16, 84:1, 87:7,

87:16, 87:20, 87:25, 88:5, 88:9, 88:12, 89:18, 90:9, 90:18, 93:7, 93:17, 94:6, 94:22, 95:4
**multitude** [1] - 35:22

## N

**name** [4] - 21:10, 23:18, 23:20
**names** [4] - 18:19, 43:24, 48:18, 81:3
**Napoli** [8] - 22:21, 23:3, 30:14, 78:7, 79:5, 79:6, 86:15, 89:6
**narrow** [1] - 63:16
**native** [2] - 17:1, 52:20
**necessary** [4] - 3:20, 51:19, 72:20, 92:22
**need** [17] - 4:2, 5:10, 21:13, 24:11, 24:21, 24:22, 40:5, 45:6, 46:2, 53:12, 55:25, 69:22, 76:8, 76:12, 77:3, 80:2, 83:6
**needed** [9] - 18:5, 28:22, 35:4, 35:17, 38:13, 47:10, 51:5, 56:17, 62:18
**needs** [4] - 14:3, 17:11, 17:13, 68:15
**negating** [1] - 4:2
**negligent** [1] - 29:13
**Negrin** [1] - 3:12
**NEGRIN** [1] - 1:20
**net** [1] - 48:14
**netside** [1] - 48:14
**never** [15] - 5:7, 16:25, 28:15, 28:23, 34:15, 35:17, 55:5, 55:16, 55:22, 57:21, 70:11, 71:16, 72:16, 81:23, 84:21
**new** [9] - 8:15, 33:5, 45:22, 63:14, 83:2, 83:3, 88:2, 88:3, 89:3
**next** [4] - 38:12, 43:6, 73:10, 74:13
**next-to-last** [1] - 43:6
**night** [4] - 18:2, 35:14, 39:1, 89:16
**ninth** [1] - 3:19
**NO** [1] - 1:2
**nonappearance** [2] - 58:24, 60:1
**noncompliance** [2] -

8:6, 17:13
**North** [2] - 2:17, 95:17
**note** [1] - 3:9
**notes** [4] - 24:17, 39:4, 41:1, 41:12
**noteworthy** [1] - 87:13
**nothing** [8] - 15:15, 41:21, 65:7, 68:2, 74:24, 75:19, 81:25, 92:25
**notice** [7] - 4:1, 4:9, 8:14, 8:20, 8:23, 8:24, 71:8
**noticeable** [1] - 47:23
**noticed** [1] - 58:25
**November** [1] - 75:8
**nowhere** [2] - 16:11, 16:13
**number** [15] - 12:6, 13:15, 19:22, 21:5, 21:12, 37:9, 38:22, 38:23, 45:22, 54:14, 84:21, 84:22, 84:24, 85:10, 92:14
**numbered** [3] - 49:5, 53:18, 63:18
**numbering** [1] - 49:5
**numbers** [2] - 11:22, 49:17
**NUNEZ** [1] - 2:6
**Nunez** [1] - 3:17
**NW** [1] - 2:11

## O

**o'clock** [1] - 78:23
**oar** [1] - 79:10
**oath** [14] - 10:25, 13:14, 13:22, 22:5, 22:12, 27:21, 41:6, 54:15, 56:17, 62:14, 64:25, 65:20, 66:12, 76:1
**obey** [1] - 15:12
**objected** [1] - 88:14
**objection** [3] - 22:2, 70:19, 83:12
**objections** [9] - 7:1, 10:13, 81:12, 82:11, 88:6, 88:11, 88:15, 89:2, 89:9
**objectively** [1] - 48:3
**obligation** [2] - 15:25, 75:25
**observation** [9] - 25:24, 26:3, 31:9, 31:10, 50:17, 51:13,

73:18, 74:8, 76:17
**observed** [1] - 31:14
**obtain** [1] - 16:8
**obvious** [1] - 50:10
**obviously** [1] - 31:7
**occasions** [1] - 62:17
**occur** [1] - 48:5
**occurred** [4] - 39:9, 49:22, 88:13, 88:22
**occurs** [1] - 90:7
**odd** [1] - 84:17
**OF** [1] - 1:1
**offered** [2] - 15:5, 32:24
**office** [5] - 28:10, 49:15, 65:19, 94:25, 95:2
**officer** [1] - 89:23
**official** [1] - 2:16
**Official** [1] - 95:16
**often** [2] - 10:9, 31:6
**old** [2] - 14:23, 88:2
**once** [5] - 33:11, 62:3, 62:4, 63:15, 75:16
**one** [56] - 9:20, 10:15, 10:25, 12:5, 13:8, 14:1, 18:11, 18:12, 18:15, 18:16, 19:9, 21:3, 22:18, 22:21, 24:18, 25:13, 31:10, 31:11, 35:2, 38:21, 42:6, 42:8, 42:21, 42:22, 43:17, 48:16, 48:23, 53:24, 54:1, 54:13, 54:23, 57:15, 59:12, 60:15, 63:9, 64:7, 66:12, 71:2, 72:10, 72:12, 72:13, 74:12, 74:21, 78:3, 80:13, 81:8, 84:4, 87:22, 89:19, 93:4, 94:11, 94:12
**ones** [5] - 30:25, 33:9, 33:12, 88:1, 88:3
**ongoing** [1] - 49:23
**open** [6] - 6:22, 13:14, 28:1, 62:17, 64:6, 72:16
**open-ended** [1] - 28:1
**opening** [10] - 7:2, 7:12, 9:14, 9:18, 9:20, 10:21, 11:4, 12:17, 25:18, 30:17
**operation** [1] - 86:15
**opportunity** [19] - 34:18, 81:10, 81:12,

82:11, 82:14, 82:16, 83:2, 84:3, 87:15, 87:20, 87:21, 88:5, 89:2, 89:7, 89:8, 90:23, 92:4, 92:21

**oppose** [1] - 72:2
**opposed** [4] - 10:1, 19:21, 45:11, 69:19
**opposing** [4] - 18:9, 19:6, 19:20, 50:7
**oral** [2] - 88:19, 88:21
**orbit** [2] - 84:20, 85:9
**order** [46] - 4:5, 6:13, 7:21, 8:17, 8:22, 9:4, 9:22, 10:2, 15:13, 15:14, 18:2, 18:4, 21:7, 21:21, 21:22, 24:19, 28:11, 28:16, 28:18, 33:4, 35:22, 37:12, 37:18, 37:19, 38:8, 39:24, 40:6, 46:15, 46:17, 46:22, 51:1, 51:2, 58:14, 63:16, 69:16, 69:22, 76:5, 76:13, 80:23, 81:2, 81:20, 84:6, 90:4, 93:2, 93:10
**Order** [1] - 3:1
**ordered** [4] - 6:12, 15:19, 16:23, 35:18
**orders** [26] - 3:24, 15:12, 26:14, 27:6, 27:10, 35:23, 39:3, 39:11, 47:11, 50:20, 51:16, 68:23, 69:20, 70:6, 70:7, 70:11, 70:12, 70:14, 70:15, 78:11, 83:10, 87:8, 90:20, 91:23, 93:2, 93:4
**organized** [2] - 7:1, 60:16
**original** [1] - 49:7
**otherwise** [2] - 4:9, 23:12
**outline** [1] - 52:10
**outstanding** [1] - 70:15
**overlooked** [3] - 51:19, 65:16, 66:23
**own** [7] - 7:5, 9:3, 21:15, 22:13, 26:11, 70:3, 86:7

**P**

**p.m** [1] - 95:9
**P.M** [1] - 1:7
**PACER** [1] - 94:23

**pad** [1] - 24:16
**page** [12] - 14:1, 20:1, 20:20, 42:17, 43:6, 43:7, 44:9, 53:24, 54:1, 54:2, 54:13, 64:13
**Page** [7] - 37:19, 63:4, 63:11, 64:1, 64:14, 65:24
**Pages** [1] - 1:8
**pages** [25] - 14:2, 16:14, 16:19, 16:21, 17:3, 18:25, 19:3, 19:8, 42:19, 43:6, 44:1, 44:10, 44:11, 49:5, 52:18, 52:19, 53:18, 60:23, 63:4, 64:3, 72:17, 72:23, 82:21, 82:23
**paid** [4] - 30:12, 67:11, 67:12, 78:8
**Palmigiano** [1] - 7:11
**Palsgraf** [1] - 14:11
**papers** [1] - 24:7
**Paragraph** [1] - 48:15
**paragraph** [1] - 54:14
**part** [9] - 21:23, 28:23, 30:16, 49:1, 52:4, 78:1, 79:7, 81:13, 81:14
**partially** [1] - 47:7
**particular** [8] - 10:4, 20:20, 22:24, 24:10, 29:25, 32:12, 74:9, 79:21
**particularly** [1] - 18:23
**parties** [5] - 5:22, 6:9, 6:16, 10:9, 70:9
**parting** [1] - 73:3
**partner** [1] - 89:18
**partners** [1] - 89:19
**party** [6] - 16:9, 71:4, 74:20, 90:12, 94:10
**pass** [1] - 92:3
**passes** [1] - 39:23
**passive** [1] - 47:22
**passwords** [1] - 77:17
**past** [4] - 37:2, 37:6, 57:12, 72:12
**patently** [1] - 37:7
**pay** [1] - 78:9
**paying** [4] - 30:11, 35:10, 77:22, 78:8
**payments** [1] - 40:9
**PDFs** [3] - 14:2, 60:19, 60:20

**Pell's** [1] - 50:8
**penalties** [1] - 4:23
**pending** [1] - 88:16
**people** [2] - 31:16, 85:9
**people's** [1] - 10:22
**perceive** [1] - 8:20
**percent** [4] - 34:6, 34:11, 39:18, 40:7
**perfectly** [1] - 82:23
**performed** [2] - 53:21, 54:7
**perhaps** [6] - 8:21, 15:4, 38:5, 65:13, 66:5, 69:1
**period** [4] - 49:22, 70:20, 83:12
**permit** [1] - 16:4
**person** [4] - 9:4, 56:11, 73:22, 86:13
**personal** [1] - 26:11
**persons** [1] - 89:14
**perspective** [2] - 74:19, 90:6
**Peru** [12] - 13:23, 14:15, 29:5, 54:22, 55:1, 61:21, 61:25, 67:17, 67:21, 75:8, 86:11, 89:14
**Peruvian** [7] - 6:7, 14:16, 19:19, 21:5, 21:6, 30:24, 59:15
**pervasive** [1] - 70:7
**petition** [3] - 13:1, 67:15, 67:24
**petitioner** [2] - 7:22, 80:21
**petitioner's** [4] - 3:25, 4:6, 32:8, 80:19
**petitioners** [3] - 3:12, 14:9, 39:2
**petitioning** [1] - 16:9
**phone** [2] - 45:9, 45:15
**phrase** [1] - 41:11
**physical** [1] - 11:13
**picked** [1] - 43:2
**picture** [1] - 14:7
**piece** [1] - 63:19
**pieces** [1] - 6:4
**Pinkert** [2] - 2:2, 20:24
**place** [5] - 26:23, 75:6, 91:8, 92:20, 93:12
**placed** [1] - 76:25
**plain** [1] - 13:7
**plainly** [1] - 22:9
**PLAINTIFF** [1] - 2:1
**plaintiffs** [6] - 19:18,

56:25, 75:21, 75:23, 91:19, 91:21

**plaintiffs'** [1] - 86:16
**playing** [1] - 86:18
**pleading** [1] - 89:21
**pleadings** [3] - 29:13, 48:17, 48:24
**podium** [4] - 17:19, 17:21, 22:19, 22:25
**point** [21] - 8:20, 13:12, 17:8, 17:25, 20:9, 27:5, 27:10, 32:10, 36:2, 47:13, 51:18, 52:23, 70:17, 72:12, 72:13, 76:13, 78:2, 80:16, 85:19, 88:11, 88:12
**pointed** [4] - 12:21, 19:12, 28:16, 28:17
**points** [1] - 18:7
**politeness** [1] - 71:21
**Ponce** [2] - 1:17, 1:21
**population** [1] - 50:3
**position** [11] - 33:12, 39:11, 40:9, 40:11, 40:13, 50:13, 86:8, 88:20, 89:5, 93:1
**positions** [1] - 81:9
**possibility** [2] - 5:5, 35:1
**possible** [2] - 48:4, 61:3
**possibly** [6] - 20:18, 29:23, 30:4, 38:17, 44:13, 48:1
**post** [5] - 80:12, 80:14, 83:3, 83:4
**posture** [3] - 92:17, 92:24, 93:12
**potential** [3] - 4:15, 7:19, 14:13
**power** [2] - 4:17, 28:24
**powers** [1] - 16:1
**practice** [2] - 20:12, 31:17
**practices** [1] - 5:13
**practicing** [1] - 69:12
**precisely** [1] - 31:8
**predicate** [1] - 8:10
**prejudice** [3] - 9:13, 75:22, 91:20
**prelitigation** [2] - 80:12, 80:14
**premarked** [3] - 18:12, 18:14, 18:18
**premature** [3] - 6:14, 71:2, 71:9

**prepared** [3] - 7:7, 9:6, 23:23
**present** [4] - 3:15, 9:19, 41:17, 49:21
**presentation** [5] - 5:18, 10:7, 10:19, 11:2, 24:5
**presentations** [1] - 6:25
**presented** [1] - 15:20
**presents** [1] - 10:13
**presiding** [1] - 3:4
**presume** [2] - 75:1, 91:7
**presuming** [1] - 7:9
**pretty** [2] - 80:24, 86:15
**prevent** [1] - 36:4
**prevented** [5] - 15:8, 47:9, 65:8, 69:17, 91:2
**previously** [2] - 57:18, 88:14
**prima** [4] - 4:6, 7:22, 8:4, 16:22
**principal** [1] - 61:21
**print** [1] - 80:7
**priorities** [1] - 81:4
**priority** [1] - 32:9
**privilege** [12] - 35:2, 59:18, 76:19, 78:16, 79:23, 81:12, 88:11, 90:11, 90:25, 91:5, 91:6, 92:1
**privileged** [3] - 35:1, 35:9, 82:12
**privileges** [4] - 31:5, 33:10, 34:16, 40:20
**PRO** [1] - 2:10
**problem** [2] - 36:22, 79:2
**problems** [1] - 85:22
**procedural** [2] - 13:2, 13:3
**procedures** [1] - 9:22
**proceed** [1] - 6:19
**proceeding** [10] - 5:3, 10:4, 14:14, 15:6, 26:5, 28:20, 30:22, 63:2, 67:14, 67:20
**proceedings** [6] - 13:5, 21:7, 48:10, 62:22, 70:3, 95:13
**Proceedings** [1] - 95:9
**process** [11] - 14:24, 18:2, 26:16, 35:4, 39:8, 49:2, 50:11, 69:20, 69:23, 70:13,

70:19

**processed** [1] - 49:7
**processing** [1] - 85:22
**procure** [1] - 29:3
**prodigious** [1] - 91:3
**produce** [16] - 3:24, 28:25, 46:24, 46:25, 47:4, 55:3, 61:4, 61:9, 61:13, 61:16, 68:14, 75:3, 87:1, 88:1, 91:23, 92:2
**Produce** [1] - 93:13
**produced** [24] - 16:14, 18:5, 26:13, 26:18, 27:19, 28:13, 28:16, 32:13, 33:5, 37:1, 39:14, 52:16, 52:17, 52:20, 52:23, 53:1, 53:4, 60:25, 64:15, 67:19, 82:18, 82:20, 83:25, 92:19
**produces** [2] - 83:19, 90:23
**producing** [4] - 34:12, 36:21, 37:6, 67:24
**production** [24] - 13:25, 28:22, 32:3, 36:4, 37:13, 37:14, 37:20, 37:25, 38:2, 38:7, 38:15, 46:16, 47:2, 56:23, 60:14, 60:16, 60:19, 66:2, 68:17, 68:18, 72:14, 75:16, 76:7, 81:20
**proferring** [1] - 90:15
**proffer** [5] - 7:18, 41:2, 41:7, 41:9, 45:17
**proffered** [1] - 80:5
**proffers** [1] - 77:20
**proficient** [1] - 28:11
**project** [3] - 18:21, 20:3, 20:4
**proper** [1] - 63:10
**proposed** [1] - 49:15
**proposes** [1] - 88:1
**prosecutor** [3] - 67:21, 75:8, 75:10
**prosecutorial** [1] - 29:4
**protocol** [2] - 16:18, 31:22
**protocols** [1] - 29:9
**protracted** [1] - 13:2
**proudly** [1] - 78:5
**proverbial** [1] - 85:25
**provide** [3] - 25:3,

68:21, 75:25
**provided** [6] - 26:10, 55:8, 63:16, 67:20, 80:10, 80:12
**providing** [2] - 65:16, 66:23
**provisions** [1] - 59:15
**pull** [2] - 56:18, 58:5
**pulled** [1] - 57:15
**punish** [1] - 28:25
**punishment** [1] - 16:4
**purge** [6] - 70:21, 74:7, 83:14, 83:19, 92:22
**purged** [2] - 73:9, 92:23
**purports** [1] - 12:1
**purpose** [2] - 67:16, 75:14
**purposes** [1] - 91:11
**pursuant** [5] - 28:13, 29:1, 32:21, 47:13, 94:17
**put** [14] - 6:14, 6:16, 7:17, 8:20, 17:8, 26:21, 41:11, 47:19, 90:19, 93:1, 94:7, 95:7, 95:8
**puts** [1] - 9:24

## Q

**questioned** [1] - 24:10
**questioning** [2] - 8:19, 51:17
**questionings** [1] - 51:23
**questions** [16] - 6:22, 7:17, 7:18, 9:25, 22:13, 24:25, 27:23, 51:9, 51:18, 52:7, 52:11, 68:9, 69:8, 72:8, 76:1, 95:5
**quickly** [2] - 74:16, 74:23
**quite** [1] - 6:18
**quotes** [1] - 41:12

## R

**R-1** [1] - 42:25
**raise** [1] - 93:8
**Ramon** [1] - 2:7
**Rasco** [2] - 1:16, 1:20
**rather** [2] - 63:5, 71:24

**Re** [1] - 3:7
**RE** [1] - 1:4
**reach** [1] - 10:11
**react** [1] - 70:20
**read** [14] - 7:6, 23:24, 24:8, 37:17, 38:8, 41:9, 51:22, 57:10, 63:5, 63:6, 63:8, 63:19, 69:5, 89:15
**reading** [1] - 9:19
**reads** [1] - 37:19
**ready** [5] - 35:15, 68:20, 68:24, 77:1, 92:2
**reality** [1] - 69:25
**realized** [3] - 38:10, 38:12, 74:23
**really** [4] - 4:9, 15:19, 24:25, 93:24
**reason** [10] - 35:3, 57:25, 68:1, 70:11, 84:14, 84:23, 85:17, 85:21, 85:24, 90:4
**reasonable** [1] - 76:6
**reasons** [2] - 27:24, 29:1
**recalled** [1] - 41:14
**receive** [2] - 10:23, 48:21
**received** [8] - 14:2, 15:6, 16:25, 20:17, 56:22, 62:2, 67:15, 67:25
**receiving** [1] - 36:19
**recent** [1] - 21:8
**recently** [5] - 41:18, 63:25, 77:16, 78:12, 80:16
**Recess** [1] - 65:2
**recipient** [1] - 50:12
**recognize** [3] - 28:20, 35:7, 48:9
**recollection** [4] - 24:11, 24:20, 59:2, 60:4
**recommend** [4] - 39:20, 50:21, 70:24, 83:8
**recommendation** [11] - 4:20, 51:20, 69:14, 70:2, 70:19, 79:24, 79:25, 83:8, 83:18, 90:2, 92:15
**recompense** [1] - 70:25
**recompensing** [1] - 14:21
**record** [8] - 3:10, 9:8, 15:22, 23:19, 24:12, 51:6, 63:5, 76:13

**recruitment** [1] - 19:18
**rectify** [1] - 47:3
**redact** [1] - 81:3
**reduced** [5] - 84:16, 84:17, 84:18, 84:21, 85:10
**refer** [1] - 21:24
**reference** [4] - 41:23, 45:10, 62:20, 95:1
**references** [1] - 41:13
**referred** [1] - 52:6
**referring** [1] - 38:3
**refers** [1] - 49:4
**reflect** [2] - 24:12, 85:13
**refrain** [1] - 36:10
**refraining** [1] - 36:16
**refresh** [3] - 24:11, 24:19, 59:2
**refreshes** [1] - 60:4
**refused** [2] - 15:12, 69:23
**refute** [1] - 77:24
**regard** [11] - 7:13, 9:7, 12:18, 14:21, 16:16, 60:24, 71:10, 75:15, 90:22, 91:9, 95:4
**regarding** [5] - 12:20, 45:19, 59:2, 60:4, 71:6
**regular** [1] - 79:6
**reiterate** [2] - 13:10, 28:6
**relate** [1] - 85:1
**related** [3] - 19:16, 60:14, 91:19
**relationship** [2] - 20:25, 22:24
**relative** [1] - 86:16
**relativity** [3] - 32:17, 77:16, 78:17
**Relativity** [2] - 79:6, 80:6
**relevant** [6] - 13:4, 29:4, 33:10, 33:11, 68:9, 82:17
**reliance** [1] - 73:3
**relied** [1] - 94:16
**rely** [2] - 12:9, 21:15
**relying** [4] - 12:13, 22:6, 24:13, 94:14
**remain** [5] - 39:23, 50:20, 50:21, 64:25, 90:10
**remainder** [1] - 19:3
**remaining** [1] - 19:8
**remember** [5] -

29:11, 59:7, 73:15, 91:3, 95:7
**remote** [1] - 23:4
**remotely** [5] - 20:8, 32:14, 33:18, 41:4, 45:14
**Renco** [4] - 1:4, 3:7, 3:21, 6:6
**RENCO** [1] - 1:14
**repeated** [1] - 15:12
**repeatedly** [2] - 73:6, 87:2
**rephrase** [1] - 44:4
**report** [10] - 38:20, 43:11, 44:3, 51:20, 70:19, 79:24, 83:8, 83:18, 90:2, 92:15
**REPORTED** [1] - 2:15
**reporter** [1] - 30:5
**Reporter** [2] - 2:16, 95:16
**reports** [4] - 19:4, 19:8, 23:6, 85:13
**repositories** [2] - 15:2, 27:18
**repository** [2] - 13:20, 15:3
**represent** [10] - 4:14, 5:6, 5:14, 18:14, 31:13, 39:22, 41:5, 42:3, 78:9, 86:9
**representation** [4] - 29:12, 37:7, 63:24, 89:24
**representations** [4] - 18:25, 27:18, 27:21, 92:12
**representative** [1] - 6:5
**represented** [3] - 19:12, 62:8, 89:22
**representing** [6] - 9:1, 38:4, 79:11, 81:18, 89:10, 89:20
**request** [3] - 32:23, 70:18, 95:6
**requested** [2] - 49:23, 50:7
**requesting** [1] - 74:20
**requests** [2] - 74:23, 74:24
**require** [3] - 11:24, 12:4, 24:19
**required** [5] - 15:7, 26:13, 79:19, 79:20, 79:22
**requires** [2] - 76:13, 95:2

**reset** [3] - 59:9, 59:10, 59:20
**resisted** [1] - 67:23
**resolve** [1] - 87:11
**resolved** [2] - 88:17, 88:18
**resources** [3] - 28:10, 86:16, 86:17
**Resources** [2] - 1:4, 3:8
**RESOURCES** [1] - 1:14
**respect** [7] - 5:18, 5:22, 7:3, 58:25, 67:2, 74:14, 88:22
**respectfully** [3] - 68:7, 78:2, 79:3
**respective** [1] - 18:19
**respond** [3] - 21:7, 71:12, 79:12
**RESPONDENT** [1] - 2:10
**respondent's** [1] - 18:16
**respondents** [1] - 21:9
**responding** [1] - 53:19
**response** [13] - 21:21, 21:23, 22:13, 22:15, 22:23, 28:3, 48:19, 48:22, 70:17, 81:6, 81:7, 81:8
**responses** [1] - 52:7
**responsibility** [3] - 75:3, 79:8, 79:9
**responsive** [16] - 31:5, 33:9, 33:11, 34:4, 34:11, 35:7, 37:16, 38:19, 40:7, 40:18, 46:16, 50:11, 62:1, 63:18, 74:3, 78:14
**rest** [1] - 85:2
**restrictions** [2] - 91:15, 91:17
**result** [1] - 85:15
**results** [2] - 43:15, 44:20
**resume** [1] - 65:4
**retain** [1] - 5:13
**retained** [4] - 22:20, 23:2, 29:16, 29:17
**retaining** [1] - 5:6
**retrieval** [3] - 15:2, 23:4, 49:20
**retrieve** [3] - 20:8, 38:19, 56:7
**retrieved** [13] -

13:18, 13:23, 32:14, 41:2, 45:5, 45:8, 45:12, 45:14, 47:13, 47:19, 61:7, 62:3, 62:6
**retrieving** [2] - 33:18, 65:8
**return** [1] - 9:25
**review** [31] - 15:1, 33:8, 35:10, 36:11, 38:9, 40:1, 40:12, 44:16, 46:3, 49:3, 49:23, 53:7, 55:5, 55:14, 76:18, 76:22, 78:15, 78:16, 80:1, 81:11, 81:12, 83:2, 83:14, 87:15, 87:19, 87:21, 87:22, 88:5, 89:2, 89:7, 90:23
**reviewed** [14] - 13:24, 32:25, 33:21, 39:17, 44:14, 46:3, 47:14, 47:18, 49:17, 55:10, 55:17, 61:10, 62:19, 80:10
**reviewing** [10] - 32:10, 32:16, 32:23, 33:20, 33:24, 35:14, 49:3, 65:8, 78:15, 87:25
**reviews** [1] - 68:14
**revised** [1] - 95:5
**revisits** [1] - 49:11
**revolved** [1] - 93:22
**rights** [2] - 7:13, 16:1
**Ring** [1] - 50:8
**ripe** [1] - 83:12
**risks** [1] - 14:18
**Rivera** [2] - 89:18, 89:24
**Rivero** [1] - 90:7
**rkuntz@ riveromestre.com** [1] - 1:18
**ROBERT** [1] - 1:15
**Robert** [1] - 3:12
**Rocio** [2] - 21:5, 21:11
**RODRIGUEZ** [27] - 2:6, 3:16, 64:23, 77:5, 77:8, 77:10, 77:13, 77:16, 77:25, 79:16, 80:8, 82:4, 82:8, 82:15, 83:1, 83:16, 84:1, 87:7, 87:16, 87:20, 87:25, 88:5, 88:9, 88:12, 89:18, 93:7, 93:17
**Rodriguez** [17] - 2:7, 3:17, 3:19, 3:20, 25:1,

25:6, 25:15, 26:4, 67:1, 83:5, 86:20, 89:6, 90:22, 92:3, 93:13, 93:20
**Rodriguez's** [5] - 25:24, 30:15, 40:17, 90:10, 91:25
**rolling** [5] - 34:20, 35:18, 37:16, 68:22, 78:15
**room** [2] - 62:8, 64:1
**roughly** [1] - 84:19
**RPR** [2] - 2:16, 95:16
**Ruiz** [1] - 3:12
**RUIZ** [1] - 1:20
**rule** [4] - 7:1, 10:12, 76:10, 95:1
**ruled** [1] - 59:17
**rules** [5] - 11:24, 81:14, 82:24, 94:18
**Run** [3] - 1:4, 3:7, 6:7
**run** [2] - 50:7, 57:21
**RUN** [1] - 1:14
**running** [1] - 38:20

## S

**Saavedra** [2] - 21:5, 21:11
**sadly** [1] - 53:17
**safely** [1] - 72:2
**saga** [1] - 66:25
**Salin** [2] - 6:6, 14:8
**sample** [1] - 72:16
**sampling** [2] - 16:21, 16:24
**Sanchez** [2] - 21:5, 21:11
**sanctioned** [1] - 86:1
**sanctions** [6] - 4:22, 8:1, 80:18, 80:21, 81:8, 87:9
**Santos** [2] - 2:2, 20:24
**sat** [2] - 46:23, 46:25
**Saturday** [1] - 81:6
**save** [1] - 27:25
**saw** [4] - 16:24, 82:21, 89:16
**scanning** [1] - 39:4
**scheduled** [1] - 59:4
**scope** [4] - 28:12, 28:22, 31:18, 74:22
**scorched** [1] - 86:18
**scour** [1] - 41:16
**scratching** [1] - 85:23
**scrupulously** [1] - 90:21
**SE** [1] - 2:10

**search** [65] - 12:20, 19:3, 19:7, 19:20, 19:21, 19:22, 19:23, 20:19, 30:7, 30:8, 32:7, 32:21, 32:24, 37:3, 37:4, 37:9, 38:11, 38:14, 38:17, 38:19, 38:20, 39:2, 40:2, 40:13, 42:2, 42:19, 43:5, 43:19, 43:21, 43:23, 43:24, 44:1, 44:12, 44:17, 44:25, 45:3, 45:25, 47:14, 49:15, 49:16, 49:18, 50:1, 50:7, 50:14, 57:18, 57:21, 58:13, 73:4, 73:14, 73:16, 73:17, 73:21, 74:2, 74:6, 74:8, 74:9, 74:10, 74:15, 74:20, 75:1, 84:24, 85:11
**searchability** [1] - 19:15
**searchable** [3] - 25:20, 32:11, 49:2
**searches** [1] - 43:18
**searching** [2] - 42:3, 73:22
**seated** [2] - 3:5, 23:17
**second** [10] - 12:14, 18:15, 19:24, 19:25, 20:6, 21:2, 41:19, 53:7, 63:9, 73:20
**see** [11] - 24:16, 41:16, 42:18, 43:6, 53:23, 69:11, 72:14, 86:2, 89:4, 93:24, 95:6
**seeing** [1] - 40:7
**seeking** [2] - 9:4, 16:9
**seem** [2] - 39:6, 73:19
**sees** [1] - 43:5
**Seitz** [1] - 9:2
**self** [1] - 73:13
**self-imposed** [1] - 73:13
**send** [5] - 9:9, 16:18, 63:14, 92:18
**sending** [1] - 90:2
**sends** [1] - 4:18
**senior** [3] - 18:21, 20:3, 20:4
**sense** [4] - 25:17, 35:25, 84:5, 84:6
**sent** [4] - 63:13, 71:18, 77:17, 78:17
**separate** [3] - 8:17,

10:24, 90:8
**separately** [2] - 45:13, 78:12
**September** [8] - 1:6, 13:11, 13:19, 29:20, 29:21, 37:20, 38:7, 95:15
**serve** [1] - 14:15
**served** [1] - 42:21
**server** [1] - 66:6
**servers** [1] - 41:17
**service** [2] - 8:12, 9:7
**session** [1] - 3:3
**set** [15] - 3:22, 4:6, 8:9, 20:11, 28:10, 33:11, 47:3, 49:7, 49:8, 50:8, 57:4, 57:6, 88:24, 91:14
**sets** [2] - 20:10, 32:6
**seven** [4] - 18:25, 19:3, 40:5, 42:17
**seven-page** [1] - 42:17
**several** [4] - 10:12, 68:12, 78:21, 84:2
**shaking** [1] - 86:3
**shall** [2] - 37:20, 58:20
**Shaparo** [2] - 6:7, 14:17
**Shapora** [1] - 21:8
**share** [2] - 29:19, 72:18
**shared** [2] - 18:13, 71:7
**sharing** [2] - 16:18, 17:5
**SHARON** [2] - 2:16, 95:16
**Shkolnik** [9] - 22:21, 23:3, 30:14, 67:7, 78:8, 79:6, 86:15, 89:6
**Shkolnik's** [2] - 67:9, 67:11
**shop** [1] - 5:10
**short** [2] - 20:1, 20:6
**shortcomings** [1] - 28:8
**shorten** [1] - 10:2
**shorter** [1] - 47:13
**shoulder** [1] - 15:15
**Show** [1] - 7:24
**show** [16] - 4:5, 7:21, 8:5, 8:17, 9:5, 9:23, 10:10, 11:7, 16:23, 21:22, 33:4, 39:6, 43:22, 59:6, 59:25, 90:1

**showed** [3] - 16:21, 16:23, 72:16
**showing** [5] - 4:7, 7:23, 8:4, 44:3, 71:22
**side** [3] - 19:6, 35:12, 50:24
**sideways** [1] - 77:21
**signed** [2] - 22:3, 23:7
**significant** [1] - 4:22
**silence** [1] - 59:14
**similar** [1] - 30:15
**simple** [1] - 16:8
**simply** [3] - 20:20, 21:3, 92:7
**single** [4] - 60:20, 61:13, 61:16, 81:22
**singular** [1] - 75:2
**Sippel** [7] - 80:24, 87:8, 87:11, 89:5, 90:20, 91:14, 93:9
**Sippel's** [3] - 80:17, 81:4, 91:23
**sit** [9] - 23:11, 26:12, 39:10, 46:15, 51:2, 69:11, 76:7, 76:14, 94:14
**sits** [1] - 92:19
**sitting** [7] - 25:6, 27:21, 35:8, 82:9, 85:22, 86:7, 94:19
**situation** [2] - 5:12, 17:25
**six** [3] - 40:5, 54:14, 55:11
**size** [3] - 84:16, 84:17, 84:19
**skeptical** [1] - 27:22
**skirt** [1] - 83:17
**sleep** [1] - 40:6
**slightly** [1] - 8:7
**slow** [1] - 30:5
**small** [1] - 19:22
**smaller** [1] - 50:2
**smart** [1] - 45:9
**sole** [1] - 6:23
**someone** [7] - 5:10, 28:25, 30:11, 35:9, 65:17, 67:10, 86:22
**somewhere** [1] - 90:12
**soon** [1] - 95:6
**sooner** [1] - 40:14
**sophisticated** [1] - 27:20
**sophistication** [1] - 51:4
**sorry** [16] - 13:8, 21:10, 22:14, 23:1, 44:4, 57:12, 64:3,

71:21, 77:13, 77:19, 79:1, 80:19, 82:21, 83:22, 88:13, 90:14
**sort** [3] - 52:4, 79:8
**sorts** [1] - 60:20
**sought** [1] - 67:16
**sound** [2] - 8:16, 10:18
**sounds** [1] - 27:15
**Southern** [3] - 3:3, 5:14, 79:9
**SOUTHERN** [1] - 1:1
**spare** [1] - 16:5
**speaking** [1] - 89:20
**speaks** [2] - 59:6, 59:8
**specific** [6] - 30:22, 47:16, 48:3, 92:13, 92:14, 93:5
**specifically** [1] - 55:19
**specify** [1] - 35:24
**speculative** [1] - 91:10
**spell** [1] - 23:18
**spoken** [1] - 67:10
**spread** [2] - 86:14, 90:13
**stamped** [1] - 80:11
**stand** [8] - 7:17, 9:25, 13:8, 17:8, 85:17, 86:3, 89:24
**start** [9] - 23:23, 24:24, 33:19, 33:24, 36:12, 36:19, 36:21, 38:13, 60:11
**started** [3] - 25:5, 28:20, 50:18
**state** [1] - 23:18
**statement** [15] - 7:6, 7:10, 7:12, 9:19, 10:1, 22:23, 23:23, 25:19, 27:25, 51:22, 53:20, 60:24, 69:5, 69:6
**statements** [1] - 25:14
**States** [3] - 2:17, 3:2, 95:17
**STATES** [2] - 1:1, 1:11
**states** [3] - 20:20, 37:25, 60:6
**statute** [1] - 16:4
**stay** [6] - 27:13, 38:5, 45:16, 70:10, 88:18, 93:5
**STENOGRAPHICALLY** [1] - 2:15
**step** [3] - 7:24, 22:19, 22:25

**steps** [1] - 38:3
**stickered** [2] - 11:19, 11:21
**still** [11] - 7:16, 10:20, 13:25, 24:16, 38:23, 51:22, 66:18, 73:4, 73:12, 74:13, 88:20
**stone** [1] - 30:3
**stood** [1] - 29:8
**stop** [7] - 22:12, 36:4, 86:19, 92:7, 92:8, 93:24
**stored** [1] - 62:4
**strenuously** [1] - 67:23
**strive** [1] - 40:4
**strong** [1] - 73:8
**structure** [1] - 10:7
**structured** [1] - 9:18
**struggling** [1] - 35:11
**style** [1] - 47:25
**styled** [1] - 11:2
**subdocuments** [1] - 12:2
**subject** [5] - 8:14, 8:16, 19:18, 20:15, 33:10
**submit** [1] - 81:12
**submitted** [2] - 5:24, 75:19
**subpoena** [31] - 3:25, 4:8, 15:6, 15:7, 15:13, 15:14, 15:25, 26:14, 29:1, 30:25, 31:18, 31:22, 32:4, 50:19, 55:2, 56:24, 57:2, 61:25, 62:2, 63:18, 67:2, 67:15, 67:25, 73:14, 74:22, 74:23, 74:24, 75:17, 88:2, 91:18, 91:24
**subpoenaed** [3] - 19:16, 28:14, 69:4
**substantial** [2] - 14:13
**succinct** [1] - 10:16
**sufficient** [1] - 47:14
**suggest** [2] - 72:6, 92:6
**suggested** [1] - 91:2
**suggesting** [1] - 30:16
**suit** [1] - 73:3
**Suite** [3] - 1:17, 1:22, 2:8
**summarize** [1] - 18:8
**summary** [1] - 13:4
**summation** [1] -

10:16
**summer** [1] - 61:9
**Sunday** [3] - 78:22, 81:7
**superficial** [2] - 73:3, 74:2
**supplemental** [3] - 53:22, 54:5, 55:14
**support** [1] - 71:16
**supposed** [2] - 44:7, 56:5
**surprised** [1] - 57:10
**surrounded** [1] - 24:6
**sworn** [5] - 11:3, 22:17, 23:10, 23:14, 75:12

## T

**table** [2] - 25:7, 25:25
**tabs** [2] - 11:18, 11:20
**takeaway** [1] - 92:11
**tale** [1] - 13:7
**tantamount** [1] - 72:4
**team** [7] - 13:23, 54:22, 54:23, 54:25, 56:3, 61:21, 61:25
**technologically** [1] - 62:5
**technology** [1] - 28:9
**tecum** [1] - 29:1
**ten** [3] - 81:16, 81:24, 84:25
**tens** [1] - 63:13
**term** [5] - 19:4, 19:7, 38:20, 57:18, 57:21
**Terms** [1] - 42:18
**terms** [63] - 6:20, 10:3, 10:7, 12:20, 19:21, 19:22, 19:23, 28:4, 29:23, 30:3, 31:4, 32:7, 32:9, 32:21, 32:24, 32:25, 37:9, 38:11, 38:14, 38:17, 38:19, 39:11, 40:2, 42:2, 42:19, 43:5, 43:7, 43:21, 43:23, 43:25, 44:1, 44:12, 44:17, 44:25, 45:1, 45:3, 45:25, 47:14, 49:15, 49:16, 49:18, 50:1, 50:2, 50:7, 50:14, 73:4, 73:14, 73:16, 73:17, 73:18, 73:21, 74:2, 74:6, 74:8, 74:10,

74:16, 74:20, 75:1, 80:23, 84:24, 85:11, 90:1
**Terrace** [1] - 2:11
**terribly** [2] - 85:20
**testified** [7] - 13:14, 13:22, 61:3, 61:19, 76:20, 77:7, 77:22
**testifies** [1] - 54:4
**testify** [2] - 7:5, 86:23
**testimony** [15] - 9:20, 10:20, 10:23, 12:10, 13:6, 14:6, 15:10, 21:16, 22:4, 41:7, 48:7, 58:11, 65:1, 75:12, 86:6
**text** [13] - 28:17, 29:24, 32:16, 33:17, 44:15, 44:23, 45:2, 45:4, 45:12, 45:14, 49:21, 53:4, 62:4
**THE** [295] - 1:11, 3:2, 3:5, 3:6, 3:13, 3:14, 3:22, 5:4, 5:5, 5:7, 5:9, 5:11, 5:15, 6:25, 7:6, 7:8, 7:20, 8:13, 9:11, 9:17, 9:21, 10:3, 11:4, 11:9, 11:13, 11:23, 12:4, 12:8, 12:24, 17:16, 17:18, 17:20, 17:23, 18:19, 18:20, 19:24, 19:25, 21:10, 21:11, 21:14, 21:17, 21:25, 22:1, 22:3, 22:8, 22:9, 22:18, 23:1, 23:3, 23:9, 23:15, 23:16, 23:20, 23:22, 23:24, 24:3, 24:4, 24:6, 24:23, 24:24, 25:2, 25:4, 25:9, 25:11, 25:12, 25:15, 25:16, 25:17, 25:18, 25:22, 26:1, 26:2, 26:6, 26:8, 26:9, 26:12, 26:15, 26:17, 26:20, 26:21, 27:7, 27:8, 27:12, 27:13, 27:15, 27:16, 28:8, 29:6, 29:10, 29:16, 29:17, 30:5, 30:6, 30:10, 30:14, 30:15, 30:19, 30:22, 31:4, 31:7, 31:24, 31:25, 32:5, 33:2, 33:6, 33:7, 33:8, 33:14, 33:15, 33:21, 33:22, 33:24, 33:25, 34:3, 34:5, 34:7, 34:8, 34:12, 34:14, 34:21,

35:3, 35:5, 35:13, 35:21, 36:6, 36:23, 37:1, 37:12, 37:14, 37:19, 37:21, 37:23, 37:24, 38:1, 38:8, 39:4, 39:13, 39:15, 39:16, 39:20, 39:25, 40:15, 40:17, 40:21, 40:22, 41:1, 41:9, 41:11, 41:13, 42:2, 42:5, 42:7, 42:9, 42:11, 42:12, 42:14, 42:16, 42:20, 42:23, 43:1, 43:2, 43:4, 43:9, 43:10, 43:11, 43:13, 43:15, 43:17, 43:20, 43:24, 44:2, 44:9, 44:12, 44:14, 44:19, 44:21, 45:6, 45:9, 45:10, 45:11, 45:16, 45:18, 45:20, 45:24, 46:1, 46:2, 46:4, 46:5, 46:6, 46:10, 46:12, 46:14, 46:19, 46:20, 46:23, 47:9, 47:12, 47:15, 47:17, 47:22, 47:24, 48:2, 48:5, 48:11, 48:16, 49:4, 49:13, 49:24, 50:15, 50:17, 51:10, 51:13, 51:24, 51:25, 52:12, 55:25, 56:6, 56:8, 56:9, 56:10, 56:12, 56:13, 56:14, 56:15, 56:16, 56:17, 56:20, 57:12, 57:17, 57:23, 57:24, 58:2, 58:4, 58:5, 58:7, 58:8, 58:9, 58:10, 58:13, 58:16, 58:18, 58:19, 58:21, 63:12, 64:25, 65:5, 66:9, 68:5, 68:7, 69:5, 69:6, 69:9, 71:1, 71:11, 71:14, 71:20, 72:2, 72:4, 72:8, 72:20, 73:2, 73:25, 74:1, 74:17, 76:11, 76:16, 76:17, 77:6, 77:9, 77:12, 77:15, 77:19, 79:14, 79:17, 81:19, 82:5, 82:13, 82:23, 83:5, 83:22, 86:19, 87:14, 87:17, 87:23, 88:4, 88:8, 88:10, 89:15, 89:20, 90:14, 92:11, 93:8, 93:20, 94:8, 94:25
**thereafter** [1] - 59:17
**thereof** [2] - 5:19, 6:16
**thin** [1] - 86:15

**third** [6] - 18:12, 18:15, 21:3, 38:1, 48:13, 90:12
**third-party** [1] - 90:12
**thorough** [1] - 29:3
**thoughts** [1] - 73:3
**thousand** [3] - 38:21, 45:21, 84:17
**thousands** [2] - 37:5, 63:13
**three** [12] - 13:1, 18:16, 21:15, 27:14, 28:6, 48:19, 48:20, 54:1, 80:3, 81:24, 82:14, 83:22
**throughout** [3] - 14:24, 26:4, 66:25
**thumb** [4] - 6:2, 11:12, 60:10, 60:13
**Thursday** [2] - 46:9, 78:18
**tied** [2] - 30:21, 60:15
**timeline** [1] - 13:3
**tires** [1] - 70:14
**today** [9] - 15:19, 27:10, 37:13, 38:16, 41:5, 41:7, 66:2, 66:13, 81:22
**today,** [1] - 6:20
**together** [1] - 47:19
**took** [7] - 19:15, 37:3, 37:8, 66:12, 84:15, 85:14, 89:5
**tool** [1] - 73:14
**top** [2] - 35:22, 54:1
**topic** [2] - 55:2, 59:17
**topics** [3] - 31:6, 55:3, 75:20
**total** [2] - 49:6, 60:23
**totalling** [1] - 14:2
**totally** [1] - 88:24
**touchy** [1] - 77:19
**tows** [1] - 3:21
**Trabajo** [1] - 57:15
**Trabajosarroyo@ gmail.com** [1] - 55:16
**trabajosarroyo** [1] - 49:1
**trabajosarroya@ gmail** [1] - 65:9
**trabajosarroya@ gmail.com** [2] - 13:21, 66:3
**trabajosarroyo** [3] - 15:3, 54:20, 57:21
**trabajosarroyo@ gmail** [2] - 61:20,

66:18
**Trabajosarroyo@ gmail.com** [1] - 56:3
**track** [2] - 34:10, 78:17
**train** [2] - 84:8, 86:4
**Trajabosarroyo@ gmail.com** [1] - 55:12
**TRAMONT** [1] - 2:6
**Tramont** [1] - 67:1
**transcript** [6] - 62:25, 63:2, 63:19, 64:10, 66:9, 95:6
**transcription** [1] - 95:13
**transcripts** [2] - 29:7, 62:22
**travels** [1] - 28:3
**tread** [1] - 25:23
**tried** [3] - 68:10, 68:13, 92:9
**triggers** [1] - 7:24
**true** [7] - 54:6, 54:18, 54:21, 61:6, 61:7, 73:24, 86:7
**truth** [5] - 63:22, 64:18, 66:15, 66:16, 66:17
**truthful** [2] - 52:7, 62:14
**truthfully** [1] - 68:11
**try** [2] - 52:1, 78:7
**trying** [9] - 27:3, 28:4, 38:25, 47:25, 48:2, 57:13, 78:21, 79:12, 92:7
**Tuesday** [2] - 33:25, 34:2
**turn** [15] - 7:4, 24:14, 33:12, 34:19, 35:15, 35:23, 36:8, 36:9, 36:14, 36:17, 37:16, 53:11, 54:13, 54:15, 93:14
**turned** [6] - 35:3, 39:19, 41:15, 47:20, 48:6, 85:6
**turning** [1] - 34:23
**tw** [1] - 60:14
**twice** [1] - 13:14
**two** [34] - 12:16, 18:12, 18:13, 18:16, 20:1, 20:10, 20:20, 28:19, 30:10, 31:11, 31:16, 31:19, 31:21, 32:5, 33:2, 36:21, 42:19, 43:5, 43:7, 43:25, 44:10, 48:21, 49:22, 54:1, 60:10, 60:15, 62:17, 64:24,

76:9, 85:4, 90:18, 90:22, 91:11, 91:18
**two-and-a-half** [1] - 76:9
**two-page** [2] - 20:1, 20:20
**two-year** [1] - 49:22
**type** [1] - 10:4

## U

**unable** [2] - 48:11, 93:2
**unclear** [3] - 38:7, 38:8, 93:3
**undeniable** [1] - 36:3
**under** [19] - 10:25, 13:14, 13:22, 22:5, 26:13, 27:21, 41:6, 54:15, 56:17, 56:24, 59:14, 62:14, 64:25, 65:20, 67:24, 76:1, 76:10, 82:24, 91:24
**underlying** [2] - 30:20, 30:23
**understood** [3] - 12:24, 55:1, 61:24
**unique** [1] - 50:13
**UNITED** [2] - 1:1, 1:11
**United** [2] - 3:2, 95:17
**united** [1] - 2:17
**universal** [2] - 25:20, 49:2
**universe** [15] - 13:13, 19:10, 32:20, 37:2, 37:4, 40:1, 62:18, 63:7, 63:17, 63:23, 64:2, 64:5, 85:6, 85:16
**universes** [1] - 32:6
**unless** [4] - 4:17, 16:5, 24:10, 48:7
**unmindful** [1] - 87:4
**unnecessary** [1] - 12:15
**unturned** [1] - 30:3
**up** [29] - 4:18, 4:25, 8:23, 9:9, 12:13, 21:19, 23:11, 24:6, 25:20, 28:10, 37:15, 41:4, 41:12, 43:15, 44:13, 49:12, 58:14, 59:6, 59:25, 71:20, 74:4, 77:19, 85:1, 85:16, 87:10, 90:2, 92:18, 94:14
**updated** [2] - 49:20, 49:23

**upload** [3] - 11:24, 95:2, 95:8
**uploaded** [2] - 12:5, 94:17
**uploading** [2] - 94:22, 95:4
**USB** [1] - 47:20
**useful** [1] - 72:18
**utilized** [1] - 73:21

## V

**vacuum** [1] - 9:12
**various** [1] - 60:20
**vein** [1] - 73:10
**VELAZCO** [2] - 2:16, 95:16
**Velazco** [1] - 95:15
**vendor** [4] - 6:5, 31:12, 31:17, 31:21
**versus** [1] - 7:11
**VICTOR** [1] - 2:11
**Victor** [4] - 3:14, 23:14, 23:20, 42:18
**victorcareaga23** [1] - 55:15
**victorcareaga23@ gmail** [2] - 61:10, 61:14
**victorcareaga23@ gmail.com** [1] - 54:16
**view** [2] - 15:21, 74:18
**viewed** [2] - 84:20, 85:9
**violated** [2] - 80:22, 87:9
**violation** [1] - 93:10
**voice** [1] - 47:22
**volume** [1] - 49:6
**voluminous** [1] - 38:22

## W

**wait** [4] - 33:3, 44:4, 55:25, 81:9
**wants** [4] - 16:6, 17:12, 36:18, 52:10
**warning** [1] - 12:16
**waste** [1] - 50:10
**watching** [1] - 25:6
**Watts** [2] - 1:16, 1:21
**Watts-FitzGerald** [2] - 1:16, 1:21
**ways** [1] - 81:17
**Wednesday** [1] - 34:1
**week** [8] - 33:1, 33:23, 33:25, 40:3,

40:12, 78:18, 81:21, 83:20

**weekend** [1] - 40:23
**weekly** [2] - 4:24, 32:19
**weeks** [7] - 33:3, 33:14, 39:5, 39:7, 39:12, 65:11, 92:15
**weigh** [1] - 12:15
**Weiss** [2] - 6:6, 14:8
**welcome** [1] - 10:23
**well-placed** [1] - 76:25
**WhatsApp** [24] - 28:17, 29:25, 32:13, 32:16, 33:17, 42:18, 43:5, 43:19, 44:15, 44:18, 44:20, 44:23, 45:2, 45:4, 45:7, 45:12, 45:14, 49:21, 53:4, 60:25, 61:4, 61:20, 62:4, 85:18
**wherewithal** [2] - 5:8, 85:25
**whichever** [1] - 6:2
**whole** [2] - 17:2, 73:17
**whys** [1] - 90:18
**willful** [8] - 17:10, 17:13, 28:24, 35:6, 36:3, 46:22, 47:6, 50:23
**willfully** [6] - 15:11, 15:12, 36:10, 36:16, 69:1
**willfulness** [2] - 52:3, 69:24
**Williams** [1] - 42:14
**wish** [3] - 6:17, 8:9, 73:8
**WITNESS** [115] - 3:14, 5:4, 5:7, 5:11, 7:6, 9:21, 11:4, 17:18, 17:23, 18:20, 19:25, 21:11, 21:17, 22:1, 22:8, 22:18, 23:3, 23:15, 23:20, 23:24, 24:4, 24:23, 25:2, 25:9, 25:12, 25:16, 25:18, 26:1, 26:6, 26:9, 26:15, 26:20, 27:7, 27:12, 27:15, 28:8, 29:10, 29:17, 30:6, 30:14, 30:19, 31:4, 31:24, 32:5, 33:6, 33:8, 33:15, 33:22, 33:25, 34:5, 34:8, 34:14, 35:3, 35:13, 36:6, 37:1, 37:14, 37:21, 37:24,

38:8, 39:13, 39:16, 39:25, 40:17, 40:22, 41:9, 41:13, 42:5, 42:9, 42:12, 42:16, 43:1, 43:4, 43:10, 43:13, 43:17, 43:24, 44:9, 44:14, 44:21, 45:9, 45:11, 45:18, 45:24, 46:2, 46:5, 46:12, 46:19, 46:23, 47:12, 47:17, 47:24, 48:5, 48:16, 49:13, 50:15, 51:10, 51:24, 56:6, 56:9, 56:12, 56:14, 56:16, 56:20, 57:24, 58:4, 58:7, 58:9, 58:13, 58:18, 66:9, 68:7, 69:6, 73:25, 76:16
**witness** [10] - 6:23, 9:6, 10:13, 23:11, 24:9, 53:13, 68:3, 76:7, 86:24
**witness)** [1] - 23:14
**witnesses** [1] - 10:12
**word** [3] - 68:5, 73:19, 84:4
**words** [2] - 12:16, 77:25
**work-around** [1] - 80:7
**workspace** [2] - 32:17, 33:19
**worsened** [1] - 8:8
**worst** [1] - 86:7
**worth** [1] - 84:3
**wreck** [2] - 84:9, 86:4
**writing** [1] - 76:5
**written** [2] - 21:22, 48:22
**wrote** [1] - 21:21

## Y

**Yahoo** [2] - 48:12, 48:13
**year** [5] - 20:8, 46:14, 49:22, 60:7, 66:21
**years** [16] - 5:12, 13:1, 27:14, 28:7, 28:10, 28:20, 30:10, 31:12, 31:21, 36:24, 37:11, 64:16, 83:22, 85:4, 91:18, 94:3
**yellow** [1] - 24:16
**yourself** [4] - 4:14, 64:11, 70:21, 73:9