UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| J.Y.C.C., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:15 CV 1704 RWS |
| | ) | |
| DOE RUN RESOURCES, CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before me on Plaintiffs motion for sanctions against Defendants The Renco Group, Inc. ("Renco") and The Doe Run Resources Corporation ("Doe Run") (together "Defendants")[1] based on their activities in related litigation in a federal court and a state court in Florida.[2] The motion also seeks to disqualify Defendants' counsel involved in the Florida cases. The motion has been fully briefed. A hearing of the motion was held on September 29, 2026. I find that Defendants have engaged in intentional and willful conduct in the Florida cases in violation of my discovery orders and that sanctions are appropriate.

---

[1] There are other defendants named in this lawsuit. This order is directed only to Defendants Renco and Doe Run.

[2] Although Plaintiffs' initial motion for sanctions focused primarily on Defendants' activities in the Florida federal court case, subsequent briefing clarified that Plaintiffs were also seeking sanctions for Defendants' activities in the Florida state court action. Defendants have had a full opportunity to oppose sanctions for their activities in both courts in their extensive briefing and at oral argument.

In this case Plaintiffs' claim that they have been injured by Defendants' lead smelter and mining operations in La Oroya, Peru. More than 3000 individual plaintiffs' claims have been removed from Missouri state court to this Court. These cases have been consolidated for pretrial discovery in this case and in a companion case.[3] (Referred to hereafter as the Reid case.)

Defendants' activities in the Florida cases that led to the present imposition of sanctions began more than five years ago. On October 21, 2021, Defendants filed a memorandum, attaching a document entitled "The Jones Day Report" (the "Report"), alleging that Plaintiffs' agents in Peru had fraudulently recruited plaintiffs and fabricated documents for use in this lawsuit. The Report was prepared by three attorneys with the Jones Day law firm. The memorandum alleged that two members of Plaintiffs' litigation team, Miguel Angel Curi Osorio ("Curi") and Richard Romero Chavez ("Romero"), had come forward to admit their role in fraudulently recruiting plaintiffs. Defendants attached affidavits of Curi and Romero to their memorandum.

On November 15, 2021, I held a hearing at which Defendants presented information from the Report. The three Jones Day attorneys who prepared the Report attended the hearing. Defendants made a request to allow one of the Jones

---

[3] The companion case is A.O.A., et al. v. Rennert, et al., 4:11CV44 CDP (the "Reid" case). On June 22, 2026, the parties filed a joint notice of settlement of that case. The settlement process is ongoing.

Day attorneys to make "remarks" at the hearing to address their findings. I ruled that the Jones Day attorney could participate in the hearing if he entered an appearance in the case or agreed to be sworn in as witnesses. The Jones Day attorney declined either option. In other words, the Jones Day Attorney wanted to speak only if he was not subject to the responsibilities of Fed.R.Civ.P. 11 or the responsibility to tell the truth under oath.

Unbeknownst to the Court, ten months before they filed the Jones Day Report, Defendants had already initiated a criminal proceeding in Peru to investigate their alleged recruitment irregularities. At the hearing Defendants implied that the criminal investigation in Peru was initiated and directed at the recruitment activities in ***this*** case. However it would become clear that even that simple representation was not accurate. The Peruvian criminal investigation was initiated by a criminal complaint filed by Defendants on December 21, 2020. That complaint stated that all the factual allegations were based on sworn statements made by Curi. Those statements applied only to activities in the Reid case, not ***this*** case. It was not until March 2023, 16 months after the criminal case was initiated, that Defendants provided the Romero affidavit to the Peruvian prosecutor that alleged irregularities in ***this*** case. Over the course of subsequent hearings it became clear that the criminal investigation was initiated based on activities in the

companion Reid case.

Moreover, the Jones Day Report disclosed that, in exchange for Curi's and Romero's cooperation with Defendants' fraud investigation, Defendants "agreed to provide them with Peruvian criminal counsel as well as payments to compensate them for time they have spent, the costs they have incurred, and the income they have lost due to their cooperation in providing information" to Defendants. ECF No. 542-2 at 22. It was revealed later that Defendants paid Romero $1,000.00 per month for a year,[4] paid his reasonable fees and expenses related to his meetings over 45 days with Defendants' representatives, and agreed to provide Romero with an independent attorney to represent Romero in any investigation or criminal litigation in Peru related to his affidavit of recruitment irregularities. Undermining his credibility, on October 16, 2023, Romero admitted signing his affidavit but refused to testify about the alleged fraud when he was questioned by the Peruvian prosecutor conducting the criminal investigation. Curi's veracity was also undermined when, in his sworn statement provided to the Peruvian prosecutor, Curi stated that he never received any economic benefit from Defendants despite Defendants' representations to the contrary.

[4] To put this monthly payment amount in perspective, indicating a very generous payment, Curi, the other affiant in the Report, signed a sworn statement on December 16, 2021, that he earned approximately $350.00 per month as a dental prosthesis technician.

At the November 15, 2021 hearing at which Defendants presented information from the Jones Day Report, Defendants' counsel stated that Plaintiffs' alleged fraudulent recruitment and document production in Peru "appears to be very significant fraud on the Court." ECF No. 533 at 9. To address their allegations of fraud Defendants requested that ***all*** the more that 3000 plaintiffs in this case, and in the Reid case, should be compelled to certify that they are "interested in pursuing" and "intend to pursue" their cases. Defendants also requested the appointment of a special master to aid in Defendants' contemplated discovery into the alleged fraudulent activities. I denied Defendants' expansive discovery proposal. As an alternative, I directed Defendants to limit their fraud investigation to the 108 trial pool plaintiffs. To address Defendants' allegations of fraud in joining plaintiffs in this lawsuit, I authorized, and the parties completed, an expensive, detailed, and time-consuming verification process in Peru in which the trial pool plaintiffs were interviewed and reconfirmed their claims in this case and in their continued interest in pursuing those claims.

Despite my ruling on November 15, 2021, that any discovery Defendants sought directed at fraudulent recruitment allegations would be limited to the trial pool plaintiffs, on February 1, 2022, Defendants served discovery on Plaintiff W.M.B.F., a non-trial pool plaintiff. The discovery Defendants sought included

Plaintiffs' recruitment related documents and practices, the internal process and work-product of Plaintiffs' counsel and their support team, attorney-client privileged communications, and a host of other privileged information and documents. The clear intention of my November 15, 2021 ruling was to keep the case moving toward a trial on the merits but to permit limited discovery regarding the allegations of fraud but only as to the trial pool plaintiffs. As a direct result of Defendants' conduct, Plaintiffs sought, and I issued, a protective order blocking Defendants' unauthorized discovery requests on March 24, 2022. At a hearing of the motion for a protective order I reiterated and made clear that any discovery related to Defendants' fraud allegations was going to stay focused on the trial pool plaintiffs.

Not withstanding my rulings limiting discovery concerning Defendants' recruitment and document fraud allegations to the trial pool plaintiffs, on April 29, 2022, Defendants filed a malicious prosecution case in Florida state court against Plaintiffs' recruiter Victor Carega and attorney Louis Thaler in Doe Run Resources Corp. v. Thaler, et al., No. 2022-007907 CA (Fla. 11th Cir.). On April 12, 2022, Defendants also filed an *ex parte* motion in the United States District Court for the Southern District of Florida to take discovery from Careaga to provide to the criminal prosecution in Peru. See In Re Matter of the *Ex Parte* Application of the

Renco Group Inc. and Doe Run Resources Corporation for an Order to Take Discovery Pursuant to 29 U.S.C. § 1782, 1:22MC 2225 JAL (the "1782 Proceeding"). Defendants asserted that Careaga had fraudulently induced individuals in Peru to file claims in this litigation and that he had acquiesced in the creation of false medical, education, and employment records for individual plaintiffs.

After the Florida cases were filed I made repeated rulings that the Defendants' allegations of fraud in the recruitment process would be addressed in the ordinary course of this case if discovery exposed specific acts of fraudulent conduct in the recruitment of the initial trial pool plaintiffs' cases. See e.g., ECF No. 650; ECF No. 718; and ECF No. 777. My orders limited discovery regarding the allegations of fraud to the trial pool cases.

On July 13, 2022, Plaintiffs filed a motion for injunctive relief under the All Writs Act, 28 U.S.C. § 1651(a) in this case seeking an order barring Defendants from obtaining discovery in the two Florida actions regarding the current plaintiffs in this Court and concerning Plaintiffs' counsel's work-product and attorney-client privileged communications. On July 19, 2022, a status conference was held in this case at which I warned Defendants about the discovery taking place in Florida, "there will be consequences here if evidence in this case or the attorney-client

privilege in this case was breached by conduct in other courts." ECF No. 679 at 60-61.

On October 28, 2022, I held a joint hearing of Plaintiffs' motion for injunctive relief with United States District Judge Catherine D. Perry who presides over the companion Reid case in this Court. Plaintiffs' counsel in the companion Reid case also attended the hearing. Plaintiffs argued that Defendants should not be allowed to seek discovery in the Florida cases that had already been addressed in this Court. Plaintiffs expressed a concern that Defendants were seeking discovery in the Florida cases that was protected in the present case by the attorney-client privilege and the work-product doctrine. In other words, Plaintiffs argued that Defendants were attempting to circumvent my discovery rulings regarding current plaintiffs in this case and were seeking discovery in the Florida cases that I had not permitted in this case. Defendants asserted in their response brief and at oral argument of this motion that the subpoena they obtained in the Florida federal court action, and the discovery they would seek in the state court lawsuit, was directed only at plaintiffs whose claims have been dismissed from the cases in this Court. Defendants admitted that some of their discovery requests may be *initially* overbroad seeking information about the recruitment of all plaintiffs. Defendants asserted that any overbroad requests would be subject to attorney-

client and work-product objections. Defendants' counsel, Jon Bierman, stated that if discovery issues arise in the Florida state court case that implicated privilege assertions by current plaintiffs in the present case, Plaintiffs could raise the issue in this Court. ECF No. 709 at 26. Bierman also stated that, "with respect to that discovery [in state court], whether that discovery is appropriate, whether that discovery is relevant is going to be a question for a Florida state court to decide." Id. at 23. Defendants' counsel in the federal court 1782 Proceeding, Robert Kuntz, stated that if Defendants seek overbroad discovery that implicates privilege assertions by current plaintiffs in the present case it could be raised by Plaintiffs in this Court. Id. at 45-46. Kuntz also stated that if Defendants seek overbroad discovery that implicates privilege assertions by current plaintiffs in the present case it could be raised by Plaintiffs' counsel in the Florida federal court 1782 Proceeding . Id. at 43-44, 53-54. In response to a question from Judge Perry at the hearing, Kuntz said, "Well, Judge, what will happen is, like anyone whose privilege is implicated, that person or persons or their attorney's going to have the ability to come in and say, No, wait, stop. Let's go to Judge Lenard and find out what the privilege issues are here." Id. at 44. Kuntz also asserted, "I don't think anyone can walk from this courtroom and imagine that it won't be addressed by [Plaintiffs'] counsel who are [at the Florida proceedings] to protect those

interests." Id. at 54. In other words, Defendants knew they would be making discovery requests in the Florida cases that would be subject to litigation in both the Florida cases and in this case. This approach created a potential conflict between rulings in the Florida cases and in this case on discovery and privilege issues. This multi-court litigation also had the potential to be an abuse of the judicial process through a vexatious multiplication of litigation. Seeking discovery in the Florida cases that had already been denied in this Court would undermine the rulings that have been made in this Court.

On January 26, 2023, I issued an order denying Plaintiffs' motion for an All Writs Act injunction. That order was based on Defendants' assurances that Plaintiffs' counsel would be permitted to raise privilege objections to discovery requests in the Florida courts. Defendants had asserted in their response brief and at oral argument that the subpoena they obtained in the federal court action and the discovery they would seek in the state court lawsuit is directed at ***only*** at plaintiffs whose claims have been dismissed from the cases in this Court. In acquiescing to Defendants' representations that Plaintiffs would be allowed to make privilege objections I stated, "I take Defendants' representations at their word." ECF No. 718 at 4. To assure that Plaintiffs would have the opportunity to assert attorney-client and work-product objections in the Florida cases, I ordered Defendants to

provide to Plaintiffs' counsel in this case and in Judge Perry's companion Reid case with any and all subpoena and discovery requests made in the federal and state court actions in Florida." ECF No. 718. That order anticipated that any discovery disputes and privilege assertions would be resolved in the Florida cases.

On September 13, 2025, Plaintiffs filed the present motion for sanctions, including the striking of Defendants' pleadings and to disqualify Defendants' attorneys based on a subpoena served on Careaga and on Defendants actions in the 1782 Proceeding.[5] Plaintiffs assert that Defendants' discovery requests to Careaga: 1) seek information and documents about the recruitment in Peru of all plaintiffs which necessarily includes active plaintiffs in this case; and 2) seek obviously privileged information of the active plaintiffs in this case. In subsequent briefings of their motion Plaintiffs asserted that Defendants were seeking privileged documents in the Florida state case too and, despite Defendants' counsels' representations to this Court, were actively opposing Plaintiffs' ability to intervene in the Florida cases to protect their clients' interests and to prevent the production of privileged information. Defendants did in fact seek discovery in the Florida

[5] Plaintiffs in the Reid companion case also filed a motion for sanctions against Defendants for their activities in the Florida cases. On May 28, 2026, Judge Perry filed an order finding that Defendants' opposition to plaintiffs' intervention in the Florida § 1782 action was a direct and willful contravention of the on-the-record representation made to her at the joint hearing. She granted sanctions against Defendants in that case for that "wrongful behavior." A.O.A. v. Rennert, 4:11 CV 44 CDP (E.D. Mo. May 28, 2026); ECF No. 1700 at 13, 17-18. However, in light of the settlement in the Reid case, the amount of sanctions was never finally established.

cases regarding Plaintiffs' recruitment related documents and practices, the internal process and work-product of Plaintiffs' counsel and their support team, attorney-client privileged communications, and other privileged information and documents. The Florida discovery was not narrowly tailored to dismissed plaintiffs but sought information which pertained equally to the dismissed plaintiffs and to all of the current plaintiffs in this case. In particular, Defendants' federal court 1782 Proceeding discovery request search terms included requests for documents that contained the words: strategy, questionnaire, Plaintiffs' counsel's names, and profile[6]. In the state court lawsuit Defendants served document requests on Careaga defining "Peruvian Plaintiff" as "***any*** individual who filed claims in the Missouri Litigation," (emphasis added) and demanded all documents that "reference ***any*** Peruvian Plaintiff," (emphasis added) all "Plaintiff Profile Sheets, including drafts," and all communications with "Plaintiffs' Team relating to ***any*** Peruvian Plaintiff." (emphasis added.) ECF No. 1012-3 at 2-4. There was clearly no effort on Defendants' part to narrowly tailor their discovery requests in order to comply with my previous discovery rulings. To the contrary, these search terms would of necessity have produced documents that were fully protected by the attorney-client privilege, the work-product doctrine, and produced documents

[6] The production of profile sheets has been litigated extensively in this Court. I have definitively denied Defendants' repeated attempts to obtain Plaintiffs' original profile sheets in this matter.

related to the current plaintiffs in this case. All in direct conflict with my rulings.

On March 2, 2023, Kurtz sent an email to Careaga regarding Defendants' discovery requests in which Kuntz acknowledged that Defendants' document requests, "likely apply in many cases to current plaintiffs and to dismissed plaintiffs in the Missouri litigation." ECF No. 960.0 at 1. Kuntz told Careaga, "you must search for and produce responsive documents even if such documents are theoretically relevant to represented plaintiffs … because a document references recruitment practices generally and mentions no individual plaintiff." Id. at 1-2. at Again, these requests directly contravened my orders that discovery from current plaintiffs regarding Defendants' allegations of fraud would be addressed only in the trial pool cases.

Defendants' discovery requests were directed at Careaga who was proceeding pro se in both Florida actions. Careaga was not represented by Plaintiffs' counsel. Careaga did not represent or share the interests of Plaintiffs to be able to assert privilege objections to Defendants' discovery requests. The search terms in the 1782 Proceeding alone generated 268,775 hits.[7] Without the ability to intervene in the Florida cases, Plaintiffs' privilege objections could not be

---

[7] Ultimately, the 1782 Proceeding court ordered Careaga to comply with Defendants' discovery requests. That production included, among other documents, communications between local counsel and USA counsel, between USA counsel and the La Oroya team, and between local counsel and the La Oroya team. These were privileged communications. ECF No. 1027 at 14.

raised in those actions.

Plaintiffs' counsel filed motions to intervene in the Florida cases to assert privilege defenses to Defendants' broad document requests. Despite Defendants' counsels' representations to Judge Perry and me that Plaintiffs' counsel could intervene in the Florida litigation to assert privileges to discovery requests, Defendants' counsel in those cases vigorously opposed Plaintiffs' motions to intervene. ECF No. 1021.5 and 1021.1. In the Florida state court case Defendants opposed intervention by stating, "the Law Firms [Plaintiffs' counsel] lack an interest in this case needed to intervene. They are attorneys representing parties; not parties themselves with their own interests. And even if they could show a proper interest as attorneys, intervention under Florida law is permissive, not mandatory, and there are good reasons in the Court's sound discretion to decline intervention here." ECF No. 1021.1 at 1. Defendants stated further, "The Court should not allow the Law Firms to intervene because they lack an appropriate interest in this litigation and because there are good reasons to deny intervention even if they had an appropriate interest" and "Allowing them to intervene will only permit them to seek to frustrate the discovery process." Id. at 4 and 8.

Although Plaintiffs' counsel was ultimately allowed to intervene in the cases in an effort to assert privilege protections for current plaintiffs, their ability to

assert privilege objections was severely curtailed. The 1782 Proceeding magistrate judge ordered that if the Plaintiffs seek to invoke the attorney-client privilege on behalf of any client, ***each client*** must file, within fourteen days of the order, a sworn affidavit or declaration asserting the attorney-client privilege and their intent to have the intervenor Plaintiffs' counsel represent them in protecting that privilege. ECF No. 960.1. That order required Plaintiffs, within fourteen days, to obtain affidavits of thousands of individual plaintiffs in Peru to assert attorney-client privileges. This requirement was overwhelmingly burdensome, an impossible task, and effectiviely prevented Plaintiffs' ability to assert privilege objections in the 1782 Proceeding. Defendants use of the Florida lawsuits to seek this overbroad discovery and to oppose Plaintiffs' intervention amounted to a vexatious multiplication of litigation.

Of particular concern over Defendants' activities in the Florida cases was the creation of conflict between the discovery rulings in this case with the rulings in the 1782 Proceeding. Specifically, Plaintiffs were not being allowed to practically assert in that proceeding their attorney-client and work-product privileges universally on behalf of all current plaintiffs. They were required to obtain an affidavit from each current plaintiff within fourteen days of the magistrate judge's order. That order was in direct conflict with the rulings I have made in this case.

This conflict was created by Defendants' attempt to circumvent the discovery rulings I have entered in this case.

Moreover, Defendants did not agree to a production process in the Florida cases in which any documents gathered by Careaga may be initially reviewed by Plaintiffs' counsel. Nor did Defendants agree to let Plaintiffs assert their attorney-client and work-product privileges on behalf of all their clients without submitting an individual affidavit from each client. To the contrary, Defendants' counsel Robert Kunz told the magistrate judge at a 1787 Proceeding hearing that "Mr. Rodriguez and Mr. Santos [Plaintiffs' counsel], short of making their appearances, have no business here today and should not even, frankly, be heard from, Your Honor." ECF No. 960.7 at 13. In Defendants' filing for the same hearing Kuntz stated "Rodriguez-Napoli has no remaining interest in this case. The limited purpose for which they were permitted to intervene has been resolved." ECF No. 960.10.

Defendants falsely represented in their opposition papers and at oral argument that I barred discovery only of information or documents that related ***solely*** to an active plaintiff. In opposition to Plaintiffs' motion for sanctions, Defendants acknowledged that "[t]his Court's January 2023 order made clear that the Companies may pursue § 1782 discovery but 'may not ignore [this Court's]

rulings that limited any discovery from current plaintiffs regarding Defendants' allegations of the fraudulent recruitment of plaintiffs.'" ECF No. 961 at 4. Defendants asserted that my previous rulings are only directed to discovery information that pertains **solely** to a specific current individual plaintiff. To support that proposition Defendants purportedly quoted from my January 26, 2023, order and asserted that the order only barred discovery '"specific to any plaintiff whose claim is currently pending. ECF No. 718 at 4.'" Id. My order ***did not*** include that language or otherwise suggest that limitation. This was a blatant, bad-faith misrepresentation of my order.

Defendants also offered a safe harbor in their opposition brief that "[e]ven if the Companies were ever to receive supplemental [privileged] documents from Careaga—which remains uncertain—they would not use those materials in violation of this Court's rulings. To the contrary, the Companies would seek permission from this Court before using any documents where there was even a question of compliance." Id. at 5. This assertion was without merit. The purpose of the attorney-client privilege and the work-product doctrine is to keep such information out of the hands of the opposing party altogether. It does not allow them to see this information and independently decide whether to challenge the privilege assertions after the proverbial cat has been let out of the bag.

On October 29, 2025, I issued an order in response to Plaintiffs' motion for sanctions regarding Defendants' activities in the Florida cases. The order rejected Defendants' false assertion that my previous orders limited discovery which was only directed ***solely*** at active individual plaintiffs. I reiterated that I had already issued a protective order which denied Defendants' attempt to discover recruitment related documents and practices, the internal process and work-product of plaintiff's counsel and their support team, attorney-client privileged communications, and a host of other privileged information and documents. ECF No. 970 at 8-9. I reminded Defendants that in "countless hearings on these assertions I have repeatedly ruled that the Defendants' allegations of fraud would be addressed in the ordinary course of this case if discovery exposed specific acts of fraudulent conduct in the 108 initial trial pool plaintiffs' cases." Id. at 2. I reemphasized to Defendants, based on their obfuscation tactics in the Florida cases, that they may not seek discovery in the Florida cases regarding any potential attorney-client privilege or work-product information that relates to currrent plaintiffs regardless that the same discovery could apply to dismissed plaintiffs' cases.

Defendants' response to my order was revealing as to their intentions in the Florida court actions. On November 14, 2025, seventeen days after I issued my

order, Defendants requested a stay of the federal 1782 Proceeding which was granted. On November 26, 2025, Defendants moved to dismiss the 1782 Proceeding. Defendants told that court that my order had "effectively ended this action by so circumscribing the discovery" that there was "no route to pursue any discovery here at all." (ECF No. 1012 at 2.)[8] That was not true, Defendants were free to seek discovery related to individual dismissed plaintiffs (for instance to see if they had been willing plaintiffs in the case) but chose not to do so. The 1782 Proceeding court denied Defendants' motion to dismiss the case because of a pending appeal of the district court's unfavorable privilege rulings and denial of a protective order was before the United States Court of Appeals for the Eleventh Circuit in In re Renco Group, Inc., 164 F.4th 1336 (11th Cir. 2026). In its decision, the Eleventh Circuit noted the discovery conflict at issue between this Court and the Florida district court. The Eleventh Circuit upheld the 1782 Proceeding court's ruling but acknowledged that my orders had "expressed concern that Renco had misquoted and misrepresented its orders in multiple fora and abused the federal judicial process." Id. at 1342. The Eleventh Circuit noted that, "[u]ndoubtedly, the potential for forum shopping and abuse of the judicial process in § 1782 applications is a matter of considerable concern (as evidenced by these cases)." Id.

[8] The federal court in the 1782 Proceeding denied Plaintiffs' privilege objections and Defendants ultimately obtained disputed documents from Careaga. Upon the dismissal of that case Defendants agreed to destroy the documents.

at 1346-47. Upon the resolution of the appeal the district court granted Defendants' motion to dismiss the 1782 Proceeding.

In response to my order Defendants also quickly resolved their malicious prosecution case in Florida state court. On November 19, 2025, Defendants accepted nominal settlement offers of $1000 from Thayler and a $200 from Careaga to resolve the case. The case was dismissed on December 12, 2025. ECF No. 1015-1 at 4.

Defendants' dismissal of the federal court 1782 Proceeding and the Florida state court malicious prosecution case within days of my October 29, 2025 order clearly indicates that the only reason they filed these actions was to obtain discovery which I limited and/or denied in this case. Specifically, I had repeatedly ruled that the Defendants' fraud allegations would be addressed in the discovery directed to the trial pool plaintiffs and I denied Defendants' attempts to seek discovery from any other current plaintiff. Defendants' claim that I only barred discovery directed ***solely*** to current individual plaintiffs is false and unsupported. On October 28, 2022, at the hearing of Plaintiffs' motion under the All Writs Act, Defendants represented to Judge Perry and me that they were only seeking discovery from dismissed plaintiffs. Defendants knew that when they made their invasive discovery requests in the Florida cases regarding former plaintiffs that

these requests would apply equally to all of the current plaintiffs. Defendants' argument that they were permitted to seek discovery from dismissed plaintiffs that applied to all the current plaintiffs is disingenuous. Defendants argue that sanctions should not be imposed because their resolution of the Florida cases shortly after I issued my order demonstrated that they acted in good faith and complied with my order. However, I am not imposing sanctions for their hurried resolution of those cases.

I am imposing sanctions under Fed.R.Civ.P 37(b)(2)(A) for violating my discovery orders limiting discovery to the trial pool cases related to Defendants' fraud allegations. Defendants' overreaching and aggressive efforts to obtain this discovery from former plaintiffs which also directly related to current plaintiffs was a willful and intentional violation of my orders.

I am also imposing sanctions under my inherent authority for Defendants' abuse of the judicial process and vexatious multiplication of litigation. Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991). Defendants intentional and willful conduct in the Florida cases was an effort to circumvent my discovery orders by attempting to obtain impermissible discovery in the Florida cases and opposing Plaintiffs' ability to challenge that discovery. Defendants made misrepresentations to this Court regarding Plaintiffs' ability to intervene and oppose the discovery of

privileged communications and work product in the Florida cases.[9] Defendants' vigorously opposed Plaintiffs' motions to intervene in the Florida cases in direct contravention of their representations to Judge Perry and me. Defendants refused to provide Plaintiffs with the ability to timely review discovery requests and assert privilege objections. Defendants' discovery requests sought information and documents that applied to current Plaintiffs which I had barred. Defendants falsely asserted my January 26, 2023, order barred discovery ***only*** to "specific to any plaintiff whose claim is currently pending." Defendants' activities in the Florida cases was in contravention with my rulings in this case. Defendants were able to access discovery in the Florida cases that had been limited or barred by my orders. Plaintiffs have been prejudiced by having to expend attorney-time and resources litigating discovery Defendants sought in the Florida cases for the past five years.

As a result, I find that sanctions are merited for Defendants' intentional and willful conduct. I find that Plaintiffs shall be able to recover all of their reasonable costs, expenses, and legal fees they incurred in response to Defendants' federal and state Florida cases. This includes attorneys' fees on all motions, responses, and

[9] This is not the first time Defendants have been sanctioned for their intentional willful conduct. On July 29, 2025, I imposed a $49,500 sanction for Defendants' disclosure of the full names of minor plaintiffs to the Peruvian prosecutor in violation of sealing orders.

replies and other filings Plaintiffs incurred in the Florida cases and in this Court related to the Florida litigation. Plaintiffs shall provide a verified statement of attorneys' fees, costs, and expenses incurred in the 1782 Proceeding, the Florida state malicious prosecution case, and in this case. To the extent possible, Plaintiffs shall file a separate statement for each of the three cases. I will also permit Plaintiffs to request the fees incurred in preparing their verified statements. Any statement of attorneys' fees must be supported by sufficient detailed documentation from which I can determine the hourly rates charged and by whom, and whether the hours were reasonably expended.

I will deny, without prejudice, Plaintiffs' motion to disqualify Defendants' counsel who participated in the Florida cases because those cases have been resolved. I anticipate that, aside from filings in response to this order, these attorneys will not be appearing in this case going forward.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiffs' motion for sanctions [960] is **GRANTED in part and DENIED in part** as set out in this Memorandum and Order.

**IT IS FURTHER ORDERED that** no later than **December 4, 2026**, Plaintiffs shall file a verified statement of their attorneys' fees, costs, and expenses

incurred in the Florida court cases and in this case as set out in this Memorandum and Order.

**IT IS FURTHER ORDERED that** Defendants shall have until no later than **January 15, 2027** to respond to Plaintiffs' submissions.

**IT IS FURTHER ORDERED that** Plaintiffs' motion to disqualify Defendants' counsel involved in the Florida court cases [960] is **DENIED** without prejudice.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2026.